1  JEFFREY D. GOLDMAN (Bar No. 155589),
   JGoldman@jmbm.com
2  RYAN S. MAUCK (Bar No. 223173), RMauck@jmbm.com
   BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California 90067-4308
   Telephone:    (310) 203-8080
5  Facsimile:    (310) 203-0567

6  Attorneys for Defendant UMG RECORDINGS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11  RICK JAMES, by and through THE JAMES          CASE NO.    CV11-01613 SI
    AMBROSE JOHNSON, JR., 1999 TRUST, his
12  successor in interest, individually and on behalf   CASE NO.    CV11-02431 SI
    of all others similarly situated,
13
                                                   **NOTICE OF MOTION AND MOTION OF
14          Plaintiff,                              DEFENDANT UMG RECORDINGS, INC.
                                                   FOR SUMMARY JUDGMENT ON CAUSES
15      v.                                         OF ACTION FOR VIOLATIONS OF
                                                   CALIFORNIA BUSINESS & PROFESSIONS
16  UMG RECORDINGS, INC., a Delaware               CODE § 17200 AND OPEN BOOK
    corporation,                                   ACCOUNT**
17
            Defendant.
18                                                 [Declaration of Jeffrey D. Goldman and
    ROB ZOMBIE, a/k/a Robert Wolfgang             [Proposed] Order filed concurrently herewith]
19  Zombie, f/k/a Robert Cummings; WHITE
    ZOMBIE, a general partnership;                 Date:       April 6, 2012
20  WHITESNAKE, a doing business as                Time:       9:00 a.m.
    designation of David Coverdale, by and for     Courtroom:  10, 19th Floor
21  WHITESNAKE PRODUCTIONS                         Judge:      Hon. Susan Illston
    (OVERSEAS) LIMITED; and DAVE MASON,
22  individually and on behalf of all others
    similarly situated,
23
            Plaintiff,
24
        v.
25
    UMG RECORDINGS, INC., a Delaware
26  corporation,

27          Defendant.

28

PRINTED ON
RECYCLED PAPER

8461383v6

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 6, 2012 at 9:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 10 of the above entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Susan Illston, defendant UMG Recordings, Inc. ("UMGR") will and hereby does move for an Order granting summary judgment to UMGR on the Third Cause of Action for open book account and the Fourth Cause of Action for violation of California Business & Professions Code § 17200 (the "UCL") in the Complaints filed by plaintiffs Rick James, by and through the James Ambrose Johnson, Jr., 1999 trust (the "James Trust"), Rob Zombie, White Zombie, Whitesnake, and Dave Mason (collectively "Plaintiffs").

The grounds of this motion are that the Third and Fourth Causes of Action are meritless as a matter of law, both factually and legally. Specifically, and without limitation:

●   Plaintiffs' UCL claims must be dismissed because (1) the gravamen of Plaintiffs' UCL claims are private commercial contracts that do not affect consumers; (2) any claim based on UMGR's alleged statements to consumers about royalties is meritless because (i) there is no evidence of any such statements, (ii) the statements identified by Plaintiffs in discovery were not made to consumers and are non-actionable statements of opinion, (iii) there is no evidence any consumers suffered any economic harm as a result of overhearing such statements, and (iv) Plaintiffs lack standing under both California law and Article III of the Constitution to pursue such claims on consumers' behalf; (3) these claims are barred by the UCL's four-year statute of limitations; and (4) Plaintiffs' "systematic breach of contract" theory is unsupported by the law, especially where, as here, consumer contracts are not involved.

●   Plaintiffs' open book account claims must be dismissed because (i) their claims are based upon express written contracts that govern the manner in which their royalties are to be paid, (ii) their contracts provide for regular, periodic accountings, and (iii) there is no evidence Plaintiffs, the alleged "owners of the demands," have maintained any account books.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Jeffrey D. Goldman, the court file, including but not limited to the previously filed Declarations of Charles Ciongoli on file in these actions, any matters

Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

- 1 -

of which this Court may properly take judicial notice or may otherwise consider, any reply UMGR may make, and any further evidence and argument that may be presented to the Court prior to or at the hearing on this Motion.

DATED:  March 2, 2012    JEFFREY D. GOLDMAN
            RYAN S. MAUCK
            BRIAN M. YATES
            JEFFER MANGELS BUTLER & MITCHELL LLP


            By: /s/ Jeffrey D. Goldman
               JEFFREY D. GOLDMAN
           Attorneys for Defendant UMG RECORDINGS, INC.

PRINTED ON

RECYCLED PAPER

8461383v6

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...................................................................................1

II. SUMMARY OF UNDISPUTED FACTS ......................................................................2

    A.    Plaintiffs' Alleged Contractual Rights to Royalties ................................2

    B.    UMGR's Allegedly "Ongoing" Breaches of the Royalty Provisions of its Contracts as Applied to Digital Downloads ...........................................3

    C.    This Court's Ruling on UMGR's Motions to Dismiss ..............................5

    D.    UMGR's UCL Discovery .........................................................................5

III. ARGUMENT.............................................................................................................7

    A.    UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSES OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 .................................................7

        1.    The Gravamen of Plaintiffs' Claims are Private Commercial Contracts that Do Not Affect Consumers .....................................7

        2.    Plaintiffs Cannot Base a UCL Claim on UMGR's Alleged Public Statements About Royalties.........................................................10

            a.    There is no evidence of any statements by UMGR to consumers ...........................................................................11

            b.    The two statements cited by Plaintiffs are not actionable under the UCL .......................................................................12

            c.    There is no evidence any statements by UMGR caused economic harm to consumers ..............................................13

            d.    Plaintiffs lack standing to pursue any claim that consumers have suffered economic harm from statements by UMGR .............13

        3.    Plaintiffs' UCL Claims are Barred by the Applicable Statute of Limitations.......................................................................................15

        4.    Plaintiffs' UCL Claim Does Not Establish Any Independently Actionable Wrongful Act in Addition to an Alleged Breach Of Contract.........................................................................................17

    B.    UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR OPEN BOOK ACCOUNT ...........................................20

IV. CONCLUSION ..........................................................................................................23

PRINTED ON

RECYCLED PAPER

8461383v6

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

TABLE OF CONTENTS
[CONTINUED]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

8461383v5

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

# TABLE OF AUTHORITIES

Page(s)

CASES

*Advanced-Tech Security Services, Inc. v. Superior Court,*
    163 Cal. App. 4th 700 (2008) ................................................................................................18

*Allied Grape Growers v. Bronco Wine Co.,*
    203 Cal. App. 3d 432 (1988) ..........................................................................................18, 19

*Animal Legal Defense Fund v. Mendes,*
    160 Cal. App. 4th 136 (2008) ................................................................................................13

*Anunziato v. eMachines, Inc.,*
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) .................................................................................12

*Arce v. Kaiser Foundation Health Plan, Inc.,*
    181 Cal. App. 4th 471 (2010) ................................................................................................19

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009) ..........................................................................................13, 14

*Boland, Inc. v. Rolf C. Hagen (USA) Corp.,*
    685 F. Supp. 2d 1094 (E.D. Cal. 2010) .................................................................................17

*Broberg v. Guardian Life Ins. Co. of America,*
    171 Cal. App. 4th 912 (2009) ................................................................................................15

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
    20 Cal. 4th 163 (1999) ...........................................................................................................19

*Cleary v. News Corp.,*
    30 F.3d 1255 (9th Cir. 1994) .................................................................................................12

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (2008) ...............................................................................................................9

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999) .................................................................................................12

*Cortez v. Purolator Air Filtration Products Co.,*
    23 Cal. 4th 163 (2000) ...........................................................................................................15

*Costello v. Bank of America Nat. Trust & Sav. Ass'n,*
    246 F.2d 807 (9th Cir. 1957) .................................................................................................21

*Cusano v. Klein,*
    2002 WL 34267920 (C.D. Cal. 2002) ...................................................................................22

PRINTED ON

RECYCLED PAPER

8461383v6

*Daro v. Superior Court,*
    151 Cal. App. 4th 1079 (2007) ...................................................................................13, 14

