**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br>  v.<br><br>UMG RECORDINGS, INC.,<br><br>           Defendant.<br>_____/ | No. C 11-01613 SI |
| ROB ZOMBIE, a/k/a Robert Wolfgang Zombie, f/k/a Robert Cummings; WHITE ZOMBIE, a general partnership; WHITESNAKE, a doing business as designation of David Cloverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; and DAVE MASON, individually and on behalf of all others similarly situated,,<br><br>           Plaintiff,<br>  v.<br><br>UMG RECORDINGS, INC.,<br><br>           Defendant.<br>_____/ | No. C 11-02431 SI<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Defendant's motion for summary judgment is scheduled for a hearing on April 20, 2012. Pursuant to Civil Local Rule 7-1(b), the Court determines that these matters are appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court DENIES defendant's motion for summary judgment.

**BACKGROUND**

This matter concerns a contract dispute and several related claims brought by Rick James and other recording artists[1] ("plaintiffs" or "artists") against UMG Recordings, Inc. Plaintiffs are recording artists who have recording contracts with defendant. The recording contracts define the royalties to be paid by defendant to the artists for certain types of income. One type of income is derived from retail sales of physical products, such as CDs and vinyl records, in brick-and-mortar retailers. Another type of income is derived from license agreements. Royalty rates for income derived from the first type, pursuant to resale agreements, are lower than royalty rates for license agreements.

A central question in this litigation is whether, within the meaning of the recording contracts, agreements between defendant and digital retailers, such as Apple/iTunes or Amazon.com, for the sale of digital products like downloads and/or ringtones are license agreements or resale agreements. Plaintiffs maintain that such agreements are license agreements and, therefore, that defendant is obligated to pay to plaintiffs the royalty rate appropriate for income derived from license agreements. Plaintiffs allege that defendant has been incorrectly treating income derived from sales of digital products through digital retailers as "resale" income, akin to income received from the sale of physical products sold in brick-and-mortar stores, and has been paying the lower royalty rate called for by the recording contracts for such income.

Plaintiffs assert four claims in this action: breach of contract; declaratory judgment; an Open Book Account ("open book account") claim pursuant to Cal. Code Civ. Pro. § 337a; and an Unfair Competition Law ("UCL") claim pursuant to Cal. Bus. & Prof. Code § 17200. Defendant has filed a motion for summary judgment against the UCL and the open book account claims.

**LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 56(a), "summary judgment is only appropriate if, viewing the

---

[1] Several similar suits were filed by various recording artists against defendant UMG Recordings. Many of those cases have either been consolidated with, or related to, this case. Defendant has moved for summary judgment against several of the plaintiffs, including Rick James, Rob Zombie, White Zombie, Whitesnake, and Dave Mason. Collectively, these parties are designated as "plaintiffs" for purposes of this Order.

evidence in the light most favorable to the party opposing the motion, the court finds that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989). No genuine issue of material fact exists if the nonmoving party "fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is also no genuine issue of material fact if a rational trier of fact, examining the record as a whole, could not find for the nonmoving party on a particular issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In some cases, a court may deny a motion for summary judgment if the nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), because "it has not had an opportunity to make full discovery." *Celotex*, 477 U.S. at 326. This Rule prevents parties from being "railroaded" by "premature motions" for summary judgment. *Id.*

**DISCUSSION**

**I.     Plaintiffs' UCL Claims**

**A.     UCL Claims - Adequate Statement**

Defendant moves for summary judgment arguing, first, that plaintiffs have not stated a UCL claim because their UCL claim is based on purely private contractual arrangements, which do not affect consumers. *See* Motion for Summary Judgment ("Motion") at 7-10; 17–20. Relatedly, defendant also argues that plaintiffs cannot state a UCL claim because the UCL makes actionable only harms suffered by consumers, not harms to "producers" like plaintiffs. *Id*., at 10-17. These arguments are almost identical to the ones defendant made in support of its motion to dismiss. *See* Docket Nos. 25, 37. In denying the motion to dismiss, the Court held that plaintiffs had stated a claim under the UCL because the complaint alleges an adequate connection to the "public interest," in part by relying on concerns expressed by the California legislature regarding the fair payment of royalties to musicians. *See* Docket No. 49 at 7. The Court also found that plaintiffs could base their UCL claim on a systematic breach of contracts theory, in part because they alleged defendant's conduct was part of a "broad scheme"

3

involving misinformation and deception of the public regarding royalty payments to musicians. Docket No. 49 at 8 (citing *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (2005)). The Court will not revisit these conclusions at this time. Plaintiffs have not yet deposed any UMG representatives and only recently received initial document productions from UMG. *See* Declaration of Roger N. Heller, ¶¶3-4, 8-9. The Court cannot fully assess the impact of defendant's conduct on the plaintiffs as well as the public interest based on the current record, and plaintiffs should be given a full opportunity to develop that record, including expert testimony as necessary.

### B. UCL Statute of Limitations

Defendant argues that plaintiffs' UCL claim is barred by the applicable four year statute of limitations. Cal. Bus. & Prof. Code 17208. Defendant asserts that plaintiffs' UCL claims are time-barred because the conduct of which plaintiffs complain was unambiguously disclosed in an April 2004 statement by UMG's president as well as in February 2007 – both more than four years before this suit was filed. *See* Motion at 4:7-17; 16:5-11. Plaintiffs counter that the "discovery rule" applies in this case to toll the statute of limitations[2] and argue that discovery will show that UMG conducted a "sustained misinformation campaign" aimed at deceiving artists and the general public as to how royalties were being determined. Oppo. at 18. Both parties admit that the California state courts are split on whether the discovery rule applies to UCL claims. *See Grisham v. Phillip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 634 n.7 (2007) ("this point is currently not settled under California law."). Moreover, the California Supreme Court recently granted review of a case to consider this very issue. *Aryeh v. Canon Business Solutions, Inc.*, 185 Cal. App. 4th 1159 (2010), *review granted*, 116 Cal. Rptr. 3d 881 (Oct. 20, 2010).[3] As such, this Court will not dismiss plaintiffs' claims on statute of limitations grounds at this time, but will consider the question after further legal development of the applicability of the discovery rule.

