UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>Defendant.<br>_____/ | No. C 11-1613 SI (MEJ)<br><br>**ORDER REGARDING DISCOVERY DISPUTE LETTER FILED ON OCTOBER 24, 2012**<br><br>**Re: Dkt. No. 131** |

In these putative class action lawsuits, which were consolidated by stipulation, Plaintiffs (who are recording artists and producers) allege that they were underpaid royalties owed to them under written contracts with Defendant (a record company). On October 24, 2012, the parties filed a joint discovery dispute letter regarding Plaintiffs' request to compel Defendant to provide further responses and documents to their interrogatories and requests for production (RFPs).[1] The Court analyzes each of Plaintiffs' requests in turn below.

A. <u>RFPs 31, 32, 34, and 47</u>

In these RFPs, Plaintiffs essentially seek all documents relating to Defendant's policies and practices about its calculations and determinations of royalty payments received for digital downloads, particularly including any documents used in connection with the preparation of the

---

[1] These issues were initially raised by the parties in a joint discovery dispute letter filed on September 12, 2012. Dkt. No. 112. The Court denied Plaintiffs' requests without prejudice to them raising the issues again at a later time, which they do now. Dkt. No. 123.

September 17, 2002 Michael Ostroff memorandum (Ostroff Memo). Plaintiffs argue that Defendant's noteworthy decision to switch its policy regarding digital downloads must have been accompanied by significant analysis and discussion, and the production of essentially only the Ostroff Memo — and not even one single e-mail — proves that Defendant's position that no other documents exist is not credible. Plaintiffs ask the Court to order Defendant to conduct a more diligent search for documents and then provide a sworn declaration describing the search and attesting that no further responsive documents exist.[2]

Defendant argues that Plaintiffs provide no basis for their speculation that it is "highly likely" that additional documents exist that are responsive to these RFPs.[3] The Court agrees and finds no need to require Defendant, which has provided, subject to FRCP 11, that it has conducted a diligent search and produced all responsive documents, to do anything further. If Plaintiffs subsequently obtain evidence indicating that Defendant has misrepresented something or that responsive documents did exist (i.e., a subsequent production reveals that responses to these RFPs were inadequate), then they can ask the Court to revisit the issue or seek sanctions based on Defendant's conduct. But, at this time and based on this record, Plaintiffs' request to compel further production in response to RFPs 31, 32, 34, and 47 is DENIED. *See Starbuzz Tobacco, Inc. v. Al-Amir, Inc.*, 2010 WL 4774077, at *2 (E.D. Mich. Nov. 16, 2010) ("Plaintiff's belief that certain documents must [be] in Defendants' possession is insufficient to warrant an order compelling production when Defendants state that they have made a diligent search and reasonable inquiry and have not located any

---

[2] Plaintiffs' last sentence on this topic summarily concludes that Defendant has not "met its burden to justify cost-sharing with respect to this fundamental discovery." Dkt. No. 131 at 2. To the extent that Plaintiffs believe that this one sentence persuasively refutes Defendant's position that any search for pre-2008 e-mails would be timely and expensive (because the majority of such e-mails are no longer available since they would require employees' backup tapes to be restored), they are incorrect. Based on Plaintiffs' lack of argument and analysis on this issue, the Court does not examine it.

[3] Defendant explains that documents in connection with the Ostroff Memo were prepared based on discussions with counsel, and, as Defendant's privilege log indicates, are therefore privileged.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

responsive documents. The Court cannot compel the production of documents based solely on the opposing party's speculation and belief that responsive documents exist and that the producing party is withholding them.").

B. <u>Interrogatories 11-13, 16, and 17</u>

These interrogatories ask Defendant to identify and describe its policies and practices regarding the calculation of digital download royalties, including information about the adoption of such policies and practices. In its responses, Defendant asserts numerous objections to the interrogatories, but, in the joint discovery dispute letter, Defendant only argues against Plaintiffs' position by pointing out that it has only one policy with respect to accounting for downloads, and that is the policy that was disclosed by the Ostroff Memo. Defendant, however, does not provide this explanation about only having one policy in its actual responses to Plaintiffs' interrogatories. Moreover, Defendant does not explain its policies and procedures that existed before the Ostroff Memo or any other practices after that Memo was issued. If Defendant believes there were no other concrete policies, orders, directives, guidelines, procedures, or practices in effect, then it must provide such a direct answer to Plaintiffs' interrogatories. Accordingly, Plaintiffs' request is GRANTED and Defendant is compelled to provide narrative responses to these interrogatories.

C. <u>Interrogatories 4 and 5</u>

In interrogatories 4 and 5, Plaintiffs seek the number of digital downloads for the recording artists in the class (since 1998), and the revenue received by Defendant from these downloads. Plaintiffs have informed Defendant that they will accept this information on an artist-by-artist basis, and even though this is not as desirable as a contract-by-contract basis breakdown, it will help Plaintiffs meet certain burdens at class certification. Defendant argues that a response to these interrogatories, even by way of compilation on an artist-by-artist basis, would not be helpful since potential class revenue would be commingled with other revenue that was accumulated outside of the class period. Moreover, Defendant contends that a response to these interrogatories would reveal the current financial data for thousands of recording artists, an unnecessary violation of their privacy rights.

The Court finds in favor of Plaintiffs on this issue. Defendant's concerns regarding its recording artists' privacy interests are ameliorated since any responses can be produced pursuant to a protective order, and therefore only counsel — and not the general public — will be privy to any sensitive financial information. Defendant's argument that Plaintiffs will be unable to utilize any artist-by-artist breakdown to actually calculate class damages is misplaced since the Court cannot prohibit a party from obtaining discovery that may potentially lead to admissible evidence under the theory that the other side believes that party will be unable to analyze any responses that it may receive. Moreover, during class certification, the Court, usually based on arguments set forth by those opposing class certification, evaluates whether class plaintiffs can establish a uniform claim for damages. Not granting Plaintiffs' request to compel further responses to these interrogatories on damages and then considering such issues on class certification would be improper, especially considering that Defendant has not indicated that it will not raise such issues during class certification. Accordingly, Plaintiffs' request to compel complete responses to interrogatories 4 and 5 is GRANTED.

D. RFP 41

In RFP 41, Plaintiffs seek documents reflecting communications between Defendant and other record companies and/or the RIAA regarding the calculation of digital download royalties. Even though Defendant has provided that it has conducted a search and such documents do not exist, Plaintiffs are not satisfied — although they provide no specific evidence to the contrary — and ask the Court, similar to their request above, to compel Defendant to conduct a diligent search and then provide a declaration under oath describing the search and attesting that no further documents exist. For the same reasons as why such a request was denied earlier in part A, Plaintiffs' request is DENIED here as well.

**IT IS SO ORDERED.**

Dated: November 5, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

4