1  JEFFREY D. GOLDMAN (Bar No. 155589),
   JGoldman@jmbm.com
2  RYAN MAUCK (Bar No. 223173), RMauck@jmbm.com
   BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California  90067-4308
   Telephone:     (310) 203-8080
5  Facsimile:      (310) 203-0567

6  Attorneys for Defendant UMG RECORDINGS, INC.

7

8                 UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11 RICK JAMES, by and through THE JAMES          CASE NO.     CV11-01613 SI (MEJx)
   AMBROSE JOHNSON, JR., 1999 TRUST, his
12 successor in interest; CARLTON DOUGLAS        **COVER PAGE FOR JOINT LETTER TO**
   RIDENHOUR, d/b/a "CHUCK D," individually     **MAGISTRATE JUDGE MARIA-ELENA**
13 and as a member of PUBLIC ENEMY;             **JAMES RE DISCOVERY DISPUTE**
   WHITESNAKE, a doing business as
14 designation of David Coverdale, by and for
   WHITESNAKE PRODUCTIONS
15 (OVERSEAS) LIMITED; DAVE MASON;
   OTIS WILLIAMS and RON TYSON, jointly
16 d/b/a THE TEMPTATIONS; and ROBERT
   WALTER "BO" DONALDSON, individually
17 and d/b/a BO DONALDSON AND THE
   HEYWOODS; WILLIAM MCLEAN, a/k/a
18 "WILL MCLEAN" and p/k/a "MISTA
   LAWNGE," and ANDRES TITUS, p/k/a
19 "DRES," jointly d/b/a BLACK SHEEP,
   individually and on behalf of all others
20 similarly situated,

21              Plaintiffs,

22        v.

23 UMG RECORDINGS, INC., a Delaware
   corporation,

24              Defendant.

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 9388909v1

1           Pursuant to the Court's Standing Order, defendant UMG Recordings, Inc. and

2    plaintiffs submit this joint letter regarding a discovery dispute they were unable to resolve through

3    meet and confer, which took place via telephonic conference on March 12, 2013.

4

5    DATED: April 1, 2013           By: /s/ Jeffrey D. Goldman

6                                     JEFFREY D. GOLDMAN
                           Attorneys for Defendant UMG RECORDINGS, INC.

7

8    DATED: April 1, 2013           By: /s/ Roger N. Heller
                                   ROGER N. HELLER

9                          Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON

RECYCLED PAPER

LA 9388909v1

      Cover Page For Joint Letter Re Discovery Dispute

April 1, 2013

The Honorable Maria-Elena James
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *James v. UMG Recordings, Inc.* N.D. Cal. Case No. CV 11-1613 SI (MEJ)

Dear Magistrate Judge James:

      Plaintiffs and Defendant UMG Recordings, Inc. ("UMGR") submit this joint statement regarding an issue the parties were unable to resolve through the meet and confer process.

      *UMGR's Statement:*  UMGR seeks an Order requiring Plaintiffs to comply with this Court's November 29, 2012 Order [Docket No. 138] requiring Plaintiffs to provide further responses to UMGR's Interrogatories 10 and 12. UMGR requested "full, complete, verified responses" to these interrogatories [Docket No. 135, at 1], which respectively require Plaintiffs to "[s]tate with particularity the **nature and amount** of damages or other compensation you contend you are entitled to from UMGR and the ***precise manner in which you calculated*** the amount of such damages" and, "[f]or **each royalty statement** that you contend underreported monies due to you for which you seek damages or other compensation in this action, state with particularity ***the amount of money*** you contend was underreported, and the ***precise manner in which you calculated*** such amount." (Emphasis added.) The Court granted UMGR's motion, finding that UMGR was entitled to know how Plaintiffs would "calculate an individual class member's damages" and rejected Plaintiffs' position that "UMGR will learn more about Plaintiffs' views on damage calculations when the motion for class certification is filed." Docket No. 138. The Court ordered the parties to select a "representative sample to use for these responses" [*id.*, at 4] and Plaintiffs agreed to "use the Named Plaintiffs as the agreed upon representative sample[.]" Ex. A[1], at 5.

