| | |
|---|---|
| 1 | Michael W. Sobol (State Bar No. 194857) |
|   | msobol@lchb.com |
| 2 | Roger N. Heller (State Bar No. 215348) |
|   | rheller@lchb.com |
| 3 | LIEFF CABRASER HEIMANN & BERNSTEIN, LLP |
|   | 275 Battery Street, 29th Floor |
| 4 | San Francisco, CA  94111-3336 |
|   | Telephone:  415-956-1000 |
| 5 | Facsimile:  415-956-1008 |
| 6 | *Attorneys for Plaintiff and the Class* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest; CARLTON DOUGLAS RIDENHOUR, d/b/a "CHUCK D," individually and as a member of PUBLIC ENEMY; WHITESNAKE, a doing business as designation of David Coverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; DAVE MASON; OTIS WILLIAMS and RON TYSON, jointly d/b/a THE TEMPTATIONS; and ROBERT WALTER "BO" DONALDSON, individually and d/b/a BO DONALDSON AND THE HEYWOODS; WILLIAM MCLEAN, a/k/a "WILL MCLEAN" and p/k/a "MISTA LAWNGE," and ANDRES TITUS, p/k/a "DRES," jointly d/b/a BLACK SHEEP, individually and on behalf of all others similarly situated, | Case No. CV-11-01613 (MEJx)<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |
| Plaintiffs, | |
| vs. | |
| UMG RECORDINGS, INC., a Delaware corporation, | |
| Defendant. | |

1092041.1

COVER PAGE FOR JOINT LETTER RE
DISCOVERY DISPUTE

Pursuant to the Court's Standing Order, Plaintiffs and Defendant UMG Recordings, Inc. submit this joint letter regarding a discovery dispute they were unable to resolve through meet and confer, which took place via telephonic conference on March 26, 2013.

DATED: April 26, 2013          By: /s/ Roger N. Heller
                                   ROGER N. HELLER

                               Attorneys for Plaintiffs

DATED: April 26, 2013          By: /s/ Jeffrey D. Goldman
                                   JEFFREY D. GOLDMAN
                               Attorneys for Defendant

April 26, 2013

**VIA ELECTRONIC CASE FILING**

The Honorable Maria-Elena James
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *James v. UMG Recordings, Inc.*, Case No. CV 11-1613 SI (N.D. Cal.)

Dear Magistrate Judge James:

The parties hereby submit this letter regarding a discovery dispute. This dispute involves the production of data previously ordered produced by Your Honor (Dkt131), and which has now been the subject of two orders by Judge Illston (Dkt 148, 150), who has returned the issue to Your Honor. The further meet and confer called for by Judge Illston was unsuccessful.

*Plaintiffs' Position.* The District Court has ordered the parties to meet and confer to address any privacy concerns arising from the production of download revenue and volume data from UMGR as ordered by this Court (Dkt 150, 131 at 4-5). Plaintiffs have offered that such production be for "Attorneys' Eyes Only" under the protective order (Dkt 48). UMGR has not engaged on the privacy issue, but instead has used the meet and confer to re-argue the relevance of the data, which both this Court and the District Court have already found to be properly discoverable. Accordingly, the Court should require UMGR to comply with the Court's previous order and produce the data designated as "Attorneys' Eyes Only" under the protective order, thus ensuring the protection of any privacy concerns.

This Court and the District Court have both ruled that the digital download/ringtone volume and revenue data for artists in the proposed class are discoverable and should be produced. Dkt 131, 148.[1] That issue is behind us. In its original order, this Court ruled that any privacy concerns "are ameliorated since any response can be produced pursuant to a protective order, and therefore only counsel—and not the general public—will be privy to any sensitive financial information." Dkt 131. In its appeal to the District Court, in arguing for heightened privacy protection, UMGR suggested for the first time that it be permitted to produce the data anonymously, *i.e.* without identifying which data related to which artist. The District Court, while agreeing with this Court that the data was discoverable, adopted UMGR's 11th hour request to produce the data anonymously. Dkt 148. Plaintiffs sought reconsideration on the bases that the District Court had not heard from Plaintiffs on the issue, and that "anonymity" would significantly limit the utility of the data. Dkt 149. On March 18, Judge Illston expressed a willingness to reconsider her order, but remanded the matter to Your Honor, and ordered the parties to meet and confer

