# EXHIBIT B

1  Leonard B. Simon (State Bar No. 58310)
   LAW OFFICES OF LEONARD B. SIMON
2  655 West Broadway, Suite 1900
   San Diego, CA 92101
3  Telephone:  619-231-1058
   Facsimile:   619-231-7423
4

5  Michael W. Sobol (State Bar No. 194857)
   Eric B. Fastiff (State Bar No. 182260)
6  Roger N. Heller (State Bar No. 215348)
   Cecilia Han (State Bar No. 235640)
7  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
8  San Francisco, CA  94111-3336
   Telephone:  415-956-1000
9  Facsimile:   415-956-1008

10 *Attorneys for Plaintiffs and the Class*

11 [Additional Counsel Appear on Signature Page]

12

13                  **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15

16 RICK JAMES, by and through THE JAMES         Case No. CV-11-1613 SI (MEJ)
   AMBROSE JOHNSON, JR., 1999 TRUST,
17 his successor in interest, individually and on   **CLASS ACTION**
   behalf of all others similarly situated,
18                                                  **PLAINTIFFS' SECOND SET OF**
19                          Plaintiffs,            **INTERROGATRIES FOR DEFENDANT**
                                                   **UMGR RECORDINGS, INC.**
20 vs.

21 UMG RECORDINGS, INC., a Delaware
   corporation,
22
                            Defendant.
23

24

25

26

27

28

PROPOUNDING PARTY:    PLAINTIFFS RICK JAMES ET. AL

RESPONDING PARTY:     DEFENDANT UMG RECORDINGS, INC.

SET NO:               TWO

Pursuant to Federal Rule of Civil Procedure 33, Plaintiffs in these consolidated actions ("Plaintiffs") hereby request that Defendant UMG Recordings, Inc. ("UMGR") answer the following interrogatories within thirty (30) days after service thereof, and afterwards supplement such interrogatory answers as may become necessary to comply with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.  Said answers shall be made within thirty (30) days of service of this Request, to the law offices of Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111.

## INSTRUCTIONS

1.      If UMGR refuses to respond to all or part of any interrogatory based on a claim of attorney-client privilege, attorney work-product protection, or some other privilege or protection, UMGR must provide a clear statement of the claim of privilege or protection and all facts relied on in support of that claim, including, for any claim of attorney work-product protection, the litigation in connection with which the work product was prepared.  UMGR must state whether the claim of privilege or protection applies to all or part of the interrogatory and, to the extent it only applies to part, provide an answer for the part(s) for which the privilege or protection is not claimed.

2.      If UMGR answers any interrogatory by reference to business records pursuant to Federal Rule of Civil Procedure 33(d), it must fully identify such records and the name of the employee(s) certifying the documents as business records for purpose of answering the interrogatory.

3. Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which case UMGR shall clearly state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.

4. UMGR's answers to these interrogatories must be verified by signature by the authorized person(s) making them, and any objections must be signed by the attorney(s) making them.

5. If an interrogatory cannot be answered completely, it shall be answered to the extent possible. If UMGR does not have personal knowledge sufficient to respond fully to any interrogatory, UMGR shall so state, but shall make a reasonable and good faith effort to obtain the information by inquiry to other PERSONS.

## DEFINITIONS

1. "DIGITAL DOWNLOAD(S)" means, without limitation, digital versions of master recordings, or clips thereof, that consumers are able to download directly to their computers, phones, or other electronic storage devices. This includes so-called "permanent downloads," "mastertones," and "ringtones," and does not include so-called "conditional downloads."

2. "DIGITAL DOWNLOAD PROVIDER" means, without limitation, any entity that permits an end-user to download DIGITAL DOWNLOADS, including any entity that permits an end-user to download "digital copies of [sound or music] recordings that, once downloaded over the Internet, remain on an end-user's computer or other device until deleted." *F.B.T. Productions, Inc. v. Aftermath Records*, 621 F.3d 958, 962 (9th Cir. Sept. 3, 2010), cert. denied, 79 U.S.L.W. 3370 (March 21, 2011). Such providers include, but are not limited to, Apple/iTunes, Amazon.com, Buy.com, Liquid Digital Media, Napster, Rhapsody, Microsoft's Zune Marketplace, eMusic, and mobile phone companies.

