1   JEFFREY D. GOLDMAN (Bar No. 155589),
    JGoldman@jmbm.com
2   RYAN S. MAUCK (Bar No. 223173), RMauck@jmbm.com
    BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3   JEFFER MANGELS BUTLER & MITCHELL LLP
    1900 Avenue of the Stars, Seventh Floor
4   Los Angeles, California  90067-4308
    Telephone:      (310) 203-8080
5   Facsimile:      (310) 203-0567

6   Attorneys for Defendant UMG RECORDINGS, INC.

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  RICK JAMES, by and through THE JAMES          CASE NO.      CV11-01613 SI (MEJx)
    AMBROSE JOHNSON, JR., 1999 TRUST, his
12  successor in interest; CARLTON DOUGLAS        **DEFENDANT UMG RECORDINGS, INC.'S**
    RIDENHOUR, d/b/a "CHUCK D," individually     **MOTION FOR RELIEF FROM**
13  and as a member of PUBLIC ENEMY;             **NONDISPOSITIVE PRETRIAL ORDER OF**
    WHITESNAKE, a doing business as             **MAGISTRATE JUDGE DATED MAY 2,**
14  designation of David Coverdale, by and for   **2013**
    WHITESNAKE PRODUCTIONS
15  (OVERSEAS) LIMITED; DAVE MASON;
    OTIS WILLIAMS and RON TYSON, jointly
16  d/b/a THE TEMPTATIONS; and ROBERT
    WALTER "BO" DONALDSON, individually
17  and d/b/a BO DONALDSON AND THE
    HEYWOODS; WILLIAM MCLEAN, a/k/a
18  "WILL MCLEAN" and p/k/a "MISTA
    LAWNGE," and ANDRES TITUS, p/k/a
19  "DRES," jointly d/b/a BLACK SHEEP,
    individually and on behalf of all others
20  similarly situated,

21              Plaintiffs,

22        v.

23  UMG RECORDINGS, INC., a Delaware
    corporation,
24
                Defendant.
25

26

27

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**Preliminary Statement**

Defendant UMG Recordings, Inc. ("UMGR") objects to certain portions of Magistrate Judge James' May 2, 2013 order (the "Order"), in which she denied UMGR's request pursuant to Fed. R. Civ. P. 33(a)(1) to serve its proposed Interrogatories 46-48 and denied in part UMGR's request to serve its proposed Interrogatories 44-45 (collectively the "Interrogatories"). *See* Declaration of Jeffrey D. Goldman ("Goldman Decl."), Ex. 1. The Order deprives UMGR of core discovery directed to determining Plaintiffs' position as to the similarities and differences among the putative "class" contracts, information which will be necessary for Plaintiffs to meet their burden, and critical to this Court's analysis, on class certification.

A central issue this Court must decide on class certification is whether Plaintiffs have met their burden to show that the individually-negotiated "class" contracts have a consistent meaning on the subject of royalties for digital permanent downloads and ringtones, such that the contracts can be reliably interpreted and adjudicated as a cohesive group compliant with due process. Plaintiffs allege that the "class" contracts all "contain the same or substantially similar terms relating to" royalties for digital permanent downloads and ringtones (Consolidated Amended Complaint ("CAC") ¶118), but concurrently acknowledge that the agreements are sometimes "not clear or even contradictory on the subject" of such royalties (id. ¶16). The discovery at issue simply asks Plaintiffs to explain how they plan to reconcile some of these contradictions on class certification. Plaintiffs refuse to disclose their position, either because they know they cannot reconcile the contradictions or because they wish to ambush UMGR with their theories in their class certification brief. Neither approach is fair or reasonable, and will only result in an improper shifting of the burden to UMGR to disprove Plaintiffs' class allegations, and require this Court to independently analyze thousands of agreements, one by one, in order to assess the validity of Plaintiffs' characterization of them.

