1  JEFFREY D. GOLDMAN (Bar No. 155589),
   JGoldman@jmbm.com
2  RYAN MAUCK (Bar No. 223173), RMauck@jmbm.com
   BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California 90067-4308
   Telephone:  (310) 203-8080
5  Facsimile:  (310) 203-0567

6  Attorneys for Defendant UMG RECORDINGS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest; CARLTON DOUGLAS RIDENHOUR, d/b/a "CHUCK D," individually and as a member of PUBLIC ENEMY; WHITESNAKE, a doing business as designation of David Coverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; DAVE MASON; OTIS WILLIAMS and RON TYSON, jointly d/b/a THE TEMPTATIONS; and ROBERT WALTER "BO" DONALDSON, individually and d/b/a BO DONALDSON AND THE HEYWOODS; WILLIAM MCLEAN, a/k/a "WILL MCLEAN" and p/k/a "MISTA LAWNGE," and ANDRES TITUS, p/k/a "DRES," jointly d/b/a BLACK SHEEP, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>      Defendant. | CASE NO.  CV11-01613 SI (MEJx)<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |

PRINTED ON
RECYCLED PAPER
LA 9717028v1

Pursuant to the Court's Standing Order, defendant UMG Recordings, Inc. and plaintiffs submit this joint letter regarding a discovery dispute they were unable to resolve through meet and confer, which took place via telephonic conference on April 23, 2013, as well as through extensive but unsuccessful correspondence.

DATED: July 18, 2013            By: /s/ Jeffrey D. Goldman
                                    JEFFREY D. GOLDMAN
                                Attorneys for Defendant UMG RECORDINGS, INC.

DATED: July 18, 2013            By: /s/ Michael P. Lehmann
                                    MICHAEL P. LEHMANN
                                    Attorney for Plaintiffs

July 18, 2013

The Honorable Maria-Elena James
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

     Re: *James v. UMG Recordings, Inc.* N.D. Cal. Case No. CV 11-1613 SI (MEJ)

Dear Magistrate Judge James:

  Plaintiffs and Defendant UMG Recordings, Inc. ("UMGR") submit this joint statement regarding UMGR's request for an Order compelling further responses to Interrogatories 29-35 [Exs. A, B], an issue the parties could not resolve through the meet and confer process.  The telephonic meet and confer took place on April 23, 2013, as well as extensive but unsuccessful correspondence.

*UMGR's Statement:*  These interrogatories concern issues raised by Plaintiffs' implied covenant of good faith and fair dealing claims, which they added to their claims for breach of express contract in their Consolidated Amended Complaint ("CAC") last October.  Pertinent to Interrogatories 29-35, the CAC is unclear regarding the basis of the implied covenant claims.  Plaintiffs continue to allege that their contracts and all of the "class" contracts "contain the same or substantially similar terms relating to the treatment of licensing income for royalty payments" (CAC ¶118) and that UMGR breached specific express provisions of each of their contracts, which the CAC quotes *in haec verba* and alleges should apply to sales of digital permanent downloads.  CAC ¶70 (James Trust), ¶74 (Ridenhour), ¶76 (Mason), ¶78 (Whitesnake), ¶80 (Temptations), ¶82 (Donaldson), ¶84 (Black Sheep).  On the one hand, the implied covenant claims seem to be based on the same breaches, and allege the same damages, as Plaintiffs' express contract claims – that UMGR underpaid the royalties due to Plaintiffs for sales of digital permanent downloads and ringtones.  *See* CAC ¶¶125, 126 (UMGR has "improperly treat[ed] its transactions with Digital Content Providers who provide permanent downloads to consumers as sales rather than licenses and… fail[ed] to properly account and provide adequate royalty compensation to Plaintiffs and Class members with regard to licensing of master recordings to Digital Content Providers").  On the other hand, Plaintiffs now aver a variety of *extrinsic* facts relating to UMGR's alleged "course of performance" and "custom and practice," *e.g.*, CAC ¶¶16-17, 19, 97, 98, which suggest that Plaintiffs seek to have the contracts interpreted not based on plain "substantially similar" language but in light of this extrinsic evidence.

