| | |
|---|---|
| 1 | JEFFREY D. GOLDMAN (Bar No. 155589), JGoldman@jmbm.com |
| 2 | RYAN MAUCK (Bar No. 223173), RMauck@jmbm.com<br>BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com |
| 3 | JEFFER MANGELS BUTLER & MITCHELL LLP<br>1900 Avenue of the Stars, Seventh Floor |
| 4 | Los Angeles, California  90067-4308<br>Telephone:     (310) 203-8080 |
| 5 | Facsimile:      (310) 203-0567 |
| 6 | Attorneys for Defendant UMG RECORDINGS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest; CARLTON DOUGLAS RIDENHOUR, d/b/a "CHUCK D," individually and as a member of PUBLIC ENEMY; WHITESNAKE, a doing business as designation of David Coverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; DAVE MASON; OTIS WILLIAMS and RON TYSON, jointly d/b/a THE TEMPTATIONS; and ROBERT WALTER "BO" DONALDSON, individually and d/b/a BO DONALDSON AND THE HEYWOODS; WILLIAM MCLEAN, a/k/a "WILL MCLEAN" and p/k/a "MISTA LAWNGE," and ANDRES TITUS, p/k/a "DRES," jointly d/b/a BLACK SHEEP, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>      v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>          Defendant. | CASE NO.     CV11-01613 SI (MEJx)<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |

1    Pursuant to the Court's Standing Order, defendant UMG Recordings, Inc. and
2  plaintiffs submit this joint letter regarding a discovery dispute they were unable to resolve through
3  meet and confer, which took place via telephonic conference on December 13, 2012, as well as
4  through extensive but unsuccessful correspondence.

6  DATED: July 18, 2013                By: /s/ Jeffrey D. Goldman
                                              JEFFREY D. GOLDMAN
7                                        Attorneys for Defendant UMG RECORDINGS, INC.

8  DATED: July 18, 2013                By: /s/ Michael P. Lehmann
9                                          MICHAEL P. LEHMANN
                                           Attorney for Plaintiffs

July 18, 2013

The Honorable Maria-Elena James
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

    Re: *James v. UMG Recordings, Inc.* N.D. Cal. Case No. CV 11-1613 SI (MEJ)

Dear Magistrate Judge James:

  Plaintiffs and Defendant UMG Recordings, Inc. ("UMGR") submit this joint statement regarding an issue the parties were unable to resolve through the meet and confer process.

  *UMGR's Statement:*  UMGR requests that this Court order Plaintiffs to provide further responses to Interrogatories 24-25, which seek the factual basis for Plaintiffs' allegations as to whether, which, and to what extent Plaintiffs' and putative class members' claims are barred by statutory and contractual limitations.  In its May 2, 2013 Order [Dkt. 155], this Court directed UMGR to move to compel further responses to these interrogatories if necessary, rather than propound a new interrogatory seeking elucidation of the conclusory assertions in Plaintiffs' present, deficient responses (attached hereto as Exhibit A).[1]

  In their Consolidated Amended Complaint ("CAC"), Plaintiffs assert claims for breaches of their and putative class members' written contracts stretching back over 10 years, to the origin of digital downloads.  These claims reach back far beyond the statutes of limitations of any of the states whose laws will apply to Plaintiffs' and the "class" contracts, let alone the shorter, varying contractual limitations provisions present in all of the Plaintiffs' and most of the "class" contracts.  *E.g.*, *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1199 (2013) (under California law, even when doctrine of "continuous accrual" applies, it "supports recovery only for damages arising from those breaches falling within the limitations period.").  Plaintiffs claim that the statutory limitations periods of any state, and the contractual limitations provisions of any contract, are inapplicable to them and the "class" pursuant to the doctrine of "fraudulent concealment."  Interrogatories 24 and 25 appropriately seek to discover the material, principal facts on which this contention is based.  *See Haggarty v. Wells Fargo Bank, N.A.*, 2012 WL 4113341, *2 (N.D. Cal. 2012) (an interrogatory that requires a party to "state all facts" is permissible and simply requires a party to disclose all "material facts" as opposed to "trivial or non-material matters").

