| | |
|---|---|
| 1 | JEFFREY D. GOLDMAN (Bar No. 155589), JGoldman@jmbm.com |
| 2 | RYAN MAUCK (Bar No. 223173), RMauck@jmbm.com BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com |
| 3 | JEFFER MANGELS BUTLER & MITCHELL LLP 1900 Avenue of the Stars, Seventh Floor |
| 4 | Los Angeles, California  90067-4308 Telephone:     (310) 203-8080 |
| 5 | Facsimile:      (310) 203-0567 |
| 6 | Attorneys for Defendant UMG RECORDINGS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 11 | RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest; CARLTON DOUGLAS RIDENHOUR, d/b/a "CHUCK D," individually and as a member of PUBLIC ENEMY; WHITESNAKE, a doing business as designation of David Coverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; DAVE MASON; OTIS WILLIAMS and RON TYSON, jointly d/b/a THE TEMPTATIONS; and ROBERT WALTER "BO" DONALDSON, individually and d/b/a BO DONALDSON AND THE HEYWOODS; WILLIAM MCLEAN, a/k/a "WILL MCLEAN" and p/k/a "MISTA LAWNGE," and ANDRES TITUS, p/k/a "DRES," jointly d/b/a BLACK SHEEP, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO.    CV11-01613 SI (MEJx)<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |

1  Pursuant to the Court's Standing Order, defendant UMG Recordings, Inc. and
2  plaintiffs submit this joint letter regarding a discovery dispute they were unable to resolve through
3  meet and confer, which took place via telephonic conference on June 11, 2013.

5  DATED: August 15, 2013         By: /s/ Jeffrey D. Goldman
                                       JEFFREY D. GOLDMAN
6                                  Attorneys for Defendant UMG RECORDINGS, INC.

8  DATED: August 15, 2013         By: /s/ Michael P. Lehmann
                                       MICHAEL P. LEHMANN
                                       Attorney for Plaintiffs

PRINTED ON
RECYCLED PAPER

LA 9832714v1

- 2 -  Cover Page For Joint Letter Re Discovery Dispute

August 15, 2013

The Honorable Maria-Elena James
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA  94102

        Re:    *James v. UMG Recordings, Inc.* N.D. Cal. Case No. CV 11-1613 SI (MEJ)

Dear Magistrate Judge James:

      Plaintiffs and Defendant UMG Recordings, Inc. ("UMGR") submit this joint statement regarding an issue the parties were unable to resolve through the meet and confer process.

      ***UMGR's Statement:***  In this Court's May 2 Order, it denied UMGR leave to serve Interrogatories 46-48, based largely on Plaintiffs' argument that UMGR should instead meet and confer on UMGR's previously-served Interrogatories 14-22 and, if the meet and confer is unsuccessful, file "a motion to compel in the form of a joint letter."  Dkt. 155, at 2-3.  As Plaintiffs continue to refuse to respond to the interrogatories despite the meet and confer, UMGR hereby moves to compel full responses to Interrogatories 14-22, in the form attached hereto as Ex. A.[1]

      The relevance and materiality of Interrogatories 14-22 is explained in UMGR's previously-filed joint letter on the issue (Dkt. 117, at 2-3, incorporated by this reference). Plaintiffs have played a cat-and-mouse game on these interrogatories, erecting a series of procedural roadblocks that has forced UMGR to bring three motions on this issue.[2]  As discussed below, under the circumstances this Court would be fully justified in revisiting its prior denial of UMGR's request to propound Interrogatories 46-48 as an updated alternative to Interrogatories 14-22.  *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance."). The relevance and materiality of Interrogatories 46-48 is explained in Dkt. 152, at 2-3 (incorporated by this reference).  One way or the other, Plaintiffs should be required to respond without objection to some version of these interrogatories.

      When Plaintiffs opposed UMGR's original motion on Interrogatories 14-22 last September, they argued that the interrogatories were "a complete waste of time ... because [they] have become moot" in light of Plaintiffs' proposed Consolidated Amended Complaint ("CAC") Dkt. 117, at 3, 5.  Plaintiffs argued that the CAC "does not make reference to 'standard recording agreements'" (a term used in some of their original Complaints, and in some of the interrogatories) and "does not assert that [the 'class' contracts] are identical[.]"  *Id.* at 4 & n.4. Quoting another court in this District, Plaintiffs lamented "why [UMGR] does not simply

---

[1] The attached interrogatories were propounded on defendant William McLean, who was added as a plaintiff in October 2012 in the CAC.  UMGR propounded identical interrogatories on the two other defendants added in the CAC, Andres Titus and Bo Donaldson.  These interrogatories were identical to the versions of Interrogatories 14-22 earlier propounded on the pre-existing plaintiffs, except that they replaced the definitional terms originally used in Interrogatories 14-22 with the term "production and recording agreements," a term used in the CAC.  UMGR asks that all Plaintiffs be ordered to respond to the version of Interrogatories 14-22 attached as Exhibit A.

