| | |
|---|---|
| 1 | JEFFREY D. GOLDMAN (Bar No. 155589), JGoldman@jmbm.com |
| 2 | RYAN MAUCK (Bar No. 223173), RMauck@jmbm.com BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com |
| 3 | JEFFER MANGELS BUTLER & MITCHELL LLP 1900 Avenue of the Stars, Seventh Floor |
| 4 | Los Angeles, California 90067-4308 Telephone: (310) 203-8080 |
| 5 | Facsimile: (310) 203-0567 |
| 6 | Attorneys for Defendant UMG RECORDINGS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest; CARLTON DOUGLAS RIDENHOUR, d/b/a "CHUCK D," individually and as a member of PUBLIC ENEMY; WHITESNAKE, a doing business as designation of David Coverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; DAVE MASON; OTIS WILLIAMS and RON TYSON, jointly d/b/a THE TEMPTATIONS; and ROBERT WALTER "BO" DONALDSON, individually and d/b/a BO DONALDSON AND THE HEYWOODS; WILLIAM MCLEAN, a/k/a "WILL MCLEAN" and p/k/a "MISTA LAWNGE," and ANDRES TITUS, p/k/a "DRES," jointly d/b/a BLACK SHEEP, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>    Defendant. | CASE NO. CV11-01613 SI (MEJx)<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |

PRINTED ON RECYCLED PAPER
LA 9832734v1

1       Pursuant to the Court's Standing Order, defendant UMG Recordings, Inc. and
2 plaintiffs submit this joint letter regarding a discovery dispute they were unable to resolve through
3 meet and confer, which took place via telephonic conference on May 2, 2013.

5 DATED: August 15, 2013            By: /s/ Jeffrey D. Goldman
                                                                       JEFFREY D. GOLDMAN
6                                                Attorneys for Defendant UMG RECORDINGS, INC.

8 DATED: August 15, 2013            By: /s/ Michael P. Lehmann
                                                                  MICHAEL P. LEHMANN
                                                                  Attorney for Plaintiffs

PRINTED ON RECYCLED PAPER

Jeffer Mangels Butler & Mitchell LLP — JMBM

August 15, 2013

The Honorable Maria-Elena James
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

        Re:    *James v. UMG Recordings, Inc.* N.D. Cal. Case No. CV 11-1613 SI (MEJ)

Dear Magistrate Judge James:

        Plaintiff Whitesnake Productions (Overseas) Limited ("Whitesnake") and Defendant UMG Recordings, Inc. ("UMGR") submit this joint statement regarding UMGR's Second Set of Requests for Admissions ("RFAs") [Ex. 1] and certain responses of Whitesnake thereto [Ex. 2]. The parties were not able to resolve these disputes despite a May 2 in-person meet and confer.[1]

*UMGR's Statement:* Whitesnake contends UMGR breached the parties' 1982 contract (the "Contract") [available in Related Case No. CV11-02431, at Dkt. 10, Ex. 14]. Consolidated Amended Complaint ("CAC") ¶77. The RFAs [Ex. 1 hereto] are relevant to determining whether UMGR is liable to Whitesnake and whether the issues in dispute are typical of and common to the alleged "class" contracts., They seek Whitesnake's position on how specific terms used in the Contract apply to permanent downloads and ringtones. Such RFAs are customary and appropriate in breach of contract cases. "A [RFA] that relates to the interpretation of a contract at issue in a case [is] permissible under the amended Rule 36." *Sigmund v. Starwood Urban Retail VI, LLC*, 236 F.R.D. 43, 46 (D.D.C. 2006). "[W]here the question of the meaning of the document is at issue in the case, a [RFA] … seeking an admission or denial of a document's meaning or intent … is authorized by Rule 36" and "facilitate[s] the orderly preparation of the case for submission to the court[.]" *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80-81 (W.D.N.Y. 2000). It is no objection "that an admission … may prove decisive to the case, *id*. at 80, or concerns "matters which [a] party regards as 'in dispute'". Adv. Comm. Notes, 1970 Amendment. Nor can responses to the RFAs wait until fact discovery closes – this is a putative class action and the responses are relevant to imminent class certification briefing, not just the merits. Discovery has not been bifurcated.

