Michael W. Sobol (State Bar No. 194857)
Roger N. Heller (State Bar No. 215348)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3336
Telephone:  415-956-1000
Facsimile:  415-956-1008

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest, et al. individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>Defendant. | Case No. CV-11-1613 SI<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |

Pursuant to the Court's Standing Order, Plaintiffs and Defendant UMG Recordings, Inc. submit this joint letter regarding a discovery dispute they were unable to resolve through meet and confer.  A telephonic meet and confer took place on August 6, 2013, and the parties engaged in further but unsuccessful correspondence and calls.


DATED: November 1, 2013          By: /s/
                                 ROGER N. HELLER
                                 Attorney for Plaintiffs

DATED: November 1, 2013          By: /s/
                                 JEFFREY D. GOLDMAN
                                 Attorneys for Defendant

1138887.1

November 1, 2013

## VIA ELECTRONIC CASE FILING

The Honorable Maria-Elena James
United States District Court
Northern District of California

The parties hereby submit this letter regarding a discovery dispute they were unable to resolve through meet and confer.

_Plaintiffs' Position._ This dispute concerns UMGR's refusal to produce data responsive to Plaintiffs' RFP Nos. 73 and 76, which are focused on two categories of data: (a) documents demonstrating UMGR's interpretation and input into its royalty system of the named plaintiffs' contract terms; and (b) data regarding the revenue received by UMGR and calculation of royalties for downloads of the named plaintiffs' recordings. Through meet and confer and further related analysis, Plaintiffs were able to limit what they need at this stage to four items, which are highly pertinent to Plaintiffs' measurement of class damages and to addressing UMGR's previewed arguments against class certification.[1]

**1. Data from Royalty Statements.** Plaintiffs intend to calculate damages by comparing: (a) the royalties UMGR actually paid for digital downloads; with (b) the royalties it would have paid had it applied the relevant licensing provisions in the contracts. For both components, Plaintiffs expect to utilize data from UMGR's royalty system called TRACS. Most, but not all (see #s 2, 4 below), of the data Plaintiffs will use is contained within semi-annual royalty statements UMGR generates from TRACS. For class certification purposes, Plaintiffs intend to demonstrate their damages methodology (previously disclosed in discovery) through sample calculations for the named plaintiffs. Thus, the data in plaintiffs' royalty statements is critical. To date, UMGR has only produced _printouts_ of the statements, though it admittedly can provide them electronically in Excel format, by downloading them from its systems, which would be far more usable for plaintiffs and any experts.[2] UMGR has now offered to produce Excel-formatted statements, but only for 2009-2012. Though Plaintiffs are pursuing damages at least beginning in 2003 (when iTunes was launched) Plaintiffs were agreeable to accepting, at this stage, 2009-2012 data so long as UMGR confirmed it could generate the same data for the earlier years (lest it argue later that Plaintiffs cannot make the same data calculations the same way for earlier periods). UMGR declined to so confirm in writing, though its counsel had previously indicated they were available going back several years. Plaintiffs are <u>not</u> asking UMGR to create something that doesn't exist; the data exists and the statements can be downloaded as plaintiffs have requested with relative ease. UMGR should: (a) produce all named plaintiffs' royalty statements in Excel format for 2003 to the present; or (b) alternatively, produce them for 2009-2012 together with written confirmation that same are available back to 2003—or a later date if applicable.

**2. Evidence of Receipts for Digital Downloads.** One category of data pertinent to Plaintiffs' damages calculation not contained in the royalty statements are UMGR's receipts from the

---

[1] UMGR's characterization of the requests at issue is off base. The requests are far more focused than UMGR suggests (Ex. A at 73,76), and have been narrowed further through meet and confer. Plaintiffs will not ask for further data or documents on the basis of these requests (except potentially as noted in item #4 herein based on Plaintiffs' review of what is produced). One of the very purposes of meet and confer, where a party claims a request is overbroad, is to see if the request can be clarified and/or narrowed to address the responding party's objection. It is not necessary for Plaintiffs to serve entirely revised requests just because they have made accommodations regarding what they seek, and UMGR never argued during months of meet and confer that new requests should be propounded.

[2] UMGR initially claimed that electronic statements would need to be created "manually," but later clarified that the process involved having someone electronically download each statement individually. By contrast, to replicate the Excel-formatted statements would be far more burdensome for Plaintiffs.

download transactions, received by UMGR from download vendors like Apple/iTunes. Plaintiffs have made clear to UMGR why this data is needed. Under the licensing provisions that Plaintiffs argue should apply, royalties are to be calculated as a percentage of UMGR's *receipts*, whereas the provisions UMGR did apply in calculating plaintiffs' royalties provide for calculation based on the *price* of each download.[3] UMGR's receipts are thus central to the damages calculation here (which, as in most class actions, will involve applying a common methodology to the class members' data). The information that Plaintiffs have, together with the data from the royalty statements, would permit Plaintiffs to extrapolate UMGR's receipts for the digital download entries in the statements (e.g., by using per unit amounts paid to UMGR by the dominant market player Apple/iTunes), but UMGR will inevitably complain about the use of any such extrapolations, and so Plaintiffs need the underlying receipts data for verification.

UMGR admits this data is on its systems and, not surprisingly at all, could be produced, but refuses to produce it, even for just the named plaintiffs, on the grounds it would supposedly require "writing new software," though it provided no detail about the extent of this supposed burden during meet and confer.[4] UMGR should produce the data. If it will not do so to permit verification, Plaintiffs will extrapolate UMGR's receipts for download transactions using the information they have, and UMGR should be foreclosed from challenging such extrapolations.[5]

**3. Royalty Briefs.** A major theme of UMGR's discovery has been its extensive inquiry into how the plaintiffs interpret various contract provisions and how those provisions might impact royalty calculations. It has propounded a massive number of requests on these issues, disputing that they are improper requests for legal opinions, and justifying them on the grounds that they will help determine how different contract terms are interpreted and interact with one another, and whether differences between artists' contract terms create typicality or predominance issues that could make class certification inappropriate. *E.g.*, Dkt. 167 at 1-3. UMGR does not see this exercise as a two way street, however. Specifically, Plaintiffs have identified a source— UMGR's royalty briefs— that will reveal, for each contract, how *UMGR itself* interpreted the terms, how they interact with each other, and their impact on royalties. In a show of true hypocrisy, UMGR refuses to produce them (or even look for them).

