UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RICK JAMES, et al.,

    Plaintiffs,

v.

UMG RECORDINGS, INC.,

    Defendant.

Case No. 11-cv-01613-SI   (MEJ)

**ORDER RE: JOINT DISCOVERY LETTER**

Re: Dkt. No. 176

## I. BACKGROUND

This is a consolidated putative class action for breach of contract, breach of the covenant of good faith and fair dealing, and statutory violations of various state laws against defendant, UMG Recordings, Inc., and its affiliated and subsidiary entities ("UMGR"), filed by plaintiff recording artists and producers ("Plaintiffs"), who allege that UMGR underpaid licensing royalties on digital downloads of Plaintiffs' recordings.

The current dispute concerns Plaintiffs' motion to compel production of Privilege Log Entry Nos. 61-65, 75-80, 83-112, 114-128, 131-178, 180-240, 254-293, 300-317, and 337, which UMGR added to the log in May of 2013. Jt. Ltr.at 2. Plaintiffs assert that these documents relate to business decisions regarding: "(a) UMGR's adoption of its policy for calculating digital download royalties, as reflected in the 2002 'Ostroff Memo'; (b) UMGR's communicating such policy to artists and others; and (c) UMGR's 'digital media strategy.'" *Id*.at 3.

In support of its claims of privilege, UMGR has produced a privilege log in which it contends each of the attorneys making these communications were "in-house counsel." *Id*.at 4. Plaintiffs argue that UMGR fails to meet the burden to establish these communications are attorney-client because the lawyers listed on the privilege log were serving in primarily business roles when the communications were made. *Id*.at 3. They contend the privilege log is insufficient

in that it fails to reveal the roles played by the attorneys writing or receiving the communications. *Id*., at 4, fn. 10. UMGR contends that it has made a prima facie showing that the attorney-client privilege applies because the dominant purpose of UMGR's relationship with the lawyers listed on the log was a legal one at the time of the communications at issue. *Id*.at 5. UMGR denies asserting a blanket privilege, and states that it has released all communications relating to business decisions.

## II. DISCUSSION

### A. Applicable Law

Pursuant to Federal Rule of Evidence 501, attorney-client issues in diversity cases are substantive and thus controlled by the forum state's law. *Great Am. Assur.Co. v. Liberty Surplus Ins. Corp*., 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009). Under California law, the attorney-client privilege is governed by statute. Cal. Evid. Code § 911, *et seq*. Communications between a lawyer and client which are intended to be confidential are protected from disclosure. *Id.* § 954. Confidential communications include not only information given by a client to his or her attorney but also the attorney's legal opinion and advice given to the client. *Id.* § 952.

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id*.

To determine whether a communication is privileged, "the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Court*, 196 Cal. App. 4th 27, 51 (2011). "Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by privilege." *Id*. "The attorney-client privilege attaches to a confidential communication between the attorney and

the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco*, 47 Cal.4th at 734.  "[B]ecause the privilege protects the transmission of information, if the communication is privileged, it does not become unprivileged simply because it contains material that could be discovered by some other means." *Id.* at 735 (emphasis in original).

"The privilege does not apply to communications to an attorney who is transacting business that might have been transacted by another agent who is not an attorney." *Montebello Rose Co. v. Agri. Labor rel. Bd.*, 119 Cal. App. 3d 1, 33 (1981).  Whether a particular communication is predominantly in furtherance of the attorney-client relationship is a question of fact. *Id*.

**B.    Analysis**

Plaintiffs argue that UMGR is improperly asserting the attorney client privilege to withhold virtually all of its internal correspondence regarding business decisions about its digital download policy, which were reflected in the 2002 "Ostroff Memo."  Crucial to Plaintiffs' position is that the Ostroff Memo announced "an across-the-board, extra-contractual decision" to pay artists higher royalties than they deserved" which was motivated solely by business concerns. Jt. Ltr.at 3. Plaintiffs also contend that emails regarding UMGR's communication of the new policy to artists involve public relations, not legal issues.  *Id*.at 3-4.  Likewise, communications regarding "digital media strategy" relate primarily to business concerns.  *Id*.at 4.

The party claiming the privilege shoulders the burden of showing that the evidence it seeks to suppress falls within the terms of an applicable statute. *Costco*, 47 Cal.4th at 733.  Accordingly, the Court turns to UMGR's showing.  UMGR contends that it has made a prima facie showing that the dominant purpose between the parties to the communications was one of attorney client. Jt. Ltr. at 5.  UMGR asserts that "in 2001 –3, it had a corporate 'center' and various business units (such as different record labels) each run by business executives, for whom UMGR claims no privilege for the documents involved here."  *Id*.  The center also had lawyers, led by UMGR's General Counsel, Michael Ostroff.  *Id*.  Many of the larger business units had their own lawyers. Id.  UMGR asserts that the dominant purpose of the relationship between UMGR and 22 of the 24

3

lawyers on the privilege log was a legal one at the time of the communications at issue. *Id*.

