| | |
|---|---|
| 1 | JEFFREY D. GOLDMAN (Bar No. 155589), JGoldman@jmbm.com |
| 2 | RYAN MAUCK (Bar No. 223173), RMauck@jmbm.com |
| | BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com |
| 3 | JEFFER MANGELS BUTLER & MITCHELL LLP |
| | 1900 Avenue of the Stars, Seventh Floor |
| 4 | Los Angeles, California 90067-4308 |
| | Telephone: (310) 203-8080 |
| 5 | Facsimile: (310) 203-0567 |
| 6 | Attorneys for Defendant UMG RECORDINGS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest; CARLTON DOUGLAS RIDENHOUR, d/b/a "CHUCK D," individually and as a member of PUBLIC ENEMY; WHITESNAKE, a doing business as designation of David Coverdale, by and for WHITESNAKE PRODUCTIONS (OVERSEAS) LIMITED; DAVE MASON; OTIS WILLIAMS and RON TYSON, jointly d/b/a THE TEMPTATIONS; and ROBERT WALTER "BO" DONALDSON, individually and d/b/a BO DONALDSON AND THE HEYWOODS; WILLIAM MCLEAN, a/k/a "WILL MCLEAN" and p/k/a "MISTA LAWNGE," and ANDRES TITUS, p/k/a "DRES," jointly d/b/a BLACK SHEEP, individually and on behalf of all others similarly situated, | CASE NO.    CV11-01613 SI (MEJx)<br><br>**COVER PAGE FOR JOINT LETTER TO MAGISTRATE JUDGE MARIA-ELENA JAMES RE DISCOVERY DISPUTE** |
| Plaintiffs, | |
| v. | |
| UMG RECORDINGS, INC., a Delaware corporation, | |
| Defendant. | |

PRINTED ON RECYCLED PAPER
LA 10577004v1

Cover Page For Joint Letter Re Discovery Dispute

1  Pursuant to the Court's Standing Order, defendant UMG Recordings, Inc. and
2  plaintiffs submit this joint letter regarding a discovery dispute they were unable to resolve through
3  meet and confer, which took place via telephonic conference on February 27, 2014 and March 5,
4  2014.

5

6  DATED: March 24, 2014        By: /s/ Jeffrey D. Goldman
                                     JEFFREY D. GOLDMAN
7                                Attorney for Defendant UMG RECORDINGS, INC.

8
   DATED: March 24, 2014        By: /s/ David M. Given
9                                    DAVID M. GIVEN
                                 Attorney for Plaintiffs

March 24, 2014

**VIA ELECTRONIC CASE FILING**

The Honorable Maria-Elena James
United States District Court
Northern District of California

Re:   *James v. UMG Recordings, Inc.*, Case No. CV 11-1613 SI (N.D. Cal.)

Dear Magistrate Judge James:

     The parties hereby submit this letter regarding a discovery dispute they were unable to resolve through meet and confer.

     <u>UMGR's Position:</u>   As they approach class certification briefing, which begins on July 11, the parties met and conferred on February 27 in an effort to resolve outstanding issues regarding UMGR's interrogatories and requests for admission.  A number of issues were resolved; however, the parties are at an impasse on the following two issues.  UMGR asks the Court to (1) order Plaintiffs to provide a further, full, and nonevasive response to Interrogatory 29, as Plaintiffs' present response is noncompliant with this Court's August 29, 2013 Order [Dkt. 168]; and (2) order plaintiff Dave Mason to respond in compliance with Fed. R. Civ. P. 36 to UMGR's Requests for Admission 95-105 and 116-126, to which Mason has improperly objected and refused to respond.

     **Interrogatory 29** asks:  "For each agreement alleged in the [Consolidated Amended Complaint ("CAC")]: (a) state each part of the agreement not in writing, and the date that part of the agreement was made; (b) state each modification not in writing, and the date the modification was made; (c) state who participated in the communications or conduct that created each modification not in writing; and (d) identify all DOCUMENTS that evidence each modification of the agreement not in writing and for each state the name, address, and telephone number of each person or entity who has the DOCUMENT."

     This contention interrogatory (modeled on California's similar Judicial Council form interrogatory) is straightforward.  However, Plaintiffs initially refused to respond, and UMGR moved to compel [Dkt. 164].  This Court granted UMGR's motion, finding Plaintiffs' objections "not well-taken" [Dkt. 168 at 2].  The Court divided Plaintiffs' obligations into two parts.  To the extent their response did not require "individual contract analysis," this Court ordered Plaintiffs to respond "as to the putative class as a whole" and to "supplement this interrogatory with all responsive information that does not require individualized contractual review."  Dkt. 168, at 2.

     It should have been a simple matter for Plaintiffs to comply with the Court's Order and answer this interrogatory.  Though the particulars may differ from state to state in some respects, even first-year law students know what a "modification" of a contract is – a "change in an original agreement which introduces a new or different element into the details of the contract," which can only occur if "the other side (1) had notice of the change and (2) accepted the change."  *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 849 (S.D. Tex. 2011) (emphasis added).  **Mutual** assent (whether express or implicit) is essential.  *E.g.*, *Rodriguez v. City of Chicago*, 2012 WL 662312, *2 (N.D. Ill. 2012) ("In general, a valid modification of a contract must satisfy all the requirements for a valid original contract"); *Insurance Co. of the West v. Wallace Inv. Ltd. Partnership*, 2013 WL 4647684, *2 (D. Utah 2013).

     However, for purely tactical reasons (discussed below), Plaintiffs' court-ordered response is evasive and fails to answer Interrogatory 29.  Plaintiffs state that they "contend that the UMGR [sic] unilaterally made modifications to artist/producer contracts without a formal amendment in writing," citing "[t]he September 17, 2002 memorandum from Michael Ostroff … former Executive Vice-President of Business & Legal Affairs for UMGR [the so-called 'Ostroff Memo'], [which] set forth a corporate policy on how UMGR would henceforth pay royalties on permanent and conditional downloads," and UMGR's "establish[ment of] a set of new internal rules for accounting and paying of digital downloads applied across the board in UMGR's accounting

software system…" *See* Ex. A, pp. 4-5. However, Interrogatory 29 does not ask whether UMGR *tried*, but failed, to modify any contracts. It asks whether any contracts were ***actually*** modified.[1] So do Plaintiffs contend the contracts alleged in the CAC were modified by UMGR's purported conduct (because Plaintiffs and the putative class agreed to UMGR's changes, expressly or by implication), or not (because Plaintiffs and the putative class ***did not*** agree to those changes)?

It is impossible to tell, and in meet and confer, it became clear that this evasion is intentional. Plaintiffs refused to clarify their response, insisting that whether the contracts were modified is "ultimately a question on the merits that we're going to have to resolve through summary judgment." However, a party cannot refuse to respond to a contention interrogatory, especially after being ordered to do so, because it claims it will disclose its contentions sometime later in the case. This is just as meritless as Plaintiffs' previously rejected argument, regarding a different contention interrogatory, that "Defendant will learn about Plaintiffs' position regarding this interrogatory when they file their motion for class certification" [Dkt. 138, at 2].

This is not just semantics. There is a tactical reason for Plaintiffs' evasiveness. They want to have their cake and eat it too; they want to claim both that (1) UMGR ***fraudulently concealed*** its download royalty procedures (such as those reflected in the Ostroff Memo) from recording artists (which Plaintiffs seem to think is a "common" issue susceptible to class certification), and (2) the Ostroff Memo modified artists' agreements to the extent it provided (as Plaintiffs themselves have characterized it) for UMGR "to pay artists higher royalties than they deserved" [Dkt. 181, at 3] by ***refraining*** from taking certain ***deductions*** from an artist's royalties even if that artist's particular contract permitted them. Plaintiffs may contend the Ostroff Memo lessens the difficulty of calculating damages because these concessions (if legally binding on UMGR) might avoid application of certain contractual deductions that widely vary from contract to contract.

Plaintiffs' problem is that an artist cannot have ***agreed*** to a modification that was ***concealed*** from that same artist. So if Plaintiffs state that "Yes, UMGR's conduct modified artists' agreements," they sacrifice their fraudulent concealment claim for those artists; if they state their contention is that "No, UMGR's conduct did not modify artists' agreements," then they sacrifice their contention that the Ostroff Memo's concessions legally bind UMGR. If they state that UMGR's conduct modified some contracts but not others, they will expose an uncommon issue. Whatever the case, a straightforward answer – as Plaintiffs were already ordered to provide – "will certainly assist in clarifying the issue of whether the case may proceed as a class action." Dkt. 170, at 4. Plaintiffs should be ordered to comply with this Court's Order, including specifically responding separately and fully to ***each*** of the four subparts of Interrogatory 29.

**RFAs 95-105, 116-126 to Plaintiff Dave Mason**: Among the Requests for Admissions UMGR propounded on plaintiff Dave Mason were this series of 22 RFAs concerning the contractual term "direct sales to consumer operations," which is the operative language from Mason's 1969 contract on which he predicates UMGR's alleged liability to him. CAC ¶ 76 ("The pertinent provision reads as follows: 'Notwithstanding anything to the contrary contained herein, Company shall pay Artist an aggregate of fifty (50%) percent of the net royalties received by Company from the licensing of the use of master recordings of Artist's performances made hereunder with respect to records sold anywhere in the world through any record club or other direct sales to consumer operation.'") (emphasis added).[2] These RFAs reference as exhibits eleven putative "class" contracts for which Mason proposes to serve as the class representative, all of which use the identical term from his contract, "direct sales to consumer operations." *E.g.*, RFA 95: "Admit that MUSIC DOWNLOAD PROVIDERS are 'direct sales to consumer operations' within the meaning of Merry Clayton's July 18, 1969 agreement attached hereto as Exhibit 2." Each of RFAs 96-105 follows the same format. *See* Ex. B, pp. 8-15. RFAs 116-126 duplicate these interrogatories with respect to "RINGTONE PROVIDERS." *Id.*, pp. 20-28.

These RFAs could not be more relevant and probative of Mason's claim that he is a proper

---

[1] Plaintiffs cannot contend this issue requires "individualized contractual review," because they already separately responded to that part of the interrogatory, asserting they were currently unaware of such individual modifications.

[2] In other discovery responses, Mason contends/admits that download providers are ***not*** "record clubs."

class representative. As this Court previously held: "A request for admission that relates to the interpretation of a contract at issue in a case involves the application of law to the unique facts of that case, and is thus permissible under" Fed. R. Civ. P. 36. Dkt. 171, at 2. Each of these alleged "class" contracts, though they use the same contractual term "direct sales to consumer operation" on which Mason is suing, provide for a *reduced* royalty rate for sales made by this method, not an *increased* royalty rate. Hence, were Mason's claim to succeed, these artists would be *harmed* – an issue directly relevant to class certification. "It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000). Conversely, if Mason is prepared to sacrifice his claim for the supposed good of the "class" by admitting that download and ringtone providers are *not* "direct sales to consumer operations," such a crucial admission would also certainly be valuable in assessing the strength of his claim and, therefore, his viability as a class representative. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011) (plaintiff with weaker claim than class members is not an adequate representative).

Mason refuses to either admit or deny these requests, claiming – tracking the language of Fed. R. Civ. P. 36 – that he *personally* "lacks sufficient information" to do so because these are not *his* contracts. Even if this is true (and regardless of the consequences of his purported ignorance on his request to be named a class representative), it is no excuse. A party may not "avoid admitting or denying a proper request for admission simply by tracking the language of Rule 36(a)" because this "would reduce a litigant's obligation to make "reasonable inquiry" into a mere semantic exercise … [A] response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) … *if information 'readily obtainable' is sufficient to enable him to admit or deny the matter*." *Asea, Inc. v. Southern Pacific Transp. Co.*, 669 F.2d 1242, 1246-47 (9th Cir. 1981) (emphasis added). Information is "readily obtainable" if it is "held by … an individual or entity with which the responding party maintains a relationship that enables it readily to procure the required information." *F.D.I.C. v. Halpern*, 271 F.R.D. 191, 194 (D. Nev. 2010). Here, Mason's attorneys, who have possessed these eleven contracts for nearly two years, certainly are capable of reviewing them and responding to these RFAs. *Louis v. Martinez*, 2011 WL 1832808, *3 (N.D. W. Va. 2011) (compelling answer to RFA where information was readily obtainable by party's attorney, "even though [party] had no personal knowledge of the facts"); *In re Norris*, 2012 WL 1565602, *2 (Bankr. N.D. Ohio 2012) (compelling answer to RFA based on information available to party's attorney). Thus, Mason should be prohibited from relying on lack of personal knowledge, and ordered to admit or deny these RFAs in compliance with Rule 36.

*Plaintiffs' Position:*

**Interrogatory 29**: Plaintiffs in good faith provided a detailed supplemental answer to this interrogatory identifying UMGR's general conduct in unilaterally modifying artists' and producers' contracts. The supplemental interrogatory answer makes explicit that these were changes made, in certain circumstances, without first obtaining the consent of the applicable counterparty. The September 17, 2002 memorandum by Michael Ostroff cited in the supplemental interrogatory response, stated that while UMGR's existing written contract template and then-pending draft agreements should be amended in writing to reflect UMGR's new download royalty policies and that UMGR should "offer to amend" existing contracts, "[e]ven if the contract is not amended, we will instruct royalties" to change the level at which downloads were paid. So, it was UMGR's position in 2002 (as articulated by one of its chief lawyers)--and contrary to its position in this litigation--that a contract modification could be made *without the mutual consent* of the counterparty.

UMGR's current complaint (tendered months after this supplemental interrogatory response was served) is that Plaintiffs are not being clear about the legal effect of the modifications alleged. The short answer is that Interrogatory No. 29 did not ask for such a response and UMGR cannot now rewrite it to elicit one. Plaintiffs answered what was asked of them. They were not required to expound further.

Moreover, as UMGR concedes, this Court required a supplemental response with respect to Interrogatory No. 29 *only* to the extent it did not entail an "individual contract analysis." Dkt. No. 168 at 2. The legal significance of UMGR's unilateral modifications will involve, to a degree, just such an analysis. That analysis would include whether a contract contains an

integration clause, how the contract allows for amendments of its terms, and (as UMGR notes) the effect of state law governing interpretation of the contract. Thus, the answer UMGR now seeks was one that this Court did not require Plaintiffs to make.

What UMGR really is complaining about here is the merits of the supplemental response to Interrogatory No. 29. This Court has previously said that it would not compel further responses to UMGR's discovery requests "based on UMGR's dissatisfaction with the merits, rather than the completeness, of Plaintiffs' responses." Dkt. No. 168 at 4. The Court is respectfully requested to apply that precept here as well.

**RFAs 95-105, 116-126 to Plaintiff Dave Mason**: UMGR is entitled to argue at class certification that differences in the contracts block certification, or that differences between Mason's contracts and others make him inadequate or atypical. But to ask Mason, in a contention interrogatory, to give his opinion on the meaning of certain absent class members' contracts is unnecessary, inappropriate and borders on the abusive.

There is no dispute that Mason has no knowledge of the contents or proper interpretation of any other artist's agreement with UMGR. At his deposition, UMGR's counsel questioned Mason extensively concerning this very issue. Mason testified that he did not know the answers to the questions. (Mason Dep. at 85-92.) When asked whether, in general, UMGR used form contracts, Mason responded "I have no knowledge of what is in any other agreements or what could be or what couldn't be. I don't know the specifics of what agreements they have." (*Id.* at 152.)

UMGR cites no authority (and Plaintiffs' research has disclosed none) requiring a named plaintiff, prior to class certification, to opine on contract interpretation questions affecting an absent member of the putative class. *See e.g., Mehl v. Canadian Pacific Railway*, 216 F.R.D. 627 [add pinpoint cite] (D.N.D. 2003) (denying motion to compel further responses to written pre-certification discovery concerning absent class members, despite defendant's contention that discovery was necessary to "determine whether the prerequisites of Rule 23 [were] satisfied"); *Bausch & Lomb Inc. v. Alcon Laboratories, Inc.*, 173 F.R.D. 367, 377 (W.D.N.Y. 1995) (requests for admissions as to interpretation of documents improper). ). If it is counsel that UMGR thinks should be answering these questions, the same point could be made – we are not aware of any case that requires counsel to make binding admissions of the meaning of contracts entered by persons not yet before the Court.

UMGR's attempted reliance on this Court's Order (Dkt. 171 at 2) is misplaced. That Order required Whitesnake to respond *only* to RFAs concerning its own contract and did not purport to require Whitesnake to interpret the contracts of absent members of the putative class. Similarly, this Court has refused to compel Plaintiffs to respond to interrogatories concerning the interpretation of contracts of former plaintiffs Rob Zombie, White Zombie, and Damon "Otis" Harris on the ground that doing so would violate the principle of proportionality contained in Fed. R. Civ. P. 26(b)(2)(C)(1) because UMGR asserted that it "already possesses the knowledge that these artists do not meet class criteria." Dkt. 155 at 4. UMGR assets something similar above, and the requested discovery should therefore be denied.

The authorities UMGR cites for the proposition that information available to a party's attorney is reasonably available to the party (*Louis v. Martinez*, 2011 WL 1832808 (N.D. W. Va. May 13, 2011) and *In re Norris*, 2012 WL 1565602 (Bankr. N.D. Oh. May 2, 2012)) are similarly inapposite. In neither case was counsel for a putative class asked to answer questions calling for contract interpretation about contracts of absent class members. The discovery at issue in those cases concerned only facts about the named parties, and therefore the decisions have no applicability here.

We do not suggest that UMGR cannot present this argument in opposing class certification, or that Judge Illston may inquire as to plaintiffs' theories as to how Mason can represent the absent class members with differing contracts. But that is a far cry from giving answers to RFAs on behalf of Mr. Mason.

- 5 -

Sincerely,

/s/_____    /s/_____

JEFFREY D. GOLDMAN of              DAVID M. GIVEN of
Jeffer Mangels Butler & Mitchell LLP   Phillips, Erlewine & Given LLP