1  JEFFREY D. GOLDMAN (Bar No. 155589),
   JGoldman@jmbm.com
2  RYAN S. MAUCK (Bar No. 223173), RMauck@jmbm.com
   BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3  JEFFER MANGELS BUTLER & MITCHELL LLP
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California  90067-4308
   Telephone:     (310) 203-8080
5  Facsimile:     (310) 203-0567

6  Attorneys for Defendant

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  RICK JAMES, by and through THE JAMES          CASE NO.     CV11-01613 SI
    AMBROSE JOHNSON, JR., 1999 TRUST, his
12  successor in interest; CARLTON DOUGLAS
    RIDENHOUR, d/b/a "CHUCK D," individually
13  and as a member of PUBLIC ENEMY;              DEFENDANT UMG RECORDINGS, INC.'S
    WHITESNAKE, a doing business as              NOTICE OF MOTION AND MOTION FOR
14  designation of David Coverdale, by and for    SUMMARY JUDGMENT NO. 1:
    WHITESNAKE PRODUCTIONS
15  (OVERSEAS) LIMITED; DAVE MASON;              AS TO ALL CLAIMS OF PLAINTIFFS BO
    OTIS WILLIAMS and RON TYSON, jointly          DONALDSON AND RON TYSON
16  d/b/a THE TEMPTATIONS; and ROBERT
    WALTER "BO" DONALDSON, individually
17  and d/b/a BO DONALDSON AND THE
    HEYWOODS; WILLIAM MCLEAN, a/k/a
18  "WILL MCLEAN" and p/k/a "MISTA                Date:         June 27, 2014
    LAWNGE," and ANDRES TITUS, p/k/a             Time:         9:00 a.m.
19  "DRES," jointly d/b/a BLACK SHEEP,            Courtroom:    10, 19th Floor
    individually and on behalf of all others      Judge:        Hon. Susan Illston
20  similarly situated,

21                    Plaintiff,

22          v.

23  UMG RECORDINGS, INC., a Delaware
    corporation,
24
                      Defendant.
25

26

27

28

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
      | Butler & Mitchell LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on June 27, 2014 at 9:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 10 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Susan Illston, defendant UMG Recordings, Inc. ("UMGR") will and hereby does move for an Order granting summary judgment to UMGR on all Causes of Action of the Consolidated Amended Complaint ("CAC") of plaintiffs Bo Donaldson and Ron Tyson.

The grounds of this motion are as follows:

1.     Donaldson's First, Second and Third Causes of Action allege breach of a single written contract dated as of August 27, 1973 (the "1973 Contract").  These claims should be dismissed because Donaldson lacks standing to maintain claims under the 1973 Contract. Donaldson and his bandmates formed a partnership with respect to their recording services under the 1973 Contract, and Donaldson lacks authority and permission from the partnership to maintain this action.

2.     Even if Donaldson had standing to maintain this action, his First, Second and Third Causes of Action should be dismissed because he contends that it is UMGR's "licensees" and not UMGR that is selling Downloads (as defined in the CAC and herein), yet the 1973 Contract provides that royalties for sales of "records in the form of … recorded devices sold by [UMGR's] licensees" are subject to *reduced* royalties from the rate that UMGR has applied, rather than *increased* royalties.

3.     Like Donaldson, Tyson lacks standing to pursue his claims.  Tyson's First, Second and Third Causes of Action allege breach of two written contracts:  a contract dated as of May 31, 1987 (the "1987 Contract"), and a contract dated as of December 15, 1993 (the "1993 Contract"). These claims should be dismissed because Tyson lacks standing to maintain claims under either of these contracts.  The 1987 Contract is between UMGR's predecessor-in-interest and A Song For You, Inc.  Tyson is not a party to the 1987 Contract, nor does he even own any part of A Song For You, Inc.  Further, A Song For You, Inc. is a suspended California corporation which could not prosecute claims even if it were the designated plaintiff.   The 1993 Contract is between UMGR's

1  predecessor-in-interest and Tall Temptations, Inc. Tyson is not a party to the 1993 Contract, nor

2  does he even own any part of Tall Temptations, Inc. Otis Williams, the owner of A Song For You,

3  Inc. and Tall Temptations, Inc., previously dismissed his claims against UMGR in these actions.

4        4.     Donaldson and Tyson's Fourth, Fifth, and Sixth Causes of Action for open book

5  account, violation of Cal. Bus. & Prof. Code § 17200, and violation of New York General Business

6  Law § 437 fail for the same reasons. The parties' relationships are contractual ones, and these

7  claims seek the same recovery and are based on the same alleged underpayment of royalties as the

8  First, Second and Third Causes of Action. If UMGR has not underpaid contractual royalties to

9  Donaldson and/or Tyson, or if Donaldson and/or Tyson lack standing to assert such claims, then

10  these derivative claims also fail.

11        This motion is based upon this Notice, the accompanying Memorandum of Points and

12  Authorities, the accompanying Declaration of Jeffrey D. Goldman ("Goldman Decl."), the

13  depositions of Bo Donaldson ("Donaldson Depo."), Ron Tyson ("Tyson Depo."), and Otis Williams

14  ("Williams Depo."), the court file, any matters of which this Court may properly take judicial notice

15  or may otherwise consider, any reply UMGR may make, and any further evidence and argument

16  that may be presented to the Court prior to or at the hearing on this Motion.

17

18  DATED: May 23, 2014            JEFFREY D. GOLDMAN

19                                      RYAN S. MAUCK

                                    BRIAN M. YATES

20                                      JEFFER MANGELS BUTLER & MITCHELL LLP

21                                      By: /s/ Jeffrey D. Goldman

22                                          JEFFREY D. GOLDMAN

                                  Attorneys for Defendant

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

Jeffer Mangels
Butler & Mitchell LLP

JMBM

8461383v6

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

**TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT ......................................................................1

II.  ARGUMENT........................................................................................4

    A.   UMGR IS ENTITLED TO SUMMARY JUDGMENT ON DONALDSON'S CLAIMS BECAUSE UMGR HAS NOT UNDERPAID ROYALTIES UNDER THE 1973 CONTRACT. ............................................................4

        1.   The Legal Standard......................................................................4

        2.   Under Plaintiffs' "License" Theory, the Applicable Provision of the 1973 Contract Provides for a Lower Royalty Rate Than He Is Receiving, Not a Higher Rate.......................................................4

        3.   If UMGR Has Not Underpaid Royalties to Donaldson Under the 1973 Contract, Then All of his Claims Fail as a Matter of Law. .........................10

    B.   DONALDSON AND TYSON LACK STANDING TO MAINTAIN THEIR CLAIMS. ........................................................................................11

        1.   Donaldson and the Heywoods are a Partnership That Agreed to Take Action Only By Majority Vote, and Donaldson Has Never Obtained the Required Majority Consent to Pursue this Action.................................11

        2.   Tyson is Not a Party To the Contracts on Which He is Suing, and One of those Parties is a Suspended Corporation.................................13

III. CONCLUSION.....................................................................................16

- i -

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**TABLE OF AUTHORITIES**

Page

CASES

*Allman v. Sony BMG Music Entertainment*,
2008 WL 2477465 (S.D.N.Y. 2008) ................................................................................6

*Bleavins v. Demarest*,
196 Cal. App. 4th 1533 (2011) .......................................................................................13

*Capitol Records, LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013) .............................................................................6

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
2 Cal. 4th 342 (1992) ......................................................................................................9

*Densmore v. Manzarek*,
2008 WL 2209993 (Cal. App. 2008) ..............................................................................12

*Eastern Aviation Group, Inc. v. Airborne Express, Inc.*
6 Cal. App. 4th 1448 (1992) ...........................................................................................14

*F.B.T. Productions, LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010) .......................................................................................1, 7

*FPI Development, Inc. v. Nakashima*,
231 Cal. App. 3d 367 (1991) ...........................................................................................4

*Garcia v. Truck Ins. Exchange*,
36 Cal. 3d 426 (1984) ......................................................................................................4

*Hatchwell v. Blue Shield of California*,
198 Cal. App. 3d 1027 (1988) ........................................................................................13

*Holmes v. Columbia Pictures Corp.*,
109 F. Supp. 327 (S.D. Cal. 1953) .................................................................................14

*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.*,
136 Cal. App. 4th 212 (2006) .........................................................................................14

*London-Sire Records, Inc. v. Doe 1*,
542 F. Supp. 2d 153 (D. Mass. 2008) ..............................................................................7

*Lyon v. MacQuarrie*,
46 Cal. App. 2d 119 (1941) ............................................................................................11

*Malmsteen v. Universal Music Group, Inc.*,
940 F. Supp. 2d 123 (S.D.N.Y. 2013) .....................................................................3, 6, 9

8461383v6

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**TABLE OF AUTHORITIES**
**[CONTINUED]**

Page

*Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*,
  2011 WL 11501 (N.D. Cal. 2011) ..........................................................................9

*Mayer v. C.W. Driver*,
  98 Cal. App. 4th 48 (2002) ...................................................................................11

*McAfee v. Francis*,
  2012 WL 762118 (N.D. Cal. 2012) .......................................................................9

*Oliver by Hines v. McClung*,
  919 F. Supp. 1206 (N.D. Ind. 1995) .....................................................................1

*Panama Music Corp. v. Universal Music Group Inc.*,
  Case No. 12-20200-CIV-GOLD/GOODMAN, Dkt. 88, *16 (S.D. Fla. July 9, 2013) ............3

*Price v. Starbucks Corp.*,
  192 Cal. App. 4th 1136 (2011) .............................................................................10

*Reinhardt v. Wal-Mart Stores, Inc.*,
  547 F. Supp. 2d 346 (S.D.N.Y. 2008) ...................................................................6

*Smith v. Microskills San Diego L.P.*,
  153 Cal. App. 4th 892 (2007) ...............................................................................14

*Taylor v. Waddell & Reed, Inc.*,
  2012 WL 10669 (S.D. Cal. 2012) ..........................................................................2

*United States v. King Features Entertainment, Inc.*,
  843 F.2d 394 (9th Cir. 1988) .................................................................................4

*Villacres v. ABM Industries Inc.*,
  189 Cal. App. 4th 562 (2010) .................................................................................4

*Wallner v. Parry Professional Bldg., Ltd.*,
  22 Cal. App. 4th 1446 (1994) ...............................................................................11

*Winet v. Price*,
  4 Cal. App. 4th 1159 (1992) ..................................................................................4

*Wolf v. Walt Disney Pictures & Television*,
  162 Cal. App. 4th 1107 (2008) ..............................................................................9

**STATUTES**

Cal. Civ. Code
  § 1559 ...................................................................................................................14

8461383v5

**TABLE OF AUTHORITIES**
**[CONTINUED]**

Page

Fed. R. Civ. P. 17(b)(1) ...................................................................................11

Cal. Corp. Code
§ 16101(10) ..........................................................................................10
§ 16202 .................................................................................................10
§ 16203 .................................................................................................11
§ 16204(c) ............................................................................................11

Cal. Rev. & Tax Code
§ 19719(a) ............................................................................................15
§ 23301 .................................................................................................14

Ohio Rev. Code
§ 1776.01(N) ........................................................................................10
§ 1776.22 ..............................................................................................10

**OTHER AUTHORITIES**

Al Kohn & Bob Kohn, *Kohn on Music Licensing* (4th ed. 2010) ...................8

10A Charles Alan Wright *et al.*, *Federal Practice and Procedure Civil* § 2720 (3d ed. 2014)......2

8461383v5

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  PRELIMINARY STATEMENT**

In these five actions (consolidated by stipulation), eight recording artists challenge the way UMG Recordings, Inc. ("UMGR"), a leading U.S. record company, accounts to them under eleven written contracts for sales of digital permanent downloads and ringtones (collectively "Downloads")[1] through, *e.g.*, Apple's iTunes store and its many competitors ("Download Providers").  Each of the eleven contracts on which Plaintiffs are suing – entered into between 1969 and 1992 – provides for the artists to deliver recordings to UMGR or one of its many predecessors-in-interest; for UMGR to own and exploit the recordings; and (if UMGR does exploit them) to pay periodic royalties to the artists for the uses and at the rates separately specified in each contract. Not surprisingly, Plaintiffs' contractual royalty provisions – spanning several generations of popular music and entered into with various unrelated predecessors-in-interest of UMGR – take eleven different forms.  All are long and complex, endeavoring over many pages and paragraphs to address then-existing recorded media (such as vinyl records, cassette tapes, compact discs, among many other less prominent formats) and to anticipate formats that might come to exist in the future.  All eleven of the contracts define the term "record" and/or "phonograph record" (albeit in different ways) to encompass all recorded formats, whether then known or thereafter devised.

Plaintiffs allege that UMGR has underpaid royalties to them for Downloads because *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), held that Downloads are "licensed" by UMGR to Download Providers.  *E.g.*, CAC ¶¶ 7, 54.  This misstates and overstates *F.B.T.* – but this is an issue for another day.  For purposes of this motion, UMGR will assume Plaintiffs' contention that UMGR "licenses" Downloads to Download Providers is correct.[2]

---

[1] "Permanent" downloads are those downloads as to which the consumer receives a permanent copy, as distinguished from "conditional or limited" downloads, for which the consumer does not receive a permanent copy and which are not at issue in this case.  Consolidated Amended Complaint ("CAC") [Docket 130] ¶ 7.  Ringtones (or "mastertones") are portions of sound recordings downloaded to mobile phones.  CAC ¶¶ 59-60.  For purposes of this motion, UMGR uses the term "Download" to refer collectively to permanent downloads and mastertones.

[2] This is "a common and standard approach to arguing a summary judgment motion."  *Oliver by Hines v. McClung*, 919 F. Supp. 1206, 1222 (N.D. Ind. 1995).  "[A] party moving for summary judgment may accept the non-movant's allegations as true for the limited purpose of summary

Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER

1    Contrary to Plaintiffs' position, however, this assumption does not dictate the application of

2  an imaginary catch-all "licensing" provision that Plaintiffs incorrectly allege exists in all of their

3  contracts.  *F.B.T.* involved a recording contract with just two competing provisions potentially

4  applicable to the sale to consumers of Downloads through Download Providers.  A "Records Sold"

5  provision applied to "records" sold through normal retail channels; a "Masters Licensed" provision

6  applied to "Masters" licensed for "any" use, "[n]otwithstanding" the "Records Sold" (or any other)

7  provision.  The jury concluded Downloads properly calculated under the Records Sold provision,

8  not the Masters Licensed provision, but the appellate court ruled the jury should never have been

9  given the choice because the "[n]otwithstanding" language in the Masters Licensed provision

10  trumped the Records Sold provision; thus, the court held that, under the language of that particular

11  contract, if Downloads fell within the broad scope of the contract's Masters Licensed provision, it

12  did not matter that Downloads also fell within the scope of the Records Sold provision.

13    Few, if any, recording contracts have the starkly dichotomous structure of the contract in

14  *F.B.T.*  None of Plaintiffs' contracts do.  Certainly the contract on which plaintiff Bo Donaldson is

15  suing does not.  To the contrary, when Plaintiffs' theory that UMGR "licenses" Downloads to

16  Download Providers is applied to Donaldson's contract, this actually dictates a ***lower*** royalty for

17  Downloads than UMGR is paying under that contract.  Of course, if, under Plaintiffs' theory,

18  Donaldson has been ***overpaid*** royalties, he cannot maintain claims for ***underpayment*** of royalties.

19    Donaldson's contract is but one illustration of how applying Plaintiffs' *F.B.T.* theory to their

20  disparate contracts (let alone other artists' contracts) does not dictate identical answers, but merely

21  raises a variety of different contractual ***questions***, depending on the structure and terms of each

22  contract.  Often, the ultimate answer will be the same – that UMGR is applying the correct royalty

23  rate for Downloads  (or is calculating royalties on a more favorable basis than is provided in the

24  contract) – even though the analytical route to that answer may differ from contract to contract.  The

25  Court need not take UMGR's word for this.  In the past year – subsequent to the *F.B.T.* decision,

26

27  judgment." *Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669, *2 (S.D. Cal. 2012); *see* 10A Charles Alan Wright *et al.*, *Federal Practice and Procedure Civil* § 2720 (3d ed. 2014) ("a party moving for summary judgment concedes the absence of a factual issue and the truth of the nonmoving party's allegations only for purposes of his own motion.").

28

PRINTED ON

RECYCLED PAPER

8461383v6

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

1    which Plaintiffs claimed was dispositive of the issue – two different federal judges facing

2    Download royalty claims mirroring Plaintiffs' claims have granted summary judgment to UMGR,

3    concluding that even assuming *arguendo* that Download Providers are UMGR's "licensees,"

4    UMGR still properly calculated the plaintiffs' Download royalties and did not violate the plaintiffs'

5    right in any way.[3]

6           Donaldson's contract also illustrates how trying to apply Plaintiffs' *F.B.T.* theory to multiple

7    contracts forces different Plaintiffs to advance conflicting arguments – even on an issue so

8    seemingly simple and basic as whether Downloads are or are not "records."  In this case, Donaldson

9    insists they are *not* records, but all the other Plaintiffs say they *are* – even Dave Mason, whose

10   contract contains the identical definition of "records" as Donaldson's.  Indeed, several Plaintiffs'

11   claims could not even survive if, as Donaldson claims, Downloads are *not* "records," because the

12   contractual provisions on which they rely apply *only* to the sale of "records."

13          Alternatively, Donaldson lacks standing to maintain his breach of contract claim because the

14   contract on which he is suing is not between UMGR and Donaldson alone, but a partnership of

15   which Donaldson is merely one of five partners, and which requires majority approval to take

16   actions affecting the partnership.  Plaintiff Ron Tyson also lacks standing to bring his claims, for an

17   even more obvious reason – he is not a party at all to either of the contracts on which he is suing,

18   nor does he own any part of the corporations that entered into them, and one of those corporations is

19   suspended and, thus, would lack standing to sue in any event.  Moreover, the person that does own

20   the corporations that entered into the contracts on which Tyson is suing, Otis Williams, previously

21   dismissed his claims against UMGR in these actions.

22

23

24   ───────────────────

25          [3] *Malmsteen v. Universal Music Group, Inc.*, 940 F. Supp. 2d 123, 133 n.5 (S.D.N.Y. 2013)
     ("the applicable royalty provisions in the Contract do not turn on the distinction between 'sales' and
26   'licenses' as they did in F.B.T.," and UMGR was entitled to summary judgment "[e]ven assuming
     that this were a licensing relationship"); *Panama Music Corp. v. Universal Music Group Inc.*, Case
27   No. 12-20200-CIV-GOLD/GOODMAN, Dkt. 88, *16 (S.D.  Fla. July 9, 2013) [Ex. 34] ("the
     distinction between a sale and a license is immaterial to determining which royalties apply to …
28   permanent downloads, and mastertones under the Contract.").

JMBM    Jeffer Mangels
        Butler & Mitchell LLP

1

## II.  ARGUMENT

2

**A.   UMGR IS ENTITLED TO SUMMARY JUDGMENT ON DONALDSON'S CLAIMS BECAUSE UMGR HAS NOT UNDERPAID ROYALTIES UNDER THE 1973 CONTRACT.**

3

4

      **1.   The Legal Standard.**

5

      Under California law, the purpose of contract interpretation is "to determine and effectuate

6

the intent of the parties." *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1992).  "It is the outward

7

expression of the contract, rather than a party's unexpressed intention, which the court will

8

enforce."  *Id*.  Words of a contract "should be given their ordinary legal import." *Id*. at 1168

9

(citation omitted).  "Specific language must be interpreted in context and with regard to its intended

10

function and the structure of the contract as a whole."  *Villacres v. ABM Industries Inc.*, 189 Cal.

11

App. 4th 562, 598 (2010).

12

      Summary judgment is proper on a breach of contract claim where the relevant language of

13

the contract is unambiguous.  *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398

14

(9th Cir. 1988).  Determining whether a contract is ambiguous is a question of law for the Court.

15

*Winet*, 4 Cal. App. 4th at 1166.  Language is unambiguous where it is not "reasonably susceptible"

16

to the interpretation urged by the non-moving party, in which case parol evidence may not be

17

considered to interpret the contract.  *Id*. at 1167; *FPI Development, Inc. v. Nakashima*, 231 Cal.

18

App. 3d 367, 396 (1991).

19

      Where the relevant contract language *is* ambiguous, summary judgment is still proper "when

20

no parol evidence is introduced (requiring construction of the instrument solely based on its own

21

language) or when the competent parol evidence is not conflicting[.]"  *Winet*, 4 Cal. App. 4th at

22

1166.  Only "*competent* extrinsic evidence" may be considered, *id*. at 1166 n.3 (emphasis in

23

original), and only where the competent extrinsic evidence "requires resolution of credibility issues"

24

is summary judgment inappropriate.  *Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 439 (1984).

25

      **2.   Under Plaintiffs' "License" Theory, the Applicable Provision of the 1973 Contract Provides for a Lower Royalty Rate Than He Is Receiving, Not a Higher Rate.**

26

27

      All of Donaldson's claims are based upon a contract entered into as of August 27, 1973

28

between UMGR's predecessor ABC Records, Inc., and an "Artist" known as Bo Donaldson & The

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

- 4 -

1  Heywoods (the "1973 Contract").  Ex. 1[4]; *see* CAC ¶¶ 81-82.  Donaldson's claims – like all of the

2  Plaintiffs' claims – are predicated on the allegation that he is entitled to a higher royalty rate for

3  sales by UMGR's licensees than for sales by UMGR.  CAC ¶¶ 82, 90, 97.  However, the 1973

4  Contract on which he is suing provides the opposite – if Download Providers are UMGR's

5  "licensees" as Plaintiffs claim, then the Heywoods (including Donaldson) are subject to a ***reduced***

6  royalty rate, not entitled to a ***higher*** rate.

7  　　　There are three royalty provisions of the 1973 Contract at issue here.  One of them (Section

8  3(a)) is the one that Plaintiffs allege UMGR has improperly applied to Downloads under the 1973

9  Contract.  The other two provisions – Sections 3(c) and Section 4 – concern various forms of

10  licensing.  Donaldson claims UMGR should be accounting to him under Section 4.  CAC ¶ 82.

11  However, even if one assumes *arguendo* that Downloads are sold by UMGR's "licensees" (which is

12  what Plaintiffs call the Download Providers), it is clear that the governing provision would be

13  Section ***3(c)*** – which provides for a ***reduced*** royalty rate – not Section 4 as advocated by

14  Donaldson.

15  　　　The royalty provisions of the 1973 Contract begin with Section 3(a), setting forth the royalty

16  rate for "our sales of records in the United States in the form of discs[.]"  (Section 3(b) sets forth a

17  corresponding royalty rate for non-U.S. sales.)  Plaintiffs allege UMGR has improperly applied the

18  royalty rate for sales of records (*i.e.*, Sections 3(a) and 3(b)) to sales of Downloads of the

19  Heywoods' recorded performances, because they say Downloads should be treated as sold by

20  UMGR's licensees.  CAC ¶¶ 3, 5, 15, 17, 18, 88, 90, 95, 135.

21  　　　The two provisions of the 1973 Contract applicable to various forms of licensing are as

22  follows.  Section 3(c) provides:

23  　　　　　Royalties with respect to records in the form of prerecorded tapes,
     cartridges and ***other recorded devices sold by our licensees,*** shall be
24  　　　　　payable ***at one-half (1/2) the applicable royalty rates*** set forth in
     subparagraph (a) or (b) above…. (Emphasis added.)

25  Section 4 (the provision advocated by Plaintiffs) provides:

26

27  　　　　　Without limiting any of the other provisions of this contract, and in
     _____

28  　　　[4] All references to exhibits are to the Goldman Decl. unless otherwise noted.

addition to all of our other rights hereunder, we shall have the right to license recordings to other parties (a) for phonograph record use on a flat fee basis (as opposed to the royalty basis referred to in Paragraph 3 hereof) and (b) for all other types of use (visual and nonvisual), on a flat fee or royalty basis. We shall credit your royalty account with Fifty Percent (50%) of the amount received by us under each such license. After [*sic*] we have paid what we are obligated to pay to the producer of such recordings.

UMGR has applied sections 3(a) and 3(b) to Downloads (and all "records" it sells under the 1973 Contract), not the lower rate permitted by section 3(c), because UMGR has never viewed Downloads as being sold "by [its] licensees." Meanwhile, based on their assertion that Downloads are sold by UMGR's "licensees," Plaintiffs contend UMGR should be applying section 4 to sales of Downloads. As will be seen, even if one assumes *arguendo* that UMGR "licenses" Downloads to Download Providers, analyzing whether section 3(c) or section 4 applies to Downloads depends, in large part, on whether Downloads are "records" and "phonograph records."

They clearly are. The 1973 Contract defines "records" and "phonograph records" identically and broadly, to include "all forms of recordings," including "any … recorded devices now known or which may hereafter become known." Ex. 1, § 18. This is consistent with the allegedly standard definition of the term "records" that Plaintiffs (including Donaldson) assert in their court-ordered response to UMGR's Interrogatory 14.[5]

Multiple courts have agreed that Downloads are "records." *See Malmsteen*, 940 F. Supp. 2d at 131-32 ("As a threshold matter, digital downloads are clearly Records, as defined in … the Agreement. The phrase '[a]ny device now or hereafter known on or by which sound may be recorded and reproduced' manifests the clear intent of the contracting parties that the definition of Record encompass as-yet-undeveloped technologies."); *Reinhardt v. Wal-Mart Stores, Inc.*, 547 F. Supp. 2d 346, 354-55 (S.D.N.Y. 2008) ("The phrase 'now or hereafter known,' when referring to forms of reproduction, reveals that future technologies are covered by the agreement. . . . It is not

---

[5] Plaintiffs' interrogatory response stated: "The terms 'records' or 'Records,' to the extent they are used in the contracts identified in paragraph 106 of the [CAC], refer generally to any form of reproduction, form of recording, and/or device on or by which sound may be recorded or reproduced with or without a visual reproduction, which is manufactured or distributed primarily for home, consumer, and/or juke box use and/or use in means of transportation. Many such contracts state that the form of reproduction, form of recording, and/or device can be one now or hereafter known." Ex. 23, at 4-5.

PRINTED ON

RECYCLED PAPER

8461383v6

- 6 -

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

1   reasonable to construe the phrase 'all forms' 'now or hereafter known' to exclude Defendants'

2   alleged digital download form."); *Allman v. Sony BMG Music Entertainment*, 2008 WL 2477465,

3   *2 (S.D.N.Y. 2008) (same); *Panama Music*, Case No. 12-20200-CIV, Docket No. 88 at 13

4   ("Permanent downloads and mastertones are Records that are electronically transmitted to the

5   consumer."); *see also Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 651 (S.D.N.Y.

6   2013) (Downloads are within Copyright Act's definition of "phonorecord"); *London-Sire Records,*

7   *Inc. v. Doe 1*, 542 F. Supp. 2d 153, 171 (D. Mass. 2008) (same).  Even the Ninth Circuit in *F.B.T.* –

8   the decision upon which Plaintiffs predicate their claims – found that "Aftermath permitted third

9   parties to use the Eminem masters to produce and ***sell records, in the form of permanent***

10  ***downloads and mastertones***[.]"  621 F.3d at 966 (emphasis added).

11          Indeed, in response to UMGR's Requests for Admission, *all* of Donaldson's co-Plaintiffs

12  admitted that Downloads ***are*** "records" and/or "devices."[6]  Mason's 1969 Contract even defines

13  "record" and "phonograph record" ***identically*** to Donaldson's 1973 Contract [Ex. 5, ¶ 19], and

14  Mason admits Downloads are "records" under this definition [Ex. 23, at 4-5].  These admissions are

15  not surprising, as many of Donaldson's co-Plaintiffs are relying upon provisions in their respective

16  contracts which ***only*** apply to "records," and whose claims are dependent upon Downloads ***being***

17  "records."  *See, e.g.*, CAC ¶ 70 (alleging "pertinent provision" of Rick James' contracts apply

18  "[w]ith respect to ***records*** sold by [UMGR]'s licensees"); ¶ 74 (alleging "pertinent provision" of

19  Carlton Ridenhour's contracts applies to "any Master Recording leased by [UMGR] to others for

20  their distribution of ***Phonograph Records***"); ¶ 76 (alleging "pertinent provision" of Dave Mason's

21  contract applies "with respect to ***records*** sold anywhere in the world through any record club or

22  other direct sales to consumer operation.") (emphases added).

23

24          [6] *See* Ex. 24 at 2-3, 10-11 (Coverdale's November 18, 2013 Corrected Supplemental
    Responses to RFAs 85-86, 105-06, 113-114, 133-134); Ex. 25 at 2-3, 4-5, 8-9 (James' November
25  20, 2013 Corrected Supplemental Responses to RFAs 85-86, 95-96, 107-108, 111-112, 121-122,
    133-134); Ex. 26 at 2-3, 5-6 (Mason's November 22, 2013 Corrected Supplemental Responses to
26  RFAs  85-86, 91-92, 106-107, 112-113); Ex. 27 at 2-4 (McLean and Titus' November 22, 2013
    Corrected Supplemental Responses to RFAs 1-2, 17-18); Ex. 28 at 2-4 (Ridenhour's November 22,
27  2013 Corrected Supplemental Responses to RFAs 87-90, 105-108); Ex. 29 at 2-4 (Tyson's
    November 22, 2013 Second Supplemental Responses to RFAs 85-88, 105-108).
28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

Because Downloads are "records" and "phonograph records" under the 1973 Contract, it becomes clear that section 4 cannot apply to them. As noted, both section 3(c) and section 4 concern different types of exploitations by UMGR's "licensees." Section 4 separates the licenses which fall under it into two discrete categories – those (a) for phonograph record use, and (b) for other types of use. Subsection 4(b) could only apply to Downloads if Downloads are **not** "records" and "phonograph records." That is why Donaldson denies that Downloads are "records" in his responses to UMGR's Requests for Admission, directly contradicting all of his co-Plaintiffs' admissions that Downloads **are** "records" – even including Mason, whose contract defines "records" and "phonograph records" identically to the 1973 Contract. But because Downloads **are** "phonograph records" under the 1973 Contract, they are not "other types of use," so subsection 4(b) cannot apply.

That leaves Subsection 4(a), which applies **only** to licenses "for phonograph record use on a flat fee basis," and expressly **excludes** licenses for phonograph record use made on a "royalty basis," directing that such licenses are governed by the applicable royalty rates in Section 3. But UMGR's contracts with Download Providers, even if assumed to be "licenses," are not licenses "on a flat fee basis." In established music industry parlance, "flat fee" licenses are licenses granted for a one-time, specific fee (such as a $500 lump sum, without regard to the number of units sold, the price at which the product is sold, etc.). Al Kohn & Bob Kohn, *Kohn on Music Licensing* 581-82 (4th ed. 2010) [Ex. 47]. By contrast, "royalty rate" licenses are those granted in exchange for a particular **percentage** of some metric, such as the sales price (*e.g.*, 10% of the wholesale price) or the revenues received (*e.g.*, 5% of the licensee's net revenues). *Id.*[7] In their collective court-ordered response to UMGR's Interrogatory 9, all of the Plaintiffs (including Donaldson) conceded that UMGR's agreements with Download Providers are **not** on a "flat fee" basis. Ex. 30 at 3-11.

_____

[7] Plaintiffs did not dispute, or claim any ambiguity with respect to, these generally accepted meanings in discovery motions they **jointly** filed with UMGR in these actions. *See* Docket No. 135 at 1; Docket No. 146 at 1 n.1. The Magistrate Judge compelled Plaintiffs to respond to UMGR's Interrogatory 9 on the basis of the first of these joint letters. Docket No. 138 at 1-3.

1    Therefore, subsection 4(a) is inapplicable, and the 1973 Contract directs the parties to the

2    applicable provisions of section 3.  As noted, UMGR has consistently applied section 3(a) to

3    Downloads and other "records" it sells.  But under Plaintiffs' theory that Downloads are sold by

4    UMGR's "licensees," UMGR *should* be applying Section 3(c), which reduces the Heywoods'

5    royslty rate in half for "records in the form of prerecorded tapes, cartridges and *other recorded*

6    *devices sold by our licensees*."  Section 3(c) unambiguously entitles UMGR to pay the Heywoods

7    (including Donaldson) only one-half of the rate at which UMGR has been calculating their royalties

8    for Downloads (*i.e.*, the rates contained in Sections 3(a) and 3(b)), with respect to all (1) "records in

9    the form of … recorded devices" that are (2) sold by UMGR's "licensees."  As two of Donaldson's

10   co-Plaintiffs admit,[8] Downloads are plainly "records in the form of … recorded devices."  *See* Ex. 1,

11   § 18 (defining "records" as "all forms of recordings," including "any … recorded devices now

12   known or which may hereafter become known.");  *Malmsteen*, 940 F. Supp. 2d at 131-32 (phrase

13   "[a]ny device now or hereafter known on or by which sound may be recorded and reproduced"

14   covers Downloads).  So under Plaintiffs' theory, UMGR's royalty calculations cannot be actionable

15   because the Heywoods (including Donaldson) have been *overpaid* royalties – not underpaid.

16       To be clear, it is UMGR's position that it has paid royalties under the correct provisions of

17   the 1973 Contract – sections 3(a) and 3(b).  Of course, if that is true, then UMGR did not breach the

18   1973 Contract by underpaying royalties for Downloads.  But it is equally true that even if Plaintiffs

19   are correct that Downloads are sold by UMGR's "licensees," then section 3(c) would apply,

20   meaning that UMGR has overpaid the Heywoods (including Donaldson) under the 1973 Contract –

21   not underpaid them.  In either event, UMGR could not have breached the 1973 Contract, and is

22   therefore entitled to summary judgment.

---

[8] *See* Ex. 24 at 10-11 (Coverdale's November 18, 2013 Corrected Supplemental Responses to RFAs 85-86, 105-06, 113-114, 133-134); Ex. 25 at 8-9 (James' November 20, 2013 Corrected Supplemental Responses to RFAs 85-86, 95-96, 107-108, 111-112, 121-122, 133-134).

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Mitchell LLP

### 3.     If UMGR Has Not Underpaid Royalties to Donaldson Under the 1973 Contract, Then All of his Claims Fail as a Matter of Law.

If the Court concludes UMGR did not underpay Donaldson under the 1973 Contract for sales of Downloads, then all of Donaldson's claims necessarily fail because they are all predicated on UMGR's alleged breaches of the 1973 Contract.

If UMGR's royalty calculations were permitted by the 1973 Contract, then Donaldson's implied covenant of good faith and fair dealing claim fails because the implied covenant cannot "prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120-1121 (2008). This principle is consistent with the general rule that "implied terms should never be read to vary express terms." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 375 (1992). "As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct." *Id*. "If the defendant did what it was expressly given the right to do, there can be no breach." *Wolf*, 162 Cal. App. 4th at 1120.

Donaldson Third Cause of Action for "declaratory judgment" likewise seeks a declaration that is entirely derivative of his contract claims, *i.e.*, that "the pertinent agreements obligate UMG to pay and/or credit Plaintiffs and Class members the percentage specified for licensing, rather than for sales, when UMG licenses such recordings to Digital Content Providers for permanent downloads." CAC ¶ 129. This, too is entirely derivative of his express contract claims. The same is true of Donaldson's "open book account" claim. CAC ¶ 135. A common count "does not survive if the underlying claim does not survive." *Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 11501, *4 (N.D. Cal. 2011), *quoting McBride v. Boughton,* 123 Cal. App. 4th 379, 394 (2004); *see also McAfee v. Francis*, 2012 WL 762118, *7 (N.D. Cal. 2012) (dismissing common count "because the Court dismisses Plaintiffs' breach of contract claims"). Finally, Donaldson's state law statutory unfair competition claims are also based on the same alleged breach of contract, and thus fail for the same reasons. *See, e.g.*, CAC ¶ 142 (alleging "the income [UMGR] collected from Digital Content Providers for permanent downloads was licensing income, and as such, that the royalties payable to Plaintiffs and the other Class members should have been accounted and paid

PRINTED ON

RECYCLED PAPER

8461383v6

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

1   for on this basis"); Ex. 32 at 6-7 (admitting "the amount of restitution Plaintiffs and the putative

2   class members claim in this action is equal to the amount of breach of contract damages Plaintiffs

3   and the putative class members seek"). *See Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147

4   (2011) ("Because the underlying causes of action fail, the derivative UCL ... claim [ ] also fail[s].").

5   **B.   DONALDSON AND TYSON LACK STANDING TO MAINTAIN THEIR CLAIMS.**

6   **1.   Donaldson and the Heywoods are a Partnership That Agreed to Take Action
         Only By Majority Vote, and Donaldson Has Never Obtained the Required**

7   **Majority Consent to Pursue this Action.**

8        Donaldson lacks the necessary authority and standing to maintain claims under the 1973

9   Contract.  The 1973 Contract is not between UMGR's predecessor and Donaldson alone but, rather,

10  an "Artist" consisting of five musical performers, professionally known as "Bo Donaldson and the

11  Heywoods."  Ex. 1 at 1 (defining "Artist").  Donaldson testified at his deposition that the five

12  Heywoods (including him) agreed they would operate their group as a partnership[9] in which

13  decisions affecting the group would require a majority vote, with each member having an equal

14  one-fifth vote.  Donaldson Depo. 29:6-32:24 [Ex. 12].  Under the 1973 Contract, the Heywoods

15  jointly and severally represented and warranted to UMGR that they collectively owned the group's

16  name (*id.*, § 21(c)), agreed that a breach by any of them was a breach by all of them (*id.*, § 21(d)),

17  and no changes in the members of the Heywoods could be made without UMGR's consent (*id.*,

18  § 21(h)).  The Heywoods were to collectively deliver recordings to UMGR (Ex. 1, § 1), and their

19  advance payments and royalties were paid collectively (*id.*, §§  3 *et seq.*, 21).  Plainly, a claim to

20  readjust the calculation of those royalties clearly affects the entire group.  This is especially true

21  where (as discussed in Section (II)(A) *supra*) the outcome of Donaldson's claim, if it is ***not***

22  successful, could be a ***reduction*** in royalties for the Heywoods, rather than an increase.  *See* Section

23  (II)(A)(2) *infra*.

---

25       [9] Pursuant to Cal. Corp. Code §§ 16202, "the association of two or more persons to carry on
    as co-owners a business for profit forms a partnership, whether or not the persons intend to form a
26  partnership."  A partnership agreement may be written, oral or implied.  *Id.* § 16101(10).  Although
    published reports indicate the Heywoods were formed in Ohio, this does not impact this motion
27  because Ohio, like California, has enacted the Uniform Partnership Act, and the law of these two
    states does not materially differ on this specific issue.  *Compare* Ohio Rev. Code § 1776.22 *with*
28  Cal. Corp. Code §§ 16202; Ohio Rev. Code § 1776.01(N) *with* Cal. Corp. Code § 16101(10).

PRINTED ON

RECYCLED PAPER

The Heywoods' royalty rights in the 1973 Contract were property acquired by the partnership.  The Heywoods agreed with one another to jointly run a business.  Donaldson Depo. 29:6-32:24 [Ex. 12].  The partnership's assets included the various partners' performance and recording services.  The partnership collectively entered into the 1973 Contract, exchanging one of the partnership's assets – the Heywoods' exclusive recording services – for advance payments and potential royalties.  Those royalties – the property the Heywoods acquired with their collective recording services – were and are partnership property.  "Property is presumed to be partnership property if purchased with partnership assets…"  Cal Corp. Code § 16204(c); *Lyon v. MacQuarrie*, 46 Cal. App. 2d 119, 122 (1941) (partners formed an oral partnership to create a radio play; profits from contracts for the radio play were partnership assets).

Donaldson admits he has never sought, or obtained, the authorization of ***any*** of the other Heywoods to file this lawsuit on the partnership's behalf, let alone a majority of them.  Donaldson Depo. 32:25-34:23 [Ex. 12].  Accordingly, he lacks standing to file this lawsuit on behalf of the partnership. He also lacks standing to sue solely on his own behalf, because an individual partner lacks standing to sue a third party for harm to the partnership, which is a separate legal entity.  *See* Cal. Corp. Code § 16203 ("Property acquired by a partnership is property of the partnership and not of the partners individually."); *Wallner v. Parry Professional Bldg., Ltd.*, 22 Cal. App. 4th 1446, 1449 (1994) ("When a partnership has a claim, the real party in interest is the partnership and not an individual member of the partnership."); *Mayer v. C.W. Driver*, 98 Cal. App. 4th 48, 60 (2002) (individual partner lacks standing to sue for harm caused to partnership property).[10]

It would hardly be fair to UMGR to find otherwise.  If Donaldson could proceed under the 1973 Contract despite his agreement with his partners, UMGR would face the patently inequitable prospect of being subject to five separate, serial lawsuits from five separate Heywoods, each with potential *res judicata* effect on UMGR but not binding on the other Heywoods.  UMGR has been paying the Heywoods royalties for Downloads for more than a decade pursuant to the royalty provision applicable to UMGR's sales of records.  Of the five members of the Heywoods, only

---

[10] Pursuant to Fed. R. Civ. P. 17(b)(1), capacity to sue for an individual is determined "by the law of the individual's domicile," which Donaldson alleges is California.  CAC ¶ 42.

8461383v6

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    Donaldson has challenged that calculation by contending in this lawsuit that UMGR should instead

2    calculate royalties based upon the royalty provisions applicable to downloads sold by UMGR's

3    "licensees." However, as demonstrated above in section (II)(A), accepting Donaldson's argument

4    for purposes of this motion, the result is that UMGR would be entitled to *reduce* Donaldson's

5    royalties. If UMGR also correspondingly reduced the other Heywoods' royalties, it would risk four

6    additional lawsuits by disgruntled Heywoods claiming they never authorized, and are not bound by,

7    the result in Donaldson's lawsuit. This is not the inevitable result of all contracts with a group

8    artist, but it is the result dictated by the specific way in which the Heywoods chose to arrange their

9    affairs – to take action together based on majority vote, or not at all.[11] The law does not permit

10   Donaldson to evade his partnership agreement with the Heywoods merely because he finds it

11   convenient or tactically advantageous to do so.

12        Because all of Donaldson's claims are predicated on UMGR's alleged breaches of the 1973

13   Contract, he lacks standing to maintain any of them, and UMGR is entitled to summary judgment

14   on all of his claims.

15        **2.     Tyson is Not a Party To the Contracts on Which He is Suing, and One of those
             Parties is a Suspended Corporation.**

16

17        Tyson's claims relate to certain recordings by a group professionally known as The

18   Temptations, of which he became a member in 1983. The Temptations are a five-man vocal group

19   founded in the 1960s by Otis Williams and other, now-deceased members. Williams Depo. 87:12-

20   109:21 [Ex. 13]. The group endured frequent personnel changes, and over time, Williams became

21   the sole owner of the group and its name; the other Temptations are employees, employed by a

22   corporation called Emperors of Soul, Inc. that Williams owns. Williams Depo. 11:22-14:2 [Ex. 13].

23   Williams used to be a plaintiff in these actions, but dismissed his claims last year without

24   explanation. Docket No. 163. Tyson is merely an employee of Emperors of Soul, Inc., hired by

25   _____

     [11] The appropriate result for other "group" artists would have to be determined on a case-by-
26   case basis. For example, the musical group The Temptations is owned and operated by a single
     Temptation, former plaintiff Otis Williams, and the other Temptations are just employees.
27   Williams Depo. 11:22-14:12 [Ex. 13]. In other circumstances, a group's partnership agreement may
     contain additional requirements, such as *unanimous* consent, to sue. *See, e.g., Densmore v.*
28   *Manzarek,* 2008 WL 2209993, *1 (Cal. App. 2008).

PRINTED ON

RECYCLED PAPER

1  Williams in 1983.  Tyson Depo. 18:9-20:24 [Ex. 14]; Williams Depo. 12:24-14:12 [Ex. 13].  He has

2  no ownership interest in the Temptations.  Tyson Depo. 19:10-15 [Ex. 14].

3      Individual members of the Temptations, including Williams, entered into various recording

4  contracts with UMGR's predecessor-in-interest Motown Record Corporation ("Motown")

5  throughout the 1960s and 1970s, and it was pursuant to those contracts that the Temptations

6  recorded all of their classic hit songs.  Tyson was not a party to any of these contracts, is not suing

7  on them, and they are not at issue on this motion.  Tyson is suing on just two contracts:  a contract

8  dated as of May 31, 1987 between Motown and A Song For You, Inc. ("A Song For You") (the

9  "1987 Contract") and a contract dated as of December 15, 1993 between Motown and Tall

10  Temptations, Inc. (the "1993 Contract").  [Exs. 7, 8].

11      But though Tyson is mentioned in the 1987 Contract and the 1993 Contract as a member of

12  the Temptations, he is not a party to those contracts.  For this reason alone, he cannot sue on them.

13  "Someone who is not a party to [a] contract has no standing to enforce the contract or to recover

14  extra-contract damages for wrongful withholding of benefits to the contracting party."  *Hatchwell v.*

15  *Blue Shield of California*, 198 Cal. App. 3d 1027, 1034 (1988); *accord*, *Bleavins v. Demarest*, 196

16  Cal. App. 4th 1533, 1542-43 (2011).  Tyson does not even have any ownership or other interest in

17  either A Song For You or Tall Temptations.  Tyson Depo. 82:21-83:14, 95:16-96:9 [Ex. 14].

18  Rather, Otis Williams owns those corporations.  Williams Depo. 11:22-14:2 [Ex. 13].  And

19  Williams voluntarily ***dismissed*** his claims against UMGR in these actions.  It is eminently unfair for

20  the owner of A Song For You and Tall Temptations, Williams, to dismiss his claims (without

21  prejudice) while one of his employees, Tyson, continues to prosecute the claims ostensibly on

22  Williams' corporations' behalf.  Presumably, if Tyson wins, Williams' corporations will claim the

23  benefit of that victory; if Tyson loses, they will claim the right to disavow the loss as unauthorized

24  by and inapplicable to them, and to sue UMGR again on the ***same claim*** Tyson just lost.

25      Nor can Tyson claim to be a third-party beneficiary of the 1987 Contract or the 1993

26  Contract.  Under California law, only "[a] contract, made ***expressly*** for the benefit of a third person,

27  may be enforced by him[.]"  Cal. Civ. Code § 1559 (emphasis added).  The intent to benefit the

28  non-party must be ***clearly and unambiguously*** expressed in the contract.  *Smith v. Microskills San*

JMBM  Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER

1   *Diego L.P.,* 153 Cal. App. 4th 892, 898 (2007) ("The term 'expressly' in Civil Code § 1559 …

2   means in an express manner; in direct or unmistakable terms; explicitly; definitely; directly.")

3   (quotation marks and citations omitted).  An incidental benefit is not sufficient.  *Eastern Aviation*

4   *Group, Inc. v. Airborne Express, Inc.* 6 Cal. App. 4th 1448, 1452 (1992) ("The fact that [plaintiff] is

5   incidentally named in the contract, or that the contract, if carried out according to its terms, would

6   inure to his benefit, is not sufficient to entitle him to demand its fulfillment.") (quotation marks and

7   citations omitted).  The contracts provide for payment to A Song For You, and Tall Temptations,

8   not Tyson.  1987 Contract [Ex. 7], § 9; 1993 Contract [Ex. 8] § 17.01.  Even if A Song For You or

9   Tall Temptations agreed to pay Tyson a share of the royalties they receive from UMGR, this would

10  not be sufficient.  *See Holmes v. Columbia Pictures Corp.*, 109 F. Supp. 327, 330 (S.D. Cal. 1953)

11  (plaintiff was not a third party beneficiary of contract between movie producer and distributor;

12  where distributor "did not agree to pay the plaintiff anything," that distributor paid producer "in

13  order that [the producer] may be provided with money to pay [plaintiff]" made plaintiff "at most an

14  incidental beneficiary").

15          Apart from and in addition to Tyson's lack of standing, A Song For You itself lacks standing

16  because it has been suspended by the State of California for failure to pay taxes.  Request for

17  Judicial Notice, Ex. A; Williams Depo. 12:24-13:23 [Ex. 13] (Williams formed a series of

18  corporations to operate The Temptations due to "[t]ax trouble.").  A California corporation's

19  "powers, rights and privileges" may be suspended upon its failure to pay taxes, Cal. Rev. and Tax.

20  Code § 23301, and "[t]he suspension of the corporate powers, rights, and privileges means a

21  suspended corporation ***cannot sue or defend a lawsuit while its taxes remain unpaid***."  *Kaufman &*

22  *Broad Communities, Inc. v. Performance Plastering, Inc.,* 136 Cal. App. 4th 212, 217-18 (2006)

23  (emphasis added).  "Any person who attempts or purports to exercise the powers, rights, and

24  privileges of a corporation that has been suspended pursuant to Section 23301" is guilty of a crime

25  punishable by a fine and imprisonment.  Cal. Rev. & Tax Code § 19719(a).  Thus, A Song For You

26  could not maintain any claim on the 1987 Contract even on its own behalf.[12]

_____

[12] In the CAC, Tyson appears to argue that the 1993 Contract modified the 1987 Contract. This is plainly not correct, and certainly not in any respect material to the royalty dispute in this

Defendant's Motion for Summary Judgment No. 1
CV11-01613 SI

PRINTED ON

RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1    Because all of Tyson's claims rely on UMGR's alleged breaches of the 1987 Contract and

2    the 1993 Contract, he lacks standing to maintain any of them, and UMGR is entitled to summary

3    judgment on all of his claims.

4                                    **III.  CONCLUSION**

5    For all of the foregoing reasons, UMGR is entitled to summary judgment as set forth in the

6    Notice of Motion.

7

8    DATED:  May 23, 2014                JEFFREY D. GOLDMAN
                                         RYAN S. MAUCK
9                                        BRIAN M. YATES
                                         JEFFER MANGELS BUTLER & MITCHELL LLP
10

11                                       By: /s/ Jeffrey D. Goldman
                                             JEFFREY D. GOLDMAN
12                                       Attorneys for Defendant

13

14

15

16

17

18

19

20

21

22   case.  The 1993 Contract specifically provides that while the 1987 Contract is "deemed terminated"
     (such that A Song For You need not deliver any more recordings under it), certain obligations, such
23   as UMGR's "royalty accounting and payment obligations," "survive termination" (Recital A) and
     "this [1993] contract shall not constitute or be deemed a modification, an extension or renewal of
24   the 1987 Contract" (Ex. 8, Recital B).  Rather, the royalty provisions of the 1993 Contract apply
     only to "Masters hereunder" (*id*., § 7.01) while the royalty provisions of the 1987 Contract continue
25   to apply to "MASTERS recorded" under the 1987 Contract (Ex. 7, Ex. A, Introductory Paragraph).
     Tyson was ordered to respond to an interrogatory setting forth all facts supporting his claim that the
26   1993 Contract modified the 1987 Contract, Docket No. 155, and disclosed no such facts.  Ex. 33 at
     4.  Thus, any claim for underpayment of royalties for recordings delivered under the 1987 Contract
27   is a claim under that contract and could only be prosecuted by A Song For You, not Tall
     Temptations or Tyson.
28

8461383v6                          - 16 -     Defendant's Motion for Summary Judgment No. 1
                                              CV11-01613 SI