*Durkin v. Durkin,*
    133 Cal. App. 2d 283 (1955) ................................................................................................21

*Endres v. Wells Fargo Bank,*
    2008 WL 344204 (N.D. Cal. 2008) ....................................................................................15

*Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.,*
    208 Cal. App. 3d 1297 (1989) .............................................................................................21

*Gibson v. World Savings & Loan Assn.,*
    103 Cal. App. 4th 1291 (2002) ...........................................................................................18

*Gravquick A/S v. Trimble Navigation Int'l Ltd.,*
    323 F.3d 1219 (9th Cir. 2003) .............................................................................................18

*Greenberger v. GEICO General Ins. Co.,*
    631 F.3d 392 (7th Cir. 2011) ...............................................................................................20

*Groom v. Holm,*
    176 Cal. App. 2d 310 (1959) ...............................................................................................22

*Hall v. Time Inc.,*
    158 Cal. App. 4th 847 (2008) .............................................................................................13

*Hangarter v. Provident Life and Acc. Ins. Co.,*
    373 F.3d 998 (9th Cir. 2004) ...............................................................................................14

*In re ConocoPhillips Co. Service Station Rent Contract Litigation,*
    2011 WL 1399783 (N.D. Cal. 2011) ..................................................................................8, 9

*In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
    2007 WL 486367 (N.D. Cal. 2007) ....................................................................................15

*In Re Webkinz Antitrust Litigation,*
    695 F. Supp. 2d 987 (N.D. Cal. 2010) ...............................................................................5, 8

*Jerry Beeman and Pharmacy Services, Inc. v. Anthem Prescription Management, LLC,*
    652 F.3d 1085 (9th Cir. 2011) .............................................................................................18

*Jolly v. Eli Lilly & Co.,*
    44 Cal. 3d 1103 (1988) .........................................................................................................15

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.,*
    285 F.3d 848 (9th Cir. 2002) ...............................................................................................15

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

*Keilholtz v. Lennox Hearth Products Inc.*,
  2009 WL 2905960 (N.D. Cal. 2009) ...................................................................16

*Levine v. Vilsack*,
  587 F.3d 986 (9th Cir. 2009) ............................................................................14

*Lilienthal & Fowler v. Superior Court*,
  12 Cal. App. 4th 1848 (1993) ...........................................................................10

*Linear Technology Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) .............................................................................9

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
  97 Cal. App. 4th 1282 (2002) ...........................................................................15

*McCready v. American Honda Motor Co., Inc.*,
  2006 WL 1708303 (N.D. Cal. 2006) ..................................................................16

*Mujica v. Occidental Petroleum Corp.*,
  381 F. Supp. 2d 1164 (C.D. Cal. 2005) ............................................................15

*Newdow v. Rio Linda Union School Dist.*,
  597 F.3d 1007 (9th Cir. 2010) . No ...................................................................18

*Orkin Exterminating Co., Inc. v. F.T.C.*,
  849 F.2d 1354 (11th Cir. 1988) ........................................................................19

*Owen ex rel. Owen v. United States*,
  713 F.2d 1461 (9th Cir. 1983) ..........................................................................18

*Parker v. Shell Oil Co.*,
  29 Cal. 2d 503 (1946) .......................................................................................21

*Perez v. Nidek Co. Ltd.*,
  657 F. Supp. 2d 1156 (S.D. Cal. 2009).........................................................15, 16

*Peterson v. Cellco Partnership*,
  164 Cal. App. 4th 1583 (2008) .........................................................................13

*Puentes v. Wells Fargo Home Mtg., Inc.*,
  160 Cal. App. 4th 638 (2008) ...........................................................................20

*R.E. Tharp, Inc. v. Miller Hay Co.*,
  261 Cal. App. 2d 81 (1968) ..............................................................................21

*Rice v. Fox Broadcasting Co.*,
  330 F.3d 1170 (9th Cir. 2003) ..........................................................................12

PRINTED ON

RECYCLED PAPER

8461383v6

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

*Robin v. Smith*,
132 Cal. App. 2d 288 (1955) ...................................................................................22

*Rodgers v. Roulette Records, Inc.*,
677 F. Supp. 731 (S.D.N.Y. 1988) ..........................................................................22

*Rosenbluth International, Inc. v. Superior Court*,
101 Cal. App. 4th 1073 (2002) .............................................................................8, 9

*Salenga v. Mitsubishi Motors Credit of America, Inc.*,
183 Cal. App. 4th 986 (2010) .................................................................................15

*Shroyer v. New Cingular Wireless Services, Inc.*,
622 F.3d 1035 (9th Cir. 2010) ................................................................................19

*Smith v. Wells Fargo Bank, N.A.*,
135 Cal. App. 4th 1463 (2005) ...............................................................................18

*Snapp & Associates Ins. Services, Inc. v. Robertson*,
96 Cal. App. 4th 884 (2002) .............................................................................15, 16

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
72 Cal. App. 4th 861 (1999) ................................................................................8, 9

*State Farm Fire & Casualty Co. v. Superior Court*,
45 Cal. App. 4th 1093 (1996) ...........................................................................18, 19

*Stutz Motor Car of America, Inc. v. Reebok Int'l Ltd.*,
909 F. Supp. 1353 (C.D. Cal. 1995) .......................................................................15

*Suh v. Yang*,
987 F. Supp. 783 (N.D. Cal. 1997) .........................................................................15

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ..........................................................................17, 19

*Thompson v. Residential Credit Solutions, Inc.*,
2012 WL 260357 (E.D. Cal. 2012) .........................................................................14

*Tsemetzin v. Coast Federal Savings & Loan Assn.*,
57 Cal. App. 4th 1334 (1997) .................................................................................21

*Xilinx, Inc. v. Intellectual Ventures I LLC*,
2012 WL 243302 (N.D. Cal. 2012) ...................................................................10, 13

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

8461383v6

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

# TABLE OF AUTHORITIES
## [CONTINUED]

Page(s)

**STATUTES**

Cal. Bus. & Prof. Code
  § 17200 ..............................................................................................*passim*
  § 17204 ..............................................................................12, 13, 14
  § 17208 ..............................................................................................15

Cal. Civ. Proc. Code
  § 337a..................................................................................................22

Cal. Civ. Code
  § 2501 ..............................................................................................5, 6

**OTHER AUTHORITIES**

U.S. Constitution, Article III ..........................................................11, 13, 14

8461383v6

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

PRINTED ON
RECYCLED PAPER

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## **PRELIMINARY STATEMENT**

This is an action for breach of contract to which Plaintiffs have improperly sought to append meritless, derivative claims for violation of California Business & Professions Code section 17200 (the "UCL") and for "open book accounts." In denying UMGR's motion to dismiss, this Court invited UMGR to file a motion for summary judgment on the UCL claims, stating that "several of the cases relied upon by [UMGR] were decided on summary judgment," and that "the questions raised by [UMGR's] motions are better suited for determination on a full factual record." UMGR promptly propounded discovery on Plaintiffs' UCL claims, which has revealed that these claims cannot succeed as a matter of law for numerous, independent reasons:

- The gravamen of Plaintiffs' UCL claims are private commercial contracts that do not affect consumers.

- Plaintiffs cannot base any UCL claim on UMGR's alleged statements to consumers about royalties, because (i) there is no evidence of any such statements, (ii) the two statements identified by Plaintiffs – made to private attorney groups, not the consuming public – are plainly non-actionable statements of opinion, (iii) there is no evidence any consumers suffered any economic harm as a result of overhearing such statements, and (iv) Plaintiffs lack standing under both California law and Article III of the Constitution to pursue such claims on consumers' behalf.

- The UCL claims are barred by the applicable four-year statute of limitations.

- Upon closer examination, Plaintiffs' "systematic breach of contract" theory is unsupported by the law, especially where, as here, consumer contracts are not involved.

In addition, Plaintiffs' claims for open book account are meritless as a matter of law because (i) these claims are based upon express written contracts that govern the manner in which Plaintiffs' royalties are to be paid, (ii) Plaintiffs' contracts provide for regular, periodic accountings; and (iii) there is no evidence Plaintiffs, the alleged "owners of the demands," have maintained any account books. Under such circumstances, no claim for open book account can lie under California law.

PRINTED ON
RECYCLED PAPER

8461383v6

Accordingly, UMGR is entitled to summary judgment on Plaintiffs' Third and Fourth Causes of Action.

## II.

## SUMMARY OF UNDISPUTED FACTS

### A.    Plaintiffs' Alleged Contractual Rights to Royalties

Plaintiffs are various recording artists or music producers, or alleged entities controlled by them or their successors-in-interest, who entered into written contracts with UMGR, a record company, or its predecessors-in-interest. James Complaint ¶¶ 15, 24; Zombie Complaint ¶¶ 15, 24, 26, 28. (All further references to UMGR include its predecessors-in-interest.) These written contracts "govern[] the payment of royalties to [Plaintiffs] for the sale and licensing of the sound recordings delivered by [Plaintiffs] to [UMGR]." James Complaint ¶ 25; Zombie Complaint ¶¶ 25, 27, 29.

Plaintiffs allege that "pursuant to" these contracts, they caused to be produced and delivered to UMGR "certain recordings featuring [their] performances, as well as the performances of others," James Complaint ¶ 28, Zombie Complaint ¶ 30, and that the contracts "provide[], among other things, that [UMGR] would (a) provide various financial benefits to [Plaintiffs], and (b) furnish semi-annual royalty accounting statements setting forth the computation of royalties for the sale or license of [Plaintiffs'] recordings, accompanied by any royalty payments due." James Complaint ¶ 29; Zombie Complaint ¶ 31. Plaintiffs allege that the calculation of these royalty payments is based upon a contractual "formula prescribing the manner in which UMG is required to calculate royalties[.]" James Complaint ¶ 44; Zombie Complaint ¶ 46; *see also* James Complaint ¶ 45; Zombie Complaint ¶ 47 ("Each [UMGR] production or recording agreement" contains a "formula for calculating a music producer or recording artist's entitlement to a share of licensing receipts received"). Plaintiffs allege that putative class members' agreements have the same characteristics. James Complaint ¶ 43; Zombie Complaint ¶ 45 ("These agreements set forth and govern the calculation, distribution and payment to each class member of their portion of the income derived from the licensing of sound recordings of his or her performances or other creative contribution."). Plaintiffs set forth in great detail the purported specific contractual "formulas"

PRINTED ON

RECYCLED PAPER

governing the contracts on which they purport to be suing.  *See* James Complaint ¶¶ 25-27; Zombie Complaint ¶¶ 25, 27, 29.

In short, Plaintiffs assert a "contractual right" to royalties.  James Complaint ¶ 4; Zombie Complaint ¶ 4.  They allege they are seeking to enforce "Plaintiff's and the Class' rights **under their agreements**[.]"  James Complaint ¶ 11; Zombie Complaint ¶ 11 (emphasis added).  Likewise, the legal duty they ascribe to UMGR is also wholly contractual:  "a duty and obligation under [its agreements with Plaintiffs] and its other recording artist and producer agreements to account properly and accurately for" royalties.  James Complaint ¶ 51; Zombie Complaint ¶ 53.

## B. UMGR's Allegedly "Ongoing" Breaches of the Royalty Provisions of its Contracts as Applied to Digital Downloads

Plaintiffs allege that UMGR "has failed to comply with the provisions of its recording artist and producer agreements" by failing to pay artists and producers the royalties "to which they are contractually entitled[.]"  James Complaint ¶¶ 48-50; Zombie Complaint ¶¶ 50-52.  As a result, they allege, they have incurred "the loss of royalties" under those agreements.  James Complaint ¶ 9; Zombie Complaint ¶ 9.

Specifically, Plaintiffs allege that around 2004, "a new and viable method of commercial exploitation of recorded music, **music download services** … was developed and has since seen widespread implementation in the marketplace."  James Complaint ¶ 17; Zombie Complaint ¶ 17 (emphasis added).  As downloads developed into a widespread channel for the distribution of recordings, on March 24, 2004, a group of 27 prominent lawyers who represented recording artists and music producers wrote to UMGR, among others (a letter produced by plaintiff the James Trust in discovery).  These artist representatives wrote specifically to complain about the manner in which UMGR was paying royalties to artists for the sales of such downloads.  The letter stated:

> We are not ambivalent about the digital revolution and in fact are very cognizant of the important legal and business issues associated with file sharing.  However we wish to express our concern about the manner in which major record companies are dealing with artists in the critical, new frontier of music downloads by iTunes and similar companies.  Among the most sensitive issues is the royalty itself.

PRINTED ON

RECYCLED PAPER

Rather than recognize the arrangements between the major labels and independent electronic distributors as licenses, for which we feel there can be no bona fide legal dispute, and paying our clients according to the applicable provision of their contracts, all five major record companies have adopted the position that paid downloads are equivalent to sales of CDs through retailers. This *significantly* reduces the amount paid to our clients…. [and] deprives our clients of the benefits of their contracts.

Declaration of Jeffrey D. Goldman ("Goldman Decl."), Ex. 4 (emphasis in original).

UMGR's President, Zach Horowitz, responded on April 22, 2004, repudiating the artists' position. He stated that UMGR arrived at its decision

to treat digital downloads as a sale, rather than a license … based upon our own evaluation of the activity concerned and our application of the language in our artist recording contracts. We continue to believe that our treatment of digital downloads is proper and in accord with the spirit, intent and language of our contracts.

Goldman Decl., Ex. 5.

Plaintiffs do not allege that UMGR ever changed the position it staked out on April 22, 2004. To the contrary, in their interrogatory answers, Plaintiffs specifically rely on Horowitz's written statements as ostensible support for their UCL claim. Goldman Decl., Ex. 2, p. 7. Further, Plaintiffs allege that:

- UMGR's breaches are "ongoing" (James Complaint ¶¶ 69, 71; Zombie Complaint ¶¶ 71, 73);

- UMGR has been and remains in "continuous violation of the terms of its agreements with recording artists and music producers," including Plaintiffs (James Complaint ¶ 4; Zombie Complaint ¶ 4), who entered into contracts with UMGR between January 1, 1965 and April 30, 2004 (James Complaint ¶ 32; Zombie Complaint ¶ 34); and

- UMGR has "failed and refused to cure these breaches and continues to incorrectly calculate these royalties in violation of the" agreements (James Complaint ¶ 57; Zombie Complaint ¶ 59).

UMGR denies that it has breached its contracts with Plaintiffs. It contends that it has calculated Plaintiffs' royalties correctly under their written contracts. Accordingly, UMGR

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Mitchell LLP

contends it has no liability to Plaintiffs on any claim, including Plaintiffs' breach of contract claims. These issues, however, are not before the Court on this motion.

### C. This Court's Ruling on UMGR's Motions to Dismiss

UMGR filed motions to dismiss Plaintiffs' UCL claims at the pleading stage. In denying those motions based solely on the pleadings, this Court stated that "several of the cases relied upon by defendant were decided on summary judgment," that "the questions raised by defendants' motions are better suited for determination on a full factual record," and that "[t]he Court agrees with Judge White's analysis in *In Re Webkinz Antitrust Litigation*, 695 F. Supp. 2d 987 (N.D. Cal. 2010), where he stated,

> [T]he central issue presented under California law is ***whether the public at large, or consumers generally, are affected by the alleged unlawful business practice of defendants***. The relative size of the plaintiff companies and whether or not there is a contract for the plaintiffs to rely on is secondary to the analysis of whether, as a result of the alleged unfair or fraudulent business practice, consumers are adversely affected.

… Judge White dismissed the plaintiffs' claims with leave to amend because the complaint did 'not allege facts sufficient to demonstrate a connection to the protection of the public.' ... Here, the complaints do allege a connection to the protection of the public." Order at 7 [Docket No. 49] (emphasis added).

### D. UMGR's UCL Discovery

UMGR then promptly propounded interrogatories and document requests to determine the factual basis, if any, of Plaintiffs' contention that UMGR's alleged misconduct affected consumers or the "public at large." Plaintiffs' responses, served on December 14, 2011, contained little in the way of such facts:

● Plaintiffs cited some legislative language in connection with the enactment of California Civil Code section 2501(a), which authorizes recording artists to conduct audits of record companies' books and records, within certain limitations, even if their contract does not provide such an audit right. Goldman Decl., Ex. 2, p. 6. However, Plaintiffs do not allege that UMGR has violated this statute (nor could they, as their contracts all contain audit provisions giving them audit

PRINTED ON
RECYCLED PAPER

PRINTED ON

RECYCLED PAPER

1   rights irrespective of the statute).  Section 2501 concerns audits of royalty statements, not the

2   amount of royalties due under any contract; it does not modify any royalty provision of any

3   contract.

4   •   Plaintiffs cited the exchange of letters in 2004 between lawyers for recording artists

5   and UMGR, in which UMGR's Horowitz rejected the artists' position that UMGR should "treat

6   digital downloads as a sale, rather than a license."  Goldman Decl., Ex. 2, p. 7.  But Plaintiffs do not

7   allege that these letters were made known to the public, let alone explain how Horowitz's statement

8   of UMGR's legal position could be actionable under the UCL.

9   •   Plaintiffs cite Horowitz's 2007 speech to lawyers and law students at an industry

10  event (sponsored by the Entertainment Law Initiative) in which he stated:  "We pioneered what we

11  believe to be the industry's most artist friendly contractual provisions for sharing digital income -

12  eliminating free goods, packaging, new media and other deductions."  Goldman Decl., Ex. 2, p. 7;

13  Ex. 6, p. 3.

14  •   Plaintiffs allude to "a number of public statements [by UMGR] regarding its

15  relationship with third parties digital download providers [*sic*] such as Apple," but do not identify

16  *any* such statements.  Goldman Decl., Ex. 2, p. 8.

17  •   Plaintiffs cite to an International Federation of the Phonographic Industry annual

18  status report discussing the growth of digital sales and the impact of digital piracy, which they

19  contend "emphasizes the importance of digital downloads to consumers and musical artists."

20  Goldman Decl., Ex. 2, p. 8.  However, they do not explain how this report establishes any

21  connection between *Plaintiffs' claims* against UMGR and consumers.

22  UMGR met and conferred with Plaintiffs and asked them to supplement these interrogatory

23  responses if they had any additional responsive information.  Plaintiffs confirmed they have no such

24  information.  Goldman Decl., Ex. 5.  They asserted they intended to obtain it through discovery.

25  However, in the eleven months this case has been pending, Plaintiffs have propounded discovery

26  directed to many different issues, but have chosen not to propound *any* discovery on this topic.

27

28

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

JMBM

Jeffer Mangels
Butler & Mitchell LLP

# ARGUMENT

**A.**    **UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSES OF ACTION FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200**

   **1.**    **The Gravamen of Plaintiffs' Claims are Private Commercial Contracts that Do Not Affect Consumers**

Especially in light of Plaintiffs' factually devoid discovery responses, a closer look at the *In re Webkinz* case on which this Court previously relied is instructive.[1]  In that case, retailers brought a UCL claim against a toymaker, alleging antitrust violations arising out of the toymaker's sale of certain dolls.  Following the published decision in *In re Webkinz*, the plaintiff retailers filed a Second Amended Complaint which specifically alleged that "consumers and the general public were harmed [by the defendant's conduct] because, among other things, they spent time and money repeatedly traveling to and visiting Plaintiffs' stores only to be unable to purchase [the dolls] ... [and] their choices were restricted to [defendant's] products."  Goldman Decl., Ex. 7, p. 32, ¶¶ 119-120.  The Second Amended Complaint also alleged that the dolls contained "dangerous and unlawful levels of lead..." *Id.*, ¶ 121.

These allegations of consumer impact are far more specific and concrete than the vague and conclusory allegations in Plaintiffs' Complaints and interrogatory responses in this case.  Yet the *In re Webkinz* court nevertheless dismissed the plaintiffs' UCL claim *without* leave to amend, concluding that the alleged consumer harm was either not causally related to the gravamen of the UCL claim (delayed shipments of toys) or was "vague and generalized" and "*insufficient to convert what fundamentally remains a dispute, contractual in essence, between a distributor and*

---

[1] UMGR does not waive the arguments in its motions to dismiss, including but not limited to those on pages 3-5 concerning certain standing requirements of the UCL.  However, in light of the Court's November 1 Order, UMGR will focus its arguments in this motion on the legal standard adopted by this Court.

*retailers, into a consumer matter within the meaning of any of the state statutes at issue*."
Goldman Decl., Ex. 8, p. 10 (emphasis added).

This conclusion is consistent with California authorities that make clear that "a UCL action based on a contract is not appropriate where the public in general is not harmed by the defendant's alleged unlawful practices." *Rosenbluth International, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 1077 (2002). In *Rosenbluth*, the court granted summary judgment to the defendant because the rights the plaintiff sought to vindicate in his UCL claim were those of corporate travel agency customers, not consumers. *Id.* at 1075-78. Similarly, in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999), the court granted summary judgment to the defendant on the plaintiff's UCL claim because there was no showing that members of the public were likely to be deceived by a wholesale security agreement between a lender and automotive dealers. *Id.* at 888-90.

All of these cases involved products or services that consumers use: dolls, travel services, and cars. But that was not sufficient to establish the required connection between the gravamen of the plaintiff's particular UCL claim and consumers. Rather, all of the UCL claims were dismissed because, as recognized in *In re Webkinz*, a UCL action may not be based on "contracts not involving either the public in general or individual consumers who are parties to the contract[.]" 695 F. Supp. 2d at 998, *quoting Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (sustaining demurrer without leave to amend to a UCL claim brought by corporate customers of the defendant).

*In re ConocoPhillips Co. Service Station Rent Contract Litigation*, 2011 WL 1399783 (N.D. Cal. 2011), is also illustrative. There, gas station operators alleged that an oil company overcharged them for debit and credit card processing fees in violation of the oil company's contracts with the service station owners. Consumers obviously use credit cards, gas and oil at service stations. But the court dismissed the UCL claim, stating:

> Plaintiffs' relationship with defendant is defined by their contractual arrangement. The case does not involve the general public or individual consumers who are parties to a contract. Rather, it is a dispute between commercial parties over their economic relationship.

Under *Linear Technology*, plaintiffs cannot assert an 'unfair business practice' claim under Section 17200.

*Id*. at *3.

In light of this Court's prior ruling, other applicable law, and Plaintiffs' responses to written discovery directed to the UCL claim, it has become clear that this claim is meritless as a matter of law. Plaintiffs are recording artists and producers (James Complaint ¶ 13; Zombie Complaint ¶¶ 12-14) who allege in their UCL claim that UMGR "knowingly ***breached its contracts with Plaintiff[s]***[.]" James Complaint ¶ 69; Zombie Complaint ¶ 71 (emphasis added). The gravamen of their UCL cause of action is UMGR's alleged breach of various ***commercial contracts*** with ***Plaintiffs*** by purportedly ***undercalculating the royalties*** due to Plaintiffs. *See*, *e.g.*, James Complaint ¶¶ 51, 54, 56, 57, 69; Zombie Complaint ¶¶ 53, 55, 56, 58, 59, 71. There is no evidence that consumers are parties to these contracts, Plaintiffs do not claim UMGR owes any legal duty to them apart from a contractual one. The sole relief Plaintiffs seek is pursuant to the alleged undercalculation of contractual royalties derived from the detailed terms of commercial – not consumer – contracts. Plaintiffs are plainly suing as ***creators*** of musical recordings, not ***consumers*** of musical recordings. The alleged "rights" they seek to "vindicate" are the rights of recording artists and music producers to additional royalties, not any rights of consumers. *Rosenbluth*, 101 Cal. App. 4th at 1075-78. None of the compensation Plaintiffs seek – "an amount equal to [UMGR's] underpayment on [*sic*] Plaintiff[s] and the other class members' royalty accounts" (*see* Prayers) – would go to consumers. There is no evidence that UMGR even ***has*** any contracts with consumers, let alone any obligation to pay royalties to any consumers; nor is there evidence that any of Plaintiffs' private contracts with UMGR involve "the general public or individual consumers who are parties to a contract." *In re ConocoPhillips,* 2011 WL 1399783, *3; *see Linear Technology*, 152 Cal. App. 4th at 135.

Nor is there evidence that "members of the public were likely to be deceived" by UMGR's alleged undercalculation of contractual royalties to recording artists and producers. *South Bay Chevrolet*, 72 Cal. App. 4th at 888-90. There is no evidence that consumers even have knowledge of Plaintiffs' contracts with UMGR, let alone what they provide, how they operate, or whether they

Jeffer Mangels
Butler & Mitchell LLP
JMBM

PRINTED ON
RECYCLED PAPER

8461383v6

have been breached.  Indeed, the very idea that a consumer would make any "purchasing decision" of any product based on any understanding, misunderstanding, or lack of understanding of Plaintiffs' confidential commercial contracts with UMGR defies common sense.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (2008) (UCL claim properly dismissed where plaintiff had no evidence that defendant's conduct "was material even to his own purchasing decision; he has not produced sufficient evidence that the failure to disclose was likely to deceive a reasonable consumer."); *see also Xilinx, Inc. v. Intellectual Ventures I LLC*, 2012 WL 243302 (N.D. Cal. 2012) (under federal law, a UCL claim, like any other, must have "facial plausibility").  Accordingly, Plaintiffs' UCL claims must be dismissed.

### 2. Plaintiffs Cannot Base a UCL Claim on UMGR's Alleged Public Statements About Royalties

Recognizing their claim for underpayment of royalties pursuant to commercial contracts has nothing to do with consumers, Plaintiffs attempt to prove the required connection between their claim and consumers by peppering their Complaints with vague references to alleged public statements by UMGR, in which UMGR supposedly discussed the way it calculated royalties payable to recording artists.  As the Court noted in its prior Order, Plaintiffs allege in the Complaints that UMGR has "[e]ngaged in a sustained public relations effort designed to convince the public that it had employed 'groundbreaking' and 'enlightened' accounting practices that actually benefitted (rather than cheated) the Class…"  Order at 8.

Plaintiffs presumably contend that such unidentified statements were made, heard by consumers, and these consumers then suffered some sort of harm as a result, which Plaintiffs are now seeking to vindicate by way of their UCL claim.[2]  On its face, this is an entirely different claim than the one Plaintiffs are pursuing about the way their contractual royalties are calculated.[3]

---

[2] If Plaintiffs were merely contending that these alleged statements misled ***them*** – recording artists and producers who have a business relationship with UMGR – then there would still be no connection to consumers or the general public, and their UCL claims would still fail.

[3] There is no doubt that this claim is a different "cause of action" than Plaintiffs' claim regarding the alleged underpayment of royalties.  A "cause of action" is "a group of related paragraphs in the complaint reflecting a separate theory of liability…"  *Lilienthal & Fowler v.*

PRINTED ON
RECYCLED PAPER

JMBM  Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

However, the defects in this theory are manifest.  *First*, it turns out that Plaintiffs have no evidence of any such statements to the public – only statements by a UMGR executive to groups of music lawyers in a letter and a speech.  *Second*, the two statements cited by Plaintiffs are not conceivably actionable – they are nonactionable statements of opinion or "puffery."  *Third*, even if such statements were directed to consumers (which they were not), Plaintiffs have no evidence they caused any consumer any economic harm – the loss of "money or property" – as is required. *Fourth*, Plaintiffs lack standing – both under the UCL and under Article III of the Constitution – to prosecute such a claim on behalf of consumers.

### a. There is no evidence of any statements by UMGR to consumers

UMGR propounded discovery to find out what Plaintiffs meant when they alleged UMGR had engaged in a "sustained public relations effort" related to its royalty calculations.  In response, Plaintiffs provided zero evidence of any such campaign.  Rather, they identified only two alleged statements:  (1) a 2004 letter from UMGR's President, Horowitz, to "a group of attorneys representing musical artists" (not to consumers) in which Horowitz repudiated those attorneys' claims that UMGR should be accounting to their clients for digital downloads at a different and higher rate, and (2) a 2007 speech by Horowitz to the Entertainment Law Initiative (as Horowitz put it in the speech, "a room full of litigators, transactional lawyers and law students") in which he asserted:  "We pioneered what we believe to be the industry's most artist friendly contractual provisions for sharing digital income - eliminating free goods, packaging, new media and other deductions."  Goldman Decl., Ex. 2, at 7; Ex. 6, p. 3.

Plaintiffs do not identify *any* statements made to consumers or the public at large.  Based on this absence of evidence alone, Plaintiffs' UCL claims should be dismissed.

---

*Superior Court*, 12 Cal. App. 4th 1848, 1853-54 (1993) (where, despite being combined in complaint as a single cause of action, two matters involved "legal services performed at different times, with different and distinct obligations, and distinct and separate alleged damages," they "involve two separate and distinct causes of action regardless of how pled in the complaint.").

1

**b.** **The two statements cited by Plaintiffs are not actionable under**

2

**the UCL**

3

Even if there were evidence that the two statements identified by Plaintiffs were directed to

4

and heard by consumers, they could not be actionable under the UCL. "To survive summary

5

judgment [on a UCL claim], plaintiff must prove … not simply that the defendants' [statements]

6

could mislead the public, but that they were likely to mislead the public. Furthermore, anecdotal

7

evidence alone is insufficient to prove that the public is likely to be misled. Thus, to prevail,

8

plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the

9

challenged statements tend to mislead consumers." *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170,

10

1182 n.8 (9th Cir. 2003).

11

Plaintiffs have no such evidence. Horowitz's statements in his 2004 letter and 2007 speech

12

are patently nonactionable. In his 2004 letter to the 27 music lawyers, he merely asserted that

13

UMGR "***continue[s] to believe***" it is correctly accounting to royalty recipients for digital download

14

sales. Goldman Decl., Ex. 5 (emphasis added). In his 2007 speech to lawyers and law students, he

15

stated only that he believed that UMGR had "pioneered what ***we believe*** to be the industry's most

16

artist friendly contractual provisions for sharing digital income – eliminating free goods,

17

packaging, new media and other deductions." Goldman Decl., Ex. 6, p. 3 (emphasis added).

18

"[S]tatements of opinion" like these are nonactionable. *Coastal Abstract Service, Inc. v. First*

19

*American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).[4] Moreover, a statement that contracts

20

are "artist friendly" is not "a specific and measurable claim, capable of being proved false or of

21

being reasonably interpreted as a statement of objective fact." *Id*. at 731; *see Anunziato v.*

22

*eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ("Generalized, vague, and

23

unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely,

24

and hence are not actionable" under Section 17200), *quoting Glen Holly Entertainment, Inc. v.*

25

*Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003).

26

27

[4] *Coastal* was decided under the Lanham Act, with which Section 17200 is "substantially congruent." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).

28

Not only have Plaintiffs provided no evidence that any consumer even heard Horowitz's statements, or took any action based on them, there also is no evidence that any such hypothetical consumer suffered any ***economic harm*** as a result – another essential element of a UCL claim. The UCL redresses only claims of "lost ***money or property*** as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). "Under the UCL, only someone who has suffered an 'economic injury arising from reliance' on a party's misrepresentations has standing to sue." *Xilinx*, 2012 WL 243302, *7, *quoting Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011); *see Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (2008) (UCL imposes "a clear requirement that injury must be economic, at least in part, for a plaintiff to have standing"). The economic injury must also be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009).

There is no such evidence here. Regardless of whatever hypothetical psychic harm some consumer might have suffered from somehow overhearing Horowitz's opinions about royalties, there is no evidence – let alone "concrete and particularized" evidence – that any such unknown consumer suffered any ***economic*** harm as a result. *See Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1591 (2008) (rejecting claim where plaintiff failed to allege "actual economic injury").

d. **Plaintiffs lack standing to pursue any claim that consumers have suffered economic harm from statements by UMGR**

Even if there were evidence that consumers suffered the required concrete, particularized, and actual or imminent economic harm as a result of any public statements by UMGR, that is a claim possessed by consumers, not Plaintiffs. Plaintiffs – recording artists and producers – lack standing to pursue such a claim on behalf of consumers under both the requirements of the UCL and Article III of the Constitution.

To be a UCL plaintiff, one is required to have personally "lost money or property ***as a result of*** the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). "To have standing

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1 under California's UCL, as amended by California's Proposition 64, plaintiffs must establish that
2 they (1) suffered an injury in fact and (2) lost money or property *as a result of* the unfair
3 competition." *Birdsong*, 590 F.3d at 959 (emphasis added). Thus, "[i]n order to have standing to
4 sue under section 17204, it is not enough for a private person to have suffered an injury in fact....
5 [T]here must be a *causal connection* between the harm suffered and the unlawful business
6 activity." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1097-99 (2007) (emphasis added); *see*,
7 *e.g.*, *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 857 (2008) (dismissing UCL claim where plaintiff
8 "did not allege [defendant's] acts of alleged unfair competition caused *him* to lose money or
9 property.") (emphasis added).

10       Here, there is no causal connection between "the alleged unlawful business activity"
11 motivating Plaintiffs' suit – the alleged underpayment of their royalties – and any alleged harm
12 suffered by consumers from UMGR's public statements about royalties. Whether or not UMGR
13 made any public statements about royalties, Plaintiffs would have suffered the same alleged
14 economic harm – the purported undercalculation of their royalties. *Daro*, 151 Cal. App. 4th at 1099
15 (required causal connection for UCL standing "is broken when a complaining party would suffer
16 the same harm whether or not a defendant complied with the law.... Here, the lack of causation is
17 illustrated by the fact the tenants would suffer the same injury regardless of whether the owners
18 complied with or violated the Subdivided Lands Act."); *Thompson v. Residential Credit Solutions,*
19 *Inc.*, 2012 WL 260357, *5 (E.D. Cal. 2012) (dismissing UCL claim due to lack of causal connection
20 between "unlawful" statutory violation and alleged harm: "plaintiff would still be faced with the
21 possible loss of the property if defendants had fully complied with" the statute).

22       Article III of the U.S. Constitution independently imposes a similar causation requirement.
23 "In addition to meeting the UCL's standing requirements, the plaintiffs must also satisfy the federal
24 standing requirements under Article III." *Birdsong*, 590 F.3d at 960 n.4.[5] The three elements of

25

26     [5] "[A] plaintiff whose cause of action [under § 17204] is perfectly viable in state court under
state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if
27 he cannot demonstrate the requisite injury" to establish Article III standing. *Hangarter v. Provident*
*Life and Acc. Ins. Co.*, 373 F.3d 998, 1022 (9th Cir. 2004).

28

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

JMBM    Jeffer Mangels
Butler & Mitchell LLP

1  Article III standing are: (1) that plaintiffs suffered an injury in fact that was concrete and

2  particularized, and actual or imminent; (2) that the plaintiffs' injury is ***fairly traceable*** to the

3  challenged conduct; and (3) that the plaintiffs' injury is likely to be redressed by a favorable court

4  decision. *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009). Plaintiffs' alleged injury –

5  underpaid royalties – is "traceable" to UMGR's financial calculations, not its public statements.

6  Moreover, the alleged harm Plaintiffs have suffered from the underpayment of royalties would not

7  be "redressed" by a "favorable court decision" concerning UMGR's alleged statements to

8  consumers.

9           **3.      Plaintiffs' UCL Claims are Barred by the Applicable Statute of**

10                    **Limitations**

11          Cal. Bus. & Prof. Code § 17208 provides that a section 17200 cause of action must be

12  commenced "within four years after the cause of action accrued." *See also Cortez v. Purolator Air*

13  *Filtration Products Co.*, 23 Cal. 4th 163, 178-179 (2000) (this language "admits no exceptions").

14  When the material facts are uncontradicted, the court may determine the applicability of the statute

15  of limitations as a matter of law. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988).

16          As the Ninth Circuit has held, a UCL cause of action accrues when the defendant's

17  challenged conduct first occurs, not when the plaintiff discovers the conduct. "[C]laims under

18  California Business and Professions Code § 17200 *et seq.* are subject to a four-year statute of

19  limitations which began to run on the date the cause of action accrued, not on the date of

20  discovery." *Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848 (9th

21  Cir. 2002); *see Snapp & Associates Ins. Services, Inc. v. Robertson*, 96 Cal. App. 4th 884, 891

22  (2002) (the "'discovery rule,' which delays accrual of certain causes of action until the plaintiff has

23  actual or constructive knowledge of facts giving rise to the claim, does not apply to unfair

24  competition actions" under section 17200); *accord*, *Salenga v. Mitsubishi Motors Credit of*

25  *America, Inc.*, 183 Cal. App. 4th 986, 997 (2010) ("The 'discovery rule' … does not apply to unfair

26  competition actions" under section 17200); *Endres v. Wells Fargo Bank*, 2008 WL 344204, *6

27  (N.D. Cal. 2008) ("The UCL limitations period begins to run at the time of the alleged

28  misrepresentation, not on the date of its discovery by the plaintiff."); *Suh v. Yang*, 987 F. Supp. 783,

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Mitchell LLP

1   795 (N.D. Cal. 1997); *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2007 WL

2   486367, *6 (N.D. Cal. 2007); *Stutz Motor Car of America, Inc. v. Reebok Int'l Ltd.*, 909 F. Supp.

3   1353, 1363 (C.D. Cal. 1995); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1184

4   (C.D. Cal. 2005); *Perez v. Nidek Co. Ltd.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009).[6]

5          The two events on which Plaintiffs claim to base their UCL claims – statements by UMGR

6   in April 2004 and February 2007 – both occurred more than four years prior to the filing of these

7   actions.  Thus, they are time-barred.  *See Keilholtz v. Lennox Hearth Products Inc.*, 2009 WL

8   2905960, *1, *4 (N.D. Cal. 2009) (UCL claim time-barred where allegedly defective fireplaces

9   were sold more than four years prior to commencement of action, rather than when the defects were

10  discovered, because "[t]he delayed discovery rule does not apply to actions brought under the

11  UCL.").

12         Nor can Plaintiffs save these time-barred claims by alleging that UMGR's conduct is

13  "ongoing" (James Complaint ¶¶ 69, 71; Zombie Complaint ¶¶ 71, 73), or has been "continuous"

14  (James Complaint ¶ 4, Zombie Complaint ¶ 4).  Where conduct is "on-going," the plaintiff's cause

15  of action accrues at the time the defendant's conduct **began**.  *Snapp*, 96 Cal. App. 4th at 891-92.  In

16  *Snapp*, the plaintiff insurance broker learned in February 1993 that a salesman was depositing

17  commissions into his own bank account, and terminated him in March 1993.  96 Cal. App. 4th at

18  887.  In May 1993, the salesman began soliciting the plaintiff's former employees and customers,

19  _____

20         [6] One anomalous California appellate decision applied the delayed discovery rule to UCL
    actions based on fraudulent concealment.  *Broberg v. Guardian Life Ins. Co. of America*, 171 Cal.
21  App. 4th 912, 920-21 (2009).  Another, *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97
    Cal. App. 4th 1282, 1295 (2002), stated in conclusory fashion that the delayed discovery rule
22  "probably" applied to a UCL claim based on the concealment of material information regarding
    insurance policies.  However, "*Massachusetts Mutual* did not provide any reasoning in support of
23  its conclusion."  *Perez*, 657 F. Supp. 2d at 1166.  Plaintiffs' UCL claims are not based on fraudulent
    concealment.  Regardless, this Court must follow the Ninth Circuit's holding in *Karl Storz* rather
24  than these minority rulings.  *Perez*, 657 F. Supp. 2d at 1166 ("Absent a clear indication from the
    California courts that the California courts' interpretation of [section] 17208 was incorrect, this Court
25  must follow *Karl Storz*.... [A]n additional intermediate appellate court decision on one side of a
    clear split [is] not the kind of indication that the Ninth Circuit's past interpretation of California law
26  was incorrect that would cause the Ninth Circuit to revisit its prior holding."), *citing Jones-
    Hamilton Co. v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992).  In any
27  event, "to invoke the delayed discovery rule, Plaintiffs had to plead facts showing: (1) lack of
    knowledge; (2) lack of means of obtaining knowledge; and (3) how and when the fraud or mistake
28  was actually discovered."  *McCready v. American Honda Motor Co., Inc.*, 2006 WL 1708303, *4

and continued to do so periodically for years. *Id*. at 887-88. In August 1997, over four years later,

the plaintiff filed a UCL claim against the salesman. *Id*. at 889. This claim was time-barred

because defendant's challenged solicitation "started in or about May 1993, and is on-going." *Id*. at

891-92.

Here, just as in *Snapp*, Plaintiffs assert that UMGR's allegedly improper underpayment of

royalties for digital downloads has been "ongoing" since 2004 (at the latest), when a group of

attorneys for recording artists asked UMGR to treat digital sales as "licenses" for royalty purposes

and UMGR refused. Goldman Decl., Exs. 4-5. Accordingly, to the extent they are based on

UMGR's alleged underpayment of royalties, Plaintiffs' UCL claims are time-barred. To the extent

they are based on UMGR's alleged "public relations campaign" to defend its treatment of royalties

for digital sales, they are also time-barred. Even assuming the dubious proposition that Horowitz's

letter and speech to groups of lawyers could be actionable as a violation of the UCL, they both

occurred more than four years prior to the filing of these actions. Accordingly, the illusory "public

relations campaign" supposedly evidenced by these two events plainly commenced more than four

years prior to the filing of this action.

### 4. Plaintiffs' UCL Claim Does Not Establish Any Independently Actionable Wrongful Act in Addition to an Alleged Breach Of Contract

It is fundamental that a breach of contract can violate Section 17200 "only when the act is

unfair, unlawful or fraudulent for some additional reason." *Boland, Inc. v. Rolf C. Hagen (USA)

Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) (dismissing UCL claim where "plaintiff has not

provided evidence of, or even alleged, the requisite additional wrongfulness."); *see Sybersound

Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (UCL claim failed where plaintiff

"has not pled that the breaches of contract are independently unlawful, unfair, or fraudulent, merely

that the Corporation Defendants do not pay royalties or acquire licenses … in breach of their

contracts with licensors and the Customers.").

Plaintiffs' UCL claim does not allege any independently wrongful conduct separate and

(N.D. Cal. 2006). Plaintiffs did not do so here.

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

JMBM

Jeffer Mangels
Butler & Mitchell LLP

1   apart from the alleged breaches of contract.[7]  Instead, Plaintiffs survived UMGR's motion to

2   dismiss by arguing that UMGR's alleged contract breaches could violate the UCL because they

3   were "systematic."  Plaintiffs relied on an aberrational strain of California appellate cases, all

4   derived from *dicta* in *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463 (2005), that purport

5   to stand for the proposition that "a systematic breach of certain types of contracts (e.g., breaches of

6   standard consumer or producer contracts involved in a class action) can constitute an unfair

7   business practice under the UCL."  But closer analysis of the origin of this proposition reveals that

8   it derives from loose *dicta* in the *Smith* case – in the context of an argument for federal preemption

9   of a UCL claim – which has merely been repeated by several other appellate courts without

10  analysis.  *See Newdow v. Rio Linda Union School Dist.*, 597 F.3d 1007, 1106 (9th Cir. 2010)

11  (noting that dicta, even Supreme Court dicta, is "not binding").  No court of appeal has ever relied

12  upon this principle as a basis of a decision on the merits.  *See Advanced-Tech Security Services, Inc.*

13  *v. Superior Court*, 163 Cal. App. 4th 700, 710 (2008) (it is "the settled rule that cases are not

14  authority for issues not decided.").  And the California Supreme Court has never sanctioned such a

15  rule.  It is this Court's duty to "apply the law as it believes the California Supreme Court would

16  apply it," *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003), and

17  this Court may reject intermediate appellate decisions that it concludes would not be followed by

18  the state's highest court.  *Jerry Beeman and Pharmacy Services, Inc. v. Anthem Prescription*

19  *Management, LLC*, 652 F.3d 1085, 1094 (9th Cir. 2011); *Owen ex rel. Owen v. United States*, 713

20  F.2d 1461, 1464-65 (9th Cir. 1983).

21      Plaintiffs' claims in this case are not based on "consumer" contracts (let alone "standard"

22  consumer contracts).  Although *Smith* used the phrase "breaches of standard consumer or producer

23  contracts," no case has ever applied this principle to a "producer" contract.  Of the four cases *Smith*

24  cited as ostensible support for the existence of a "systematic breach" doctrine, three involved

25

26

27      [7] To the extent the UCL claim is based on Horowitz's alleged statements in 2004 and 2007,
    it is meritless for all of the reasons discussed *supra*.

28

consumer contracts.[8]  In the fourth, *Allied Grape Growers v. Bronco Wine Co.*, 203 Cal. App. 3d

432 (1988), liability was based not on the "systematic breach" of any contracts – a term ***never used***

in the opinion and not argued by the parties or considered by the court – but on the violation of

several California ***statutes***.  The Ninth Circuit recently recognized this in *Shroyer v. New Cingular*

*Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010), using *Allied Grape Growers* as an

example of how "a common law violation such as breach of contract is insufficient" to state a UCL

claim because *Allied Grape Growers* found "a § 17200 violation ***only after finding three violations***

***of the California Food and Agriculture Code*.**"  *Id*. at 1044.[9]

_____

[8] Even these consumer cases did not support the existence of any such doctrine or principle. *Gibson v. World Savings & Loan Assn.*, 103 Cal. App. 4th 1291 (2002), like *Smith*, addressed a federal preemption argument by a federal bank.  Borrowers alleged the bank had improperly purchased too-expensive insurance policies on the borrowers' behalf.  *Id*. at 1294.  The plaintiffs did not even assert any breach of contract claim (they dismissed it prior to the appeal) nor does the decision ever use the term "systematic breach."

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996), concerned claims by insureds who suffered earthquake damage and claimed the insurer had deceived them into renewing policies with reduced earthquake coverage.  On the insurer's demurrer, the court allowed the UCL claim to proceed based on allegations of systematic ***deception***, not any systematic breach. *Id*. at 1113.  The passing reference to a "systematic breach," as part of a long list of potentially "unfair" conduct under the UCL, was *dicta*.  In any event, in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999), the California Supreme Court abrogated *State Farm*, finding it applied the wrong legal standard.  *Id*. at 186.

*Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354 (11th Cir. 1988), concerned a violation of the Federal Trade Commission Act ("FTCA").  It had nothing to do with the UCL, or California law.  Moreover, its holding is fundamentally inconsistent with UCL law, as it rejected the defendant's argument that the FTCA required "'something more' than a simple breach of contract before a given course of conduct can be found 'unfair or deceptive'" (*id*. at 1363).  *See, e.g.*, *Sybersound*, 517 F.3d at 1152.

In 2010, *Arce v. Kaiser Foundation Health Plan, Inc.*, 181 Cal. App. 4th 471 (2010), cited *Smith* and the same series of inapposite authorities to support its conclusion that a "systematic breach of contract" could support a consumer class action under the UCL.  But again, the proposition was stated in *dicta*, and was not among the issues presented for review by the appellant, nor was it the holding of the court.  *Id*. at 478.

[9] In *Allied Grape Growers*, grape growers sued a wine company for breach of contract and injunctive relief.  On appeal, the wine company made four arguments concerning the UCL claim, but none of them even remotely concerned whether a breach of contract (or even a "systematic" one) could violate the UCL.  203 Cal. App. 3d at 449-50.  The court's decision was based on its conclusion that the defendant wine company's "downgrading practice" was not just a breach but also violated Food and Agricultural Code sections 55872, 55878 and 55879.  *Id*. at 451-52.

PRINTED ON

RECYCLED PAPER

Defendant's Motion for Summary Judgment
CV11-01613 SI/CV11-02431 SI

At a minimum, since no court has ever actually decided a case based on a "systematic breach," no court has ever had the opportunity to explore what the undefined and amorphous term "systematic" even means. If it merely means "lot of contracts," then any putative class action alleging the breach of numerous contracts and labeling those breaches "systematic" would qualify. This would improperly create an exception that would swallow the rule requiring independent wrongfulness for a UCL claim to be founded on a breach of contract. Logically, the additional wrongfulness should at least have to cause a **separate and independent economic injury** cognizable under the UCL – which Plaintiffs cannot establish. Otherwise, as here, the UCL claim is simply, and impermissibly, coextensive with the breach of contract claim.

Here, Plaintiffs' claims of additional wrongfulness devolve into meaningless and circular platitudes that UMGR has denied and failed to disclose the alleged breaches. The same would be true in any case where a defendant does not concede liability for breach of contract, and thus cannot possibly be sufficient to convert a breach of contract into statutory unfair competition. *Puentes v. Wells Fargo Home Mtg., Inc.*, 160 Cal. App. 4th 638, 641-42, 645 (2008) (rejecting as a matter of law UCL claim that bank systematically breached mortgage agreements by charging interest in an impermissible way, and then "concealed" its breaches from the plaintiffs); *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (allegation that defendant insurer "fail[ed] to disclose to policyholders that it would not keep [a contractual] promise" failed to state claim under Illinois statute prohibiting "unfair methods of competition and unfair or deceptive acts or practices" because the statute is "not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy.").

**B.    UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS FOR OPEN BOOK ACCOUNT**

Plaintiffs' Third Cause of Action is for open book account. *See* James Complaint ¶¶ 63-66; Zombie Complaint ¶¶ 65-68. Plaintiffs allege that "*[p]ursuant to [UMGR's] agreements with Plaintiff[s] and other class members*, [UMGR] keeps, and at all relevant times has kept, open book accounts reflecting the debits and credits made to each class member's account with [UMGR] from inception." James Complaint ¶ 64; Zombie Complaint ¶ 66 (emphasis added). They allege

UMGR's liability on these "open book accounts" is "an amount equal to [UMGR's] underpayment on the income [UMGR] has received, and continues to receive, from its licensees for digital download and mastertone use." James Complaint ¶ 66; Zombie Complaint ¶ 68. These claims fail as a matter of law for at least three independent reasons.

*First*, Plaintiffs concede that their royalty claims are based upon, and defined by, the parties' written agreements. An open book account "is an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions, not reduced to writing, and subject to future settlement and adjustment. It is usually disclosed by the account books of the owner of the demand, ***and does not include express contracts or obligations which have been reduced in writing*** …" *Durkin v. Durkin*, 133 Cal. App. 2d 283, 290 (1955) (emphasis added, citation omitted). The Ninth Circuit recognizes that under California law, "[a]n express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." *Costello v. Bank of America Nat. Trust & Sav. Ass'n*, 246 F.2d 807, 812 (9th Cir. 1957); *see*, *e.g.*, *Parker v. Shell Oil Co.*, 29 Cal. 2d 503, 507 (1946) ("Sums which become due under an express contract are not ordinarily treated by the parties as items of an open account.")

Rather, it is "well settled that monies which become due under an *express* contract … cannot, *in the absence of a contrary agreement between the parties*, be treated as items under an open book account" *Tsemetzin v. Coast Federal Savings & Loan Assn.*, 57 Cal. App. 4th 1334, 1343 (1997) (emphasis in original). There is no evidence any such contrary agreements exist here. *See Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.*, 208 Cal. App. 3d 1297, 1308 (1989) (rejecting claim for open book account pled as alternative to breach of contract where "[t]here is in fact no allegation that Producers/Bernhard and Filmservice agreed to forego the … contract and proceed on the basis of an existing account."). Indeed, not only have Plaintiffs not alleged the parties agreed to ***forego*** their contracts – Plaintiffs are suing on those very contracts.

*Second*, the contracts on which Plaintiffs are suing call for royalty statements to be rendered at regular intervals (generally six months) – thereby closing Plaintiffs' "accounts" for that period. *See* Declaration of Charles Ciongoli in Support of UMGR's Motion to Dismiss or Transfer [James Action, Docket No. 22], Ex. A, p. 3, ¶ 3, Ex. B, p. 13, ¶ 18; Declaration of Charles Ciongoli in

Support of UMGR's Motion to Dismiss or Transfer [Zombie Action, Docket No. 10], Ex. 9, p. 22, ¶ 8; Ex. 14, p. A-14, ¶ 3; Ex. 22, p. 4, ¶ 8. Under California law, accounts that are reconciled at regular intervals are not "open" for purposes of a claim for open book account. *R.E. Tharp, Inc. v. Miller Hay Co.*, 261 Cal. App. 2d 81, 84 (1968) (open book account claim failed where "defendant calculated the charges due each week and paid plaintiff on that basis. Thus, the open book account terminated with each weekly payment"); *Groom v. Holm*, 176 Cal. App. 2d 310, 312-13 (1959) (where "the parties 'struck a balance' here on a bimonthly basis, the 'open' account terminated.").

In *Cusano v. Klein*, 2002 WL 34267920, *2 (C.D. Cal. 2002), *aff'd*, 153 Fed. Appx. 998 (9th Cir. 2005) (unpublished), the court applied the same logic to conclude that, as a matter of law, a recording contract by which a record company rendered royalty statements to an artist at six-month intervals did not create an "open" account: "the account was not 'open' in the sense that it would ultimately be settled at some unspecified time in the future after [the record company] and [Plaintiff] had settled their mutual debts to each other.… [U]pon issuance of the quarterly statement and payment of the royalty owed, the balance of the account is zero and the account is closed for that period." 2002 WL 34267920, *2. This Court recently determined in the related *Ridenhour* action that (at least under New York law) an account that is settled at regular six-month intervals is not "open." Order Granting Defendant UMG Recordings, Inc's Motion to Dismiss Plaintiff's Third Cause of Action for Open Book Account [Ridenhour Action, Docket No. 24], at 5; *see also Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 734 (S.D.N.Y. 1988) (same result where "Plaintiff did not expect for the account to run indefinitely such that he would receive money only at some future time, but instead expected for a balance to be stated [quarterly] as the Contract required.").

*Third*, California's statutory definition of an "open book account" contemplates an account maintained by the "creditor" (here allegedly Plaintiffs), not by the "debtor" (here allegedly UMGR). *See* Cal. Civ. Proc. Code § 337a; *Robin v. Smith*, 132 Cal. App. 2d 288, 292 (1955) ("The record of the transaction creating the account between the parties must appear from the account books of the ***owner of the demand***…") (emphasis added). Here, Plaintiffs, not UMGR, are allegedly the "owners of the demands" and there is no evidence Plaintiffs have maintained any account books reflecting amounts UMGR allegedly owes to them.

8461383v6

PRINTED ON
RECYCLED PAPER

JMBM │ Jeffer Mangels
Butler & Mitchell LLP

**IV.**

**<u>CONCLUSION</u>**

For all of the foregoing reasons, UMGR is entitled to summary judgment on Plaintiffs' UCL and open book account claims.

DATED:  March 2, 2012                    JEFFREY D. GOLDMAN
                                         RYAN S. MAUCK
                                         BRIAN M. YATES
                                         JEFFER MANGELS BUTLER & MITCHELL LLP


                                         By: /s/ Jeffrey D. Goldman
                                             JEFFREY D. GOLDMAN
                                         Attorneys for Defendant UMG RECORDINGS, INC.