---

[2] The "discovery rule" holds that the statute does not begin to run until the aggrieved party discovers, or has reason to discover, the alleged wrongdoing.

[3] The California Supreme Court may reach a different conclusion on this question of California law than did the Ninth Circuit in *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (UCL claims "are subject to a four-year statute of limitations which began to run on the date the cause of action accrued, not on the date of discovery.").

4

Defendant also argues that, irrespective of the discovery rule, UCL claims based on "ongoing" conduct – as plaintiffs' claims are here – accrue when the conduct begins and, therefore, plaintiffs' claims are barred as a matter of law. *See* Reply at 5:19-6:8. Defendant's argument is incorrect. Defendant relies on one case, *Snapp & Associates Ins. Services, Inc. v. Robertson*, 96 Cal. App. 4th 884 (2002), in which a UCL claim was based on one triggering event – the defendant's alleged improper solicitation of insurance client accounts. Because the defendant initially solicited the specific client accounts outside the statute of limitations, the court concluded that the UCL claim could not be revived based on "ongoing" conduct simply because the accounts remained open. *Id*., at 892. The situation in *Snapp* – where there was essentially one wrong that had an ongoing effect – is wholly different from the situation here, where plaintiffs allege that each time a song is digitally downloaded, defendant fails to pay the correct amount of royalties.

For the foregoing reasons, defendant's motion for summary judgment on plaintiffs' UCL claim is DENIED without prejudice to renewal in part, consistent with this Order, after a complete record has been developed.

## II. Plaintiff's Open Book Account Claim

Defendant has also moved for summary judgment on plaintiffs' open book account claim raised under Cal. Code Civ. Pro. § 337a. Defendant first argues that, under California law, the existence of an express written contract defining the financial rights and obligations at issue precludes a finding that there is an open book account on which to base such a claim and that the recording contracts between itself and plaintiffs are precisely such express contracts. Therefore, defendant contends, there is no open book account. The cases defendant cites in support of its position, however, recognize that even where there are express contracts stating exact amounts due, those agreements may nonetheless be treated as items under an open book account "by mutual understanding of the parties." *Durkin v. Durkin*, 133 Cal.App.2d 283, 290 (1955). Defendant concedes the point in reply, but maintains that plaintiffs have failed to meet their burden on summary judgment to "prove the parties specifically agreed to treat their contractual relationship as an open book account." Def.'s Reply at 14. Given the state of discovery however, defendant's argument is premature. Plaintiffs should be given the opportunity to uncover and

review evidence regarding defendants' contracts with the proposed class, as well as how those contracts were interpreted and applied, to support their argument. In light of the parties' agreement to prioritize discovery on class certification issues, and not merit issues, as well as the parties' discovery disputes, plaintiffs have not had that opportunity. *See* Declaration of Heller at 4.

Defendant next contends that open book accounts cannot exist where they are balanced and "closed" at various intervals, such as here where royalties were determined and paid out generally every six months. *See* Motion at 21-22. However, California law recognizes that even where an account has been settled, *i.e.*, generally every six months, whether the account is "open" or "closed" turns on the parties' expectations of possible future transactions between the parties. *See Cochran v. Rubens*, 42 Cal. App. 4th 481, 485 (Cal. App. 1996) (citing *Gross v. Recabaren*, 206 Cal. App. 3d 771, 778 (1988)); *see also Reigelsperger v. Siller*, 40 Cal. 4th 574, 579 (2007) ("In one sense, an open-book account is an account with one or more items unsettled. However, even if an account is technically settled, the parties may still have an open-book account, if they anticipate possible future transactions between them.").[4] As neither side disputes that royalty payments to plaintiffs are ongoing, the Court cannot find that the accounts are "closed" by virtue of the interval royalty payments.

Finally, defendant argues the California statute contemplates an open book account being maintained by the "creditor," but in this case the alleged open accounts are being held by defendant who is the "debtor." Motion at 22. However, under California law "an open book accounting may be predicated upon an account kept by either of the parties." *Burge v. Michael*, 213 Cal. App. 2d 780, 787 (Cal. App. 1963).

Defendant's motion for summary judgment on the open book account claim is DENIED. After adequate discovery, defendant may renew its motion regarding the mutual understanding of the parties with respect to creating open book accounts.

---

[4] The "open book" cases defendant relies on are not apposite. In *Cusano v. Klein*, 2002 U.S. Dist. LEXIS 28162 (C.D. Cal. Apr. 9, 2002), the court applied New York law in dismissing the open book account claim in light of regularly schedule payments on the royalty account. In *R. E. Tharp, Inc. v. Miller Hay Co.*, 261 Cal. App. 2d 81, 84 (Cal. App. 1968), the California court of appeal dismissed an open book account claim between entities regulated by the California Public Utilities Commission because a CPUC rule prohibited an account from remaining "open" for more than 15 days.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: April 19, 2012

_____
SUSAN ILLSTON
United States District Judge