      However, Plaintiffs' Court-ordered responses are willfully evasive and non-responsive. They do not state (let alone "with particularity") the "nature and amount of damages or other compensation" owed to any Plaintiff (let alone all of them, as agreed), or show how such damages were calculated (Interrogatory 10). Nor do they do so "[f]or each royalty statement that [Plaintiffs] contend underreported monies due to" each Plaintiff (Interrogatory 12). Instead, Plaintiffs willfully evaded the interrogatories by simply regurgitating back to UMGR the same alleged formula that was already set forth in one of Plaintiffs' complaints (the very formula that Interrogatories 10 and 12 are designed to test). In Carlton's Ridenhour's original Complaint, he alleged "the methodology [UMGR] should be employing" to calculate download royalties as follows:

| CORRECT METHOD OF CALCULATING MUSIC DOWNLOAD ROYALTIES | |
| --- | --- |
| 1000 Singles Downloaded @ $.99/each | 1000 units |
| Standard Amount Paid to UMG by Music Download Providers | $.70/unit |
| UMG's Net Receipts for 1000 Units Downloaded @ $.99/each | $700.00 |
| Less Mechanical Royalty Payments to Publishers Per Unit (Assuming 6.83¢/unit)[3] | ($68.30) |
| UMG's Adjusted Net Receipts for 1000 Units Downloaded @ $1.00/each | $631.70 |
| Royalty Base Percentage for Masters Licensed | 50% |
| **Royalty Owed to Artist/Producer** | **$315.85** |

---

[1] Exhibit A is Plaintiffs' Court-ordered supplemental response. The exhibits Plaintiffs attached to Exhibit A have not been included for confidentiality reasons. UMGR does not believe they are material, but if Plaintiffs contend they are or the Court wishes to see them, they can be submitted under seal or *in camera*.

The Honorable Maria-Elena James
April 1, 2013
Page 2

Ridenhour Complaint ¶ 84. But after putting UMGR through the exercise of meeting and conferring and drafting a joint letter, and requiring this Court to evaluate and rule on the issue, Plaintiffs responded to Interrogatory 10 by doing nothing more than cutting and pasting that *exact same chart* into their interrogatory response:

| CORRECT METHOD OF CALCULATING MUSIC DOWNLOAD ROYALTIES | |
|---|---|
| 1000 Singles Downloaded @ $0.99 each | 1000 units |
| Standard Amount Paid to UMG by Music Download Providers | $0.70/unit |
| UMG's Net Receipts for 1000 Units Downloaded @ $0.99 each | $700.00 |
| Less Mechanical Royalty Payments to Publishers Per Unit (assuming $0.683/unit)[2] | ($68.30) |
| UMG's Adjusted Net Receipts for 1000 Units Downloaded @ $1.00 each | $631.70 |
| Royalty Base Percentage for Masters Licensed | 50% |
| **Royalty Owed to Artist/Producer** | **$315.85** |

Ex. A, at 6. Even more egregiously, their response to Interrogatory 12 (which was supposed to calculate damages for each Plaintiff on a royalty-statement-by-royalty-statement basis[2]) merely "refer[red] to and incorporate[d] their supplemental response to Interrogatory 10 above." *Id*, p. 10. Plaintiffs engaged in the identical evasive and noncompliant sleight of hand with regard to alleged damages concerning ringtones. *Compare* Ridenhour Complaint ¶ 86 *with* Ex. A, at 6, 10. Plaintiffs' Court-ordered responses also improperly continue to "incorporate … fully herein Plaintiffs' previous objections" to these interrogatories (including a slew of overweening General Objections) (Ex. A, at 3-4, 5, 10) – ignoring that this Court already *overruled* all of their objections. Plaintiffs' Court-ordered responses also improperly disclaim full compliance by asserting that the "number of units of music downloads and ringtone downloads can best be ascertained from the business records of" UMGR (Ex. A, at 6-7) – ignoring that this Court already rejected Plaintiffs' claims that they needed additional data from UMGR's business records in order to respond.

In their meet and confer with UMGR on these deficiencies, Plaintiffs could not even seriously contend that they had complied with the Court's Order. Instead, it became clear that Plaintiffs' strategy is to use their obvious, calculated noncompliance as a backhanded way to seek reconsideration of whether they should have to fully respond to these Interrogatories at all, notwithstanding that this Court already decided this issue. To that end, Plaintiffs now complain that responding to Interrogatories 10 and 12 would be too burdensome for them and that UMGR should just perform its own calculations because UMGR is more capable of doing so. As a threshold matter, this contention is made far too late and has been waived. In their portion of the joint letter on this issue, Plaintiffs did not raise this argument. *See* Docket No. 135. Nor did they seek reconsideration of the November 29 Order (and there would have been no basis to do so), or file objections to the Order with Judge Illston. No reason exists to allow Plaintiffs to interpose a new objection now that their original ones have been overruled. "A busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*." *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967).

---

[2] These statement-by-statement calculations have become even more important in light of the California Supreme Court's ruling in *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013). *Aryeh* reinforces that in contracts governed by California law and under certain circumstances, each alleged underpayment of a periodic contractual payment may give rise to an entirely separate cause of action, thereby implicating (and complicating) not just damages issues, but *liability* issues affecting class certification. 55 Cal. 4th at 1198 ("separate, recurring invasions of the same right can each trigger their own statute of limitations.").

The Honorable Maria-Elena James
April 1, 2013
Page 3

Even if it had been timely asserted, Plaintiffs' current argument would have been meritless. Plaintiffs bear the burden of proving, not just alleging, all of the requirements of Fed. R. Civ. P. 23. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Their argument is plainly circular – Plaintiffs have alleged that "class" damages can be calculated using a simple, uniform formula (Consolidated Amended Complaint ¶ 114) and have purported to allege their formula. UMGR disputes this allegation, which is exactly what Interrogatories 10 and 12 are designed to test. If Plaintiffs cannot even accurately calculate their own damages using the formula, it is hardly plausible that it could be used to accurately and mechanically determine the existence and "damages" for thousands of class members. Plaintiffs essentially ask this Court to deprive UMGR of Court-ordered discovery because Plaintiffs assert they will someday prove the very allegation that the discovery challenges. This is but a variation of Plaintiffs' prior argument, correctly rejected by this Court, that "UMGR will learn more about Plaintiffs' views on damage calculations when the motion for class certification is filed." Docket No. 138.

UMGR therefore requests that this Court order Plaintiffs to respond, fully and completely with respect to all Named Plaintiffs, to Interrogatories 10 and 12, without objection or limitation.

*Plaintiffs' Statement*: Plaintiffs negotiated in good faith, and attempted to agree on a "representative sample" as this Court ordered on November 29, 2012 (Dkt. No. 138) so that UMGR would know "the parameters" of plaintiffs' damage theory, *id.*, because UMGR was "entitled to some information about plaintiffs' damages." *Id.* UMGR has ignored each of these limiting factors in the Court's prior orders in meeting and conferring about the sample to be used, and in moving to compel further answers. UMGR acts as if the Court ordered everything it asked for, but the Court did not do so.

When this discovery dispute was first presented to the Court, UMGR asserted that Plaintiffs should be ordered to disclose "a proposed ***method*** for determining damages" "so UMGR can evaluate whether [the method] could logistically be applied classwide." Dkt. No. 135 at 2. Now it wants more than methodology, it wants painstaking calculations from paper records, when it has the same data in its more easily accessible (and computable) state-of-the-art royalty accounting system. Indeed, UMGR relied on a price-fixing case where Judge Illston granted class certification finding "plaintiffs have advanced a plausible ***methodology*** to demonstrate that antitrust injury can be proven on a class-wide basis." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 314 (N.D. Cal. 2010). UMGR's primary contention in requesting supplemental responses was that damages were relevant to class certification (insofar as how damages would apply to the class) and that UMGR was entitled to know Plaintiffs' ***method*** for computing damages before a motion for class certification is filed.[3]  Now it knows our method, but it wants much more.

The Court indicated that although Defendant had not produced the digital download revenue data (and still has not done so), not having that data "did not affect Plaintiffs' ability to ***set forth the parameters*** of an individual class member's damage theory." Dkt. No. 138 at 4. Thus Plaintiffs understood, and indeed, still understand, the Court's order to require disclosure of information from which UMGR will understand the ***method*** they intend to employ to prove individual and class-wide damages. This is consistent not only with the term "parameters," but also with the Court's holding that "Defendant is entitled to ***some*** information about Plaintiffs' damages." Dkt. No. 138 at 4. UMGR ignores the Court's language about "methods" and "parameters," and transforms "some information" into "all information," improperly expanding the scope of the Order.

In meeting and conferring, Plaintiffs discussed providing calculations for the named plaintiffs, but pointed out that the quarterly royalty statements sent by UMGR to individual artists

---

[3] "[O]n a motion for class certification, the Court only evaluates whether ***the method*** by which plaintiffs propose to prove class-wide impact could prove such impact, not whether plaintiffs in fact can prove class-wide impact." *In re Magnetic Audiotape Antitrust Litig.,* 2001 WL 619305, at *4 (S.D.N.Y. June 1, 2001).

The Honorable Maria-Elena James
April 1, 2013
Page 4

were voluminous and hard to understand.  (The nine named plaintiffs have thousands of pages of
royalty statements in total, all in paper form, none electronically.)  UMGR insisted that plaintiffs
calculate damages for each royalty statement, for each named plaintiff, for the duration of the artists'
career insofar as relevant here.  This is unreasonable.  Plaintiffs offered a compromise of
calculations for three of the nine named plaintiffs, for a sample of their royalty periods.  This would
allow UMGR to see Plaintiffs' formula in action, and would prepare UMGR to attack that
methodology on class certification if it wished.  It would also allow UMGR to feed plaintiffs'
formula into its computerized royalty system and make whatever counter-calculations it wished.
UMGR refused to agree to that sampling approach, and also would not agree to defer bringing this
dispute back to the Court until after Plaintiffs provided these samples for UMGR to review.  In fact,
rather than completing this meet and confer dialogue, UMGR broke off negotiations and simply
drafted their half of this Joint Discovery letter, never responding to Plaintiffs' March 18, 2013 email
offering this compromise.  UMGR's short circuiting of the meet and confer process and its all or
nothing approach is inconsistent with Your Honor's standing orders..

        Plaintiffs have done what the Court ordered by providing an explanation as to how Plaintiffs
calculate damages for both digital downloads and ringtones/master-tones.  In fact, Plaintiffs also
incorporated a chart with hypothetical numbers so that Defendants could see how the formula was
being applied. There is no need for more at this time.  With the methodology now in hand and the
data still not produced nor the computerized royalty system made available for inspection or
explained (depositions of UMGR personnel responsible for this information are ongoing and by no
means complete),UMGR has what it originally asked for, and is far better equipped to apply it to any
and all artists, for any and all time periods, than are plaintiffs.

        It is an unreasonable interpretation of this Court's Order that Plaintiffs should do something
incredibly laborious, and of no marginal use to UMGR (once it knows the methodology, more
calculations are meaningless) which UMGR could do at the touch of a button.  UMGR cannot
equitably demand that Plaintiffs make imprecise calculations by hand when it has the resources to
make them by computer.  *See* Fed. R. Civ. Proc. 26(b)(2)(c) (must limit discovery that "can be
obtained from some other source that is more convenient, less burdensome, or less expensive ....".);
*Robinson v. Adams*, 2011 WL 2118753, at * 17 (E.D. Cal. May 27, 2011) (motion to compel denied
when documents equally accessible to requesting party).  If UMGR's objective is to test Plaintiffs'
damage methodology or calculate the outstanding royalties owed by any artist under that
methodology, it has the means to do so.  UMGR's approach conflicts with the rules of
proportionality pursuant to Rule 26(b)(2)(C).  Demanding that Plaintiffs undertake the task of sorting
out UMGR's own accounting records and perform calculations which could take weeks of attorneys'
and accountants' time when UMGR already has the methodology it is seeking, and far more data
than plaintiffs have, is unreasonable and not what the Order required.

        Finally, Plaintiffs agreed to remove any general objections for which the Court made a
ruling on as part of the November 29, 2012 Order to the extent those objections were included or
incorporated in the supplemental responses, making this a non-issue.

        Sincerely,

        JEFFREY D. GOLDMAN of              LEONARD B. SIMON of
        Jeffer Mangels Butler & Mitchell LLP    Law Offices of Leonard B. Simon

4