---

[1] This Court stated: "Defendant's argument that Plaintiffs will be unable to utilize any artist-by-artist breakdown to actually calculate class damages is misplaced since the Court cannot prohibit a party from obtaining discovery that may potentially lead to admissible evidence under the theory that the other side believes that party will be unable to analyze any responses that it may receive. Moreover, during class certification, the Court, usually based on arguments set forth by those opposing class certification, evaluates whether class plaintiffs can establish a uniform claim for damages. Not granting Plaintiffs' request to compel further responses to these interrogatories on damages and then considering such issues on class certification would be improper, especially considering that Defendant has not indicated that it will not raise such issues during class certification." Dkt 131 at 5. Judge Illston "agree[d] with Judge James' reasoning" that the data is properly discoverable. Dkt 148 at 2.

again as to whether there are sufficient protections available for the data that would still permit Plaintiffs "to use the data in a meaningful way." Dkt 150.

When the parties met and conferred on March 26, Plaintiffs proposed some additional protections, including having the data designated as "Attorneys' Eyes Only" under the protective order (Dkt 48). UMGR declined to discuss any potential privacy protections, and acknowledged that it did not want Plaintiffs (including <u>any</u> Plaintiffs counsel) to have <u>any</u> access to the data unless it remained anonymous. UMGR's extreme position reveals that its true concern is not that there are 50 plaintiffs' counsel and one might misuse the information; rather, their objective is to hamstring Plaintiffs' preparation for class certification and trial. Indeed, the privacy concerns UMGR now asserts were apparently so unimportant to UMGR that in its written responses, it did not even object to the interrogatories at issue on privacy grounds.[2] The existing protective order (Dkt 48) contains two distinct levels of confidentiality protection, and contemplates that non-public artist information will be provided when relevant, placing strict limits on is use, applicable to both counsel and experts (*Id*. at ¶ 7.4). The available protections contained in the protective order sufficiently protect any privacy concerns, and UMGR has failed to offer any viable alternative. UMGR simply is unwilling to accept that, as officers of the Court, Plaintiffs' counsel will abide by the Court's protective order. Such an attitude undermines standard discovery methods and confidentiality protections.

Producing the data anonymously would severely impair Plaintiffs' ability to use it, and would be inequitable given that UMGR has full access to the data and will use it to oppose certification or the claims themselves. For example:

- Plaintiffs agreed to take this data by artist, rather than by contract, because UMGR represented it was not kept by contract. But Plaintiffs reasonably understood they would be able to compare the artist-by-artist data with the previously produced artist contracts, allowing plaintiffs to develop and refine calculation methods for class period volume, revenue and resulting damage for the class and for any proposed subclass. The data, matched with the contracts, will help Plaintiffs to structure proposed classes and/or subclasses that meet Rule 23, and provide the Court with a manageable trial plan. Anonymous data not linkable to contracts or artists would not lend itself to such analysis.

- Anonymity impedes the development and testing of common methods of proof for measuring damages, and will make it more difficult for Plaintiffs to illustrate how a damage model would work for any particular artist or subclass of artists. It is ironic that UMGR continues to press for more information about how Plaintiffs will calculate their damages, but seeks here to deprive Plaintiffs of important data Plaintiffs can use both for internal analysis of class certification theories, and to illustrate for the Court available methods for calculating damages for any class or subclass. Plaintiffs should not be handicapped in these tasks.

- Anonymous data production would also prevent Plaintiffs from identifying artists with no or *de minimus* damages. Without being able to match data with artists and contracts, Plaintiffs cannot analyze possible exclusions to class membership or potential subclassing based on claim size and contract language.

- The data will also be important for liability and damage issues. Discovery has not been bifurcated or limited to certification, and the Court has ruled this data is properly discoverable. UMGR has taken extensive merits discovery, indeed moving for partial summary judgment arguing that because discovery is open for all purposes, Plaintiffs had ample time to prove their case, Dkt 66. Again, anonymous production of the data would be inequitable given that UMGR has full access to the data, and will use it wherever it suits its purposes.

---

[2] Ex. A at Nos. 4-5. This failure, alone, militates in favor of denying UMGR's request for anonymous data production.

In terms of privacy, this Court held previously that UMGR's concerns were ameliorated by the protective order the parties agreed to, which carefully limits access to confidential information. Dkt 131; Dkt. 48 (protective order). Indeed, UMGR has produced thousands of contracts and other artist-related materials subject to the protective order. If this data is of high sensitivity, "Attorneys'Eyes Only" protection under the existing protective order should suffice (*see* Dkt 48 at ¶ 2.4. ) UMGR offers no suggestions other than full anonymity.

In sum, having the data matched up with the artists will help Plaintiffs construct classes and/or subclasses that are litigable and present common liability and damage questions. With counsel bound to confidentiality by a protective order, negotiated by UMGR, the balance tips strongly in favor of disclosure of this relevant material. The Court should adhere to its initial Order, and order production of the data, non-anonymously, permitting UMGR to designate it "Attorneys' Eyes Only" under the protective order if it believes that is appropriate.[3]

*UMGR's Position*: Plaintiffs inaccurately characterize Judge Illston's directive to this Court. Nowhere does it state any presumptive "willingness" to reconsider her Order. Further, plaintiffs ask this Court to vacate the Order without complying with the prerequisites Judge Illston established for doing so. The Order finds that using serial numbers is "a reasonable measure to protect the privacy of the recording artists, while still providing plaintiffs with the data that they seek to prepare the class certification motion." Docket No. 148, at 2. That Order stands unless, per Judge Illston's subsequent mandate, Plaintiffs can identify some alternative way to "both address defendant's privacy concerns and also enable plaintiffs to use the data in a meaningful way." Dkt. 150, at 2. But plaintiffs have neither (1) articulated any proposal to protect the legitimate privacy concerns recognized by Judge Illston, nor (2) explained why the artists' names would materially assist them in using the data for the "meaningful" purpose for which this Court and Judge Illston deemed it discoverable in the first place – to determine "whether class plaintiffs can establish a uniform claim for damages" (Dkt. 131 at 5, Dkt.148 at 2).

In the meet and confer Judge Illston ordered, UMGR asked plaintiffs one simple question: why do you need the artist's **names** to show how you can establish a uniform claim for damages? Plaintiffs responded (as they do here) with empty, *ipse dixit* generalities. Some of these may sound plausible on the surface, but, as the lengthy meet and confer established, and as discussed below, they have no substance behind them – certainly not enough to establish the required "compelling" need. Plaintiffs' true, disguised purpose in seeking the artist names is to help evaluate their case for settlement purposes, an argument they made to Judge Illston (Dkt. 149, at 5:15-20) but have abandoned here because the law is clear that "information is not relevant or discoverable under Rule 26(b) because it might assist a party's evaluation of whether to settle or try a case." *Centillion Data Systems, Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 (S.D. Ind. 1999); *accord*, *Sierrapine v. Refiner Products Mfg., Inc.*, 275 F.R.D. 604, 612 (E.D. Cal. 2011) (prohibiting discovery of financial data for this reason).

**1. Plaintiffs' proposed "AEO" protection is inadequate in this case.** Judge Illston recognized the need to weigh the artists' legitimate third-party privacy interests against plaintiffs' claimed need for the artists' names. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990) (discovery only permissible if the "potential benefits of disclosure" outweigh third party privacy

---

[3] Contrary to UMGR's disingenuous suggestion, Plaintiffs do not need the data to develop a "more thorough knowledge of defendants' finances." Merely providing the artist names associated with the data, which is what is at issue, will reveal little, if anything, about UMGR's finances. Also UMGR's reference to Eminen is misguided, as that artist's digital download claims were already litigated in the *FBT* case, where he was represented by his own counsel pursuing those claims, and thus Eminem says little regarding the hundreds or thousands of artists who are dependent on this case for a recovery.

concerns). "Even when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed, there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.'" *Pearce v. Club Med Sales, Inc.*, 172 F.R.D. 407, 410 (N.D. Cal. 1997).[4] Plaintiffs make no effort to establish any "compelling public need"; they simply revert back to the argument Judge Illston found insufficient – that marking the names "AEO" resolves the privacy concerns because plaintiffs themselves could not see the names. But in this case, such protection is meaningless. Plaintiffs are musicians who likely have little interest in the names. Rather, the issue is their attorneys – all 50 or so of them, including those such as Neville Johnson and David Given and their colleagues, who are regularly engaged by music clients and negotiate for them against others in the music industry, including potential class members. So, presumably, do plaintiffs' undisclosed music-industry experts and consultants. Under plaintiffs' proposal, plaintiffs' attorneys and music-industry professionals could review the private financial information of thousands of recording artists with whom they may have adverse relationships, and who have not indicated any desire to be part of any class or to be represented by these attorneys or professionals. A protective order will be no comfort to these artists, as these lawyers and experts cannot "un-know" facts they have learned no matter what a protective order says. *See Pearce*, 172 F.R.D. at 410 (protective order insufficient to cure the privacy intrusion at issue). The *only* empirical evidence supports the inadequacy of "AEO"-level protection here: When plaintiffs earlier sought private download data for just a single artist, Eminem (who, contrary to plaintiffs' assertion, was *not* a party to the *F.B.T.* case), he strenuously objected, and was prepared to intervene until Plaintiffs agreed not to seek such data *at all,* even on an "AEO" basis.

**2. Plaintiffs' justifications for disclosure of artists' names do not withstand scrutiny.**
Plaintiffs seek to prove a "compelling public need" for the artist names by (a) claiming they will help show how "class plaintiffs can establish a uniform claim for damages," the stated purpose for the discovery in the first place (Dkt. 131 at 5, Dkt.148 at 2); and (2) seeking to justify the intrusion on new, unrelated grounds. Neither justifies removing the privacy protections of Judge Illston's Order.

**(a) The artist names would not materially assist plaintiffs in using the data for its intended purpose.** Plaintiffs can already "meaningful[ly]" and fully use the data for its intended purpose – to show "whether class plaintiffs can establish a uniform claim for damages" – without the artist names. If Artist #437 had 1000 downloads and $785 in download revenue in 2005, it should make no mathematical difference to a "uniform claim for damages" what that artist's name is.

Plaintiffs claim they need the artists' names to link each artist's data with that artist's particular contract(s) to perform this task. This argument fails for at least two separate reasons. *First*, they never explain why they need to make such linkage to show how "class plaintiffs can establish a uniform claim for damages." To the contrary, when this Court recently ordered Plaintiffs to disclose how they intend to calculate their damages, they responded by providing a *single*, one-size-fits-all mathematical formula they claim will apply across the entire class; their model is *not* dependent on the terms of any particular contract. Docket No. 153, at 1 & Ex. A, pp. 6-7. Plaintiffs fail to explain how the individual contract terms have suddenly become relevant to that issue, only alluding to some vague desire to "test" or

---

[4] This is because "[d]iscovery may not be obtained regarding matters which are privileged," and privacy "is a matter of privilege" under California law, which federal courts honor. *Garcia v. City of Imperial*, 270 F.R.D. 566, 572 (S.D. Cal. 2010). Plaintiffs' newly-minted claim that UMGR somehow waived this argument is meritless. UMGR objected to the interrogatories on the basis of all "privileges, immunities, or protection available under law" (Ex. A, p. 2), and regardless, "[f]ailure to object on privacy grounds does not automatically waive a right to privacy.... Also, where third-party rights are at issue no waiver will be found." *Pearce*, 172 F.R.D. at 410 (applying California law and citing cases).

"refine" their model or to divide contracts into subclasses. Without any explanation of how the names will allow them to "test" or "refine" their mathematical formula, this is far too conjectural to establish a "compelling need" to intrude into thousands of artists' private financial data. And as for potential subclassing, plaintiffs already have the contracts – either their terms are sufficiently similar to justify being subclassed together or they are not. What would it matter to the propriety of the subclass whether any given artist had 100 downloads or 100,000? Plaintiffs never explain how calculating the volume of downloads for *damages* purposes could be relevant to subclassing contracts for *liability* purposes. Further, Plaintiffs have represented that they do not even *know* which contracts are in their putative class. Dkt. 138, at 4-5 (Plaintiffs claimed they could not "identify all putative class members' contracts" prior to class certification, and this Court agreed that requiring them to do so would be too burdensome).

*Second*, disclosing the artist names would not even accomplish plaintiffs' stated purpose of determining the number of downloads and revenue attributable to each contract. It is undisputed that many artists have multiple contracts with UMGR, each with different terms and covering music created at different times, and UMGR's data aggregates revenue for all of an artist's contracts – including contracts not even arguably part of the putative class because they were entered into before or after the alleged class period (1/1/1965-4/30/2004).[5] Thus-, the data is inherently over-inclusive for the purpose of estimating an artist's potential "damages" from "class" contracts. And looking at a contract does not allow one to determine what revenue is attributable to that contract, because the download revenues obviously are earned only *after* the contracts are entered into. Moreover, most artist contracts only cover not-yet-existent recordings to be created in the future, so they do not even specify what particular recordings they cover. Plaintiffs would literally just be making wild guesses as to how much revenue is attributable to which contract. This is important, and it is no answer that plaintiffs will make whatever use of the imperfect data they can, since the more remote the data's value, the less "compelling" the need to invade thousands of artists' financial privacy.

**(b) Plaintiffs' other, unrelated justifications are also inadequate.** Plaintiffs' remaining arguments have nothing to do with the purpose for which this Court ordered this discovery in the first place, and are unavailing. Plaintiffs' assertion that UMGR intends to link individual artists by name to their actual download data to oppose class certification is unsupported. UMGR has no such intention.

Plaintiffs also claim they want to "identify[] artists with no or *de minimus* damages." They never explain why it would be appropriate to exclude artists with "*de minimus*" damages, and if they really need to know which artists have no download revenue (and thus no possible damages), this could be accomplished without invading the privacy of every artist (*e.g.*, by UMGR providing a list of artists who have more than zero download revenues, but not identifying the amount for each).

Finally, Plaintiffs claim they want to calculate "damage for the [putative] class and for any proposed subclass" and the artist's names would somehow allow them to do so. As discussed above, they would not, since the data is unavoidably over-inclusive. And regardless, surely privacy concerns of thousands of artists outweigh Plaintiffs' need to take merits discovery on damages prematurely, before any class is certified, and before any artist has been found to be a potential member of any class and given an opportunity to opt out. If a class is someday certified, there will be ample time to revisit the issue for class members only. Plaintiffs may be curious about UMGR's overall revenues to help value their case and formulate settlement strategy, but, as noted, this is an impermissible basis for discovery.

---

[5] As briefed previously, to determine how much revenue is attributable to each contract (or to different contracts entered into by the same artist within the 40-year putative class period) would, in the aggregate, require many thousands of hours of manual calculations. Plaintiffs acknowledge that for this reason, they "agreed to take this data by artist, rather than by contract[.]"

Sincerely,

/s/                                       /s/

DANIEL L. WARSHAW of           JEFFREY D. GOLDMAN of
Pearson, Simon, Warshaw & Penny, LLP    Jeffer Mangels Butler & Mitchell LLP