3. "MASTERS LICENSED PROVISION" means a provision in a contract in which the terms, "license," "licensed," "licensing, "lease," "leased," and/or "leasing" are employed with reference to the type of revenues for which RECORDING ARTISTS receive compensation in connection with the use or exploitation of master recordings by entities other than UMGR.

PLAINTIFFS' SECOND SET OF INTERROGATIRES
CASE NO. CV-11-1613 SI (MEJ)

1    4.    "PERSON(S)" (whether capitalized or not) means, without limitation, any

2   individual, corporation, partnership, or any variation thereof (*e.g.*, limited partnership, limited

3   liability partnership), limited liability company, proprietorship, joint venture, association,

4   government entity, group or other form of legal entity.

5    5.    "RECORDING ARTIST" means any musician, producer or other PERSON who

6   has entered into a contract with UMGR regarding the payment of royalties by UMGR in

7   connection with the recording, use, and/or exploitation of master recording(s).

8    6.    "RECORDING CONTRACT" means any contract between UMGR and any

9   RECORDING ARTIST(S), from the period January 1, 1965 through April 30, 2004, that includes

10   a MASTERS LICENSED PROVISION.

11    7.    "ROYALTY SOFTWARE" means any system, program, or database--whether

12   stand-alone or part of an integrated system (e.g., an enterprise architecture management system),

13   whether installed on UMGR's computer systems or not, and whether operated or administered by

14   UMGR or not --that UMGR uses or has used to store, convert, calculate, generate, compile, or

15   report the amount of royalties owed to RECORDING ARTISTS under any RECORDING

16   CONTRACT.

17    8.    "UMGR" means and includes Defendant UMG Recordings, Inc., and each of its

18   parents, subsidiaries, affiliates, predecessors, music sub-labels, acquired music labels, successors,

19   employees, officers, executives, agents, attorneys, and accountants, and all other persons or

20   entities acting on its behalf or under its control, whether directly or indirectly.

21

## INTERROGATORIES

22

23   **INTERROGATORY NO. 3**

24   Identify, on an annual basis from 1998 to the present, the total revenue (gross and net) that

25   UMGR has received from DIGITAL DOWNLOAD PROVIDERS in connection with DIGITAL

26   DOWNLOADS.

27   **INTERROGATORY NO. 4**

28

PLAINTIFFS' SECOND SET OF INTERROGATIRES
CASE NO. CV-11-1613 SI (MEJ)

Identify, for each RECORDING CONTRACT, on an annual basis from 1998 to the present, the number of DIGITAL DOWNLOADS that have been downloaded via a DIGITAL DOWNLOAD PROVIDER for which UMGR has received income.

**INTERROGATORY NO. 5**

Identify, for each RECORDING CONTRACT, on an annual basis from 1998 to the present, the total revenue (gross and net) that UMGR has received from DIGITAL DOWNLOAD PROVIDERS in connection with DIGITAL DOWNLOADS.

**INTERROGATORY NO. 6**

Identify all ROYALTY SOFTWARE that UMGR has used at any time from January 1, 1998 to the present, and, for each such ROYALTY SOFTWARE: (a) the UMGR music label(s) for which such ROYALTY SOFTWARE was or is used and the time period(s) during which it was or is used for such music label(s); and (b) the UMGR employee, officer, or executive most knowledgeable regarding the operation of such ROYALTY SOFTWARE.

**INTERROGATORY NO. 7**

Identify (by date, title, and contractual party names) all agreements (including any original agreement and any modifications, supplements, and amendments thereto) between UMGR and any DIGITAL DOWNLOAD PROVIDER(S) regarding DIGITAL DOWNLOADS.

**INTERROGATORY NO. 8**

For each agreement (including any original agreement and any modifications, supplements, and amendments thereto) identified in response to Interrogatory No. 7, above, identify (by name, title, and employer/professional affiliation) all PERSON(S), whether UMGR personnel, personnel from a DIGITAL DOWNLOAD PROVIDER, or otherwise, that were involved in the negotiation of such agreement.

**INTERROGATORY NO. 9**

PLAINTIFFS' SECOND SET OF INTERROGATIRES
CASE NO. CV-11-1613 SI (MEJ)

Identify all RECORDING CONTRACTS pursuant to which UMGR has paid royalties under the MASTERS LICENSED PROVISION for revenue received by UMGR in connection with DIGITAL DOWNLOADS.

**INTERROGATORY NO. 10**

For each RECORDING CONTRACT, identify the contractual provision(s) in such RECORDING CONTRACT pursuant to which UMGR has determined royalty payment amounts for revenue received by UMGR in connection with DIGITAL DOWNLOADS, including the time period(s) during which such payments amounts were determined pursuant to such contractual provision(s).

**INTERROGATORY NO. 11**

Describe how UMGR has determined royalty payment amounts, pursuant to RECORDING CONTRACTS, for revenue received by UMGR in connection with DIGITAL DOWNLOADS, including any change(s) to such process or methodology.

**INTERROGATORY NO. 12**

Identify and describe any polices, orders, directives, guidelines, or procedures that have been in place at UMGR, and any general practices not specific to any particular RECORDING CONTRACT or RECORDING ARTIST that have been in place at UMGR, at any time, regarding how to determine or calculate royalty payment amounts for revenue received by UMGR in connection with DIGITAL DOWNLOADS, including, but not limited to the following:

(a) policies, orders, directives, guidelines, procedures, or practices referenced, discussed and/or summarized in the memorandum authored by Michael Ostroff, dated September 17, 2002, produced by UMGR in this litigation at Bates Number UMGR002574-76;

(b) policies, orders, directives, guidelines, procedures, or practices referenced, discussed and/or summarized in the letter authored by Zach Horowitz, dated April 22, 2004, produced in this litigation at Bates Number RJT0000127; and

(c) policies, orders, directives, guidelines, procedures, or practices regarding whether to treat DIGITAL DOWNLOADS as licenses or "sales" for purposes of determining or calculating royalty payment amounts for revenue received in connection with DIGITAL DOWNLOADS.

**INTERROGATORY NO. 13**

For each policy, order, directive, guideline, procedure, or practice identified in response to Interrogatory No. 12, above, identify when it was adopted by UMGR and all PERSON(s) (by name, title, and employer/professional affiliation) involved in the decision to adopt it.

**INTERROGATORY NO. 14**

Identify and describe any polices, orders, directives, guidelines, or procedures that have been in place at UMGR, and any general practices not specific to any particular RECORDING CONTRACT or RECORDING ARTIST that have been in place at UMGR, at any time from 1998 to the present (even if adopted earlier), regarding how to determine or calculate royalty payment amounts for income received by UMGR in connection with compilation or soundtrack albums containing musical tracks, or excerpts thereof, which are/were licensed by UMGR to another entity for such use.

**INTERROGATORY NO. 15**

For each policy, order, directive, guideline, procedure, or practice identified in response to Interrogatory No. 14, above, identify when it was adopted by UMGR and all PERSON(s) (by name, title, and employer/professional affiliation) involved in the decision to adopt it.

**INTERROGATORY NO. 16**

Identify and describe any polices, orders, directives, guidelines, or procedures that have been in place at UMGR, and any general practices not specific to any particular RECORDING CONTRACT or RECORDING ARTIST that have been in place at UMGR, at any time, regarding whether to take or apply any deduction(s) (*e.g.*, packaging deductions, shipping deductions) in calculating or determining royalty payment amounts for revenue received by UMGR in connection with DIGITAL DOWNLOADS.

**INTERROGATORY NO. 17**

For each policy, order, directive, guideline, procedure, or practice identified in response to Interrogatory No. 16, above, identify when it was adopted by UMGR and all PERSON(s) (by name, title, and employer/professional affiliation) involved in the decision to adopt it.

**INTERROGATORY NO. 18**

For each ROYALTY SOFTWARE identified in response to Interrogatory No. 6, above, describe: (a) how information from RECORDING CONTRACTS is input into such ROYALTY SOFTWARE; (b) how such ROYALTY SOFTWARE determines and calculates royalty payment amounts for revenue received by UMGR in connection with DIGITAL DOWNLOADS; (c) how such ROYALTY SOFTWARE determines and calculates royalty payment amounts for income received by UMGR in connection with compilation or soundtrack albums containing musical tracks, or excerpts thereof, which are/were licensed by UMGR to another entity for such use; (d) how such ROYALTY SOFTWARE determines and calculates royalty payment amounts for income received by UMGR that is not covered by parts (b) or (c) of this Interrogatory; and (e) how such ROYALTY SOFTWARE determines and calculates any deduction(s) (*e.g.*, packaging deductions, shipping deductions) in calculating or determining royalty payment amounts for revenue received by UMGR, including but not limited to revenue received by UMGR in connection with DIGITAL DOWNLOADS.

Dated: June 19, 2012

By:

_____
Roger N. Heller

Michael W. Sobol (State Bar No. 194857)
Eric B. Fastiff (State Bar No. 182260)
Roger N. Heller (State Bar No. 215348)
Cecilia Han (State Bar No. 235640)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3336
Telephone:  415-956-1000
Facsimile:  415-956-1008

David M. Given (State Bar No. 142375)
Nicholas A. Carlin (State Bar No. 112532)
Alexander H. Tuzin (State Bar No. 267760)
PHILLIPS, ERLEWINE & GIVEN LLP
50 California Street, 35th Floor
San Francisco, CA  94111
Telephone: 415-398-0900
Facsimile:  415-398-0911

Kara M. Wolke (State Bar No. 241521)
PHILLIPS, ERLEWINE & GIVEN LLP
1221 Second Street, 3rd Floor
Santa Monica, CA  90401
Telephone: 310-832-0900
Facsimile:  310-514-0911

PLAINTIFFS' SECOND SET OF INTERROGATIRES
CASE NO. CV-11-1613 SI (MEJ)

1  Leonard B. Simon (State Bar No. 58310)
   LAW OFFICES OF LEONARD B. SIMON
2  655 West Broadway, Suite 1900
   San Diego, CA 92101
3  Telephone: 619-231-1058
   Facsimile:  619-231-7423
4
   Michael P. Lehmann (State Bar No. 77152)
5  Bruce J. Wecker (State Bar No. 78530)
   Arthur N. Bailey, Jr. (State Bar No. 248460)
6  HAUSFELD LLP
   44 Montgomery Street, Suite 3400
7  San Francisco, CA 94104
   Telephone: (415) 633-1908
8  Facsimile: (415) 358-4980

9  James J. Pizzirusso (pro hac vice)
   Nathaniel C. Giddings (pro hac vice)
10 HAUSFELD LLP
   1700 K St., NW, Suite 650
11 Washington, DC 20006
   Telephone: (202) 540-7200
12 Facsimile: (202) 540-7201

13 Bruce L. Simon (State Bar No. 96241)
   Aaron M. Sheanin (State Bar No. 214472)
14 William J. Newsom (State Bar No. 267643)
   PEARSON, SIMON, WARSHAW & PENNY, LLP
15 44 Montgomery Street, Suite 2450
   San Francisco, California 94104
16 Telephone: (415) 433 9000
   Facsimile: (415) 433 9008
17
   Clifford H. Pearson (State Bar No. 108523)
18 Daniel L. Warshaw (State Bar No. 185365)
   PEARSON, SIMON, WARSHAW & PENNY, LLP
19 15165 Ventura Boulevard, Suite 400
   Sherman Oaks, CA 91403
20 Telephone: (818) 788-8300
   Facsimile: (818) 788-8104
21
   *Attorneys for Plaintiffs and the Class*
22
   1043690.1
23
24
25
26
27
28

PLAINTIFFS' SECOND SET OF INTERROGATIRES
CASE NO. CV-11-1613 SI (MEJ)