To avoid responding to the Interrogatories, Plaintiffs misled the Magistrate Judge in the brief, five-page joint letter on which the Order was based. They inaccurately asserted that UMGR could obtain the same information through other discovery that Plaintiffs mischaracterized (UMGR cannot do so). They also claimed that, because there are over 14,000 "class" contracts, it would be

Objections to May 2, 2013 Discovery Order

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

too burdensome to respond to the Interrogatories.  But if, as Plaintiffs contend, the "class" agreements can all be adjudicated in one fell swoop, it would not be too burdensome for them to answer simple questions about the meaning of those agreements.  Conversely, if, as UMGR believes, Plaintiffs are unable to formulate consistent positions on the "class" agreements, even after having possessed and reviewed them for over a year (since March 2012), then the folly of asking this Court to manage their adjudication as a group will be self-evident.

### Interrogatories 46-48

Interrogatories 46-48 seek disclosure of Plaintiffs' position on the meaning of various terms used throughout the "class" agreements that will bear (in different ways, depending on the agreement) on the resolution of Plaintiffs' claims that UMGR should be accounting for royalties for sales of permanent downloads and ringtones in a different way.  Answering these questions will be crucial in evaluating Plaintiffs' allegation that the "class" agreements all "contain the same or substantially similar terms relating to the treatment of licensing income for royalty payments," as Plaintiffs allege (CAC ¶118).  Plaintiffs claim that UMGR should be treating revenues from permanent downloads and ringtones as "licensing" income.  *Id.*  UMGR disagrees, but even assuming *arguendo* Plaintiffs were correct, that does not resolve the issue.  Rather, the question that would need to be answered next is, what royalty provisions of each "class" agreement would apply in such event?  The answer is that different agreements treat "licensing" income in vastly different and inconsistent ways, depending on the meaning of certain terms that recur in the agreements.

Interrogatories 46-48 simply ask Plaintiffs to disclose their position on a few such terms. *E.g.*, do plaintiffs contend that permanent downloads are "records"?  That they are sold through "normal retail channels"?  That they are sold by UMGR's "licensees"?  The answers to these questions will differently affect the interpretation of different "class" agreements, as can be illustrated by just a few examples gleaned from the named plaintiffs' agreements.  For example, assuming Plaintiffs contend permanent downloads are sold by UMGR's "licensees," plaintiff Carlton Ridenhour's agreements provide for the same royalty rate (the one UMGR is already applying) for "Records … sold by Company *or its Licensees* Through Normal Retail Channels…" September 21, 2012 Declaration of Jeffrey D. Goldman ("2012 Goldman Decl."), ¶¶ 15-16, Exs.

PRINTED ON

RECYCLED PAPER

1   10-11 [§ 9.01].  To avoid this provision, Plaintiffs might contend downloads are *not* "Records"

2   and/or *not* sold "Through Normal Retail Channels."  However, if Plaintiffs contend downloads are

3   not "records," then the claims of several plaintiffs *cannot* succeed because the "licensing"

4   provisions on which they rely *only* apply to sales of "records."  2012 Goldman Decl., Ex. 2

5   (§ 2(a)(3), p. 2), Ex. 3 (§ 6(d), p. 4), Ex. 5 (§ 7(a), p. 4), Ex. 7 (Ex. A, § 1(E), p. 22).  And if

6   Plaintiffs contend downloads are not sold through "normal retail channels," they will contradict

7   plaintiff Whitesnake Productions (Overseas) Ltd.'s agreement, which provides:  "In the event that

8   Company shall sell *or license third parties to sell* 'records' via telephone, satellite, cable or other

9   direct transmission to the consumer over wire or through the air, *such sales shall be deemed sales*

10  *of such 'records' through normal retail channels for all purposes* … and, accordingly,

11  [Whitesnake] shall be paid royalties with respect thereto at the rates and in the manner" that UMGR

12  is already paying.  *Id.*, Ex. 6 [Ex. A, § 1(h)(vii), p. 6].  The remainder of these interrogatories seek

13  Plaintiffs' position on other issues also central to the interpretation of Plaintiffs' claims under

14  various plaintiff and "class" agreements.[1]

15         Plaintiffs' argument to avoid responding to the Interrogatories which was credited by the

16  Magistrate Judge (based on just a couple of pages of briefing per side, as per her rules) was

17  misleading, and is without merit.  Plaintiffs argued that the Interrogatories were too burdensome

18  because UMGR has already propounded Requests for Admission 85-152 and Interrogatories 14-22

19  seeking the same information.  However, Plaintiffs did not disclose that:

20         ●      The RFAs are directed to the individual plaintiffs' contracts only, not the "class"
                  contracts.  *E.g.*, Goldman Decl., Ex. 4 (RFAs 85-153 to plaintiff the James Trust).
21                They seek different information and are not duplicative.

22         ●      Though their argument assumed they would *answer* the RFAs, after submitting the
                  argument Plaintiffs *objected* to virtually all the RFAs and did not answer them.  *Id.*
23

24         [1] *E.g.*, do Plaintiffs contend downloads are "devices"?  *See Franconero v. Universal Music
    Corp.*, CV 12-3382 JGB (AGRx) (C.D. Cal. Apr. 11, 2013) [Goldman Decl., Ex. 2], at 6 (ruling on
25  what would otherwise be a "class" contract, dismissing an artist's contract claim because downloads
    are "devices" under the artist's 1966 agreement).  Under named plaintiff Bo Donaldson's agreement
26  with UMGR, his royalty for sales of "recorded devices sold by our licensees" is *less* than what
    UMGR is currently paying him, not more.  2012 Goldman Decl., Ex. 9 (§ 3(c), p. 2).  Plaintiffs'
27  position on whether download providers are UMGR's "distributors," whether UMGR
    "manufactures" downloads, or on various other issues, will affect the royalty provisions of different
28  agreements differently.

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    ●   Interrogatories 14-22 were expressly directed and tailored to a defined term in the earlier versions of plaintiffs' complaints, which the CAC has since superseded.
2    When UMGR wrote that Interrogatories 46-48 "replace and supersede" Interrogatories 14-22, Plaintiffs suggested that UMGR had the equally viable option
3    of moving to compel further responses to Interrogatories 14-22, and the Magistrate Judge erroneously agreed. Plaintiffs did not disclose that they have objected and
4    refused to respond to Interrogatories 14-22 on the ground that "an Interrogatory directed to allegations in a complaint that will soon be superseded are irrelevant,
5    burdensome and lack foundation." *E.g.*, Goldman Decl., Ex. 3, at 7-19.

6    Even if all Plaintiffs ultimately can do is state under oath that they are unable to provide

7    answers to Interrogatories 46-48 because the answers are different for different "class" contracts,

8    this alone will be important evidence that the contracts are too disparate to form a sufficiently

9    cohesive class. And it will save this Court the time and trouble of reviewing thousands of

10   agreements itself to determine the truth or falsity of the parties' competing claims on this issue.

11   ## Interrogatories 44 and 45

12   "[D]uring class certification, the Court … evaluates whether class plaintiffs can establish a

13   uniform claim for damages." Dkt. 133, at 4:8-10; *see* Dkt. 148, at 2:4-5 (adopting Magistrate

14   Judge's reasoning on this point in Dkt. 133). Plaintiffs claim "that damages can be measured on a

15   class-wide basis and calculated for each artist through a formula or computer program[.]" Dkt. 138.

16   At class certification, this Court "must conduct a 'rigorous analysis' to determine whether this is

17   so." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (Mar. 27, 2013) (rejecting the principle that

18   "at the class-certification stage *any* method of measurement is acceptable so long as it can be

19   applied classwide, no matter how arbitrary the measurements may be.") (emphasis in original).

20   Interrogatories 44 and 45 are addressed to this issue:

21   ●   Plaintiffs frequently rely on provisions in the "class" agreements which calculate royalties based on UMGR's "*net* receipts." Interrogatory 44 asks whether Plaintiffs
22   contend that UMGR is or is not entitled to deduct various expenses from its gross receipts to calculate such "net" receipts. Different agreements may permit different
23   deductions, complicating any attempt to calculate damages. *Ellington v. EMI Music, Inc.*, 2013 WL 1831456 (May 2, 2013) (in agreement at issue, term "net revenue"
24   permits deduction of fees charged to defendant music publisher by affiliates).

25   ●   Interrogatory 45 asks Plaintiffs to disclose their proposed formula for calculating damages for the ***music producers*** (as opposed to recording artists) in their putative
26   class. *See* CAC ¶106. In some (but not all) cases, producer agreements provide for the producer royalties to be derived from the royalty calculations for the artist(s)
27   whose tracks the producer helped create. Plaintiffs previously were ordered to provide UMGR with their "formula" for "class" recording artists – Interrogatory 45
28   simply requests the same disclosure for "class" music producers.

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

1    The Magistrate Judge ostensibly "granted in part" UMGR's request to propound

2    Interrogatories 44 and 45, but ordered them limited to the **named Plaintiffs'** agreements, on the

3    ground that it would be too "burdensome" for Plaintiffs to respond for all of the "class" agreements.

4    This completely changes the call of the interrogatories and guts their purpose.  Under *Comcast*,

5    Plaintiffs' burden on class certification is to provide a reliable method to calculate classwide

6    damages, not just **any** plausible method.  This may present complex accounting and technology

7    issues; UMGR should not have to wait until Plaintiffs' class certification brief to learn how

8    Plaintiffs intend to reliably account for issues such as contracts with different definitions of "net

9    receipts" or the varying royalty methodologies in producer agreements, and to develop evidence to

10   rebut it.  Further, the Order actually seems to excuse Plaintiffs from responding to Interrogatory 45

11   altogether, because none of the **plaintiffs'** agreements being sued upon is a producer agreement.

12   The ruling also sets an inappropriate precedent for future rulings in this case.  For example,

13   Plaintiffs refuse to disclose whether they contend the "class" agreements are "ambiguous."  If their

14   answer is yes, extrinsic evidence may be admissible (depending on what state's law applies to a

15   given contract).  If the answer is no, Plaintiffs' allegations regarding UMGR's custom and practice

16   (*e.g.*, CAC ¶¶ 16, 17, 19, 97) will be inadmissible.  *See Franconero*, at 8 ("Since the Court finds

17   that the unambiguous language of the Agreements controls the royalty rate for digital downloads,

18   extrinsic evidence including that related to the parties' 'course of dealing' is inadmissible.").  But

19   Plaintiffs have refused to answer, claiming, again, that it would be too burdensome.  This position,

20   if accepted by the Magistrate Judge based on similar reasoning to that of the Order, would deprive

21   UMGR and this Court of additional information critical to the class certification analysis.

22                               **Conclusion**

23   UMGR requests that this Court require Plaintiffs to fully respond to Interrogatories 44-48 in

24   the form proposed by UMGR.  *See* Goldman Decl., Ex. 1.[2]

---

26   [2] UMGR's proposed Interrogatory 44 contained a typographical error in the definition of
     "CLASS-UMG RECORDING AGREEMENTS" (which was not a basis of Plaintiffs' objection to
27   the Interrogatories or a ground for the Order).  The definition, as corrected, should read:  "[defined
     as the 'production [and] recording agreements' alleged in paragraph 106 of the CAC]."  (Paragraph
28   106 is Plaintiffs' proposed class definition.)  If the Court permits UMGR to propound the
     Interrogatories, it will do so with this corrected definition, as reflected in Exhibit 1.

DATED:  May 16, 2013          JEFFREY D. GOLDMAN
                              RYAN S. MAUCK
                              BRIAN M. YATES
                              JEFFER MANGELS BUTLER & MITCHELL LLP


                              By: /s/ Jeffrey D. Goldman
                                      JEFFREY D. GOLDMAN
                               Attorneys for Defendant UMG RECORDINGS, INC.

PRINTED ON

RECYCLED PAPER