  **Interrogatories 29 and 30**, modeled on approved Judicial Council form interrogatories applicable to contract claims in California courts, concern the relevance and admissibility of Plaintiffs' "course of performance" and "custom and practice" allegations.  Interrogatory 29 asks Plaintiffs to identify, for each agreement alleged in the CAC, whether and in what manner they contend the agreement has been modified other than in writing (such as by UMGR's alleged "course of performance" and "custom and practice").  Such contentions (if any) are relevant both to the merits and to class certification, as many of Plaintiffs' and "class" contracts contain provisions prohibiting non-written modifications.  Such provisions are generally enforceable, *Tomlinson v. Qualcomm, Inc.*, 97 Cal. App. 4th 934, 945-46 (2002), absent certain individualized factual showings.  *E.g.*, *Malmstrom v. Kaiser Aluminum and Chemical Corp.*, 187 Cal. App. 3d 299, 321 (1986) (exploring whether oral modification was an "independent collateral agreement," was supported by new consideration, etc.).  Interrogatory 30 asks Plaintiffs to identify whether and in what manner they contend each such agreement is ambiguous.  This is important to both the merits and class certification because extrinsic evidence of "course of performance" or "custom and practice" is admissible *only* if a contract is ambiguous.  *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 52 (2010) (because term at issue was not ambiguous, "we do not consider course of performance evidence"); *Franconero v. Universal Music Corp.*, CV 12-3382 JGB (AGRx), at *8 (C.D. Cal. Apr. 11, 2013) (where "unambiguous language of the Agreements controls the royalty rate for digital downloads, extrinsic evidence including that related to the parties' 'course of dealing' is

The Honorable Maria-Elena James
July 18, 2013
Page 2

inadmissible."); *Wolf v. Walt Disney Pictures and Television*, 162 Cal. App. 4th 1107, 1126 (2008).

Plaintiffs refuse to disclose whether they contend the agreements are ambiguous or have been orally or impliedly modified, which makes it impossible to assess whether and how Plaintiffs intend to rely on their "course of performance" or "custom and practice" allegations at class certification and beyond. This cannot fairly wait until class certification briefing – for example, if UMGR knew that Plaintiffs do not contend the "class" agreements are ambiguous, UMGR could perhaps ignore these inadmissible allegations entirely. Or, if UMGR knew that Plaintiffs do not contend that the "class" agreements had been modified based on UMGR's course of performance, UMGR might at least be able to avoid a massive, comprehensive review and analysis of all of the varying provisions of the "class" agreements that prohibit nonwritten modifications.

Plaintiffs do not object to these interrogatories on relevance grounds. Rather, they claim they are unduly burdensome because UMGR "has produced over 14,000 … recording contracts for members of the putative class, which Plaintiffs are still in the process of reviewing." But Plaintiffs have now had UMGR's recording contracts for nearly 16 months. Nearly 10 months ago, in response to Plaintiffs' identical argument concerning other interrogatories, this Court stated that in the future, it "is less likely to be persuaded by Plaintiffs' request for additional time, considering Defendant is entitled to some discovery to oppose class certification and Plaintiffs will have by then had more time to review Defendant's documents and conduct any further discovery that they deem necessary." Dkt. 123, at 4. Plaintiffs' only other objection is that the interrogatory seeks information in UMGR's control. However, these interrogatories seek Plaintiffs' ***contentions***, which are not within UMGR's control or knowledge. *See* Fed. R. Civ. P. 33(a)(2) (interrogatory not objectionable because it seeks a contention that relates to the application of law to facts). "[T]he contention that the information is within the party's knowledge is a sophism; the question is not so much what the facts are, but what the adverse party contends that they are." 4 Moore, *Moore's Federal Practice* (2d ed.), at 2293-94, *quoted in V.D. Anderson Co. v. Helena Cotton Oil Co.*, 117 F. Supp. 932 (D. Ark. 1953). This objection is certainly no excuse not to provide whatever responsive information is in ***Plaintiffs'*** control.

**Interrogatories 31-35** seek to determine whether Plaintiffs' implied covenant claims involve alleged conduct and damages ***different from*** those on which Plaintiffs' express contract claims are based. This is important to the viability of Plaintiffs' implied covenant claims because "[i]f the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Malcolm v. JP Morgan Chase Bank, N.A.*, 2010 WL 934252, *6 (N.D. Cal. 2010). The existence and nature of independent conduct and damages are important not only to determine whether the implied covenant claims are viable, but also whether they are susceptible to classwide, common proof. *E.g.*, *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, *6 (S.D. Fla. 2013) (in putative class action, "a claim based on a breach of the implied covenant … requires examination of the particular circumstances of an individual case"). So, Interrogatory 31 asks Plaintiffs to explain how they have been injured, and how they calculate their damages, ***other than*** by UMGR's alleged underpayment of royalties. Interrogatories 32-35 ask Plaintiffs to state all facts, "[o]ther than UMGR's alleged underpayment of royalties," that support various allegations of the CAC seemingly pertinent to the implied covenant claim, *see* CAC ¶¶ 8, 9, 125, and for each, "how you will calculate Plaintiffs' and putative class members' alleged damages or restitution arising from such conduct of UMGR."

Plaintiffs' present responses are deficient, in at least two respects. *First*, Plaintiffs fail entirely to provide the requested damages formulae and calculations. Their response to Interrogatory 31 vaguely references "improper deductions" and "improper adjustments" without identifying what they are or why they were improper, let alone how they are separate from Plaintiffs' claims for

The Honorable Maria-Elena James
July 18, 2013
Page 3

underpayment of digital download royalties.  Their responses to Interrogatories 32-35 provide no damages calculation or formulae at all.  In stark contrast to how they responded (under court order) to Interrogatories 10 and 12 concerning the allegedly underpaid ***download royalties*** at issue on their *express* contract claims, here Plaintiffs do not "set forth, with particularity, a uniform method of calculating" damages from the supposedly distinct forms of improper conduct they vaguely allege in their implied covenant claim, or "explain the precise manner in which [such other] damages can be calculated."  *See* Order dated May 9, 2013, at 1-2 (Dkt. 157).  As the Supreme Court recently held, this information is crucial to class certification because the district court must conduct a "rigorous analysis" to determine whether Plaintiffs possess "admissible evidence … to show that the case is susceptible to awarding damages on a class-wide basis" which are just, reasonable, nonspeculative, and nonarbitrary.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1431 n.4, 1433-34 (2013) (district court erred by failing to scrutinize plaintiffs' proposed damages model at class certification stage).

*Second*, Plaintiffs also fail to provide the material or principal facts on which their implied covenant claim is based.  *See Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, *2 (N.D. Cal. 2012) (an interrogatory that requires a party to "state all facts" is permissible and simply requires a party to disclose all "material facts" as opposed to "trivial or non-material matters").  Plaintiffs provide essentially ***no*** facts in response to these interrogatories.  Their supplemental responses to Interrogatories 32 through 35 provide only a few unhelpful and unresponsive conclusory statements (*e.g.*, that UMGR exercises "authority and control" over its recordings and does not pay royalties "fairly and transparently") and then purport evasively to incorporate inapposite responses to two other interrogatories (24 and 31), neither of which request the same information.  "Responding to an interrogatory with a reference to another interrogatory or to a document or pleading is improper," *Pacific Lumber Co. v. National Union Fire Ins. Co. of Pittsburgh*, 2005 WL 318811, *4 (N.D. Cal. 2005), especially where, as here, they "seek separate types of information."  *Magarl, L.L.C. v. Crane Co.*, 2004 WL 2750252, *4 (S.D. Ind. 2004).  *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must … be answered separately").  Moreover, these other interrogatories themselves speak in useless, inapposite generalities.  [See Ex. C, Plaintiff's Supp. Responses to Interrogatories 23-25.]

Plaintiffs cannot continue to avoid discovery by claiming this two-year-old case is still in its "early stages."  UMGR has produced nearly a million pages of documents, and provided seven employees for deposition.  Even if discovery is not fully concluded, UMGR is entitled to know the factual basis on which Plaintiffs' implied covenant claim is ***presently*** based.

*Plaintiffs' Statement.*  **Interrogatory No. 29** in essence asks Plaintiffs to review every one of approximately 14,000 agreements and interview every putative class member (as well as any managers or representatives who may have been involved in the negotiation and finalization of each agreement) *and* review "nearly a million pages of documents" (by UMGR's own count) in order to identify any possible unwritten portion of each agreement, identify every written modification thereto (some of which may not have been produced in discovery by UMGR), state who participated in such modifications, and dentify any document that *may* reference the topics described above.  Plaintiffs have not had any contact with most members of the putative class.  To put it mildly, this request is extraordinarily burdensome and violates the rule of proportionality recognized in Fed. R. Civ. P. 26(b)(2)(C).

**Interrogatory No. 30** asks Plaintiffs to identify whether each contract at issue is ambiguous, "because extrinsic evidence of 'course of performance' or 'custom and practice' is admissible ***only*** if a contract is ambiguous." (Emphasis in original). UMGR overstates the scope of  California law on this issue. California's liberal parol evidence rule "requires courts to consider extrinsic evidence of possible ambiguity even where the terms of the contract appear unequivocal. And if a party's extrinsic evidence creates the possibility of ambiguity, a court may not rely on the text of the contract alone to determine the intent of the parties." *Foad Consulting Group v. Musil Govan Azzalino*, 270 F.3d 821, 828 (9th Cir. 2001*). Accord, e.g., United States*

The Honorable Maria-Elena James
July 18, 2013
Page 4

*v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *State Farm Life Ins. Co. v. Brockett*, 737 F.Supp.2d 1146, 1152-53 (N.D. Cal. 2010).[1] Here, for example, Plaintiffs contend that in the September 2002 memorandum from Michael Ostroff, UMGR's former Executive Vice-President of Business & Legal Affairs, UMGR unilaterally overrode provisions of existing contracts even in situations where the contract was not amended in writing.

**Interrogatory Nos. 31-35** consist of questions having a Part (a) and a Part (b). In Part (a) of Interrogatory Nos. 32-35, Plaintiffs are asked to state "all facts" about how UMGR: (i) "abused its powers under the recording and producer agreements so as to defeat their essential purpose, in both letter and spirit" (No. 32); (ii) "deliberately misled [artists and producers]" (No. 33); (iii) failed to "exercise [its] discretion in good faith and in accordance with fair dealing"[2] (No. 34); and (iv) "unfairly interfered with Plaintiffs' rights to receive benefits under their respective Recording Agreements" (No. 35). Part (a) of Interrogatory No. 31 asks how putative class members have been injured. These broad requests are facially deficient to the extent they seek "all facts" relating to those claims.[3] "Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."[4] The case law is clear that such narrative responses are not required.[5] This is especially true when discovery is ongoing. *Haggarty*, 2012 U.S. Dist. LEXIS 133375, at *5-*6 (quoting *Kim v. City of Santa Clara*, 2009 WL 4021389, at *3 (N.D. Cal Nov. 19, 2009)).

The real gravamen of UMGR's argument is not that Plaintiffs have provided no facts, but that the facts provided are not sufficiently different from those which support Plaintiffs' breach of contract claim. UMGR's analysis goes to the weight of the evidence, which is not the controlling standard on a motion to compel further discovery responses.[6] Rather than assessing

---

[1] The *Franconero* decision on which UMGR relies involved the construction of a contract pursuant to New York, not California, law.

[2] UMGR misquotes the CAC, which alleges: "[u]nder applicable law, where a contract confers on one party a power or discretion affecting the rights of the other, a duty is imposed to exercise such discretion in good faith and in accordance with fair dealing. By the course of conduct alleged herein, UMG has not acted in good faith or in accordance with fair dealing by, among other things, improperly treating its transactions with Digital Content Providers who provide permanent downloads to consumers as sales rather than licenses and by, among other things, failing to properly account and provide adequate royalty compensation to Plaintiffs and Class members with regard to licensing of recordings to Digital Content Providers. UMG has therefore unfairly interfered with Plaintiffs' rights to receive benefits under their respective Recording Agreements." CAC ¶ 125.

[3] *See, e.g.*, *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997); *Haggarty v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 133375, at *4 (N.D. Cal. Sept. 18, 2012 ) ("*Haggarty*"); *SEC v. Berry*, 2011 U.S. Dist. LEXIS 64437, at *13 (N.D. Cal. June 15, 2011) ("*Berry*"); *Bashkin v. San Diego County*, 2011 U.S. Dist. LEXIS 3439, at *5 (S.D. Cal. Jan 13, 2011) ("*Bashkin*"); *Bovarie v. Schwarzenegger*, 2011 U.S. Dist. LEXIS 17006, at *4 (S.D. Cal. Feb. 22, 2011); *Mancini v. Insurance Corp. of New York*, 2009 U.S. Dist. LEXIS 51321, at *18 (S.D. Cal. June 18, 2009); *In re eBay Seller Antitrust Litig.*, 2008 U.S. Dist. LEXIS 102815, at *6 (N.D. Cal. Dec. 11, 2008).

[4] *Montano v. Solomon*, 2010 U.S. Dist. LEXIS 113788, at *14 (E.D. Cal. Oct. 19, 2010) (quoting *Tubbs v. Sacramento County Jail,* 2008 WL 863974, at *1 (E.D. Cal. 2008)).

[5] *See, e.g.*, *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D. N.M. 2007); *Leeds LP v. United States*, 2011 U.S. Dist. LEXIS 6458 at *2 (S.D. Cal. Jan. 21, 2011); *Bashkin*, 2011 U.S. Dist. LEXIS 3439, at *5; *Gregg v. Local 305, IBEW*, 2009 U.S. Dist. LEXIS 40761, at *8 (N.D. Ind. May 13, 2009).

[6] A party may move to compel further discovery responses only "[i]f a party fails to make a disclosure required by Rule 26(a)" or replies to a discovery request with an "evasive or incomplete disclosure, answer, or response". Fed. R. Civ. Proc. 37(a)(3)(B); *Wilkerson v. Woodford*, 2010 WL 3126561, at *1 (E.D. Cal. Aug. 9, 2010).

The Honorable Maria-Elena James
July 18, 2013
Page 5

the sufficiency of the response under the federal discovery rules, UMGR is arguing the merits of the claims.  Not only does the CAC itself contain factual examples of UMGR's misconduct (*e.g.*, Dkt. No. 130 at ¶¶ 95-97, 102-104), but Plaintiffs' *First Supplemental* Responses included facts about UMGR's mischaracterizations and misrepresentations in the supplemental response to Interrogatory No. 24, which contained a detailed list that cited both deposition testimony and documents.  Plaintiffs cross-referenced this listing in response to several of the interrogatories at issue here. Such cross-referencing is perfectly permissible. *McConnell v. PacifiCorp, Inc.*, 2008 U.S. Dist. LEXIS 111017, at *8 (Aug. 15, 2008) (distinguishing the *Pacific Lumber* case on which UMGR relies).

In responding to Part (b) of Interrogatory No. 31 on how damages would be calculated, Plaintiffs pointed to: (i) not being paid at license rates for the distribution of digital downloads of their recorded performances; (ii) improper reductions in calculating "net receipts"; (iii) improper adjustments to digital download royalties that would apply only to physical products; (iv) non-restitutionary disgorgement, to the extent permitted by Cal. Bus. & Prof. Code §17200; and (v) statutory and punitive damages under N.Y. GBL §349 *et seq*.[7] UMGR contends the responses to Part (b) of Interrogatory Nos 31-35 are deficient because "[they] fail entirely to provide the requested damage formulae". However, UMGR *never asked* for a damage formula. Asking for a description of how damages will be calculated is not the same as asking for a damage formula. UMGR cannot compel further responses to a request that it never adequately articulated in the first place. *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 283 (C.D. Cal. 1999) (no merit in motion to compel information not specifically asked).

UMGR's new demand for a damage formula is also in conflict with the Court's prior rulings recognizing that some of the damages analysis will be provided by experts and therefore Plaintiffs need only provide "some information about [their] damages." Dkt. No. 138 at 4.

UMGR's reliance upon the Court's May 9, 2013 order (Dkt. No. 157) is misleading. That order *denied* UMGR's motion to compel further responses to Interrogatory Nos. 10 and 12. The language that UMGR quotes (*e.g.*, "explain the precise manner", "set forth, with particularity") is not the Court's, but comes from UMGR's interrogatories as originally propounded.

Throughout the process leasing up to this joint discovery letter, Plaintiffs have been acting in good faith. They agreed to and did supplement to Interrogatory Nos. 32-35 by providing both specific facts, as described above, and by pinpointing three pages of single-spaced bullet points set forth in the supplemented response to Interrogatory No. 24. UMGR's feigned ignorance as to the basis for the claim for breach of the implied covenant of good faith and fair dealing is part of its ongoing harassment of Plaintiffs through the discovery process. *See First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662 (D. Kan. 1996).

For all of the foregoing reasons, UMGR's motion to compel should be denied.

---

[7] The statutes cited have detailed remedial provisions specifying the types of relief that may be ordered. *See* Cal Bus. & Prof. Code §17203; NY GBL §349(h).

The Honorable Maria-Elena James
July 18, 2013
Page 6

    Sincerely,

| | |
|---|---|
| JEFFREY D. GOLDMAN of<br>Jeffer Mangels Butler & Mitchell LLP | MICHAEL P. LEHMANN  of<br>Hausfeld LLP |