  Discovery of such factual contentions is important not only to determine if this claim of "fraudulent concealment" has any factual basis at all, but also to determine whether that basis (if any) implicates individualized issues that would weigh against (even if they might not necessarily foreclose) class certification.  *E.g.*, *In re Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 853 (9th Cir. 1982) ("individual issues may outnumber common issues" where "affirmative defenses (such as … the statute of limitations) may depend on facts peculiar to each plaintiff's case."); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) ("a necessity for individualized statute-of-limitations determinations invariably weighs against class certification."); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (where "each class member potentially had access to several alternative sources of the information alleged to have been fraudulently concealed from him," common issues did not predominate); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 532 (E.D.

---

[1] UMGR does not move to compel a further response to Interrogatory 23 at this time.  Deposition testimony has already revealed that Plaintiffs' response to Interrogatory 23, asserting that they all simultaneously learned their claim existed on the date the Ninth Circuit decided *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), is knowingly false (at least as to certain Plaintiffs).  This willful falsity will undermine their request to serve as class representatives.  *See* Fed. R. Civ. P. 11; *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 88 n.9 (D. Conn. 2009) (false discovery statements grounds for finding class representative inadequate).

1

The Honorable Maria-Elena James
July 18, 2013
Page 2

Tex. 2003) (where "the Plaintiffs rely on fraudulent concealment to avoid the potential bar of the statute of limitations … individual issues that will require inquiry into the knowledge and actions of each Plaintiff [may] persuade the court that common issues do not predominate"), *aff'd*, 100 Fed. Appx. 296 (5th Cir. 2004).  Especially where a case involves "so many claims and so many actors as to make it unwieldy and potentially unmanageable," a party should be required to "set out in one place and in an organized, focused fashion, the which, when, where, what and how" of the pertinent claim or defense.  *Cryptography Research, Inc. v. Visa Intern. Service Ass'n*, 2008 WL 346411, *1 (N.D. Cal. 2008); *see also Robinson Steel Co., Inc. v. Caterpillar, Inc.*, 2012 WL 3245987, *9 (N.D. Ind. 2012) ("in light of [plaintiff's] numerous claims that contain some element of fraudulent or deceptive conduct, [defendant] is entitled to know what specific acts or statements [plaintiff] believes give rise to such claims.").  Plaintiffs' response should provide at least the level of specificity that would be required to oppose a summary judgment motion on the issue.  *Lucero v. Valdez*, 240 F.R.D. 591, 595 (D. N.M. 2007) ("Defendants are not required to wait for [plaintiff's] response to their motion for summary judgment to find out the facts, documents and law that [plaintiff] contends supports his claims in this case.").

Even as Plaintiffs purport to demand potentially tens of millions of dollars of additional damages from UMGR based on the alleged tolling of the statute of limitations based on "fraudulent concealment," their responses to Interrogatories 24 and 25 appear to have been drafted by assigning a paralegal or intern to merely copy verbatim various conclusory and factually devoid sentences from their CAC, without identifying any actual *facts* supporting these conclusions:

- Plaintiffs state the bare conclusion that UMGR "sought to enlist the Licensees in its mischaracterization of licenses as 'resales' to facilitate its conduct toward its artists and producers."  This is copied almost verbatim from CAC ¶28.  A proper response would identify the "Licensees" UMGR sought to "enlist," describe how UMGR sought to "enlist" them, and state when these supposed events occurred.

- Plaintiffs refer vaguely to UMGR's supposed "sustained public relations effort designed to convince the public that it had employed 'groundbreaking' and 'enlightened' accounting practices that actually benefitted (rather than cheated) its artists and producers..."  Again, this is copied almost verbatim from CAC ¶28.  A proper response would identify *specific* public statements (whether written or oral), the persons who spoke or wrote them, their content, how and where they were disseminated, and at least the approximate dates they occurred.

- Plaintiffs assert that UMGR made unspecified public statements "characterizing its agreements with Licensees as 'resale' agreements" after the "Ninth Circuit's pivotal decision following years of contentious litigation in the *F.B.T.* case."  Again, this is copied almost verbatim from CAC ¶28.  Again, a proper response would identify *specific* public statements (whether written or oral), the persons who spoke or wrote them, their content, how and where they were disseminated, and at least the approximate dates they occurred.

- Plaintiffs claim that UMGR's royalty statements to its artists and producers "deliberately miscategorized and misrepresented the nature of permanent download income to them…"  This is copied almost verbatim from CAC ¶5.  A proper response would identify the specific manner in which the statements supposedly miscategorized or misrepresented the nature of such income, and if only certain statements to certain artists allegedly did so, the particular statements containing the alleged misrepresentations and the approximate dates they issued.

- Plaintiffs cite to unspecified "white papers."  This simply copies an odd phrase Plaintiffs use in CAC ¶29.  A proper response would *identify* the "white papers" (whatever that means) by title, date, author, and at least an approximate date – or simply delete the reference if (as UMGR suspects) this is just a made-up phrase and there are no such "white papers."

The Honorable Maria-Elena James
July 18, 2013
Page 3

- Plaintiffs make conclusory reference to a "host of unfair tactics and strategies" UMGR has employed "in its dealings with artists … to minimize its exposure from the unlawful conduct at issue here." Again, this is simply copied nearly verbatim from CAC ¶29. A proper response would actually *identify* by date, individual, etc., these "unfair tactics and strategies" (which should not be difficult since there are supposedly a "host" of them) and (if they occurred at all) *when* they occurred (to determine whether they misled all artists at the same time in the same way or at different times and in different ways).

- Plaintiffs refer generally to unspecified "pleadings in the *F.B.T.* case," a case with 950 docket entries, but fail to identify *which* pleadings they are referring to. This is obviously insufficient. "A party cannot note 'that all facts can be found within the entire universe of documents involved in the underlying litigation' to answer an interrogatory since 'referring to a wide universe of documents does not specify the records in sufficient detail.'" *Haggarty*, 2012 WL 4113341, at *3 (citation omitted).

- Plaintiffs even allege that UMGR concealed publicly-made "Congressional testimony given in 2008 by [UMGR executive] Jeffrey Harleston" – an allegation that seems ludicrous on its face, and without providing any facts explaining how UMGR could possibly have "concealed" such public testimony.

These are not good-faith discovery responses. They are pure gamesmanship, calculated to disclose no facts at all. Plaintiffs should be ordered to respond fully, with material *facts*, to Interrogatories 24 and 25.

*Plaintiffs' Statement.* Interrogatory Nos. 24 and 25 ask Plaintiffs to "state all facts" supporting their contentions about delay, tolling or extension of the accrual date(s) of any of Plaintiffs' claims against UMGR. After meeting and conferring with UMGR, Plaintiffs agreed to and did provide supplemental responses in good faith. Plaintiffs' *First Supplemental* Responses to Defendant UMG Recordings, Inc.'s Fourth Set of Interrogatories, Nos. 23-25, attached as Exhibit A. Although discovery s not complete, Plaintiffs supplemented their responses to these two interrogatories by providing 14 single-spaced bullet points spread over three pages that set forth their factual contentions as to delay, extension or tolling of the accrual dates for the various causes of action set forth in the CAC. *Id.* at 10-13. Among the matters that they pointed out were the following.They pointed out how UMGR pressured Digital Content Providers ("DCPs"), such as Apple, to refer to the transaction between them and UMG as "sales" rather than "licenses." They cited UMGR's companywide policy to pay artists for digital downloads at rates applicable to sales, as memorialized in a September 2002 memorandum ("Ostroff Memo") from Michael Ostroff ("Ostroff"), former Executive Vice-President of Business & Legal Affairs for UMGR, which was implemented in the fourth quarter of that year by Ostroff and Zach Horowitz ("Horowitz"), former President and COO of UMGR and now Chairman and CEO of Universal Music Publishing Group. They pointed to deposition testimony (with numerous page citations) from Ping Hu ("Hu"), UMGR's Director of Royalties, on how the policies set forth in the Ostroff Memo were implemented across the board in UMGR's computerized royalty programs, which "deliberately miscategorized" the nature of digital download income to artists and producers. Plaintiffs further noted how UMGR obstructed access to its contracts with DCPs (again citing to portions of Hu's testimony), which only became available in the course of this litigation. They also noted that UMGR commenced a public relations campaign to misleadingly characterize the policies set forth in the Ostroff Memo as being beneficial to artists and producers, a plan reflected in the document itself and in a 2004 letter to artists' representatives that Plaintiffs quoted. Plaintiffs additionally pointed to the fact that UMGR's disinformation efforts continued even after the Ninth Circuit's decision in *F.B.T. Productions, Inc. v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1677 (2011). And Plaintiffs pointed out how their efforts to discover further evidence of UMGR's acts of concealment have so far been thwarted

The Honorable Maria-Elena James
July 18, 2013
Page 4

by UMGR's broad assertions of privilege in its privilege log, which is currently the subject of discussions between the parties.

UMGR contends that these responses merely parrot what is in the CAC. That is manifestly untrue; the citations to Hu's testimony, to use one example, could not have been included in the CAC. Moreover, the fact that the CAC itself, filed months after the initial complaint, contains a recitation of specific facts relevant to UMGR's misleading conduct does not create for Plaintiffs a burden to find some larger quantum of additional facts on that subject. That document is already quite specific. For example, it contains specific allegations about how UMGR's current positions on the categorization of digital downloads are inconsistent with initial statements made by Apple and testimony by Jeffrey Harleston, now a Senior Vice-President of Business & Legal Affairs for UMGR, which are quoted *verbatim*. Dkt. No. 130 at ¶¶102-04. It also contains detailed allegations of the policies set forth in the Ostroff Memo and how they were implemented. *Id*., ¶¶95-97. Thus, considering all sources, UMGR has ample information about Plaintiffs' claims of delay, extension or tolling of accrual.

In light of all of the foregoing, UMGR's motion should be denied. Interrogatory Nos. 24 and 25 were facially deficient to the extent they sought "all facts" relating to those claims.[2] "Parties are not tasked with laying out every jot and tittle of their evidentiary case in response to interrogatories."[3] Even if the interrogatories are construed to require the recitation of only material factual contentions, Plaintiffs' supplemental responses are more than adequate. *See, e,g., Berry*, 2011 U.S. Dist. LEXIS 64437, at *14 (four-page summary of contentions that referred no documents or deposition testimony sufficed); *Pablo v. ServiceMaster Global Holdings, Inc.,* 2011 U.S. Dist. LEXIS 21213, at *6-*7 (N.D. Cal. Feb. 17, 2011) (Illston, J.) (interrogatory responses providing "one or two basic details" about the claim and a single paragraph on damages sufficed); *Tubbs*, 2008 WL 863974, at *1 (underlying "evidentiary facts" are not required in response to general liability theory contention interrogatory). The case law is clear that a Court will not compel a responding party to answer an interrogatory in the manner the requesting party "sees fit to dictate." *Bashkin,* 2011 U.S. Dist. LEXIS 3439, at *45.[4]

---

[2] *See, e.g.*, *Hilt v. SFC, Inc.,* 170 F.R.D. 182, 186-87 (D. Kan. 1997); *Haggarty v. Wells Fargo Bank, N.A*., 2012 U.S. Dist. LEXIS 133375, at *4 (N.D. Cal. Sept. 18, 2012 ) ("*Haggarty*"); *SEC v. Berry*, 2011 U.S. Dist. LEXIS 64437, at *13 (N.D. Cal. June 15, 2011) ("*Berry*"); *Bashkin v. San Diego County*, 2011 U.S. Dist. LEXIS 3439, at *5 (S.D. Cal. Jan 13, 2011) ("*Bashkin*"); *Bovarie v. Schwarzenegger* , 2011 U.S. Dist. LEXIS 17006, at *4 (S.D. Cal. Feb. 22, 2011); *Mancini v. Insurance Corp. of New York* , 2009 U.S. Dist. LEXIS 51321, at *18 (S.D. Cal. June 18, 2009); *In re eBay Seller Antitrust Litig*., 2008 U.S. Dist. LEXIS 102815, at *6  (N.D. Cal. Dec. 11, 2008).

[3] *Montano v. Solomon*, 2010 U.S. Dist. LEXIS 113788, at *14 (E.D. Cal. Oct. 19, 2010) (quoting *Tubbs v. Sacramento County Jail,* 2008 WL 863974, at *1 (E.D. Cal. 2008) ("*Tubbs*")).

[4] The cases cited by UMGR are readily distinguishable from the contention interrogatories at issue. *Cryptography Research* involved numerous patent infringement claims wherein the court ordered the responding party to provide its response in one place rather than by incorporating prior responses.  2008 WL 346411, at *1 Here, Plaintiffs' supplemental responses describing supportive facts are contained in one place in an organized manner.  The interrogatories at issue in *Robinson Steel* asked plaintiff to "identify" specific communications and documents in support of allegations in the complaint.  This differs from an interrogatory asking for supportive facts.  *Robinson Steel*, 2012 WL 3245987, at *6 (motion to compel information not asked in interrogatory denied).  UMGR cannot rewrite the interrogatories by way of a motion to compel. *Broussard*, *Piggly Wiggly Clarksville*, *Dalkon Shield* and *Waste Management Holdings* are also inapposite because they are class certification cases analyzed under Fed. R. Civ. P. 23, *not* discovery motions.

The Honorable Maria-Elena James
July 18, 2013
Page 5

One of the factors that courts consider in assessing the sufficiency of interrogatory responses is the parties' access to the information at issue. As stated in *Haggarty*, in assessing the sufficiency of interrogatory responses, courts consider "the parties' relative access to information"; where the defendants have access to "most of the evidence about their own behavior," making plaintiffs respond to interrogatories about that behavior while discovery is ongoing is not "sufficiently likely to be productive to justify the burden that responding can entail." 2012 U.S. Dist. LEXIS 133375, at *5-*6 (quoting *Kim v. City of Santa Clara*, 2009 WL 4021389, at *3 (N.D. Cal Nov. 19, 2009)). Here, discovery is still taking place and no cutoff date has been scheduled. The depositions of Ostroff and Horowitz have yet to take place. Issues have been raised about the adequacy of UMGR's privilege logs, which are the subject of ongoing discussions among the parties that may result in the partial or full production of some documents listed in them. UMGR has only recently advised Plaintiffs that hundreds of thousands of saved e-mails were found in the personal possession of Horowitz, which are also the subject of ongoing discussions and which should result in the production of more relevant documents.

In sum, Plaintiffs' responses describe the material facts as known by Plaintiffs at this time regarding UMGR's conduct in delaying, extending, or tolling the accrual of Plaintiffs' claims. They provide specific facts regarding UMGR's alleged fraudulent scheme. They include references to various dates, references to specific UMGR executives, citations to and quotations from specific documents and an explanation of how Plaintiffs contend UMGR carried out its scheme to deceive artists and producers. This more than satisfies the requirements of Federal Rule of Civil Procedure 33.

Finally, Plaintiffs note that UMGR's practice in this case has been to compel the submissions of joint letters to the Court for virtually every dispute it has raised concerning discovery, regardless of the merits. Often, as is the case here, it has made baseless accusations of bad faith. What is happening here is exactly what the court in *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 662 (D. Kan. 1996) decried: "[t]he Federal Rules of Civil Procedure contemplate a reasonable period of time for reasonable discovery. The Court finds nothing to suggest the Rules are designed to open the floodgates for uncontrolled, excessively time-consuming searches and flows of words and documents, simply because a lawsuit has been filed. In some instances the appetite for information and documents under a rubric of reasonable discovery has overgrown an underlying case, preoccupying counsel with minutiae and detail to the extent it becomes more harassing than productive. Too often such a case has bogged down with subsidiary disputes and motion practice over discovery matters, far beyond what the issues justify or what either clients or the Court should tolerate." That is what UMGR has caused here.

Plaintiffs have fully responded to Interrogatory Nos. 24 and 25. UMGR's motion to compel lacks merit and should be rejected.

Sincerely,


JEFFREY D. GOLDMAN of                MICHAEL P. LEHMANN of
Jeffer Mangels Butler & Mitchell LLP        Hausfeld LLP