[2] Similar to the tack they took in their portion of the parties' last joint letter, Plaintiffs will perhaps seek to blame UMGR for supposedly burdening the Court with multiple motions on this issue, ignoring that it is Plaintiffs' game-playing and refusal to compromise that has necessitated the motions.  Plaintiffs have made a strategy of objecting to essentially all of UMGR's discovery requests, forcing UMGR to either file motions or basically forego discovery entirely.  By contrast, when Plaintiffs have initiated disputes with UMGR, UMGR has abided in good faith with the meet and confer process, compromising on disputes initiated by Plaintiffs and providing massive amounts of discovery – over a million pages of documents and eight depositions so far.

1

The Honorable Maria-Elena James
August 15, 2013
Page 2

propound new discovery directed at the relevant operative pleading," the CAC.  *Id*. at 5.  This Court denied UMGR's motion without prejudice, ordering a "meet and confer to determine how [Judge Illston's ruling on the CAC] has affected the discovery disputes at issue."  Dkt. 123, at 4.

After Judge Illston permitted the CAC to be filed, UMGR initially re-propounded Interrogatories 14-22 on the three new plaintiffs added to the CAC, with minimal variations.  *See* n.1.  Plaintiffs still objected.  So, though UMGR certainly did not agree that the interrogatories were moot, it nevertheless then sought to do what Plaintiffs had specifically proposed – "propound new discovery directed at" the CAC. UMGR's proposed Interrogatories 46-48 served a similar purpose to Interrogatories 14-22, while addressing Plaintiffs' objection that the CAC no longer alleges that the "class" contracts are identical and that Interrogatories 14-22 "are unanswerable as to non-identical contracts" (Dkt. 117, at 4). So where Interrogatories 14-22 asked Plaintiffs to state the definition of various terms such as "record" in the "class" contracts, Interrogatories 46-48 would ask Plaintiffs to state whether, *e.g.*, Music Downloads (defined as the CAC uses the term) "are or are not records" under those contracts. *E.g.*, Ex. B, at 5.

But Plaintiffs refused to stipulate to service of these amended interrogatories.  And when UMGR sought leave to serve them, explaining to the Court that they "largely replace and supersede UMGR's former interrogatories 14-22," Dkt. 152, at 2, Plaintiffs seized on this statement to misleadingly argue that UMGR "essentially concedes" that Interrogatories 46-48 "are redundant of prior interrogatories," and "UMGR's remedy is to meet and confer on those prior requests[.]" *Id*. at 4.  Plaintiffs did not disclose that those "prior requests" were the very interrogatories Plaintiffs had previously derided as "moot" and to which they had repeatedly objected – and continue to object.

Interrogatories 14-22 are not moot or a waste of time, nor should they be difficult or time-consuming for Plaintiffs to answer.  They will reveal the existence of specific ways in which the contracts differ, and present uncommon issues.  Contrary to Plaintiffs' contention, their supposed admission (in a discovery *letter*, not a sworn response) that the contracts are "non-identical" in general (Dkt. 117, at 4 n.4) does not help identify *specific* differences and uncommonalities.  If, as Plaintiffs previously asserted, it is a "now-undisputed point" that the "class" contracts do not state a single definition of terms like "record" or "distributor," *id*., it will be effortless for them to concede the point in a sworn response.  They will remain free to argue to Judge Illston that some of these interrogatories "deal with matters not related to this case," as they previously asserted.  *Id*. at 4 n.3.  Alternatively, if they contend the "class" agreements *do* define a particular term identically, it will be just as easy for them to disclose what they contend that common definition is.

Last September, Plaintiffs' only other argument against answering Interrogatories 14-22 was that they had only just begun reviewing 14,000 "class" contracts produced from December 2011-March 2012, and "a substantial portion of discovery remains[.]"  Dkt. 117, at 3-4.  In response, this Court stated "that if Defendant raises these same issues again, the Court is less likely to be persuaded by Plaintiffs' request for additional time, considering Defendant is entitled to some discovery to oppose class certification and Plaintiffs will have by then had more time to review Defendant's documents and conduct any further discovery that they deem necessary."  Dkt. 123, at 4 n.3.  It is now almost a year later; class discovery is mostly done, and what remains[3] has nothing to do with

---

[3]  Plaintiffs apparently intend to depose a few additional high-level UMGR executives. Their claim that "hundreds of thousands of saved emails" on the computer of one of these executives, former UMGR President Zach Horowitz, could be relevant to their discovery responses is a red herring.  There is no basis to conclude that these emails even concern any issues in this case, let alone affect what Plaintiffs contend certain terms in "class" contracts produced 18 months ago mean.  Horowitz was one of UMGR's most senior executives, whose normal duties did not include negotiating individual artist contracts.  Further, even if Horowitz was involved in a "decision to change how artists and producers are paid for digital downloads," as Plaintiffs assert, they concede that this decision was memorialized in a document they already have, "a September 2002 memorandum from [Michael] Ostroff."

The Honorable Maria-Elena James
August 15, 2013
Page 3

the definitions of terms contained in written contracts produced 18 or more months ago. Contrary to Plaintiffs' newly minted argument, interrogatories may elicit a party's contentions concerning "the meaning of contract terms." *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 119 (N.D. Ga. 1972). Neither of the cases Plaintiffs cite say anything remotely to the contrary. And because these interrogatories concern issues pertinent to class certification – the similarities and differences among the "class" contracts – Plaintiffs' request to defer answering them until the close of fact discovery or the pretrial conference makes no sense and would defeat their purpose.

Plaintiffs' argument that Interrogatories 14-22 are somehow duplicative of certain Requests for Admission ("RFAs") UMGR propounded is also meritless, as those RFAs (which differ for each Plaintiff) are not directed to the "class" contracts, but to particular provisions of each Plaintiff's individual contract. They serve different purposes: while the interrogatories explore whether issues common to the "class" exist that can manageably be adjudicated together (*i.e.*, commonality, superiority), the RFAs concern whether the issues in dispute for each individual Plaintiff are typical of the overall "class," such that that Plaintiff's claims could appropriately serve as a proxy for absent class members' claims (*i.e.*, typicality, adequacy of representation). In any event, Plaintiffs have largely refused to answer the RFAs as well. *See*, *e.g.*, Dkt. 167 (filed herewith). They can hardly argue that Interrogatories 14-22 are unnecessarily "cumulative" of RFAs they also won't answer.

Finally, Plaintiffs' inconsistent positions highlight why this Court can and should revisit allowing service of Interrogatories 46-48. *Christianson*, 486 U.S. at 817. As discussed above, Plaintiffs induced the Court to deny leave to serve these improved interrogatories tailored to the CAC by misleadingly arguing that Interrogatories 14-22 were just as effective – failing to disclose that they themselves had previously argued that Interrogatories 14-22 were "moot" and therefore a "complete waste of time." Dkt. 117, at 3, 5. If Interrogatories 14-22 are really moot, then there is no reason not to allow Interrogatories 46-48 (which, if given a choice, UMGR would prefer, as they are more closely aligned with the allegations of the CAC). But if Interrogatories 46-48 are impermissibly "redundant" of Interrogatories 14-22, as Plaintiffs inconsistently argued in March of this year (Dkt. 152, at 4), then the Court should order Plaintiffs to respond fully to Interrogatories 14-22. One way or the other, Plaintiffs should be ordered to respond. It cannot be the law that plaintiffs can "moot" 9 of a defendant's 25 automatically-permitted interrogatories by amending their complaint, then also prevent the defendant from replacing those interrogatories with improved versions tailored to the new pleading, resulting in a complete denial of discovery on the issue.

***Plaintiffs' Statement:*** As the Court can see, another week brings another brace of motions to compel by UMGR in its ceaseless efforts to keep Plaintiffs and the Court busy with a never-ending demand for answers to UMGR's questions. Asking Plaintiffs over and over again to explain their case and their theory of class certification (the motion for which is not yet scheduled before Judge Illston) is abusive and should be brought to an end.

Interrogatories Nos. 46-48. In its May 2, 2013 order ("5/2 Order"), the Court denied UMGR's request to serve Interrogatories Nos. 46-48. Dkt. No. 155 at 3. UMGR now asks the Court to "revisit" that ruling. A court's orders, however, are not "first drafts, subject to revision and reconsideration at a litigant's pleasure*." Davis Moreno Constr., Inc. v. Frontier Steel Buildings. Corp.*, No. CV-F-08-854 OWW/SMS, 2009 U.S. Dist. LEXIS 104167 at *4 (E.D. Cal. Nov. 9, 2009) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1985)). If UMGR wanted to move for reconsideration, it would have had to seek leave to do so under N.D.

---

Regardless, in the unlikely event such extrinsic evidence is relevant (i.e., if the "class" agreements are ambiguous) and affects Plaintiffs' contentions, Plaintiffs could amend their responses consistent with the provisions of Fed. R. Civ. P. 26.

The Honorable Maria-Elena James
August 15, 2013
Page 4


Cal. Civ. L. R. 7-9(a), which applies to all orders, including discovery orders.[4] As part of any such motion, UMGR would have had to show "a material difference in fact or law" from the time that the order was issued or a "manifest failure" by the Court to consider material facts in issuing its order. UMGR has failed to meet these stringent criteria. It points to Plaintiffs' refusal to stipulate to re-propoundments of Interrogatories Nos. 14-22 and their position concerning them, but those facts were before the Court when it issued its 5/2 Order. Dkt. No. 155 at 2-3. Thus, UMGR is also running afoul of Local Civil Rule 7-9(c), which states: "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered. Any party who violates this restriction shall be subject to appropriate sanctions." In short, since UMGR has flouted numerous requirements of Local Civil Rule 7-9, its request to "revisit" the 5/2 Order should be rejected out of hand.

   <u>Interrogatories Nos.14-22</u>. These interrogatories are objectionable on a number of grounds.

  *First*, they refer to "Class-UMG Recording Agreements" (or similar terms) found in initial complaints, but not in the Consolidated Amended Complaint filed in this litigation. "Simply put, when the allegations at issue have been removed, requests for admissions and interrogatories directed specifically at those allegations lack foundation." *Nelson v. Capital One Bank*, 206 F.R.D. 499, 501 (N.D. Cal. 2001) (cited in Dkt. No. 123 at 4 n.3).

  *Second*, these interrogatories ask in the abstract for the general legal meanings of terms supposedly found in the "Class-UMG Recording Agreements", such as "record clubs," "club operation," "distributor," "distribution," "licensees," "net sales," or "normal retail channels." These are questions of "pure law," which courts have found to be impermissible subjects for interrogatories. *E.g., O' Brien v. Int'l Bhd. of Electrical Workers*, 443 F.Supp. 1182, 1187-88 (N.D. Ga. 1977); *Trueman v. New York State Canal Corp.*, No. 1:09-CV-049 (LEK/RFT), 2010 U.S. Dist. LEXIS 16430, at *10 (N.D.N.Y. Feb. 23, 2010).

  *Third,* even if these contention interrogatories are assumed to delve into appropriate topics, responses to them are premature until discovery has closed or is otherwise near completion. *In re Convergent Tech. Secs. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985); *In re eBay Seller Antitrust Litig.*, No. C 07-1882 JJF, 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008). Federal Rule of Civil Procedure 33(a) (2) itself states with respect to interrogatories concerning the application of law to fact that "the court may order that the interrogatory need not be answered until after designated discovery has been completed…." The Advisory Committee Notes to Rule 33 contain a similar caution, noting: "[s]ince interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer. Likewise, the court may delay determination until pretrial conference, if it believes that the dispute is best resolved in the presence of the judge." *See In re H & R Block Mortg. Corp.*, No. 2:06-MD-230, 2006 U.S. Dist. LEXIS 90270, at *17-*18 (N.D. Ind. Dec. 13, 2006) (deferring plaintiff's answers to interrogatories until the summary judgment phase of the case, after fact discovery had closed).

  Here, discovery is far from complete and no cutoff date has been scheduled. The depositions of Michael Ostroff ("Ostroff"), former Executive Vice-President of Business & Legal Affairs for UMGR, and Zach Horowitz (Horowitz"), former President and COO of UMGR and now Chairman and CEO of Universal Music Publishing Group, have yet to take place. Issues have been raised about

---

[4] *E.g.*, "Order Re: Plaintiff's Motion for Leave To File A Motion For Reconsideration Of The Court's Order Granting Plaintiff's Motion To Compel In Part," at 1-2 (Feb. 16, 2012) in *Greer v. Electronic Arts, Inc*., No. C10-3601 RS (JSC) (N.D. Cal.) (Dkt. No. 108); "Order Granting In Part Defendant's Motion for Reconsideration," at 4-5 (July 12, 2010) in *Big Lagoon Rancheria v. State of Calif.*, No. 4:09-civ-01471 CW (N.D. Cal.) (Dkt. No. 91).

The Honorable Maria-Elena James
August 15, 2013
Page 5

the adequacy of UMGR's privilege logs, which are the subject of ongoing discussions among the parties that may result in the partial or full production of some documents listed in them. Plaintiffs have also propounded additional document requests directed to UMGR's royalties and accounting practices pursuant to its contracts with the named class representatives; this discovery could provide evidence about how the contracts at issue are to be interpreted.[5] Discussions about how to respond to those requests were first held on August 6, 2013 and it is anticipated that follow-up discussions will be necessary. In addition, UMGR has only recently advised Plaintiffs that it found hundreds of thousands of saved e-mails in the personal possession of Horowitz, which are the subject of ongoing discussions. Those discussions should result in the production of more relevant documents. UMGR assumes that there is no basis to conclude that these e-mails affect the issues in this case. Plaintiffs disagree, given that Horowitz was one of those at UMGR who made the decision to change how artists and producers are paid for digital downloads (and whose name appears repeatedly on logs of allegedly privileged documents relating to thsat decision), as reflected in a September 2002 memorandum from Ostroff. The Ostroff memorandum makes it clear that UMGR was willing to override unilaterally the terms of artist/producer contracts when it thought doing so served its purposes.

*Fourth*, Interrogatories Nos. 14-22 are duplicative of its Requests for Admissions ("RFAs") on similar topics. This duplication and cumulativeness are factors that the Court should consider in denying UMGR's motion to compel responses to these interrogatories. They flout the rule of proportionality embodied in Rule 26(b)(2)(C)--the purpose of which is to "guard against redundant or disproportionate discovery." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 09-5856 (GEB), 2008 WL 1757929, at *14 (D.N.J. Feb. 27, 2008). The Court must limit discovery if it determines: (1) the discovery sought is cumulative or duplicative, or can better be obtained from some other source; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C)(i)-(iii); *Lehman Bros. Holdings, Inc. v. CMG Mortg., Inc.*, No. CV 10-0402 SC (NJV), 2011 WL 203675, at *2 (N.D.Cal. Jan. 21, 2011). Northern District of California Civil Local Rule 37-2 embodies this requirement, stating that one moving to compel discovery "must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." As noted in *Plascencia v. BNC Mortg. (In re Plascencia)*, No. 08-56305-ASW, 2012 Bankr. LEXIS 2855, at *9-*10 (Bnkrtcy. N.D. Cal. June 12, 2012), "[t]his requires the Court to consider, for example, whether the discovery sought is unreasonably cumulative or can be obtained more easily or more cheaply from another source, as well as whether the burden of requiring the discovery outweighs the likely benefit." UMGR attempts to defend itself by asserting that Interrogatories Nos. 14-22 go to "class" contracts, whereas the RFAs deal with the contracts of individual named Plaintiffs. This is a distinction without a difference. Interrogatories Nos. 14-22 are drafted on the premise that the "class" contracts do not differ materially from the individual contracts and that one answer can cover all of them.

In sum, UMGR's motion to revisit the 5/2 Order should be rejected out of hand as violative of the local rules. Its motion to compel responses to Interrogatories Nos. 14-22 should be denied as well, for the reasons stated above.

---

[5] UMGR contends that extrinsic evidence is available in interpreting the artist/producer contracts in question only if they are first found to be ambiguous. That argument is based on a miscomprehension of California law. California's liberal parol evidence rule "requires courts to consider extrinsic evidence of possible ambiguity even where the terms of the contract appear unequivocal. And if a party's extrinsic evidence creates the possibility of ambiguity, a court may not rely on the text of the contract alone to determine the intent of the parties." *Foad Consulting Group v. Musil Govan Azzalino*, 270 F.3d 821, 828 (9th Cir. 2001*). Accord, e.g., United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *State Farm Life Ins. Co. v. Brockett*, 737 F.Supp.2d 1146, 1152-53 (N.D. Cal. 2010).

The Honorable Maria-Elena James
August 15, 2013
Page 6

Sincerely,


JEFFREY D. GOLDMAN of					MICHAEL P. LEHMANN of
Jeffer Mangels Butler & Mitchell LLP			Hausfeld LLP