        Whitesnake seems willing to go to any lengths to avoid responding to these RFAs. It claims it already "responded" to 84 RFAs last September, omitting that what it calls "responses" were almost entirely objections and refusals to respond (claiming the RFAs were mooted by the CAC). *See* Ex. 3. Equally misleading (and irrelevant) is its claim that it has responded to other RFAs in the present set, ignoring that they have been serially (albeit deficiently) amending those responses as a delay tactic to prevent UMGR from moving to compel. *See* Ex. 4. Such obstruction, unfortunately, is nothing new; after previously persuading this Court to preclude UMGR from serving Interrogatories 46-48 by claiming they duplicated these RFAs, Dkt. 155 at 3,Whitesnake now inconsistently refuses to respond to most of the RFAs, claiming they impermissibly request admissions of legal conclusions, citing *Gem Acquisitionco, LLC v. Sorenson Group Holdings*, 2010 WL 1340562 (N.D. Cal. 2010), and *Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d 1050 (S.D. Cal. 1999). However, in *Gem*, the court **approved** RFAs that certain persons qualified as "managers" within the meaning of the parties' contract. *Id*. at *2. And in *Bretana v. International Collection Corp.*, 2008 WL 4334710, *2-*3 (N.D. Cal. 2008), the court approved RFAs seeking admissions that various parties qualified as "consumers" and "debt collectors" as those terms are used in specified federal statutes. The *Gem* court only rejected an RFA that demanded the defendant admit the pure, ultimate legal conclusion that it had violated the parties' contract ("that [defendant] acquired the portfolio in violation of the contract"). *Id*. at *3. None of UMGR's RFAs ask Whitesnake to admit anything like "UMGR has not violated the Contract." Nor are they like the

---

[1] The parties are continuing to meet and confer in good faith regarding other responses by Plaintiffs to the RFAs.

The Honorable Maria-Elena James
August 15, 2013
Page 2

      RFAs in *Welles*, which asked the plaintiff to admit what her contract legally required of her, and the pure legal conclusion that she was a "public figure" as defined in a published case. Nor is UMGR seeking, as in *Gem*, to have any RFA deemed admitted on the ground that Whitesnake's denials lack a good faith basis. Rather, UMGR simply seeks nonevasive admissions or denials regarding the meaning of certain terms used in the Contract to determine whether disputes exist, what those disputes (if any) are, and what issues will therefore need to be litigated in order to adjudicate all the claims of any "class." Specifically:

      **RFAs 85-88 and 113-116** [Ex. 1, pp. 2, 5] ask Whitesnake to admit or deny that Music Downloads and Ringtones (as defined by Plaintiffs in the CAC), respectively, are "phonograph records," and that Music Download Providers and Ringtone Providers (as defined in the CAC) are licensed by UMGR to sell "records" under the Contract. The Contract distinguishes between "phonograph records" and "other type[s] of use" and permits UMGR to pay Whitesnake its regular royalty rate (*i.e.*, the rate UMGR is already paying) if UMGR "shall sell ***or license third parties to sell*** 'records' via telephone, satellite, cable or other direct transmission to the consumer over wire or through the air[.]" Contract, Ex. A, ¶1(h). Whitesnake's responses could vindicate UMGR's position, or, at least, reveal that the Contract presents issues atypical of other Plaintiffs' or "class" contracts. But Whitesnake's responses [Ex. 2, pp. 2-5, 19-22] rephrase the RFAs and admit only to different, less complete propositions while ignoring the language of the RFA itself. This is improper. "Efforts to circumvent the purpose of Rule 36(a) through … incomplete responses to admissions frustrates judicial economy and may result in Rule 37 sanctions." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 2008 WL 2323777, *1 (N.D. Ohio 2008). Incomplete, evasive responses are equivalent to "a failure to answer." Fed. R. Civ. P. 37. A proper response must "fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). Thus, Whitesnake "must either admit the matter, specifically deny it, or 'state in detail why [it] cannot truthfully admit or deny it.'" *Bretana*, 2008 WL 4334710, at *2, *quoting* Fed. R. Civ. P. 36(a)(4).

      Further, Whitesnake's objection that the RFAs are "compound" because they apply to multiple Music Download and Ringtone Providers is also meritless. *Bretana*, 2008 WL 4334710, at *2-*3 (rejecting argument that RFAs were compound because the answers might differ for different parties). If the RFAs can only be admitted or denied as to ***certain*** Providers, Whitesnake must "specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4); *In re Plascencia*, 2012 WL 2161412, *12 (N.D. Cal. Bankr. 2012) (compound objection invalid where RFA is "easily broken down into component parts"), *citing Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 247 F.R.D. 198, 203 (D.D.C. 2008). At a minimum, Whitesnake "should (1) admit the requests if it has no reason to dispute their truthfulness and accuracy, (2) deny the requests, in whole or in part, if it has a reasonable basis to dispute the requested matter, or (3) state that it cannot admit or deny the requests and provide reasonable explanations, in adequate detail, as to why it cannot respond." *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 196 (D. Nev. 2010).

      **RFAs 89-90 and 117-118** [Ex. 1, pp. 3, 6] ask Whitesnake to admit or deny that Music Downloads and Ringtones are "Masters" under the Contract. The Contract's royalty provision on which Whitesnake's claims rely applies only to the license or sale of "Masters." Contract, Ex. A, ¶1(*l*). Thus, Whitesnake's answer will determine whether the parties dispute whether that provision applies, or evidence differences with other Plaintiffs' or "class" contracts, revealing atypical issues. Whitesnake's legal conclusion objection [Ex. 2, p. 5-6, 22] is without merit; these RFAs are like the one approved in *Gem* concerning the term "managers."

      **RFAs 91-92, 95-96, 119-120, and 123-124** [Ex. 1, pp. 3, 6] ask Whitesnake to admit or deny that Music Download Providers and Ringtone Providers are UMGR's "licensees" or that UMGR "license[s]" these Providers to sell Music Downloads and Ringtones under the Contract.

The Honorable Maria-Elena James
August 15, 2013
Page 3

Whitesnake's answers will determine or help determine whether Ex. A, ¶1(*l*) of the Contract applies to Music Downloads and Ringtones, as Whitesnake contends, or whether Ex. A, ¶1(h)(iii) (which provides for Whitesnake's regular royalty rate to apply to licensed sales "via telephone, satellite, cable or other direct transmission to the consumer over wire or through the air") applies instead, vindicating one of UMGR's defenses. The answers will also unearth any atypical issues. Whitesnake evaded responding [Ex. 2, pp. 6-9, 23-26] by answering different propositions than the RFAs pose, such as admitting UMGR licenses to "certain" unspecified Providers, but not admitting or denying whether these (or any) Providers are "licensees" under the Contract. Such incomplete responses contravene Rule 36(a)(4) ("specify the part admitted and qualify or deny the rest"). *See Old Reliable*, 2008 WL 2323777, at *1.

**RFAs 97-98 and 125-126** [Ex. 1 pp. 3-4, 6] ask Whitesnake to admit or deny that Music Download Providers and Ringtone Providers are "Company Distributor[s]" under the Contract, like the RFA approved in *Gem* concerning "managers." This will determine or help determine whether Ex. A, ¶1(g) of the Contract applies (it caps royalties for "non-affiliated licensees" of either UMGR or a "Company Distributor" at Whitesnake's regular royalty rate), and/or reveal unique disputes not typical of other Plaintiffs' or "class" contracts (which may not use the term "distributor," or use it in different ways). Whitesnake's "legal conclusion" objections lack merit, as discussed above.

**RFAs 101-102 and 129-130** [Ex. 1, pp. 4, 7] ask Whitesnake to admit or deny that sales of Music Downloads by Music Download Providers, and Ringtones by Ringtone Providers, are "net sales" under the Contract. The Contract provides for UMGR to pay Whitesnake's regular royalty rate for "net sales" of records. Whitesnake's "compound" objection is meritless for the reasons stated above, and its answers [Ex. 2, p. 12-13, 29-30] are evasive, merely referring to and reciting the Contract's definition of "net sales" without admitting or denying the RFAs. *See Halpern*, 271 F.R.D. at 195 (responses that asserted that contract "speaks for itself" or "refer[] to various documents that contain language consistent with the requested propositions" were "simply evasive and therefore insufficient.").

**RFAs 105-106 and 133-134** [Ex. 1, pp. 4, 7] ask Whitesnake to admit or deny that Music Downloads and Ringtones are "devices" under the Contract, like the "manager" RFA in *Gem*. Whitesnake's answer may reveal whether a dispute exists over whether Music Downloads or Ringtones are "Records" (the definition of which includes "any device") or expose differences with other Plaintiffs' or "class" contracts (which may use "device" in differing ways). Whitesnake's "legal conclusion" objections are meritless for the reasons stated above.

*Plaintiffs' Statement*: To appreciate the oppressive discovery Whitesnake has been subjected to by UMGR, the RFAs at issue need to be placed in context. Whitesnake is a recording artist class representative, not a corporate plaintiff with a multi-million dollar individual claim. UMGR first dumped on Whitesnake 84 RFAs to which he responded in August of 2012. Sixty-three more RFAs were then propounded, to which Whitesnake responded in April of 2013. Amended responses were served that same month. It is a fraction of these 147 RFAs that form the battleground here. Whitesnake did not merely respond with blanket objections. He could have argued that serving 147 RFAs was itself an act of discovery abuse.[2] Instead, in good faith, he did the best he could to provide answers to all the RFAs that were answerable, answering 24 in the first round and 22 in the second. As to the rest, he raised objections, often responding that the RFAs were so vague and ambiguous that a good faith response was impossible. Now, UMGR wants more.

---

[2] *See, e.g., Leonard v. University of Dela.*, 1997 U.S. Dist. LEXIS 4196, at *28 n.19 (D. Del. March 20, 1997); *Phillips Petroleum Co. v. Northern Petrochemical Co.*, 1986 U.S. Dist. LEXIS 21473, at *4 (N.D. Ill. Aug. 19, 1986).

The Honorable Maria-Elena James
August 15, 2013
Page 4

      Much of UMGR's argument is premised on misconceptions of how RFAs are to be used, how they have to be framed, and how they have to be answered. RFAs are not discovery devices, like interrogatories or requests for production of documents. *See Henry v. Champlain Enterprises, Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003) ("*Henry*"); *Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989) ("*Dubin*"); *Tuvalu v. Woodford*, 2006 WL 3201096, at *6 (E.D. Cal. Nov.2, 2006) ("*Tuvalu*"). The primary purpose of a Rule 36 request is to limit factual issues for trial, as opposed to eliciting additional facts and information from a party. *See Henry*, 212 F.R.D.at 77. In order to serve their purpose while avoiding misuse, RFAs should be phrased in a simple, direct and concise manner and "limited to singular relevant facts," which lend themselves to an unqualified "yes" or "no" answer. *See id.*; *Diederich v. Department of Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990) ("*Diederich*"); *Dubin*, 125 F.R.D. at 375.[3]

      As courts have pointed out, some RFAs are phrased in a manner that does not permit a simple "yes" or "no" answer, as was the case with some that are at issue here. In those circumstances, a responding party can admit as much of the request that is true and qualify the rest. *Henry*, 212 F.R.D. at 77; *Diederich*, 132 F.R.D. at 619. In so qualifying a response, the Ninth Circuit has noted that a party who is unable to agree with the exact wording of an RFA should agree to an alternate wording or stipulation. *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994). Thus, for example, with respect to an RFA asking about "material" changes in a contract, the responding party "could, and should, have responded, by striking the word 'material,'" and "using its own definition of materiality...." *S.A. Healy Co./Lodigiani USA, Ltd. v. United States*, 37 Fed.Cl. 204, 206 (Fed.Cl. 1997) ("*Healy*"). *Accord, Audiotext Communications Network, Inc. v. United States Telecom, Inc.*, 1995 U.S. Dist. LEXIS 15395, at *16 (D. Kan. Oct. 5, 1995) ("*Audiotext*") (responding party can define unclear phrases in RFA).

      Fed. R. Civ. P. 36 does *not* permit or otherwise contemplate using RFAs to "establish 'facts which are obviously in dispute' . . . or to ask the party to admit facts of which he or she has no special knowledge." *Tuvalu*, 2006 WL 3201096, at *7 (quoting *Lakehead Pipe Line Co v. American Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("*Lakehead*")) (citations omitted). *Accord Whitaker v. Belt Concepts of Am.*, 189 B.R. 846, 853 (M.D. Fla. 1995). Similarly, "[r]equests are not appropriate for argument. They should not put forward the requester's legal or factual contentions on the premise that, in the requester's view, they ought to be admitted." WILLIAM W. SCHWARZER ET AL, CIVIL DISCOVERY AND MANDATORY DISCLOSURE: A GUIDE TO EFFICIENT PRACTICE 5-4to 5-5 (2d ed. 1994). RFAs that venture into the contentions raised in the responding party's pleadings or its theories of the case amount to disguised interrogatories intended to circumvent Fed. R. Civ. P. 33. *See Audiotext*, 1995 U.S. Dist. LEXIS 15395, at *7, *19. Such practices amount to a clear abuse of discovery practice and procedure. *See Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986).

      In determining the sufficiency of a request for admission, the Court's role is simply to ensure that the formalities of Rule 36 are observed. UMGR claims it wants nonevasive answers or denials from Whitesnake, bu**t** what it really wants are responses that it candidly admits "could vindicate UMGR's position." The Court is not empowered "to compel [the responding party] to change an answer to conform to the 'truth' or to any particular theory or other evidence . . ." ." *Collins v. JC Penney Life Ins. Co.*, 2003 WL 25945842, at *9 (S.D. Cal May 6, 2003). *Accord, Chase v. Nova Southeastern Univ., Inc.*, 2012 WL 1309238, at *3 (S.D. Fla. Apr. 16, 2012).

---

[3] RFAs should also not contain compound or disjunctive statements. *Vaden v. Officer Summerhill*, 2008 U.S. Dist. LEXIS 24397, at *3 (E.D. Cal. March 27, 2008) ("*Vaden*") (citing *United States ex rel. England v. Los Angeles County*, 235 F.R.D. 675, 684 (E.D. Cal. 2005)). *Accord Bovarie v. Schwarzenegger*, 2011 U.S. Dist. LEXIS 17006, at *4-*5 (S.D. Cal. Feb. 22, 2011); *Tuvalu*, 2006 WL 3201096, at *7.

The Honorable Maria-Elena James
August 15, 2013
Page 5

      In the context of RFAs that ask about the meaning of disputed contract provisions (or other documents), courts, including Judge Illston, have found them improper. *See, e.g.*, *Playboy Enterprises, Inc. v. Welles,* 60 F.Supp.2d 1050, 1057 (C.D. Cal. 1999) (RFAs asking for an admission that a contract required advance written permission to engage in certain conduct was objectionable; RFAs "cannot be used to compel an admission of a conclusion of law"); *Lakehead*, 177 F.R.D. at 457 (refusing to order supplementation to RFAs where the responding party objected that the propounding party sought "to obtain, by implication, a synoptic characterization of the documents, or a gloss as to their intendment, on the specific ground that the documents speak for themselves"); *Gem Acquisitionco LLC v. Sorenson Group Holdings, LLC*, 2010 WL 1340562, at *3 (N.D. Cal. April 5, 2010) (Illston, J.) ("*GEM*") ("[i]n these requests, GEM is essentially asking Sorenson to admit GEM's interpretation of a disputed provision of the parties' contract: specifically, that Sorenson acquired the portfolio in violation of the contract. Because legal conclusions are not a proper subject of a request for admission, ….GEM's motion to compel responses to RFA Nos. 14 and 15 is DENIED"). *See also Henry*, 212 F.R.D. at 80 ("[t]he more complicated the document, the stronger the objection to such an inquiry because the complexity obscures the Rule 36 intent to have simple and definitive answers"); *PRS Int'l, Inc. v. Shred-Pax Corp.*, 703 N.E.2d 71, 79-80 (Ill. 1998) (holding objectionable requests relating to the legal effect of conduct under a contract).[4]

      Here, the relevant Whitesnake contract consists of 41 pages of single-spaced type and 17 pages of single-spaced appendices. It contains many provisions that cross-reference other provisions. Many of the provisions on which UMGR sought admissions are in dispute (unlike the definition of "manager" in *GEM*) and, if one believes UMGR, these disputes are critical to the outcome of the case. The instructions for the RFAs are complex and confusing. The RFAs themselves are often compound and call for legal conclusions on disputed issues in this case. They are disguised discovery that courts deem improper. Whitesnake's objections were thus totally appropriate. His qualifying answers to a portion of the RFAs were made because the RFAs in question did not admit of a simple "yes" or "no" answer. As in *Healy*, he was within his rights to respond to certain RFAs by giving his own understanding of an inexact request. The fact that Whitesnake has provided responses that assertedly do not vindicate UMGR's position is not a proper ground for moving to compel. *See Vaden*, 2008 U.S. Dist. LEXIS 24397, at *5 ("[a propounder's] unhappiness with these responses does not support an order compelling different answers").

      UMGR further argues that there should be no deferral of further responses to the RFAs because they are needed for class certification. It never bothers to explain how this is so. Judge Illston may decide class certification based in part upon the terms of the contracts at issue, but not upon the parties' contentions as to what the terms mean. Moreover, as the Advisory Committee Notes to Rule 36 state, RFAs involving questions of mixed law and fact "may create disputes between the parties which are best resolved in the presence of the judge after much or all of the other discovery has been completed. Power is therefore expressly conferred upon the court to defer decision until a pretrial conference is held or until a designated time prior to trial."

---

[4] As the court in *Lakehead* noted, "a document has both context, the writer's intent, and other subjective variables, which cannot be legitimately reduced to matters of fact, of mixed fact and law, or of opinion." 177 F.R.D. at 457. For other cases holding that RFAs concerning the meaning of specific documents were improper, *see, e.g., Bausch & Lomb, Inc. v. Alcon Labs., Inc*., 173 F.R.D. 367, 377 (W.D.N.Y.1995), *vacated in part on other grounds*, 1996 U.S. Dist. LEXIS 8520 (W.D.N.Y. Jan. 20, 1996); *United States v. Consolidated Edison Co.*, 1988 WL 138275, at *2 (E.D.N.Y. Dec.15, 1988); *Naxon Telesign Corp. v. GTE Information Sys., Inc*., 1980 U.S. Dist. LEXIS 17028, at *2 (N.D. Ill. Oct. 3, 1980).
.

The Honorable Maria-Elena James
August 15, 2013
Page 6

    Sincerely,


    JEFFREY D. GOLDMAN of     MICHAEL P. LEHMANN of
    Jeffer Mangels Butler & Mitchell LLP     Hausfeld LLP