UMGR "sets up" each contract in the TRACS system by inputting the terms relevant to royalties. There are limited, fixed fields for which coding is input for each contract. To facilitate this process, UMGR uses a royalty brief—a single-page form that its staff fills out and that identifies, for each contract, the information for those fields that UMGR believes, for all contracts, are relevant to the calculation of royalties. As UMGR's 30(b)(6) designee describes it: "[The royalty staff members are] collecting them on a single sheet of paper to make the data entry input more clean, instead of reviewing the contract while they input [the coding in the system]." Harrington Dep. at 148. The royalty briefs are highly pertinent because, when placed next to the contracts, they will show (contemporaneously and not in the context of litigation): (a) which contract terms UMGR itself viewed as pertinent or not to the question of calculating royalties; (b) how certain contractual terms and provisions interact with each other in UMGR's view; and (c) that for all of UMGR's bluster about how many contractual variations there are in the class,

---

[3] The statement entries regarding digital downloads thus state the per unit price of each download and the number of units downloaded, but not UMGR's receipts for those transactions. By contrast, for revenue streams where UMGR *does* pay royalties as a percentage of receipts, the statements *do* list the receipts.

[4] On information, "new software" means a query of its database, which UMGR regularly does to provide information in connection with individual artist audits.

[5] Any burden here is of UMGR's own making. Had UMGR calculated the royalties properly, receipts information would already be in the royalty statements, as it is for other revenue streams for which royalties are calculated as a percentage of receipts. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946) ("the wrongdoer may not object to the plaintiff's reasonable estimate… because not based on more accurate data which the wrongdoer's misconduct has rendered unavailable.").

the *actual* relevant variations among the contracts, in UMGR's own view, are modest and few in number, and will not present the manageability or typicality problems UMGR says.[6]

UMGR argued in meet and confer that the information is available from the contracts. But the contracts do not reveal how UMGR digested them in setting up its royalty system. Ironically, when the issue was its requests, UMGR argued it was insufficient to refer to the contracts to answer questions about interpretation. Dkt. 167 at 3. UMGR also says it is unsure whether royalty briefs exist for some plaintiffs. It should be ordered to produce those that exist.

UMGR's argument that we already know how it determined download royalty rates misses the point. The issue here is whether such royalties should have been calculated under *different* provisions than they were and, if so, what provisions. Plaintiffs are just as entitled as UMGR to discovery about how the provisions apply and interact with one another, and whether any differences are material. UMGR's actual treatment of download royalties ignored differences among the contracts. Now it seeks to defeat certification by essentially arguing the provisions *not applied* varied among contracts. Plaintiffs are entitled to discovery into UMGR's actual views on that.

As an afterthought, UMGR asserted the royalty briefs are privileged. But its testimony demonstrates they are mechanically created by staff, trained generically to find the relevant provisions in contracts, as part of the logistical process of setting up contracts in the system; any interpretations they reflect are not privileged, regardless of who made them, any more than the royalty statements (which *UMGR itself* argued in meet and confer reflect piecemeal some of those interpretations, and are provided to artists). UMGR's privilege claim also cannot be squared with its insistence that it is appropriate to ask plaintiffs for *their* interpretations of the contractual provisions (informed during the course of litigation, no less). UMGR's actual, unadulterated interpretations, formed in advance of any litigation, are at least equally discoverable.

**4. Contract Identification Info.** UMGR agreed to produce contract "descriptions" from TRACS, which should help tie each royalty statement entry (which lists only a corresponding contract "number") to a particular plaintiff contract (some artists have multiple contracts). UMGR has not produced this data as of this writing. It should be produced without delay, so Plaintiffs can determine whether any additional contract identifying information is needed.

*UMGR's Position*: As a dispositive threshold matter, Plaintiffs' motion to compel is inherently deficient because document requests 73 and 76 violate Fed. R. Civ. P. 34(b)(1)(a), which provides that such requests "must describe with reasonable particularity each item or category of items to be inspected." Requests 73 and 76 literally demand UMGR produce each and every document "relating to" or "regarding" any of the Plaintiffs (the "Requests for Everything").[7] Requests like these "function like a giant broom, sweeping everything in their path, useful or not" and are "unreasonably time-consuming and burdensome[.]" *Dauska v. Green Bay Packaging, Inc.*, 291 F.R.D. 251, 2013 WL 2088216, *10 (E.D. Wis. 2013). Such requests are especially improper here, as UMGR's long business relationships with each Plaintiff touch many aspects of UMGR's business, most unrelated to the digital download royalties at issue in this case. *See Lopez v. Chertoff*, 2009 WL 1575214, *3 (E.D. Cal. 2009) (denying motion where document request "seeks every document in Defendant's possession referring to Plaintiff, even documents irrelevant to Plaintiff's claims in this case."). Plaintiffs know the Requests for Everything are improper, as shortly before they served them, this Court had prohibited as

---

[6] For example, if Contract A uses phrase 1 but Contract B uses phrase 2, the royalty briefs will provide insight into whether the different phrasing, or different combinations of terms, have any impact on how any royalties are calculated.

[7] Request 76: "Any and all documents (including e-mails, memos, reports, data runs, and/or any other written communications) relating to the Plaintiffs." Request 73: "All data regarding the Plaintiffs that is presently or was, at any time from 1999 to the present, sent to, generated by, created in, input into, processed in, maintained in, and/or otherwise residing in, any of Your Databases."

"overbroad" their similarly expansive proposed Rule 30(b)(6) deposition topic concerning UMGR's documents, ordering Plaintiffs "to be more specific" (Dkt. 142, at 1-2).[8]

      Plaintiffs' original version of this letter did not even **mention** the Requests for Everything; it was untethered to any specific document requests at all.  In this second-generation letter, Plaintiffs reluctantly attach the Requests for Everything but barely even try to justify them, instead appearing to pledge that if the Court grants their current motion, they "will not ask for further data or documents on the basis of these requests[.]"  But this is an illusory promise riddled with disclaimers; Plaintiffs admit that their current demands are only what they want "at this stage," and reserve the right to ask for more documents and data pursuant to the Requests for Everything "based on Plaintiffs' review of what is produced[.]"  Requests like these are inherently unfair, especially when used as a sword and shield to force the other side to either produce everything or risk being foreclosed from presenting evidence or argument at trial.  (Indeed, Plaintiffs already seek to improperly use the Requests for Everything in this way – *see* fn. 10.)  This Court should deny Plaintiffs' motion and require them to comply with Rule 34 like every other litigant, so that UMGR and the Court (including Judge Illston, eventually) can properly assess exactly what specific materials have been requested in discovery, objected to, produced, etc.  However, if the Court overrules this objection, the motion should still be denied.

**1. Electronic Royalty Statements.**  UMGR has produced Plaintiffs' royalty statements twice (first when they were originally rendered on paper, then in discovery in .pdf files).  Having originally requested and received these voluminous documents (over 35,000 pages) in two other forms, Plaintiffs cannot now demand UMGR produce some of these documents in yet another format – "electronic" (with manipulable data, as in a spreadsheet).  *Autotech Technologies Ltd. Partnership v. Automation Direct.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008) ("It seems a little late to ask for metadata after documents responsive to a request have already been produced in both paper and electronic format.").  This is especially so because UMGR does not even **have** such "electronic" versions.  UMGR would have to create such documents (by creating new spreadsheets that would mimic the data in each individual royalty statement), and "[c]ourts have consistently held that '(a) party cannot be compelled to create, or cause to be prepared, new documents solely for their production.'"  *A.R. Arena Products, Inc. v. Grayling Industries, Inc.*, 2012 WL 2953214, *10 (N.D. Ohio 2012) (citing authorities).  Further, creating the four years (2009-12) of "electronic" statements Plaintiffs say they would accept would encompass about 80 different statements (because some Plaintiffs have multiple accounts), requiring about 40 hours of employee time.  Plaintiffs alternatively and inexplicably demand an even more burdensome 10 years of statements, supposedly because UMGR will not provide "written confirmation that same are available back to 2003," but never explain what discovery tool entitles them to "written confirmation" that UMGR could create hypothetical documents if requested in the future.

**2. Evidence of Receipts for Digital Downloads.**  Again, Plaintiffs improperly seek to have UMGR create documents that do not exist by creating new "revised" royalty statements for Plaintiffs showing UMGR's receipts for digital downloads on a line-by-line basis.  The statements contain literally thousands of such entries, and UMGR could only tease such data out of its royalty system by writing new software and reprogramming the system[9] to generate new, currently nonexistent royalty statements, which it has no obligation to do.  *A.R. Arena*, 2012 WL 2953214, at *10.  Moreover, even in their second version of this letter, Plaintiffs still refuse to assert that they "need" this voluminous line-by-line data to calculate each artist's damages – a representation UMGR has repeatedly asked them to make (after all, if that were really true, the manageability of a class action requiring such individualized calculations would be seriously in question).  Plaintiffs merely assert the data is "pertinent to" damages – hardly sufficient to justify the order they seek, requiring UMGR to modify its royalty software for their convenience.[10]

---

[8] Plaintiffs' claim that UMGR "never argued" this issue in meet and confer is false – UMGR raised it from the inception of the process.  To overrule UMGR's valid objection merely because UMGR **sought** to resolve it, as Plaintiffs urge, would unfairly penalize UMGR for meeting and conferring in good faith.

[9] Contrary to Plaintiffs' speculation "[o]n information" (fn. 4), this is a far more extensive process than merely querying a database, and is **not** regularly done as part of individual artist audits.

[10] No basis exists to force UMGR to voluntarily produce this data or be "foreclosed" from contesting Plaintiffs' "extrapolations."  *Bigelow* concerned **destroyed** records, not discovery, "did not involve class (footnote continued)

851948.4

This request also contradicts Plaintiffs' prior representations to this Court.  UMGR's Interrogatories 10 and 12 asked Plaintiffs to state "the precise manner in which [they] calculated the amount of" their damages, including on a royalty-statement-by-royalty-statement basis. Plaintiffs convinced this Court to excuse them from providing these calculations (Dkt. 157) by asserting that prior to class certification, they only had to provide a "plausible *methodology*" and "the **method** they intend to employ" to calculate damages (Dkt. 153, at 3, Plaintiffs' emphasis) – *not* make "painstaking calculations" which they claimed would be too burdensome to perform, and would be unnecessary because "once [one] knows the methodology, more calculations are meaningless[.]"  *Id*. at 4.  But Plaintiffs now say the reason they need UMGR's statement-by-statement data is to perform these very calculations ("UMGR's receipts are … central to the damages calculation here").  Plaintiffs' inconsistent positions should estop them from demanding this data.  *A.C.L.U. of Nevada v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012) (doctrine of judicial estoppel prohibits a party from "changing positions according to the exigencies of the moment"). At a minimum, if the Court orders UMGR to provide the requested data, it should also order Plaintiffs to disclose these calculations to UMGR in response to Interrogatories 10 and 12.

**3. Royalty Briefs.**  Plaintiffs' position is littered with misstatements.  The so-called "royalty briefs" (a) may not even exist, (b) would be burdensome to locate, and (c) would not contain any relevant information other than (d) invariably privileged communications.

(a) Plaintiffs' contracts were entered into in 1969, '73, '82, '86, '87, '91, '92, and '93, with various predecessors of UMGR, not UMGR.  Plaintiffs offer no reason to believe these predecessors created "royalty briefs" for *Plaintiffs'* contracts.  They cite only to deposition testimony about UMGR's practice *in 2012* of creating such briefs for *new* contracts.  *See, e.g.*, Harrington Depo. 147:4-6 (Plaintiffs' counsel:  "And I'll point out that this document is dated 2012.  *So that's the era we're talking about, apparently*.") (emphasis added).  And as Plaintiffs know (but don't say), when UMGR adapted its royalty system to pay digital download royalties in 2002, it *did not* create "royalty briefs" for pre-existing contracts such as Plaintiffs', but, rather, adapted the system's pre-existing base royalty rates for cassettes.  Ping Hu Depo. 61:3-64:11.

(b) A fishing expedition to see if any "royalty briefs" exist for Plaintiffs would require searching through each Plaintiff's voluminous contract files, each dating back decades and most of which are in deep storage. This would be a time-consuming undertaking of unknown duration.

(c) Plaintiffs claim these briefs could reveal "which contract terms UMGR itself viewed as pertinent or not to the question of calculating [download] royalties."  But Plaintiffs' argument defeats itself.  Plaintiffs admit UMGR's royalty calculations are not based on the licensing provisions Plaintiffs *now* say UMGR should be applying ("The issue here is whether such royalties should have been calculated under *different* provisions than they were").  If any royalty briefs exist for Plaintiffs' old contracts, they would necessarily *predate* the download era, and the "issue here."  Provisions briefed decades ago would not shed any light on what terms UMGR's predecessors "viewed as pertinent" to *download* royalties, or whether the "variations among the contracts" pertinent to Plaintiffs' *present* theory are "modest and few in number."

(d) The royalty briefs UMGR creates for new contracts have been prepared by UMGR's attorneys or those working under their direct supervision, or, earlier, by low-level clerks with no authority to interpret contracts; if contract analysis was required, the clerks' practice was to seek guidance from the attorney who negotiated the contract.  Harrington Depo. 81:15-20.  Thus, any contract analysis in such a royalty brief would be privileged.  *Zurich Am. Ins. Co. v. Superior Ct*, 155 Cal. App. 4th 1485, 1494-1503 (2007) (privilege may apply to "communications between [corporate] agents … in which the corporation's attorneys are not directly involved").  Plaintiffs' "hypocrisy" argument incorrectly equates discovery of a party's *contentions* (which both sides have reciprocally provided) with what a party's attorneys advised that party.  Plaintiffs, like UMGR, have invoked the privilege for communications with attorneys about their contracts.[11]

**4. Contract Identification Info.**  UMGR already agreed to provide this information for Plaintiffs' contracts and will do so by November 15.  There is no dispute, or basis for any order.

---

actions," and does not "justify use of a short-cut method" to prop up an otherwise deficient class action damages model.  *Gutierrez v. Wells Fargo & Co.*, 2009 WL 1247040, *3-*4 (N.D. Cal. 2009).

[11] *E.g.*, D. King Depo. 249:17-251:7; R. Tyson Depo. 98:21-100:19; W. McLean Depo. 58:22-59-14.

Sincerely,

/s/

JEFFREY D. GOLDMAN of
Jeffer Mangels Butler & Mitchell LLP

/s/

ROGER N. HELLER of
Lieff Cabraser Heimann & Bernstein LLP

1135364.2

Exhibit A

Leonard B. Simon (State Bar No. 58310)
LAW OFFICES OF LEONARD B. SIMON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  619-231-1058
Facsimile:   619-231-7423
*Chair of Lead Class Counsel Group for Plaintiffs*

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest, *et al.*, individually and on behalf of all others similarly situated, <br><br>                         Plaintiffs, <br><br> v. <br><br> UMG RECORDINGS, INC., a Delaware corporation, <br><br>                         Defendant. | Case No.  CV 11-01613 SI <br><br> **PLAINTIFFS' ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |

**PROPOUNDING PARTY**: Plaintiffs

**RESPONDING PARTY**:     Defendant UMG RECORDINGS, INC.

**SET NUMBER**:          ELEVENTH

Pursuant to Federal Rule of Civil Procedure 26 and 34, Plaintiffs, individually and on behalf of all other similarly situated, hereby request that Defendant UMG Recordings, Inc. produce all data, documents and other materials that are specified within these requests. Said production shall be made within thirty (30) days of service of this Request, to the law offices of Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111. Defendant shall also serve upon Plaintiffs, by and through their attorneys of records herein, the written response as required by Fed. R. Civ. P. 26 and 34.

## <u>INSTRUCTIONS</u>

1.      Fed. R. Civ. P. 26 and 34 govern these requests. Pursuant to Fed. R. Civ. P. 26 and 34, Defendant must:

a.      Produce responsive data, documents and other materials as they are kept in the usual course of business or organize and label them to correspond with the categories in these requests;

b.      Produce electronically stored information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable;

c.      Produce all responsive data, documents and other materials which are in your possession, custody or control, including (by way of illustration only and not limited to) data, documents and materials in the possession, custody or control of you or your affiliates, or your merged and acquired predecessors, your present and former directors, officers, partners, employees, accountants, attorneys or other agents, your present and former independent contractors over which you have control, and any other person acting on your behalf.

2.      If Defendant withholds information or materials otherwise discoverable under the Federal Rules of Civil Procedure by claiming that it is privileged or subject to protection as trial preparation material, then Defendant must make such claim expressly and must describe the nature of the information or materials not produced or disclosed in a manner that, without

1  revealing information itself privileged or protected, will enable Plaintiffs to assess the

2  applicability of the privilege or protection.

3        3.     If any responsive data, documents or other materials are known to have existed but

4  have been destroyed, Defendant must sufficiently identify each such material, the reason for its

5  destruction, and the person(s) responsible for causing it to be destroyed.

6        4.     If Defendant asserts an objection to any request, it must nonetheless respond and

7  produce any responsive data, documents and other materials that are not subject to the stated

8  objection. If Defendant objects to part of a request or category, you must specify the portion of

9  the request to which it objects, and must produce data, documents, and other materials responsive

10  to the remaining parts of the request.

11        5.     Defendant's obligations pursuant to these Requests are ongoing pursuant to Fed.

12  R. Civ. P. 26(e).

13  **DEFINITIONS**

14  As used herein, the terms below are defined as follows:

15        (a)     "You," "Your," "Defendant," or "UMGR," means Defendant UMG Recordings,

16  Inc., and all of the their parents, subsidiaries, affiliates, departments, predecessors, successors,

17  employees, agents, attorneys, and accountants, and all other persons or entities acting on its

18  behalf or under its control, whether directly or indirectly, including, but not limited to, Motown

19  Records, Interscope Geffen A&M, Aftermath Records, Island Def Jam Music Group, Universal

20  Motown Republic Group, and PolyGram.

21        (b)     "Plaintiffs" means the named Plaintiffs in these consolidated actions.

22        (c)     "Database" means any electronic or non-electronic database or other location, file

23  or resource where electronic or non-electronic data is or has been sent, created, generated,

24  entered, processed, queried, stored, maintained, and/or archived, including, without limitation: the

25  TRACS system; the legacy royalty systems reflected on the document produced by You in this

26  litigation at bates number UMGR764496; any other legacy royalty systems used by You; the SAP

27  and JD. Edwards systems that James Harrington testified about during his March 6, 2013

28  deposition (pp. 66-67); the "sales systems where the revenues are initially reported from" that

James Harrington testified about during his March 6, 2013 deposition (p.132); any other current or legacy sales and/or revenue systems; the "single repository where the revenue is processed" and the "files" received on a quarterly basis from Apple by You that James Harrington testified about during his March 6, 2013 deposition (p.141) and any equivalent files received by You from third parties other than Apple.

(d)     "Relating to," "Referring to," "Regarding," "Concerning," "Reflecting," or "With respect to" refers to, without limitation, the following concepts: discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

(e)     "And" as well as "Or" should be construed either disjunctively or conjunctively so as to give the broadest possible application.  In other words, both "and" and "or" should be read as "and/or."

(f)     "Any" should be construed, when possible, to mean "any and all."

(g)     "Including" is used to emphasize the type of information requested and should not be construed as limiting in any way.  Including should be read as "including, but not limited to."

(h)     The use of the singular form of any word should be construed to include the plural form and vice versa, so as to give the broadest possible application.

(i)     The use of a verb in any tense should be construed to be the use of a verb in all other tenses so as to give the broadest possible applications.

(j)     Definitions provided herein apply to any grammatical variance of the term or phrase defined.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 73:**

All data regarding the Plaintiffs that is presently or was, at any time from 1999 to the present, sent to, generated by, created in, input into, processed in, maintained in, and/or otherwise residing in, any of Your Databases (as defined above), whether it currently resides there or is otherwise within Your possession, custody, or control.  This request includes all data relating to:

- 3 -

(a) any contracts between You and the Plaintiffs and any terms thereof or amendments thereto;

(b) the volume or units of sales of any products containing the Plaintiffs' master recordings (or copies thereof); (c) any revenue received by You in connection with the Plaintiffs' master recordings; (d) any royalties paid by You to the Plaintiffs and how such royalties were determined or calculated; and (e) to the extent not otherwise covered by this request, data constituting or reflecting any of the following: account numbers; account codes; account titles; sort groups; contract or subcontract numbers; other account, contract, or subcontract identification information; account, contract, or subcontract names; payee information; royalty rates (including, but not limited to, rates for products and sales types); rate types (e.g., fixed or percent); rate tables; rate matrices; the price or revenue basis upon which royalties are calculated (e.g., net receipts, gross receipts, retail); exception lists; linking tools; escalation indicators; product numbers; product types; product type details; sales types; sales type tables; sales channels; configuration codes; territory information; any deductions, reductions, or adjustments applied or applicable in calculating royalties; and, to the extent not otherwise covered by this request, other data fields referenced in Exhibit 1029 to the March 6, 2013 deposition of James Harrington (p. 75), the document produced by You in this litigation at bates number UMGR764483-495, or any prior or subsequent iterations of the same.

**REQUEST FOR PRODUCTION NO. 74:**

Data and documents sufficient to show all label copy related to the Plaintiffs' master recordings and any other any information regarding the production and distribution of Plaintiffs' master recordings.

**REQUEST FOR PRODUCTION NO. 75:**

Data and documents sufficient to use, query, sort, filter, and interpret the data, documents and other information identified and produced in response to Request Nos. 73 and 74, including but not limited to keys, code maps, data field descriptors, and manuals.

**REQUEST FOR PRODUCTION NO. 76:**

Any and all documents (including e-mails, memos, reports, data runs, and /or any other written communications) relating to the Plaintiffs, including but not limited to such documents

1   relating to the review of the Plaintiffs' contracts by You, decisions made by You about how to

2   input those contracts or the terms thereof into any Databases, and communications (including but

3   not limited to those involving Your Business Affairs department) relating to the interpretation of

4   Plaintiffs' contracts and/or the royalties paid or to be paid thereunder.

5

6

7

8   Dated:  June 13, 2013

By:  _____

Roger N. Heller

9

10  Michael W. Sobol

msobol@lchb.com

11  Roger N. Heller

rheller@lchb.com

12  Nicole D. Reynolds

nreynolds@lchb.com

13  LIEFF CABRASER HEIMANN & BERNSTEIN LLP

275 Battery Street, 29th Floor

14  San Francisco, CA  94111-3336

Telephone:  415-956-1000

15  Facsimile:  415-956-1008

16  Bruce L. Simon

bsimon@pswplaw.com

17  Daniel L. Warshaw

dwarshaw@pswplaw.com

18  PEARSON, SIMON WARSHAW PENNY LLP

44 Montgomery Street, CA  94104

19  Telephone:  415-433-9000

20  David M. Given

dmg@phillaw.com

21  Nicholas A. Carlin

nac@phillaw.com

22  Alexander H. Tuzin

aht@phillaw.com

23  PHILLIPS, ERLEWINE & GIVEN LLP

50 California Street, 35th Floor

24  San Francisco, CA  94111

Telephone:  415-398-0900

25  Facsimile:  415-398-0911

26

27

28

PLAINTIFFS' ELEVENTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS
CASE NO.  CV 11-01613 SI

Leonard B. Simon
lens@rgrdlaw.com
LAW OFFICES OF LEONARD B. SIMON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  619-231-1058
Facsimile:   619-231-7423

Michael P. Lehmann
mlehmann@hausfeldllp.com
Bruce J. Wecker
bwecker@hausfeldllp.com
Arthur N. Bailey, Jr.
abailey@hausfeldllp.com
HAUSFELD LLP
1700 K Street, NW Suite 650
Washington, DC  20006
Telephone:  202-540-7200

*Attorneys for Plaintiff and the Class*

1113133.2

RECEIVED

JUL 3 2 2013

LIEFF, CABRASER, HEIMANN
& BERNSTEIN

JR

1   JEFFREY D. GOLDMAN (Bar No. 155589),
    JGoldman@jmbm.com
2   RYAN S. MAUCK (Bar No. 223173), RMauck@jmbm.com
    BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3   JEFFER MANGELS BUTLER & MITCHELL LLP
    1900 Avenue of the Stars, Seventh Floor
4   Los Angeles, California  90067-4308
    Telephone:     (310) 203-8080
5   Facsimile:     (310) 203-0567

6   Attorneys for Defendant UMG RECORDINGS, INC.

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  RICK JAMES, by and through THE JAMES         CASE NO.    CV11-01613 SI (MEJx)
    AMBROSE JOHNSON, JR., 1999 TRUST, his
12  successor in interest; CARLTON DOUGLAS       RESPONSES OF DEFENDANT UMG
    RIDENHOUR, d/b/a "CHUCK D," individually     RECORDINGS, INC. TO PLAINTIFFS'
13  and as a member of PUBLIC ENEMY;             ELEVENTH SET OF REQUESTS FOR
    WHITESNAKE, a doing business as              PRODUCTION OF DOCUMENTS
14  designation of David Coverdale, by and for
    WHITESNAKE PRODUCTIONS                       [NOS. 73-76]
15  (OVERSEAS) LIMITED; DAVE MASON;
    OTIS WILLIAMS and RON TYSON, jointly
16  d/b/a THE TEMPTATIONS; and ROBERT
    WALTER "BO" DONALDSON, individually
17  and d/b/a BO DONALDSON AND THE
    HEYWOODS; WILLIAM MCLEAN, a/k/a
18  "WILL MCLEAN" and p/k/a "MISTA
    LAWNGE," and ANDRES TITUS, p/k/a
19  "DRES," jointly d/b/a BLACK SHEEP,
    individually and on behalf of all others
20  similarly situated,

21             Plaintiffs,

22       v.

23  UMG RECORDINGS, INC., a Delaware
    corporation,
24
               Defendant.
25

26

27

28

PRINTED ON
RECYCLED PAPER     LA 9694506v1

Pursuant to Federal Rule of Civil Procedure 34, defendant UMG Recordings, Inc. ("Defendant"), hereby responds to the Eleventh Set of Requests for Production of Documents ("Request" or "Requests") propounded by the plaintiffs in the above-entitled action ("Plaintiffs") as follows:

## I.

## PRELIMINARY STATEMENT

A.     These responses and all documents produced are given solely for the purpose of, and in relation to, this action. Each response is given and each document is produced subject to all appropriate objections (including but not limited to objections concerning competency, relevancy, materiality, propriety and admissibility) which would require the exclusion of any statement contained herein if made by a witness present and testifying in court. All such objections and grounds therefore are reserved and may be interposed at the time of trial.

B.     Defendant is pursuing its investigation of the facts and law relating to this case and has not completed its discovery or its preparation for trial. Therefore, the responses set forth herein and any documents produced are provided without prejudice to Defendant's right to produce additional documents or produce evidence of any subsequent facts or interpretations thereof, or to add to, modify or otherwise change or amend the responses herein. The information hereinafter set forth is true and correct to Defendant's best knowledge as of this date, and is subject to correction for inadvertent errors, mistakes or omissions if any such errors, mistakes or omissions should be found to exist. These responses and any documents produced are based upon documents and information presently available to Defendant. References in a response to a preceding or subsequent response incorporate both the information and objections set forth in the referenced response.

C.     Defendant reserves the right to introduce at trial any and all evidence heretofore or hereinafter produced by all parties in this action or by any third party that supports or tends to support Defendant's contentions at trial or in support of or in opposition to any motion in this case. To the extent that Defendant produces any documents in response to a Request herein, it does so

UMG Recordings, Inc.'s Responses to Plaintiffs'
Ninth Set of RFP

1  without prejudice to produce additional documents and to establish at a later date any additional

2  facts that may be discovered as a result of any additional investigation and discovery.

3       D.    Any response contained herein does not constitute a waiver of any applicable

4  privilege, nor does any response contained herein waive any objection, including relevancy, to the

5  admission of such responses or responsive documents in evidence.

6       E.    The fact that a Request has been responded to herein should not be taken as an

7  admission, or a concession of the existence of any facts set forth or assumed by the Request, or that

8  such response constitutes evidence of any fact.  In addition, the fact that Defendant has responded to

9  part or all of any Request is not intended and shall not be construed to be a waiver by Defendant of

10  all or any part of any objection to any Request.

## II.

## GENERAL OBJECTIONS

13      The following general objections apply to each Request propounded by Plaintiffs and are

14  incorporated into each response thereto by Defendant:

15       A.    Defendant objects to each Request to the extent that it calls for the production of

16  documents which are subject to the attorney-client privilege, the attorney work-product doctrine or

17  any other privilege, immunity or protection available under the law.  Inadvertent disclosure of any

18  documents subject to any applicable privilege or doctrine, including, but not limited to, the attorney-

19  client privilege and the work-product doctrine, is not intended to be, and shall not operate as, a

20  waiver of such privilege or doctrine, in whole or in part.  Nor is any such inadvertent disclosure

21  intended to be, nor shall it constitute, a waiver of the right to object to any use of such document.

22       B.    Defendant objects to the Requests to the extent that they purport to impose any

23  obligations on Defendant that are not imposed by the Federal Rules of Civil Procedure or other

24  applicable law.

25       C.    Defendant objects to the definition of the terms "You," "Your", "Defendant" and

26  "UMGR" on the basis that Plaintiffs' definition of these terms is overbroad.  Defendant will

27  respond to the Requests solely on its own behalf and only with respect to documents in Defendant's

1 possession, custody or control, not those in the possession, custody, or control of other persons or

2 entities.

3      Subject to the foregoing Preliminary Statement and General Objections, which are hereby

4 incorporated by reference into each individual response below, and without waiving same,

5 Defendant responds to the Requests as follows:

**III.**

**RESPONSES TO REQUESTS FOR PRODUCTION**

8 REQUEST NO. 73:

9      All data regarding the Plaintiffs that is presently or was, at any time from 1999 to the

10 present, sent to, generated by, created in, input into, processed in, maintained in, and/or otherwise

11 residing in, any of Your Databases (as defined above), whether it currently resides there or is

12 otherwise within Your possession, custody, or control. This request includes all data relating to: (a)

13 any contracts between You and the Plaintiffs and any terms thereof or amendments thereto; (b) the

14 volume or units of sales of any products containing the Plaintiffs' master recordings (or copies

15 thereof); (c) any revenue received by You in connection with the Plaintiffs' master recordings; (d)

16 any royalties paid by You to the Plaintiffs and how such royalties were determined or calculated;

17 and (e) to the extent not otherwise covered by this request, data constituting or reflecting any of the

18 following: account numbers; account codes; account titles; sort groups; contract or subcontract

19 numbers; other account, contract, or subcontract identification information; account, contract, or

20 subcontract names; payee information; royalty rates (including, but not limited to, rates for products

21 and sales types); rate types (e.g., fixed or percent); rate tables; rate matrices; the price or revenue

22 basis upon which royalties are calculated (e.g., net receipts, gross receipts, retail); exception lists;

23 linking tools; escalation indicators; product numbers; product types; product type details; sales

24 types; sales type tables; sales channels; configuration codes; territory information; any deductions,

25 reductions, or adjustments applied or applicable in calculating royalties; and, to the extent not

26 otherwise covered by this request, other data fields referenced in Exhibit 1029 to the March 6, 2013

27 deposition of James Harrington (p. 75), the document produced by You in this litigation at bates

28 number UMGR764483-495, or any prior or subsequent iterations of the same.

PRINTED ON
RECYCLED PAPER

LA 9694506v1

UMG Recordings, Inc.'s Responses to Plaintiffs'
Ninth Set of RFP

RESPONSE TO REQUEST NO. 73:

        Defendant incorporates by reference herein its General Objections stated above.  Defendant further objects to this Request on the grounds that it is overly broad, including but not limited to its use of the word "regarding" and the phrase "relating to," and the burden of the requested discovery outweighs its likely benefit; it is compound; it is vague, ambiguous, and unintelligible ("data"); it is not reasonably particularized; it is not limited the relevant time period; it seeks in part the production of documents which are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to because it seeks documents concerning or discussing recording agreements that are not at issue in this lawsuit; it seeks documents protected from disclosure by the attorney-client privilege and/or work-product doctrine; and it seeks documents already produced by Defendant and/or already in Plaintiffs' possession, custody, or control.  This request is particularly oppressive, harassing, and unduly burdensome in that it is duplicative of, yet broader than, many of Plaintiffs' previous requests in their First through Tenth Sets of Requests for Production.  In response to those previous requests, Defendant served responses and objections, and agreed to produce and did produce (including in some instances after an extensive meet and confer process and by express agreement of the parties) a substantial subset of the documents also responsive to this request, including but not limited to recording agreements, royalty statements, correspondence, audit files and business affairs files, all of which required Defendant to expend substantial time, effort, and money to locate and prepare for production.  Plaintiffs' present, broader request would unreasonably require duplication of much of Defendant's time, effort, and expense, even though Plaintiffs could have sought to compel a broader production of documents in response to their prior requests.  Moreover, catch-all requests such as this one are inherently improper.  *See, e.g., Piller v. Perftech, Inc.*, 2011 WL 2293363, *4 (N.D. Ill. 2011).

JMBM | Jeffer Mangels
Butler & Mitchell LLP

REQUEST NO. 74:

Data and documents sufficient to show all label copy related to the Plaintiffs' master recordings and any other any information regarding the production and distribution of Plaintiffs' master recordings.

RESPONSE TO REQUEST NO. 74:

Defendant incorporates by reference herein its General Objections stated above. Defendant further objects to this Request on the grounds that it is overly broad, and the burden of the requested discovery outweighs its likely benefit; it is compound; it is vague, ambiguous, and unintelligible ("data" and "any other any information"); it is not reasonably particularized ("any other … information"); it is not limited to the relevant time period; it seeks in part the production of documents which are neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence, including but not limited to because it seeks documents concerning or discussing recording agreements that are not at issue in this lawsuit; it seeks documents protected from disclosure by the attorney-client privilege and/or work-product doctrine; and it seeks documents already produced by Defendant and/or already in Plaintiffs' possession, custody, or control. This request is particularly oppressive, harassing, and unduly burdensome in that it is duplicative of, yet broader than, many of Plaintiffs' previous requests in their First through Tenth Sets of Requests for Production. In response to those previous requests, Defendant served responses and objections, and agreed to produce and did produce (including in some instances after an extensive meet and confer process and by express agreement of the parties) a substantial subset of the documents also responsive to this request, including but not limited to recording agreements, royalty statements, correspondence, audit files and business affairs files, all of which required Defendant to expend substantial time, effort, and money to locate and prepare for production. Plaintiffs' present, broader request would unreasonably require duplication of much of Defendant's time, effort, and expense, even though Plaintiffs could have sought to compel a broader production of documents in response to their prior requests. Moreover, catch-all requests such as this one are inherently improper. *See, e.g., Piller v. Perftech, Inc.*, 2011 WL 2293363, *4 (N.D. Ill. 2011).

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
      Butler & Mitchell LLP

1  REQUEST NO. 75:

2      Data and documents sufficient to use, query, sort, filter, and interpret the data, documents

3  and other information identified and produced in response to Request Nos. 73 and 74, including but

4  not limited to keys, code maps, data field descriptors, and manuals.

5  RESPONSE TO REQUEST NO. 75:

6      Defendant incorporates by reference herein its General Objections stated above.  Defendant

7  further objects to this Request on the grounds that it is overly broad, including but not limited to its

8  use of the word "regarding" and the phrase "relating to" in Request No. 73, and the burden of the

9  requested discovery outweighs its likely benefit; it is compound; it is vague, ambiguous, and

10 unintelligible ("data" and "keys, code maps, data field descriptors, and manuals"); it is not

11 reasonably particularized; it is not limited to the relevant time period; it seeks in part the production

12 of documents which are neither relevant to the subject matter of this action nor reasonably

13 calculated to lead to the discovery of admissible evidence, including but not limited to because it

14 seeks documents concerning or discussing recording agreements that are not at issue in this lawsuit;

15 it is vague, ambiguous, and unintelligible in that it is impossible for Defendant to know which

16 documents Plaintiffs would desire or need to "use, query, sort, filter, and interpret" the massive data

17 requested in Request Nos. 73 and 74; it seeks documents protected from disclosure by the attorney-

18 client privilege and/or work-product doctrine; and it seeks documents already produced by

19 Defendant and/or already in Plaintiffs' possession, custody, or control.  This request is particularly

20 oppressive, harassing, and unduly burdensome in that it is duplicative of, yet broader than, many of

21 Plaintiffs' previous requests in their First through Tenth Sets of Requests for Production.  In

22 response to those previous requests, Defendant served responses and objections, and agreed to

23 produce and did produce (including in some instances after an extensive meet and confer process

24 and by express agreement of the parties) a substantial subset of the documents also responsive to

25 this request, including but not limited to recording agreements, royalty statements, correspondence,

26 audit files and business affairs files, all of which required Defendant to expend substantial time,

27 effort, and money to locate and prepare for production.  Plaintiffs' present, broader request would

28 unreasonably require duplication of much of Defendant's time, effort, and expense, even though

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
      Butler & Mitchell LLP

1   Plaintiffs could have sought to compel a broader production of documents in response to their prior

2   requests. Moreover, catch-all requests such as this one are inherently improper. *See, e.g., Piller v.*

3   *Perftech, Inc.,* 2011 WL 2293363, *4 (N.D. Ill. 2011).

4

5   REQUEST NO. 76:

6        Any and all documents (including e-mails, memos, reports, data runs, and/or any other

7   written communications) relating to the Plaintiffs, including but not limited to such documents

8   relating to the review of the Plaintiffs' contracts by You, decisions made by You about how to input

9   those contracts or the terms thereof into any Databases, and communications (including but not

10  limited to those involving Your Business Affairs department) relating to the interpretation of

11  Plaintiffs' contracts and/or the royalties paid or to be paid thereunder.

12  RESPONSE TO REQUEST NO. 76:

13       Defendant incorporates by reference herein its General Objections stated above.  Defendant

14  further objects to this Request on the grounds that it is overly broad, including but not limited to its

15  use of the phrase "relating to," and the burden of the requested discovery outweighs its likely

16  benefit; it is compound; it is not reasonably particularized; it is not limited to the relevant time

17  period; it seeks in part the production of documents which are neither relevant to the subject matter

18  of this action nor reasonably calculated to lead to the discovery of admissible evidence, including

19  but not limited to because it seeks documents concerning or discussing recording agreements that

20  are not at issue in this lawsuit; it seeks documents protected from disclosure by the attorney-client

21  privilege and/or work-product doctrine; and it seeks documents already produced by Defendant

22  and/or already in Plaintiffs' possession, custody, or control.  This request is particularly oppressive,

23  harassing, and unduly burdensome in that it is duplicative of, yet broader than, many of Plaintiffs'

24  previous requests in their First through Tenth Sets of Requests for Production.  In response to those

25  previous requests, Defendant served responses and objections, and agreed to produce and did

26  produce (including in some instances after an extensive meet and confer process and by express

27  agreement of the parties) a substantial subset of the documents also responsive to this request,

28  including but not limited to recording agreements, royalty statements, correspondence, audit files

and business affairs files, all of which required Defendant to expend substantial time, effort, and money to locate and prepare for production. Plaintiffs' present, broader request would unreasonably require duplication of much of Defendant's time, effort, and expense, even though Plaintiffs could have sought to compel a broader production of documents in response to their prior requests. Moreover, catch-all requests such as this one are inherently improper. *See, e.g., Piller v. Perftech, Inc.*, 2011 WL 2293363, *4 (N.D. Ill. 2011).

DATED:  July 18, 2013

JEFFREY D. GOLDMAN
RYAN S. MAUCK
BRIAN M. YATES
JEFFER MANGELS BUTLER & MITCHELL LLP

By: _____
                 BRIAN M. YATES
Attorneys for Defendant UMG RECORDINGS, INC.

UMG Recordings, Inc.'s Responses to Plaintiffs'
Ninth Set of RFP

PRINTED ON
RECYCLED PAPER

LA 9694506v1

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

On July 18, 2013 I served the document(s) described as **RESPONSES OF DEFENDANT UMG RECORDINGS, INC. TO PLAINTIFFS' ELEVENTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS [NOS. 73-76]** in this action addressed as follows:

**SEE ATTACHED LIST**

☒ (BY MAIL) True and correct copies of the aforementioned document(s) were deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY ELECTRONIC SERVICE) On ____, I transmitted the aforementioned document(s) as PDF attachments to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is        and was reported as complete and without error.

☐ (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a sealed envelope and I delivered such envelope by hand to the offices of the addressee.

☐ (BY OVERNIGHT DELIVERY) I placed the aforementioned document(s) in a sealed envelope with postage thereon fully prepaid and I caused said envelope to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

Executed on July 18, 2013 at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

ROBERTA L. FRANCHIMONE

Proof of Service

## SERVICE LIST

Leonard B. Simon
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Email: lens@rgrdlaw.com

Michael E. Sobol
Roger N. Heller
LEIFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3336
Email: msobol@lchb.com
Email: rheller@lchb.com

Bruce L. Simon
Daniel L. Warshaw
PEARSON, SIMON & WARSHAW LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Email: bsimon@pswlaw.com
Email: dwarshaw@pswlaw.com

R. Alexander Saveri
Cadio Zirpoli
Melissa Shapiro
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Email: rick@saveri.com
Email: cadio@saveri.com
Email: melissa@saveri.com

Bryan L. Clobes
CAFFERTY CLOBES MERIWETHER &
SPRENGEL
1101 Market Street, Suite 2650
Philadelphia, PA 19107
Email: bclobes@caffertyclobes.com
Email: mtarringer@caffertyclobes.com

David M. Given
Nicholas A. Carlin
Robyn C. Callahan
PHILLIPS, ERLEWINE & GIVEN LLP
50 California Street, 32nd Floor
San Francisco, CA 94111
dmg@phillaw.com
nac@phillaw.com
rcc@phillaw.com