UMGR relies on the privilege log, which it claims provides sufficient foundational facts to determine the privilege issue. *Id*. The information in a privilege log "must be sufficiently specific to allow a determination of whether each withheld document is or is not [in] fact privileged." *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 130 (1997). For each document, UMGR's privilege log contains the author, date of preparation, recipients, description of the contents and purpose of the document, and the specific privilege claimed. This is sufficient information under *Wellpoint*. Accordingly, the Court finds that UMGR's privilege log meets the presumption.

However, the inquiry does not end there. As Plaintiffs contend, the attorney-client privilege does not attach to an attorney's communications when the client's dominant purpose in retaining the attorney was something other than to provide the client with a legal opinion or legal advice. The attorney-client privilege "is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent." *Chicago Title Ins. v. Superior Court*, 174 Cal. App. 3d 1142, 1151 (1985). The attorney-client privilege does not apply without qualification where the attorney is merely acting as a negotiator for the client (*Montebello Rose Co.*, 119 Cal. App. 3d at 32-35, or merely gave business advice (*Estate of Perkins v. Bigelow*, 195 Cal. 699, 710 (1925)). "To make the communication privileged the dominant purpose must be for transmittal to an attorney 'in the course of professional employment.'" *Montebello*, at 32.

Plaintiffs largely rely on the deposition testimony of attorney Larry Kenswill, who was then President of eLabs, UMGR's division handling electronic commerce initiatives, to establish that the communications pertain primarily to business advice, given by lawyers serving as business advisors. When asked whether the decision to treat permanent download income not as licensed income was primarily a legal or business decision, Kenswill stated: "I am not comfortable with the word 'primarily.' I am comfortable saying that there were both legal and business… issues to be thought of." Jt. Ltr., Kenswill Dep. at 140. Rand Hoffman, then an Executive Vice President of Business and Legal Affairs ("BLA"), testified that he "wouldn't characterize his

4

conversations with Ostroff leading up to the memo as either business or legal." *Id*., Hoffman Dep. at 62, 72. Plaintiffs also rely on Kenswill's statement that "Anyone who had a law degree in the business affairs department was working largely in a business capacity" as support for their contention that the attorneys on the privilege log all worked in non-legal capacities when the communications were made. *Id*.at 3, Kenswill Dep.at 42.

Plaintiffs' evidence fails to overcome UMGR's claims of privilege. UMGR has sufficiently supported its claim that the dominant purpose of the relationship with the attorneys at the time the communications were made was legal. The log entries state that legal advice was either sought or given with respect to digital downloads, artist communications, on-line royalties, digital media strategy, and anti-piracy. Plaintiffs' only evidence that the named attorneys were not working in a legal capacity when they made these communications is Kenswill's testimony regarding the roles of BLA attorneys. However, this statement pertained to 1998, not the time period in the log. Jt. Ltr.at 5, fn. 18. This is insufficient evidence that these lawyers worked in a primarily non-legal capacity and gave primarily business advice. Nor does the fact that Hoffman wouldn't characterize his conversations with Ostroff as "either business or legal" defeat UMGR's claim of privilege. *Id.* at 2. Only thirteen of the challenged communications are between Hoffman and Ostroff, nine of which also include other attorneys. (Privilege Log Entries 138, 140, 145, 149, 150, 151, 155, 162, 197, 210, 216, 218, and 233.)

Here, the Court finds that UMGR has not asserted a blanket privilege over its communications. UMGR has produced non-privileged communications authored by the attorneys on the log, and invoked attorney-client privilege only for those documents involving legal advice. *See In re 3dfx Interactive, Inc*., 347 B.R. 394, 403 (N.D. Cal. Bankr. 2006) (denying motion to compel production of documents on the basis that defendant's in-house counsel was acting as business advisor; defendant consistently stated in letters, motions, and depositions that it produced all documents pertaining to business purposes).

### III.     CONCLUSION

For the foregoing reasons, the Court finds the communications are privileged, and on that basis DENIES Plaintiffs' motion to compel production of Privilege Log Entries: Nos. 61-65, 75-

5

80, 83-112, 114-128, 131-178, 180-240, 254-293, 300-317, and 337.

**IT IS SO ORDERED.**

Dated: February 10, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge