1   JEFFREY D. GOLDMAN (Bar No. 155589),
    JGoldman@jmbm.com
2   RYAN S. MAUCK (Bar No. 223173), RMauck@jmbm.com
    BRIAN M. YATES (Bar No. 241798), BYates@jmbm.com
3   JEFFER MANGELS BUTLER & MITCHELL LLP
    1900 Avenue of the Stars, Seventh Floor
4   Los Angeles, California  90067-4308
    Telephone:     (310) 203-8080
5   Facsimile:     (310) 203-0567

6   Attorneys for Defendant

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  RICK JAMES, by and through THE JAMES          CASE NO.    CV11-01613 SI
    AMBROSE JOHNSON, JR., 1999 TRUST, his
12  successor in interest; CARLTON DOUGLAS        DEFENDANT UMG RECORDINGS, INC.'S
    RIDENHOUR, d/b/a "CHUCK D," individually      NOTICE OF MOTION AND MOTION FOR
13  and as a member of PUBLIC ENEMY;             SUMMARY JUDGMENT NO. 2:
    WHITESNAKE, a doing business as
14  designation of David Coverdale, by and for    ON ALL CAUSES OF ACTION OF ALL
    WHITESNAKE PRODUCTIONS                       PLAINTIFFS, OR, ALTERNATIVELY, ON
15  (OVERSEAS) LIMITED; DAVE MASON;              PLAINTIFFS' FOURTH, FIFTH AND
    OTIS WILLIAMS and RON TYSON, jointly         SIXTH CAUSES OF ACTION FOR OPEN
16  d/b/a THE TEMPTATIONS; and ROBERT            BOOK ACCOUNT, VIOLATION OF
    WALTER "BO" DONALDSON, individually          CALIFORNIA BUSINESS & PROFESSIONS
17  and d/b/a BO DONALDSON AND THE               CODE § 17200, AND VIOLATION OF NEW
    HEYWOODS; WILLIAM MCLEAN, a/k/a             YORK GENERAL BUSINESS LAW § 349
18  "WILL MCLEAN" and p/k/a "MISTA
    LAWNGE," and ANDRES TITUS, p/k/a
19  "DRES," jointly d/b/a BLACK SHEEP,
    individually and on behalf of all others      Date:        June 27, 2014
20  similarly situated,                           Time:        9:00 a.m.
                                                  Courtroom:   10, 19th Floor
21               Plaintiff,                       Judge:       Hon. Susan Illston

22        v.

23  UMG RECORDINGS, INC., a Delaware
    corporation,
24
                 Defendant.
25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 10795919v1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on June 27, 2014 at 9:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 10 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Susan Illston, defendant UMG Recordings, Inc. ("UMGR") will and hereby does move for an Order granting summary judgment to UMGR on the Fourth Causes of Action for open book account,[1] Fifth Causes of Action for violation of California Business & Professions Code § 17200 (the "UCL") and Sixth Causes of Action for violation of New York General Business Law § 349 in the Consolidated Amended Complaint ("CAC") of plaintiffs Rick James, by and through the James Ambrose Johnson, Jr., 1999 Trust (the "James Trust"), Whitesnake, a doing business designation of David Coverdale, by and for Whitesnake Productions (Overseas) Limited ("Whitesnake"), Carlton Douglas Ridenhour ("Ridenhour"), Dave Mason ("Mason"), Ron Tyson ("Tyson"), Robert Walter "Bo" Donaldson ("Donaldson"), William McLean ("McLean") and Andres Titus ("Titus") (collectively "Plaintiffs").

The grounds of this motion are as follows:

**A.     UCL CLAIMS**

Plaintiffs' UCL claims should be dismissed because:

1.     The gravamen of the claims are private commercial contract disputes that, after discovery, lack a sufficient connection to the protection of the public or consumers generally.

2.     Plaintiffs Ridenhour, Titus, and McLean are also precluded from asserting such claims, based upon their contracts' New York choice-of-law provisions.

**B.     NEW YORK GENERAL BUSINESS LAW SECTION 349 CLAIMS**

Plaintiffs' claim under New York General Business Law section 349 should be dismissed because:

1.     After discovery, Plaintiffs' claims do not have "a broad impact on consumers at large," as section 349 requires.

---

[1] Ridenhour's "open book account" claim was dismissed by this Court based on his New York choice of law provisions. *Ridenhour v. UMG Recordings, Inc.*, 2012 WL 463960, *4 (N.D. Cal. 2012). McLean and Titus also do not have open book account claims for the same reason.

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Jeffer Mangels
Butler & Mitchell LLP

JMBM

2.      For the same reasons that plaintiffs Ridenhour, McLean and Titus cannot assert claims under the California UCL, plaintiffs the James Trust, Mason, Tyson and Donaldson – whose contracts contain California choice-of-law provisions – cannot assert claims under New York law.

C.      **PLAINTIFFS' OPEN BOOK ACCOUNT CLAIMS**

Certain Plaintiffs' open book account claims should be dismissed because these claims are based upon express written contracts that govern the manner in which their royalties are to be paid, and, after discovery, there is insufficient evidence any Plaintiff and UMGR had a "mutual understanding" and "contrary agreement" to treat Plaintiffs' royalties as an open book account.

D.      **STATUTORY AND/OR CONTRACTUAL LIMITATIONS**

Plaintiffs' claims are barred by the applicable statute of limitations under California and New York law, as applicable.

1.      California Plaintiffs / UCL:

a.      Plaintiffs' claims accrued when Plaintiffs could first have asserted the contractual interpretations they assert in this action, *i.e.*, by March 24, 2004 at the latest.

b.      Even if this Court does not conclude that all Plaintiffs' UCL claims accrued by 2003, plaintiff Whitesnake's UCL claim accrued by no later than April 22, 2004, when UMGR repudiated its claim.

2.      New York Plaintiffs / General Business Law section 349:  Plaintiffs' claims accrued when Plaintiffs could first have asserted the contractual interpretations they assert in this action, *i.e.*, by 2003 at the latest.

3.      At a minimum, even if each of the semi-annual royalty statements rendered by UMGR to each Plaintiff gives rise to a separate cause of action, each Plaintiff's respective claims must be barred as to royalty statements rendered prior to the date permitted by the contractual limitations provisions in that Plaintiff's contract(s).

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Jeffrey D. Goldman ("Goldman Decl.") and exhibits thereto; the depositions of Dennis King ("King Depo."), David Coverdale ("Coverdale Depo."), Dave Mason ("Mason Depo."), Carlton Ridenhour ("Ridenhour Depo."), Ron Tyson ("Tyson

1   Depo."), Bo Donaldson ("Donaldson Depo."), William McLean ("McLean Depo.") and Andres

2   Titus ("Titus Depo."); the court file; any matters of which this Court may properly take judicial

3   notice or may otherwise consider; any reply UMGR may make; and any further evidence and

4   argument that may be presented to the Court prior to or at the hearing on this Motion.

5

6   DATED:  May 23, 2014                    JEFFREY D. GOLDMAN
                                            RYAN S. MAUCK
7                                           BRIAN M. YATES
                                            JEFFER MANGELS BUTLER & MITCHELL LLP
8

9                                           By:  /s/ Jeffrey D. Goldman
10                                                   JEFFREY D. GOLDMAN
                                            Attorneys for Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ................................................................................1

II. ARGUMENT..........................................................................................................3

    A.  UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' UCL CAUSES OF ACTION.........................................................................3

        1.  After Discovery, Plaintiffs Cannot Establish Their Claims Have A Sufficient "Connection To The Protection Of The Public."..........................3

        2.  New York Choice-of-Law Provisions Preclude Plaintiffs Ridenhour, McLean And Titus From Asserting UCL Claims..........................................9

    B.  UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSES OF ACTION FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW section 349 ................................................................................11

    C.  UMGR IS ENTITLED TO SUMMARY JUDGMENT ON CERTAIN PLAINTIFFS' CAUSES OF ACTION FOR OPEN BOOK ACCOUNT .............12

    D.  PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTORY OR CONTRACTUAL LIMITATIONS PERIODS, IN WHOLE OR IN PART......................................................................................13

        1.  California Plaintiffs / UCL Claims .............................................................15

            a.  Plaintiffs' Breach of Contract and UCL Claims Accrued When They First Could Have Asserted Their Interpretation to Establish the Existence of the Contractual Right at Issue. ..............15

            b.  Alternatively, Whitesnake's Claims Accrued When UMGR Repudiated Them on April 22, 2004. ..............................................16

        2.  New York Plaintiffs / Section 349 Claims .................................................19

        3.  At A Minimum, Each Of Plaintiffs' Claims Is Barred In Part Based on the Contractual Limitations Provisions in their Contracts...........................19

III. CONCLUSION.......................................................................................................22

PRINTED ON

RECYCLED PAPER
LA 10795919v1

- i -

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Air Transport Ass'n of America v. Lenkin*,
  711 F. Supp. 25 (D.D.C. 1989)..................................................................15, 16

*Allman v. UMG Recordings*,
  530 F. Supp. 2d 602 (S.D.N.Y. 2008) ................................................................19

*Anunnziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................................8

*Aryeh v. Canon Business Solutions, Inc.*,
  185 Cal. App. 4th 1159 (2010) ..........................................................................14

*Audio Marketing Servs., S.A.S. v. Monster Cable Products, Inc.*,
  2013 WL 633202 (N.D. Cal. 2013) ....................................................................10

*Beller v. William Penn Life Ins. Co. of New York*,
  8 A.D.3d 310, 778 N.Y.S.2d 82 (N.Y.A.D. 2 Dept. 2004).................................19

*Bild v. Konig*,
  2011 WL 666259 (E.D.N.Y. 2011) ....................................................................14

*Braun v. Chronicle Publishing Co.*,
  52 Cal. App. 4th 1036 (1997) ..............................................................................6

*Briggs v. Eden Council for Hope & Opportunity*,
  19 Cal. 4th 1106 (1999)........................................................................................6

*Brown v. Cosby*,
  433 F. Supp. 1331 (E.D. Pa. 1977) ....................................................................16

*Clinton v. Universal Music Group, Inc.*,
  2011 WL 3501818 (C.D. Cal. 2011) ..................................................................19

*Coastal Abstract Service, Inc. v. First American Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ...............................................................................7

*Continental Airlines, Inc. v. Mundo Travel Corporation*,
  412 F. Supp. 2d 1059 (E.D. Cal. 2006) ..............................................................10

*Corazzini v. Litton Loan Servicing LLP*,
  2010 WL 1132683 (N.D.N.Y. 2010)...................................................................11

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777, 967 N.E.2d 1177 (N.Y. 2012) ...................................................14

Defendant's Motion for Summary Judgment No. 2
                         CV11-01613 SI

PRINTED ON

RECYCLED PAPER
LA 10795919v1

**TABLE OF AUTHORITIES**
**CONTINUED**

Page(s)

CASES

*County of San Diego v. Myers*,
   147 Cal. App. 3d 417 (1983) ................................................................17

*Denenberg v. Rosen*,
   71 A.D.3d 187 (2010) ........................................................................11

*Dillon v. Board of Pension Comm'rs*,
   18 Cal. 2d 427 (1941) ........................................................................15

*Dillon v. NBCUniversal Media LLC*,
   2013 WL 3581938 (C.D. Cal. 2013) ....................................................5

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
   875 F. Supp. 2d 1058 (N.D. Cal. 2012) ............................................4, 9

*Dugan v. Lloyds TSB Bank*,
   2014 WL 1647691 (N.D. Cal. 2014) ..................................................11

*El Comite Para El Bienestar de Earlimart v. Warmerdam*,
   539 F.3d 1062 (9th Cir. 2008) .............................................................6

*Ely-Cruikshank Co., Inc. v. Bank of Montreal*,
   81 N.Y.2d 399 (N.Y. 1993) ..............................................................14

*F.B.T. Productions, LLC v. Aftermath Records*,
   621 F.3d 958 (9th Cir. 2010) ......................................................2, 9, 16

*Fox v. Dehn*,
   42 Cal. App. 3d 165 (1974) ...............................................................17

*Global Financial Corp. v. Triarc Corp.*,
   93 N.Y.2d 525, 715 N.E.2d 482 (N.Y. 1999).....................................19

*Gold Mining & Water Company v. Swinterton*,
   23 Cal. 2d 19 (1943) ........................................................................17

*Gustafson v. BAC Home Loan Servicing, LP*,
   294 F.R.D. 529 (C.D. Cal. 2013)......................................................10

*Hambrecht & Quist Venture Partners v. American Medical Intern., Inc.*,
   38 Cal ...............................................................................................19

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2007 WL 4062845 (N.D. Cal. 2007) ..................................................8

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON

RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

**TABLE OF AUTHORITIES**
**CONTINUED**

Page(s)

CASES

*In re Chemtura Corp.*,
448 B.R. 635 (Bankr. S.D.N.Y. 2011) .................................................................17

*In re ConocoPhillips Co. Service Station Rent Contract Litigation*,
2011 WL 1399783 (N.D. Cal. 2011) ...............................................................4, 9

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
2014 WL 223677 (S.D. Cal. 2014) (valid California choice-of-law provision prohibits
application of laws of other states) ....................................................................11

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) .............................................................................13, 14

*Krieger v. Nick Alexander Imports, Inc.*,
234 Cal. App. 3d 205 (1991) ............................................................................14

*Kuperman v. Assessment Appeals Bd. No. 1*,
137 Cal. App. 4th 918 (2006) ............................................................................6

*Lazzarevich v. Lazzarevich*,
39 Cal. 2d 48 (1952) .......................................................................................18

*Lia v. Saporito*,
909 F. Supp. 2d 149 (E.D.N.Y. 2012) ...............................................................14

*Linear Technology Corp. v. Applied Materials, Inc.*,
152 Cal. App. 4th 115 (2007) .............................................................................4

*Love v. Fire Ins. Exch.*,
221 Cal. App. 3d 1136 (1990) ...........................................................................13

*Madanat v. First Data Corp.*,
2011 WL 208062 (N.D. Cal. 2011) .....................................................................10

*Malmsteen v. Universal Music Group, Inc.*,
2012 WL 2159281 .............................................................................................20

*Mappa Music Co. v. Universal-Polygram Int'l Pub. Inc.*,
2001 WL 1868083 (C.D. Cal. Dec. 17, 2001) .................................................15, 16

*Medimatch, Inc. v. Lucent Techs., Inc.*,
120 F. Supp. 2d 842 (N.D. Cal. 2000) ................................................................10

*Merin v. Precinct Developers LLC*,
74 A.D. 3d 688, 902 N.Y.S. 2d 821 (2010) .........................................................11

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

PRINTED ON
RECYCLED PAPER
LA 10795919v1

JMBM | Jeffer Mangels
Butler & Mitchell LLP

**TABLE OF AUTHORITIES**
**CONTINUED**

Page(s)

CASES

*Mezey v. State of California*,
    161 Cal. App. 3d 1060 (1984) ........................................................................................15

*Minidoka Irr. Dist. v. Department of Interior of U.S.*,
    154 F.3d 924 (9th Cir. 1998) ...................................................................................17, 18

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) ...............................................................................................14

*NSB Technologies, Inc. v. Specialty Direct Marketing, Inc.*,
    2004 WL 1898778 (N.D. Ill. 2004) .................................................................................8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (N.Y. 1995) ...........................................................................................11

*Parker v. Shell Oil Co.*,
    29 Cal. 2d 503 (1946) .................................................................................................13

*Ridenhour v. UMG Recordings, Inc.*,
    2012 WL 463960 (N.D. Cal. 2012) ....................................................................1, 10, 12

*Rosenbluth International, Inc. v. Superior Court*,
    101 Cal. App. 4th 1073 (2002) .......................................................................................4

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*,
    965 F. Supp. 2d 1141 (E.D. Cal. 2013) ...........................................................................4

*Sgaliordich v. Lloyd's Asset Management*,
    2012 WL 4327283 (E.D.N.Y. 2012) (Florida choice-of-law provision barred claim under
    section 349).................................................................................................................12

*Stalberg v. Western Title Ins. Co.*,
    230 Cal. App. 3d 1223 (1991) ("Since the [attorneys'] knowledge is imputed to plaintiffs
    as of April of 1979, the statute of limitations appears to have run in February of 1982.").....18

*Sun Microsystems, Inc. v. Dataram Corp.*,
    1997 WL 50272 (N.D. Cal. 1997) ...................................................................................8

*Town of Oyster Bay v. Lizza Industries, Inc.*,
    22 N.Y.3d 1024, 4 N.E.3d ...........................................................................................19

*Tsemetzin v. Coast Federal Savings & Loan Assn.*,
    57 Cal. App. 4th 1334 (1997) ......................................................................................12

*Village Nurseries, L.P. v. Greenbaum*,
    101 Cal. App. 4th 26 (2002) ........................................................................................13

PRINTED ON

RECYCLED PAPER
LA 10795919v1

- v -

**TABLE OF AUTHORITIES**
**CONTINUED**

Page(s)

CASES

*Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*,
  103 F.3d 1571 (Fed. Cir. 1997) ................................................................................8

*Xin Wei Lin v. Chinese Staff & Workers' Ass'n*,
  2012 WL 5457493 (S.D.N.Y. 2012)........................................................................8

*ZilYen, Inc. v. Rubber Mfrs. Ass'n*,
  935 F. Supp. 2d 211 (D.D.C. 2013).........................................................................8

STATUTES

Fed. R. Civ. P. 26(e) .......................................................................................................5

Cal. Bus. & Prof. Code
  § 17200 ..............................................................................................................1, 8
  § 17208 ................................................................................................................13

Cal. Civ. Code
  § 1761(d)................................................................................................................7
  § 2332 ..................................................................................................................18
  § 2501 ...............................................................................................................5, 6

Cal. Code Civ. Proc
  § 337(3).................................................................................................................13
  § 343 ....................................................................................................................13

New York General Business Law
  § 349 ...............................................................................................................*passim*

N.Y. Civ. Prac. Law and Rules § 213(2) ....................................................................14

OTHER AUTHORITIES

Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* (7th ed.
  2009) § 20:3.........................................................................................................5

*Restatement (Second) of Contracts* § 250 cmt..........................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jeffer Mangels
Butler & Mitchell LLP

JMBM

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

In 2002, with online piracy still ravaging the music industry, UMGR sought to enlist support from recording artists for legal online music sales by announcing to the music community a new "royalties model" for calculating artists' royalties for Downloads.[2]  UMGR viewed Downloads as "equivalent of a physical sale through a new distribution channel" (Ex. 35[3]), which under many artist contracts would be subject to various contractual deductions when calculating artist royalties. UMGR determined it would not to take such contractual royalty deductions for Downloads, even when an artist's contract allowed it.

In October 2002, UMGR's initiative was widely publicized and the subject of extensive industry discussion.  Some recording artist representatives hailed UMGR's position[4]; others expressed more ambivalence[5]; and 18 months later, still others contended (in a letter to UMGR's President in 2004 signed by 27 prominent artist attorneys) that UMGR had not gone far enough; that its "position that paid downloads are equivalent to sales of CDs through retailers" was incorrect.  These artist attorneys asserted there could be "no bona fide legal dispute" that UMGR's contracts with Download Providers were "licenses," and claimed this entitled artists to an entirely different formula for calculating Download royalties – a percentage of UMGR's net receipts from Downloads.  Ex. 43.  UMGR responded in writing that it respectfully disagreed with the artist

---

[2] Downloads and Download Providers are defined herein as in UMGR's concurrently filed Motion for Summary Judgment No. 1.

[3] Unless otherwise noted, all references to exhibit numbers are to the Goldman Decl.

[4] *E.g.*, "Concessions on Contractual Deductions Could Mean More Money for Artists" (*HITS*, Oct. 17, 2002) [Ex. 36] ("In a move being hailed by artist representatives as a significant step in the right direction…"); "Universal Music Ups Royalties for Song Downloads" (*Reuters*, Oct. 127, 2002) [Ex. 37] (quoting Jay Cooper, a prominent artist attorney, as championing UMGR's initiative as "a good faith attempt by the company to respond to certain artists' complaints to get them to work with the labels in building a real download business").

[5] *E.g.*, "UMG sings new tune online:  Modifications designed to get more artists involved" (*Variety*, Oct. 17, 2002) [Ex. 38] (quoting artist attorney Don Engel as saying "UMG's initiative is fine as far as it goes," but that "it's hard to be really impressed by what they're doing with such a small part of the market").

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

1   attorneys' position based on "our own evaluation of the activity concerned and our application of

2   the language in our artist recording contracts," asserted its "treatment of digital downloads is proper

3   and in accord with the spirit, intent and language of our contracts," and urged "discussions on an

4   individual basis" with artists "who have a contractual relationship with us."  Ex. 44.

5           Seven years elapsed.  In April 2011, Plaintiffs filed the first of these five actions

6   (consolidated by stipulation), making the same contention, that UMGR has breached eleven

7   recording contracts entered into with eight recording artists by underpaying royalties for Downloads

8   sold through Download Providers (such as Apple's iTunes store).  Plaintiffs supplement their

9   breach of express contract claims with claims for breach of the implied covenant of good faith and

10  fair dealing, "open book account" (for some Plaintiffs), and violation of California's Unfair

11  Competition Law and New York General Business Law section 349.  Plaintiffs claim support from

12  *F.B.T. Productions, LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010).  But even assuming

13  *arguendo* for present purposes that *F.B.T.* established that UMGR's agreements with Download

14  Providers are "licenses" for purposes of calculating royalties under Plaintiffs' contracts (instead of

15  just the specific artist contract at issue in that case), it does not resolve how that legal conclusion

16  applies to the differing provisions of Plaintiffs' various contracts.  *See*, *e.g.*, UMGR's Summary

17  Judgment Motion No. 1, at 1-3 and *et seq.*

18          Perhaps for this reason, Plaintiffs pepper their CAC with a series of provocative allegations

19  that radically distort the objective evidence of the events surrounding the inception of the legal

20  Download market.  Woefully late to the party, Plaintiffs seek to reinvent history by claiming that an

21  open and knowing dialogue between sophisticated professionals about legal issues and the terms of

22  commercial music industry contracts (*e.g.*, the 2004 letters between artist lawyers and UMGR's

23  then-President) was somehow a "consumer matter" involving misrepresentations and concealments

24  to the general public.  In belatedly concocting their own narrative, Plaintiffs make many allegations

25  that contradict not only the objective evidence, but one another.  For example, Plaintiffs

26  simultaneously argue UMGR both concealed ***and*** widely disseminated its royalty policy; and that

27  UMGR revised its contracts with Download Providers to mislead recording artists, then refused to

28  let those artists ***see*** the very contracts supposedly drafted to mislead them.

JMBM | Jeffer Mangels
       | Butler & Mitchell LLP

JMBM | Jeffer Mangels
Butler & Mitchell LLP

The Court need not resolve any of these issues on this motion, which is addressed only to several threshold issues regarding Plaintiffs' claims, as described more fully in the Notice of Motion. Some of these issues were previously addressed in UMGR's summary judgment motion filed in March 2012. Docket 66. Plaintiffs' opposition to that motion largely argued it was "grossly premature" and should be deferred until they conducted further discovery. Docket 74 at 6-7. The Court agreed, inviting UMGR to revisit various grounds after more discovery and after the California Supreme Court ruled on a statute of limitations issue. Docket 87 at 4-5.

All of this has occurred. The California Supreme Court has clarified when a claim accrues under the UCL's statute of limitations. Plaintiffs have had more than two years to take the discovery they said they needed. They have taken ten depositions of past and present UMGR executives and employees; propounded 77 document requests and 18 interrogatories; received over 665,000 pages of documents and over 200,000 electronic records produced by UMGR; and filed ten discovery motions regarding many of their remarkably broad discovery requests (motions which have been mostly, though not entirely, unsuccessful). After all of this, the relevant record is materially unchanged. Plaintiffs still cannot establish that their commercial contract claims concern the protection of the public or consumers generally; cannot identify any "contrary" agreements by the parties to treat any contractual relationship as an "open book account"; cannot assert claims under one state's laws when their contracts provide that another state's laws govern their claims; and cannot dispute they could have asserted the contractual interpretation underlying all of their claims a decade ago (and one Plaintiff, Whitesnake, actually did so). No reason exists to further defer dismissal of these meritless claims. And even claims that are not entirely barred should be limited in accordance with the various contractual limitations provisions in the parties' contracts.

## II. ARGUMENT

### A. UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' UCL CAUSES OF ACTION.

#### 1. After Discovery, Plaintiffs Cannot Establish Their Claims Have A Sufficient "Connection To The Protection Of The Public."

This Court has previously recognized certain important limitations on the application of the UCL to contract (and other) claims, consistent with the principle that "a UCL action based on a

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

contract is not appropriate where the public in general is not harmed by the defendant's alleged

unlawful practices[.]"  *Rosenbluth International, Inc. v. Superior Court*, 101 Cal. App. 4th 1073,

1077-78 (2002).  In addressing this issue at the pleading stage, this Court agreed

> with Judge White's analysis in *In Re Webkinz Antitrust Litigation,*
> 695 F. Supp. 2d 987 (N.D. Cal. 2010), where he stated, '***[T]he central
> issue presented under California law is whether the public at large,
> or consumers generally, are affected by the alleged unlawful
> business practice of defendants …*** Judge White dismissed the
> plaintiffs' claims with leave to amend because the complaint did 'not
> allege facts sufficient to demonstrate a connection to the protection of
> the public.'"

Docket No. 49 at 7 (emphasis added), *quoting Webkinz*, 695 F. Supp. 2d at 998-99.

Judge White eventually dismissed the claims in *Webkinz* **with** prejudice, concluding that

allegations that consumers and the general public "spent time and money repeatedly traveling to and

visiting Plaintiffs' stores only to be unable to purchase [the Webkinz dolls]," that "their choices

were restricted to [defendant's] products" and that the dolls contained "dangerous and unlawful

levels of lead" were "insufficient to convert what fundamentally remains a dispute, contractual in

essence, between a distributor and retailers, into a consumer matter within the meaning of" the

UCL.  Ex. 40 at 10.

This Court later dismissed a UCL claim in *Dollar Tree Stores Inc. v. Toyama Partners LLC*,

875 F. Supp. 2d 1058 (N.D. Cal. 2012), that was "based on a breach of a contract that does not

implicate the public in general or individual consumers."  *Id*. at 1083.  The Court quoted with

approval *In re ConocoPhillips Co. Service Station Rent Contract Litigation*, 2011 WL 1399783, *3

(N.D. Cal. 2011), for the proposition that a UCL claim is not appropriate where "Plaintiffs'

relationship with defendant is defined by their contractual arrangement" and "[t]he case does not

involve the general public or individual consumers who are parties to a contract.  Rather, it is a

dispute between commercial parties over their economic relationship."  875 F. Supp. 2d at 1083; *see

also*, *e.g.*, *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007)

(UCL claim properly dismissed because it was "based on contracts not involving either the public in

general or individual consumers who are parties to the contract"); *Sacramento E.D.M., Inc. v. Hynes

Aviation Indus.*, 965 F. Supp. 2d 1141, 1155 (E.D. Cal. 2013) (dismissing UCL claim where

JMBM
Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

1    "[n]othing in the Complaint suggests that individual consumers or the public at large were harmed

2    as a result of Defendants' wrongdoing."); *Dillon v. NBCUniversal Media LLC*, 2013 WL 3581938,

3    *7 (C.D. Cal. 2013) ("dismissal of UCL actions is appropriate when the plaintiff is neither a

4    competitor nor a consumer.").

5         So here, the parties undertook discovery to determine whether these actions were a

6    "consumer matter."  In November 2011, UMGR propounded an interrogatory to determine the

7    basis, if any, of Plaintiffs' contention that UMGR's alleged misconduct bore a "connection to the

8    protection of the public," or "consumers generally."  Plaintiffs' responses contained what might

9    charitably be called, in plain English, a whole bunch of nothing.  Ex. 21 at 5-9.  Nevertheless, this

10   Court accepted Plaintiffs' pleas for more discovery to support their allegations, inviting UMGR to

11   renew its motion "after a complete record has been developed."  Docket 87 at 5.

12        In December 2012, after Plaintiffs filed the CAC, several newly-added Plaintiffs responded

13   to the same interrogatory on this issue with a virtually identical response, which added only a single

14   additional public statement as innocuous and irrelevant as the ones Plaintiffs previously identified.

15   Ex. 22.  Since then, Plaintiffs have not amended their interrogatory responses on this issue, despite

16   their obligation to do so "in a timely manner."  Fed. R. Civ. P. 26(e).  After two years of discovery,

17   the record remains devoid of evidence that the industry discussion about Download royalties in the

18   early 2000s had anything to do with the general public, let alone even reached consumers or would

19   have been comprehensible to them.  Rather, the entirety of Plaintiffs' evidence that their UCL claim

20   is a "consumer matter," *i.e.*, bears a sufficient "connection to the protection of the public" or

21   "consumers generally," is the following:

22        *First*, Plaintiffs cite the preamble[6] of the Senate Bill which enacted California Civil Code

23   section 2501.  However, the legislation that was enacted – codified in Section 2501 – authorizes

24   recording artists to conduct ***audits*** of record companies' books and records, within certain

---

26   [6] The "preamble" of a bill is the "prefatory explanation or statement .. which purports to
state the reason or occasion for making a law or to explain in general terms the policy of the

27   enactment."  1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* (7th
ed. 2009) § 20:3, pp. 122-123.  This is contrasted with the "enacting clause," which is "the part of

28   the act's body stating precise action taken by the legislature."  *Id.* § 20:6, at 130-31.

PRINTED ON
RECYCLED PAPER
LA 10795919v1

JMBM | Jeffer Mangels Butler & Mitchell LLP

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

limitations, even if their contract does not provide for such an audit right. It is irrelevant to Plaintiffs' claims here: all Plaintiffs' contracts already contained audit rights before section 2501 was enacted; section 2501 does not define the scope of any audit or require a record company to permit artists to inspect any particular item; and section 2501 does not regulate or affect the calculation of royalties under recording artists' contracts or interpose any legislative gloss on the interpretation of such contracts. Plaintiffs do not allege UMGR violated section 2501.

The preamble to a statute, such as the one on which Plaintiffs rely, is "not an operative part of the statute" and "does not 'prescribe rights and duties and otherwise declare the legislative will'[.]" *El Comite Para El Bienestar de Earlimart v. Warmerdam,* 539 F.3d 1062, 1070 (9th Cir. 2008), *quoting Wyoming Outdoor Council v. United States Forest Service*, 165 F.3d 43, 53 (D.C. Cir. 1999). Indeed, even with respect to the statute to which it relates (here, Civil Code section 2501 concerning audits), it "should not be considered" at all unless the statute itself is ambiguous. *Earlimart*, 539 F.3d at 1070. A preamble to a statute must be read in accommodation with "the singular, clearly defined … activities set forth in" the statute to which it relates, *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036, 1048 (1997), and the "particular directives" of that statute, *Briggs v. Eden Council for Hope & Opportunity,* 19 Cal. 4th 1106, 1118 (1999). The "sweeping language" of a preamble cannot even modify "the actual legislation enacted." *Kuperman v. Assessment Appeals Bd. No. 1*, 137 Cal. App. 4th 918, 928 (2006). So a preamble certainly cannot be used, as Plaintiffs attempt here, to expand the coverage of an unrelated statute (here, the UCL) to embrace commercial contracts in a single industry. If sweeping recitals in the preamble of section 2501 were sufficient to find an adequate "connection to the protection of the public" in this case, then *every* lawsuit brought by a recording artist – whether involving Section 2501 or not – would henceforth justify a companion UCL claim. This is not, and cannot be, the law.

*Second*, Plaintiffs make the claim that "[m]embers of the public include Defendant's numerous underpaid and misled artists and other royalty participants." Ex. 22 at 16. However, *every* plaintiff asserting a UCL claim is, in some way, a "member of the public." If that alone was sufficient to establish a connection to consumers or the "protection of the general public," then every case would meet that criteria and this threshold requirement would be meaningless. Plaintiffs

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

1   may be consumers when they shop for groceries or visit a museum, but they are clearly not for

2   purposes of enforcing their commercial contracts with UMGR. *See generally* Cal. Civ. Code

3   § 1761(d) (in other statutory scheme, defining "consumer" as "an individual who seeks or acquires,

4   by purchase or lease, any goods or services for personal, family, or household purposes.").

5        *Third,* Plaintiffs assert UMGR made various allegedly inaccurate public statements. As a

6   threshold matter, there is no evidence that a single consumer heard any such statements, let alone

7   understood them, was harmed by them, or needs "protection" from them. Indeed, even Plaintiffs

8   themselves – well-known recording artists and music industry veterans all – admitted at their

9   depositions that they never heard, or were misled by, any public statements by UMGR.[7] And in

10   many cases, Plaintiffs cannot even point to any specific statements. For example, Plaintiffs allude

11   to "a number of public statements [by UMGR] regarding its relationship with third parties digital

12   download providers [sic] such as Apple," but have never identified ***any*** such specific statements.

13   Ex. 22 at 18.

14        The only specific statements Plaintiffs cite have nothing to do with consumers. Plaintiffs

15   cite a 2007 speech to lawyers and law students at an industry event in which UMGR's then-

16   President Zach Horowitz commented that UMGR "pioneered what we believe to be the industry's

17   most artist friendly contractual provisions for sharing digital income – eliminating free goods,

18   packaging, new media and other deductions." Ex. 22 at 17; Ex. 45 at 3. This statement does not

19   concern or address consumers, and does not show that Download royalties have anything to do with

20   the public at large. Even if it did, there is no evidence the general public heard these comments or

21   relied on them (for what exactly, Plaintiffs have never explained).[8] Even more remote is Plaintiffs'

22

23      [7] Coverdale Depo. [Ex. 16] 327:17-328:9; Mason Depo. [Ex. 17] 186:7-23; Ridenhour Depo.
[Ex. 19] 171:25-173:1; Donaldson Depo. [Ex. 12] 145:10-14; Titus Depo. [Ex. 20] 161:12-162:6;
24   McLean Depo. [Ex. 18] 102:12-19; Tyson Depo. [Ex. 14] 55:21-56:3.

25      [8] The statement could not be actionable even if it concerned, was directed to, and was heard
by consumers. It is undisputed that UMGR ***did*** eliminate the stated deductions (UMGR did so in
26   the new contractual provisions they negotiated in new contracts starting in 2002, and refrained from
applying such deductions to existing contracts); there is no evidence that UMGR's were ***not*** the
27   "industry's most artist friendly contractual provisions"; and anyway, Horowitz stated only that
UMGR "believe[d] [them] to be," not that they were. Horowitz's comment is a classic "statement[]
28   of opinion," not "a specific and measurable claim, capable of being proved false or of being

PRINTED ON

RECYCLED PAPER
LA 10795919v1

JMBM  Jeffer Mangels
Butler & Mitchell LLP

1   citation to testimony by UMGR's then-General Counsel Michael Ostroff to the U.S. House of

2   Representatives Subcommittee on Commerce, Trade, and Consumer Protection in 2006. Ex. 22 at

3   17-18. Ostroff's testimony concerned compulsory licenses obtained by satellite radio companies

4   (*e.g.*, SiriusXM) pursuant to Section 114 of the Copyright Act – not Downloads, royalties, or even

5   artists (other than a passing remark that "in the case of iTunes, Apple compensates artists, creators

6   and copyright owners through a distribution fee"), let alone consumers or the general public.

7        The remainder of Plaintiffs' interrogatory responses on this issue assert UMGR disputed

8   Plaintiffs' ***legal position*** that UMGR should "treat digital downloads as a sale, rather than a

9   license." Ex. 22 at 15-19. The only specific evidence they cite is the 2004 exchange of letters

10  between artists' lawyers and UMGR's then-President Horowitz and a private letter from UMGR to

11  the James Trust's auditor in 2010 explaining that UMGR treated sales of Downloads the same as

12  sales of physical product for royalty calculation purposes. Neither of these documents concerned or

13  addressed consumers, nor would consumers have had any need to understand (or legitimate interest

14  in) the esoteric legal issue being discussed. The artist attorneys' 2004 letter to Horowitz itself

15  characterized the parties' disagreement as a "legal dispute." [9]  Ex. 43 at 2. And the *F.B.T.* decision,

16  too, did not rely on any "secret" or non-public facts or documents to support the proposition that

---

18  reasonably interpreted as a statement of objective fact." *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). "Generalized, vague, and unspecified

19  assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under Section 17200. *Anunnziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133,

20  1139 (C.D. Cal. 2005), *quoting Glen Holly Entertainment, Inc. v. Tektronix Inc.,* 343 F.3d 1000, 1005 (9th Cir. 2003).

21

22       [9] Even if "consumers in general" had access to these letters, asserting a legal conclusion is not actionable. *Xin Wei Lin v. Chinese Staff & Workers' Ass'n*, 2012 WL 5457493, *7 (S.D.N.Y.

23  2012) (no fraudulent concealment where alleged "deceit concerned a legal conclusion and not a factual element of Plaintiffs' cause of action."). Asserting that a contract is not a "license" (which

24  UMGR's letters never even state) is a "legal conclusion," not a statement of fact. *Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997);

25  *see also ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 935 F. Supp. 2d 211, 221-22 (D.D.C. 2013). There is a distinction between "[t]he legal conclusion" that a license exists and "factual allegations that

26  demonstrate the existence of a license." *Sun Microsystems, Inc. v. Dataram Corp.*, 1997 WL 50272, *4 (N.D. Cal. 1997); *accord, Hynix Semiconductor Inc. v. Rambus Inc.*, 2007 WL 4062845,

27  *2 (N.D. Cal. 2007); *see also NSB Technologies, Inc. v. Specialty Direct Marketing, Inc.*, 2004 WL 1898778, *1 (N.D. Ill. 2004) (whether "(t)he Agreement ... was a license agreement" was a "legal conclusion[]," not a "statement[] of fact").

---

JMBM

Jeffer Mangels
Butler & Mitchell LLP

UMGR's contracts with Downloads Providers legally satisfied the definition of "licenses," as used in the specific recording agreement at issue in that lawsuit – the court cited only the dictionary and Copyright Act meanings of the term "license," and the court's own conclusion that UMGR "permitted iTunes, cellular phone carriers, and other third parties to use its sound recordings to produce and sell" Downloads.  621 F.3d at 964.

After discovery, it could not be clearer that this case involves parties whose "relationship … is defined by their contractual arrangement," *ConocoPhillips*, 2011 WL 1399783, at *3, and "is a dispute between commercial parties over their economic relationship (id.) which "does not implicate the public in general or individual consumers."  *Dollar Tree Stores*, 875 F. Supp. 2d at 1083.  Accordingly, Plaintiffs' UCL claims should be dismissed.

### 2.    New York Choice-of-Law Provisions Preclude Plaintiffs Ridenhour, McLean And Titus From Asserting UCL Claims.

In any event, Plaintiffs Ridenhour, McLean, and Titus cannot assert claims under the UCL because they agreed their relationships with UMGR would be governed by New York law. Ridenhour is suing on two contracts he entered into with UMGR's predecessor-in-interest Def Jam Recordings, Inc. as of September 15, 1986 (the "1986 Contract"), and April 15, 1992 (the "1992 Contract").  Exs. 9-10.  McLean and Titus are suing on a contract entered into as of July 5, 1991 with UMGR under its former name PolyGram Records, Inc. (the "1991 Contract").  Ex. 11.

Paragraph 21.07 of Ridenhour's 1986 Contract (Ex. 9) provides:

> This agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York.

Paragraph 19.08 of Ridenhour's 1992 Contract (Ex. 10) provides:

> THIS AGREEMENT HAS BEEN ENTERED INTO IN THE STATE OF NEW YORK, AND THE VALIDITY, INTERPRETATION AND LEGAL EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO ANY CONFLICT OF LAW PRINCIPLES UNDER NEW YORK LAW).

Paragraph 14.07 of McLean's and Titus's 1991 Contract (Ex. 11) provides:

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

PRINTED ON
RECYCLED PAPER
LA 10795919v1

1                   This agreement is entered into in the State of New York and shall be
                  construed in accordance with the laws of New York applicable to

2                   contracts entered into and to be wholly performed therein.

3        These provisions are valid and enforceable.  This Court previously held there is a

4 "substantial relationship" between New York and Ridenhour's 1986 and 1992 Contracts.

5 *Ridenhour v. UMG Recordings, Inc.*, 2012 WL 463960, *3 (N.D. Cal. 2012).  For similar reasons, a

6 "substantial relationship" exists between New York and McLean's and Titus's 1991 Contract.[10]

7        A "valid choice-of-law clause, which provides that a specified body of law 'governs' the

8 'agreement' between the parties, encompasses all causes of action arising from or related to that

9 agreement, regardless how they are characterized, including tortious breaches of duties emanating

10 from the agreement or the legal relationships it creates." *Audio Marketing Servs., S.A.S. v. Monster*

11 *Cable Products, Inc.*, 2013 WL 633202, *2 (N.D. Cal. 2013), *quoting Nedlloyd Lines B.V. v.*

12 *Superior Court*, 3 Cal. 4th 459, 470 (1992).[11]  Specifically, "[a] valid choice-of-law provision

13 selecting another state's law is grounds to dismiss a claim under California's UCL." *Continental*

14 *Airlines, Inc. v. Mundo Travel Corporation*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006); *see also*,

15 *e.g.*, *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (agreement

16 that "construction, interpretation and performance of this Agreement shall be governed by the local

17 laws of the State of New Jersey" required dismissal of California UCL claims); *Gustafson v. BAC*

18 *Home Loan Servicing, LP*, 294 F.R.D. 529, 537 (C.D. Cal. 2013) (non-California "choice-of-law

19 provisions … would bar a claim under the UCL").  Plaintiffs cannot meet their burden to show that

20 enforcing these Plaintiffs' choice-of-law clauses to dismiss their UCL claims would "violate a

21 fundamental policy of California."  *See Madanat v. First Data Corp.*, 2011 WL 208062, *4 (N.D.

22

23       [10] UMGR (under its former name PolyGram Records, Inc.), Titus, and McLean were all
domiciled in New York at the time the contract was entered into in 1991 (Titus Depo. [Ex. 20] at

24 15:3-17; McLean Depo. [Ex. 18] at 11:1-15; 1991 Contract [Ex. 11] at 1); and the contract specifies
New York as the place where the parties are to provide notices and where Titus and McLean were

25 to receive "all royalties, royalty statements and payments and any and all notices."  1991 Contract
[Ex. 11] ¶ 14.05.

26

27       [11] The outcome would be the same under New York law, because Ridenhour's, McLean's
and Titus' UCL claims are not "extra-contractual," *i.e.*, they derive from the parties' contractual
relationship and would not exist but for their contracts.

28

PRINTED ON

RECYCLED PAPER
LA 10795919v1

    Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

1   Cal. 2011) ("plaintiff has not demonstrated that forcing him to proceed in the New York forum

2   without [an] unfair practices claim would contravene a strong public policy of California"); *Dugan*

3   *v. Lloyds TSB Bank*, 2014 WL 1647691, *5 (N.D. Cal. 2014) ("This order agrees with other

4   decisions in this district which have upheld choice-of-law provisions even when doing so restricts

5   UCL claims.").

6   **B.     UMGR IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CAUSES OF
          ACTION FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW**

7   **SECTION 349**

8           Along with their UCL claims, Plaintiffs assert (presumably identical) claims under New

9   York's unfair competition law, General Business Law section 349.  These claims, too, fail as a

10   matter of law for similar reasons.

11          *First*, a section 349 plaintiff "must demonstrate that the acts or practices have a broader

12   impact on consumers at large.  Private contract disputes, unique to the parties, for example, would

13   not fall within the ambit of the statute."  *Oswego Laborers' Local 214 Pension Fund v. Marine*

14   *Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995); *see Merin v. Precinct Developers LLC*, 74 A.D.

15   3d 688, 902 N.Y.S. 2d 821 (2010) (section 349 claim dismissed "since it stemmed from a private

16   contractual dispute between the parties without ramifications for the public at large"); *Denenberg v.*

17   *Rosen*, 71 A.D.3d 187, 195 (2010) (dismissing section 349 claim in what was "essentially a private

18   dispute among the parties … rather than conduct affecting the consuming public at large");

19   *Corazzini v. Litton Loan Servicing LLP*, 2010 WL 1132683, *8 (N.D.N.Y. 2010).  As set forth in

20   Section (II)(A)(1) *supra*, the acts about which Plaintiffs are complaining do not have a broad impact

21   (or any impact) on "consumers at large."

22          *Second*, for the same reasons plaintiffs Ridenhour, McLean and Titus cannot assert claims

23   under the California UCL, plaintiffs the James Trust, Mason, Tyson and Donaldson – whose

24   contracts contain California choice-of-law provisions[12] – cannot sue under New York law.  *In re*

25

26          [12] James 1977 Artist Contract [Ex. 2] ¶ 26 ("This Agreement shall be deemed to have been
     made in the State of California and its validity, construction and effect shall be governed by the
27   laws of the State of California applicable to agreements wholly to be performed therein..."); James
     1979 Contract [Ex. 3] ¶ ("The validity, construction and effect of this Agreement and any and all
28   amendments thereto and modifications thereof, shall be governed by the laws of the State of

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
                                    CV11-01613 SI

JMBM   Jeffer Mangels
       Butler & Mitchell LLP

1    *Sony Gaming Networks and Customer Data Security Breach Litigation*, 2014 WL 223677, *22-*24

2    (S.D. Cal. 2014) (valid California choice-of-law provision prohibits application of laws of other

3    states); *Sgaliordich v. Lloyd's Asset Management*, 2012 WL 4327283, *5 (E.D.N.Y. 2012) (Florida

4    choice-of-law provision barred claim under section 349).

5    **C.    UMGR IS ENTITLED TO SUMMARY JUDGMENT ON CERTAIN PLAINTIFFS'
         CAUSES OF ACTION FOR OPEN BOOK ACCOUNT**

6

7            This Court previously denied without prejudice UMGR's summary judgment motion on

8    certain Plaintiffs'[13] Fourth Cause of Action for "open book accounts" under California law.  In

9    California, express contracts governing how parties will compensate one another preclude open

10   book accounts "in the absence of a ***contrary agreement*** between the parties."  *Tsemetzin v. Coast*

11   *Federal Savings & Loan Assn.*, 57 Cal. App. 4th 1334, 1343 (1997) (emphasis added).  In its prior

12   Order, the Court concluded Plaintiffs were entitled to discovery on whether such contrary

13   agreements existed, noting that "even where there are express contracts stating exact amounts due,

14   those agreements may nonetheless be treated as items under an open book account 'by mutual

15   understanding of the parties,'" and "[a]fter adequate discovery, defendant may renew its motion

16   regarding the mutual understanding of the parties with respect to creating open book accounts."

17   Docket 87 at 6.

18   _____

19   California"); Mason 1969 Contract [Ex. 5] ¶ 17 ("This Agreement ... shall be deemed to have been
     made in the State of California. Its validity, construction, performance, breach and operation shall

20   be governed by the laws of the State of California"); Tyson 1987 Contract [Ex. 7] ¶ 21 ("The
     validity, construction and effect of this Agreement and any and all amendments thereto and

21   modifications thereof, shall be governed by the laws of the State of California applicable to
     contracts made and to be performed in California"); Tyson 1993 Contract [Ex. 8] ¶ 16.08 ("This

22   agreement has been entered into in the State of California and the validity, interpretation and legal
     effect of this agreement shall be governed by the laws of the State of California applicable to

23   contracts entered into and performed entirely within such State"); Donaldson 1973 Contract [Ex. 1]
     ¶ 23 ("This contract shall be deemed to have been made in the State of California and its validity,

24   construction and effect shall be governed by the laws of the State of California applicable to
     agreements wholly to be performed therein").

25           [13] Ridenhour's "open book account" claim was dismissed by this Court based on his New

26   York choice of law provisions. *Ridenhour v. UMG Recordings, Inc.*, 2012 WL 463960, *4 (N.D.
     Cal. 2012).  McLean and Titus also do not have open book account claims for the same reason. *See*

27   Section II(A)(2) *supra*; CAC [Docket 130] ¶ 131 (acknowledging claim is not applicable to all
     Plaintiffs).

28

Jeffer Mangels
Butler & Mitchell LLP
JMBM

In discovery, Plaintiffs have failed to identify *any* such mutual understandings.  UMGR propounded an interrogatory asking Plaintiffs to identify all "written or oral communication between [them] or anyone acting on [their] behalf, on the one part, and UMGR or its predecessors-in-interest or anyone acting on its or their behalf, on the other part, in which the parties specifically agreed to treat their contractual relationship as an open book account." Ex. 31 at 14.  Plaintiffs did not identify any such communications, citing only the royalty statements UMGR rendered pursuant to the parties' express contracts.  *Id.* at 14-15.  However, these royalty statements were rendered *pursuant to* the parties' contracts; they cannot simultaneously evidence an agreement "contrary" to those contracts.  Ex. 31 at 9, 14.  Further, an open book account must consist of "reciprocal demands."  *Parker v. Shell Oil Co.*, 29 Cal. 2d 503, 507 (1946).  As Plaintiffs are not rendering ongoing services to UMGR, UMGR's unilateral (not reciprocal) provision of royalty statements to Plaintiffs – which reflect ongoing contractual royalty payments in consideration of Plaintiffs' original delivery of recordings many years ago – would not be evidence of a reciprocal exchange of services and, therefore, an "open book account."  Accordingly, all remaining claims for "open book account" should be dismissed.

## D.   PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTORY OR CONTRACTUAL  LIMITATIONS PERIODS, IN WHOLE OR IN PART

"Where the operative facts are undisputed, the question of the application of the statute of limitations is a matter of law and summary judgment is proper where the facts show the action is time barred."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1142-43 (1990); *see also Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988); *Village Nurseries, L.P. v. Greenbaum*, 101 Cal. App. 4th 26, 40 (2002) ("when the material facts are undisputed, the trial court can resolve the matter as a question of law in conformity with summary judgment principles") (internal brackets, quotations and citations omitted).  All of Plaintiffs' California-based claims are subject to four-year statutes of limitations.  Cal. Code Civ. Proc. § 337(3) ("Within four years.  1.  An action upon any contract, obligation or liability founded upon an instrument in writing...2.  An action to recover (1) upon a book account whether consisting of one or more entries..."); Cal Code Civ. Proc. § 343 ("An action

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

1    for relief not hereinbefore provided for must be commenced within four years after the cause of

2    action shall have accrued."); Cal. Bus. & Prof. Code § 17208.

3        In April 2012, this Court declined to grant summary judgment to UMGR on Plaintiffs' UCL

4    claim on the basis of the statute of limitations "at that time," noting that the California Supreme

5    Court was reviewing a case considering the accrual of UCL claims, *Aryeh v. Canon Business*

6    *Solutions, Inc.,* 185 Cal. App. 4th 1159 (2010). Docket 87 at 4. The court decided *Aryeh* in 2013.

7    55 Cal. 4th 1185. It concluded the discovery rule ***could*** operate to toll the UCL statute of

8    limitations (though tolling was not supported based on the facts of that case, or here), but more

9    importantly, the court held that "the UCL is governed by common law accrual rules to the same

10   extent as any other statute. That a cause of action is labeled a UCL claim is not dispositive; instead,

11   'the nature of the right sued upon' … and the circumstances attending its invocation control the

12   point of accrual. The common law last element accrual rule is the default … while exceptions to

13   that rule apply precisely to the extent the preconditions for their application are met, as would be

14   true under any other statute." *Aryeh*, 55 Cal. 4th at 1196-97. Under the common law and California

15   law, "[i]n ordinary tort and contract actions, the statute of limitations begins to run upon the

16   occurrence of the last element necessary to the cause of action." *Krieger v. Nick Alexander Imports,*

17   *Inc.*, 234 Cal. App. 3d 205, 221 (1991). Further, a claim accrues, at the latest, when a plaintiff

18   "discover[ed], or ha[d] reason to discover, the cause of action[.]" *Norgart v. Upjohn Co.*, 21 Cal.

19   4th 383, 397 (1999). "A plaintiff is held to her actual knowledge as well as knowledge that could

20   reasonably be discovered through investigation of sources open to her.... [T]he plaintiff must go

21   find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103,

22   1109-11 (1988).

23       New York law applies to Ridenhour, McLean's and Titus's claims based on their choice-of-

24   law provisions and to all Plaintiffs' claims under New York General Business Law section 349.

25   Under New York law, the statute of limitations for breach of contract is six years. N.Y. Civ. Prac.

26   Law and Rules § 213(2). The same limitations period applies to Ridenhour's, McLean's, and Titus'

27   declaratory relief claims. *Lia v. Saporito*, 909 F. Supp. 2d 149, 164 (E.D.N.Y. 2012). The "delayed

28   discovery" doctrine does not apply under New York law. *Ely-Cruikshank Co., Inc. v. Bank of*

JMBM  Jeffer Mangels
Butler & Mitchell LLP

- 14 -          Defendant's Motion for Summary Judgment No. 2
                CV11-01613 SI

1   *Montreal*, 81 N.Y.2d 399, 404 (N.Y. 1993); *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777,

2   789-90, 967 N.E.2d 1177 (N.Y. 2012). Nor does fraudulent concealment toll the statute of

3   limitations. *Bild v. Konig*, 2011 WL 666259, *4 (E.D.N.Y. 2011).

4       Here, Plaintiffs' claims should be dismissed in their entirety. At a minimum, they should be

5   limited to causes of action on royalty statements rendered within the various contractual limitations

6   periods set forth in Plaintiffs' contracts, which range from one to three years.

7       **1.  California Plaintiffs / UCL Claims**

8           **a.  Plaintiffs' Breach of Contract and UCL Claims Accrued When They
              First Could Have Asserted Their Interpretation to Establish the**

9           **Existence of the Contractual Right at Issue.**

10      Plaintiffs' claims seek to challenge UMGR's interpretation of the parties' contracts, to

11  establish a right to receive 50% of UMGR's net receipts from Downloads. Under California law,

12  "[a]n action to determine the existence of [a] right … necessarily precedes and is distinct from an

13  action to recover installments which have fallen due after the [right] has been granted…. [T]he

14  statute therefore begins to run at the time when the plaintiff first had the power to make such

15  demand [to establish the right]." *Dillon v. Board of Pension Comm'rs*, 18 Cal. 2d 427, 430 (1941);

16  *see Mezey v. State of California*, 161 Cal. App. 3d 1060, 1064 (1984) (concept of continuing breach

17  "has no application where the plaintiff is seeking to establish his right to receive the payments").

18      Consistent with this principle, where a breach allegedly results from a dispute over "contract

19  interpretation, as opposed to situations devoid of any interpretive questions such as nonpayment of

20  installments," a claim accrues "on the date on which plaintiff becomes or should become aware of

21  the parties' differing interpretations." *Air Transport Ass'n of America v. Lenkin*, 711 F. Supp. 25,

22  27-28 (D.D.C. 1989). These principles apply to royalty disputes under California law where, as

23  here, the plaintiffs could have asserted their interpretation of the contracts many years before they

24  filed suit. In *Mappa Music Co. v. Universal-Polygram Int'l Pub. Inc.*, 2001 WL 1868083 (C.D.

25  Cal. Dec. 17, 2001), the court dismissed a breach of contract action brought by a songwriter's heirs

26  on statute of limitations grounds. The heirs claimed entitlement to certain music royalties under

27  their interpretation of a 1956 contract, but did not sue until 2000. The court ruled that, as a matter

28  of law, "[a]ny breach of this contract occurred when [defendant's predecessor] first failed to send

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  the royalty payments under the contract…. The fact that the [contract allegedly] gave rise to an

2  ongoing obligation to pay royalty payments to [the songwriter and his heirs] does not change this

3  conclusion." *Id*. at *8.

4        Similarly, in *Brown v. Cosby*, 433 F. Supp. 1331 (E.D. Pa. 1977), also decided under

5  California law, the plaintiff waited five years before suing for breach of a contract for failure to pay

6  a "fair share" of the profits from exploitation of certain cartoon characters.  The court found the

7  claim barred by the statute of limitations as a matter of law because "the first failure of defendants

8  to pay plaintiff a 'fair share' of the profits from any commercial exploitation of the Characters

9  would give rise to the only cause of action for breach of the contract to pay defendant a 'fair share,'

10  and would, therefore, start the running of the [applicable two-year] statute of limitations for any

11  claim to receive a 'fair share' of the profits," including future payments.  *Id*. at 1342.

12        Here, the 2004 letter from artists' lawyers to UMGR amply demonstrates that Plaintiffs

13  could have asserted the theory they advance in this case – that UMGR's relationships with

14  Download Providers were "licenses," and that UMGR was obligated to pay Plaintiffs 50% of its net

15  receipts from exploitation of its recordings in the form of Downloads – at least seven years before

16  filing these suits.  Plaintiffs obviously possessed their own contracts, and do not contend UMGR

17  concealed whether it "permitted iTunes, cellular phone carriers, and other third parties to use its

18  sound recordings to produce and sell" Downloads, *F.B.T.*, 621 F.3d at 964.  Plainly, Plaintiffs

19  became, or should have become, "aware of the parties' differing interpretations" of their contractual

20  royalty provisions more than four years prior to the filing of this action.  *Air Transport Ass'n of*

21  *America*, 711 F. Supp. at 27-28.  Accordingly, all of Plaintiffs' claims are time-barred.

22        Further, all of the James Trust's, Mason's, Tyson's, and Donaldson's claims should, at a

23  minimum, be limited pursuant to their contractual limitations provisions of their contracts, as

24  described below.

25          **b.**    **Alternatively, Whitesnake's Claims Accrued When UMGR Repudiated Them on April 22, 2004.**

26        Even if not all of Plaintiffs' claims are wholly time-barred for the foregoing reason, certainly

27  plaintiff Whitesnake's claim is.  Even if Plaintiffs characterize their contracts as akin to installment

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1  contracts creating continuing obligations, and the Court agrees, "[a] contract that creates continuing

2  obligations 'is capable of … a ***single total breach by repudiation***'" which commences the statute of

3  limitations to run on all claims for both past and future compensation.  *Minidoka Irr. Dist. v.*

4  *Department of Interior of U.S.*, 154 F.3d 924, 926-27 (9th Cir. 1998) (emphasis added).  In such

5  cases, "the statute runs from the date … entitlement is rejected, not upon failure to make a future

6  periodic reimbursement[.]"  *County of San Diego v. Myers*, 147 Cal. App. 3d 417, 422 (1983); *see*

7  *Fox v. Dehn*, 42 Cal. App. 3d 165, 172 (1974) (where defendant repudiated its alleged obligation to

8  pay ongoing commissions under a written contract, statute of limitations accrued on ***all*** claims, for

9  both past and future payments; rejecting plaintiff's contention that, because "continuous

10 performance was required," agreement was "severable and as such the statute of limitations only

11 began to run at the time of breach as to each obligation"); *see also Gold Mining & Water Company*

12 *v. Swinterton*, 23 Cal. 2d 19, 30 (1943) ("Where the acts to be performed by the promisor are

13 connected, and the thing to be accomplished by the contract is an entirety, the breach may be total

14 where there is a partial breach coupled with repudiation"); *In re Chemtura Corp.*, 448 B.R. 635,

15 660-64 (Bankr. S.D.N.Y. 2011) (surveying California law and concluding that even if "the timing of

16 the monetary obligations under the [contract] made the contract an 'installment contract' as that

17 expression is used in California law, an unequivocal repudiation could take the situation out of the

18 general rule that, for statute of limitations purposes, a party may sit back and wait for each required

19 payment as such payments come due in the future").

20       Here, as of March 24, 2004, Whitesnake was represented by the prominent entertainment

21 law firm now known as Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie, Stiffelman, Cook,

22 Johnson, Lande & Wolf LLP ("Ziffren").  Coverdale Depo. [Ex. 15] 121:13-123:15.[14]  Ziffren name

23 partner Gary Stiffelman was one of the 27 attorneys who sent the March 24, 2004 letter to UMGR

24 taking the position that there was "no bona fide legal dispute" and demanding UMGR "recognize

25 the arrangements between the major labels and independent electronic distributors as licenses."  Ex.

26

27       [14] *See* http://www.linkedin.com/pub/david-lande/b/5a6/638 (last accessed Dec. 19, 2013);
     http://www.hollywoodreporter.com/lists/david-lande-526339 (last accessed Dec. 19, 2013).

28

PRINTED ON

RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
                          CV11-01613 SI

43.  In 2006, Whitesnake hired a different law firm, now known as Myman Greenspan Fineman Fox Rosenberg & Light LLP.  Coverdale Depo. [Ex. 15] 121:13-123:15.  Two name partners of this firm, Jeffrey Light and Eric Greenspan, also signed the March 2004 letter.  Ex. 43.  Each of these three attorneys was also a recipient of UMGR's April 22, 2004 response disputing the artists' interpretation of their contracts.  Ex. 44.  An attorney's knowledge is imputed to his client for purposes of the statute of limitations.  Cal. Civ. Code § 2332; *Stalberg v. Western Title Ins. Co.*, 230 Cal. App. 3d 1223, 1231 (1991) ("Since the [attorneys'] knowledge is imputed to plaintiffs as of April of 1979, the statute of limitations appears to have run in February of 1982."); *Lazzarevich v. Lazzarevich*, 39 Cal. 2d 48, 50 (1952) ("a person is held to know what his attorney knows and should communicate to him").

A statement by a contracting party is a "repudiation" if is "sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform."  *Restatement (Second) of Contracts* § 250 cmt. b (1981); *Minidoka*, 154 F.3d at 962-927.  In his April 22, 2004 letter, UMGR's then-President Horowitz, made it clear UMGR would not pay royalties for Downloads at the rate the artists demanded.  Indeed, David Coverdale, who owns and controls Whitesnake, admitted as much at his deposition:

> Q Is that – is that – is that correct, they're they are not agreeing, therefore they are disagreeing, right?
>
> A It sounds like they are disagreeing, yes.
>
> Q Okay. In other words, the lawyers for the artists, including Mr. Light, took a position about how downloads should be treated for royalty purposes. And Mr. Horowitz essentially repudiated that position, right? ... [Objections omitted.]
>
> A Yeah, it doesn't sound like they are on the same page. I think they are warning shots across the bows…. Universal sounds to me from reading that that it's going to dig its feet in, and these lawyers are going to do whatever happens.

Coverdale Depo. [Ex. 15] 93:10-97:21.  Even if one were to characterize Whitesnake's contract with UMGR as akin to an installment contract, UMGR's repudiation caused the statute of limitations to accrue on *all* Whitesnake's disputed Download claims, past and future.  Accordingly, Whitesnake's claims accrued in their entirety, at the latest, on April 22, 2004, and are therefore time-barred.

PRINTED ON

RECYCLED PAPER
LA 10795919v1

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

2.      **New York Plaintiffs / Section 349 Claims**

For the same reasons the California Plaintiffs' claims are entirely time-barred, to the extent Plaintiffs characterize their claims as arising from a single policy or decision made by UMGR in 2002 which has been injuring them on an ongoing basis ever since, the New York Plaintiffs' claims are also time-barred.  *See Global Financial Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529, 715 N.E.2d 482 (N.Y. 1999) ("we have consistently employed the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury"); *Town of Oyster Bay v. Lizza Industries, Inc.*, 22 N.Y.3d 1024, 1030-32, 4 N.E.3d 944 (N.Y. 2013) (breach of contract claim accrues when harmful act is committed, not each time additional damage is incurred).

In addition, under the three-year statute of limitations under General Business Law section 349, Plaintiffs' claims accrued when UMGR first began allegedly underpaying their royalties, not upon each successive underpayment.  *Beller v. William Penn Life Ins. Co. of New York*, 8 A.D.3d 310, 778 N.Y.S.2d 82 (N.Y.A.D. 2 Dept. 2004) (section 349 claim was entirely time-barred because it "accrued… when the defendant allegedly began to increase her cost of insurance rates in violation of the terms of the policy," not upon each successive rate increase).

Further, all of Ridenhour's, McLean's and Titus's claims should, at a minimum, be limited pursuant to the contractual limitations provisions of their contracts, as discussed below.

3.      **At A Minimum, Each Of Plaintiffs' Claims Is Barred In Part Based on the Contractual Limitations Provisions in their Contracts.**

Even if the Court were to accept Plaintiffs' likely argument that their contracts with UMGR are akin to installment contracts, as to which a new cause of action arises with each semi-annual royalty statement rendered by UMGR, then the Court should nevertheless grant UMGR's motion as to those royalty statements rendered outside the contractual limitations periods agreed upon in each of Plaintiffs' respective contracts.

Contractual limitations provisions are enforceable in both California and New York. *Hambrecht & Quist Venture Partners v. American Medical Intern., Inc.*, 38 Cal .App. 4th 1532, 1548 (1995); *Clinton v. Universal Music Group, Inc.,* 2011 WL 3501818, *5 (C.D. Cal. 2011) (enforcing contractual limitations provision in recording agreement); *Allman v. UMG Recordings*,

PRINTED ON
RECYCLED PAPER
LA 10795919v1

Jeffer Mangels
Butler & Mitchell LLP

JMBM

530 F. Supp. 2d 602, 606-07 (S.D.N.Y. 2008) ("Courts applying New York law have routinely

upheld the enforceability of contractual limitation periods…."); *Malmsteen v. Universal Music*

*Group, Inc.*, 2012 WL 2159281, *6-8 ("Contractual statutes of limitations and objection provisions

are generally respected by New York courts.").  Here, Plaintiffs' contracts generally provide for

UMGR to render royalty statements to them on a semi-annual basis and contain contractual

limitations provisions placing time limits on their right to challenge such statements for any reason.

These provisions differ in length:  one year (Mason[15]), two years (Tyson[16], Donaldson[17], and

McLean and Titus,[18] and one of Ridenhour's contracts[19]), two and a half years (Ridenhour's other

---

[15] Mason's 1969 Contract provides:  "Artist shall be deemed to have consented to all royalty statements and any and all other accounts rendered by [UMGR] to him and said statements and other accounts shall be binding upon Artist and not subject to any objection by him for any reason unless specific objection in writing, stating the basis thereof, is given to Company within (1) year from the date rendered."  Ex. 5 at ¶ 8.

[16] The 1987 Contract on which Tyson is suing provides:  "You and ARTIST shall be deemed to have consented to each statement and each statement shall become final and binding upon you and ARTIST two years after the rendition thereof, unless you and ARTIST render specific written objection thereto within such period.  Suit with respect to a particular statement rendered hereunder shall be forever barred unless instituted within three years from the date such statement was rendered."  Ex. 7, Ex. A, ¶ 4.  The 1993 Contract on which Tyson is suing provides:  "All royalty statements rendered by [UMGR] shall be conclusively binding upon you and not subject to any objection by you for any reason unless specific objection in writing, stating the basis thereof, is given to [UMGR] within two (2) years from the date such statement is rendered, and an audit pursuant to paragraph 8.04 for that statement is completed within three (3) months after such objection notice is given.  Failure to make specific objection or conduct the audit within said time periods shall be deemed to be your approval of such statement, your waiver of such audit rights, and your waiver of the right to sue [UMGR] for additional royalties in connection with the applicable accounting period.  You will not have the right to sue [UMGR] in connection with any royalty accounting, or to sue [UMGR] for royalties on Records sold during the period a royalty accounting covers, unless you commence the suit within nine (9) months after completion (as such is restricted herein) of your audit for the applicable period."  Ex. 8, ¶ 8.03.

[17] The 1973 Contraction on which Donaldson is suing provides that royalty statements "shall be binding upon you and not subject to any objection by you for any reason, unless specific objection in writing, stating the basis thereof, is given by you to us within two (2) years from the date rendered."  Ex. 1, ¶ 3(k).

[18] Titus and McLean's 1991 Contract provides:  "All royalty statements rendered by PRI to Artist shall be binding upon Artist and not subject to any objection by Artist for any reason unless specific objection in writing, stating the basis thereof, is given to PRI within two (2) years from the date due.  Failure to make specific objection within said time period shall be deemed approval of such statement."  Ex. 11, ¶ 8.03.

[19] Ridenhour's 1986 Contract provides:  "If you have any objections to a royalty statement, you will give [UMGR] specific notice of that objection and your reasons for it within two (2) years

- 20 -

Defendant's Motion for Summary Judgment No. 2
CV11-01613 SI

1    contract[20]), and three years (Whitesnake[21]).  The James Trust's multiple contractual instruments

2    contain limitations provisions of between one and two years.[22]

3         The James Trust (almost a year before it filed its lawsuit) specifically objected in writing to

4    UMGR's calculation of Download royalties on May 24, 2010.  Ex. 46.  None of the other Plaintiffs

5    made any specific written objections on this issue prior to the filing of their lawsuits.  Even

6    assuming (without conceding) that the filing of the first lawsuit by the James Trust on April 1, 2011,

7    was a qualifying specific written objection on behalf of all Plaintiffs and that Plaintiffs' later-filed

8    claims relate back to this date,[23] at a minimum Plaintiffs' claims should be barred as to royalty

9    statements rendered prior to the following dates:

10

11   _____

12   after the date when [UMGR] is required to send you that statement under paragraph 11.01.  Each
     royalty statement will become conclusively binding on you at the end of that two (2) year period,

13   and you will no longer have any right to make any other objections to it.  You will not have the
     right to sue [UMGR] in connection with any royalty accounting, or to sue [UMGR] for royalties on

14   Records sold or Net Receipts derived by [UMGR] during the period a royalty accounting covers,
     unless you commence the suit within that two (2) year period."  Ex. 9 at ¶¶ 11.01, 11.04.

15        [20] Ridenhour's 1992 Contract is virtually identical to his 1986 Contract in this respect,

16   providing that royalty statements are "conclusively binding" unless Ridenhour makes a specific
     written objection, but within ***30 months*** (i.e., September 30 or March 31), rather than two years as

17   under the 1986 Contract.  Ex. 10 at ¶¶ 11.04.

18        [21] Whitesnake's 1982 Contract provides that Whitesnake "shall be deemed to have consented
     to each statement, and such statement shall become final and binding upon [Whitesnake], three (3)

19   years after the rendition thereof unless [Whitesnake] renders specific written objection thereto
     within such period."  Ex. 6, Ex. 34, § 3(a).

20        [22] James' 1977 Recording Contract provides that James "shall be deemed to have consented

21   to all royalty statements and all other accounts rendered to you by [UMGR] and said statements and
     other accounts shall be binding on you and not subject to any objection by you for any reason,

22   unless specific objection in writing, stating the basis thereof, is given by you to [UMGR] within one
     (1) year from the date rendered."  Ex. 2, ¶ 3.  James' 1977 Producer Contract provides:  "You shall

23   be deemed to have consented to all royalty statements and all other accounts rendered by us to you,
     and said statements and other accounts shall be binding upon you and not subject to any objection

24   by you for any reason, unless specific objection in writing, stating the basis thereof, is given by you
     to us within one (1) year from the date rendered."  Ex. 4, ¶ 13.  James' 1979 Contract provides:

25   "Each statement shall be binding and you shall neither have nor make any claim against [UMGR]
     with respect thereto unless you advise [UMGR], in writing, of the specific basis of such claim

26   within two (2) years after such statement was mailed."  Ex. 3, ¶ 18(b).

27        [23] These propositions are dubious and UMGR does not concede them, but they are beyond
     the scope of this motion.

28

PRINTED ON
RECYCLED PAPER
LA 10795919v1

- 21 -

1       **James Trust – 1977 Artist Contract and 1977 Producer Contract:**  May 24, 2009 (one

2 year prior to the written objection).

3       **James Trust – 1979 Contract:**  May 24, 2008 (two years prior to the written objection).

4       **Mason 1969 Contract:**  April 1, 2010 (one year prior to the filing of this action).

5       **Ridenhour 1986 Contract:**  April 1, 2009 (two years prior to the filing of this action).

6       **Ridenhour 1992 Contract:**  October 1, 2008 (two and a half years prior to the filing of this

7 action).

8       **Tyson 1987 Contract and 1993 Contract:**  April 1, 2009 (two years prior to the filing of

9 this action).

10       **Donaldson 1973 Contract:**  April 1, 2009 (two years prior to the filing of this action).

11       **McLean and Titus 1991 Contract:**  April 1, 2009 (two years prior to the filing of this

12 action).

13       **Whitesnake 1982 Contract:**  April 1, 2008 (three years prior to the filing of this action).

### III. CONCLUSION

15       For all of the foregoing reasons, UMGR is entitled to summary judgment as set forth in the

16 Notice of Motion.

17

18 DATED:  May 23, 2014                JEFFREY D. GOLDMAN
                                RYAN S. MAUCK

19                                  BRIAN M. YATES
                                 JEFFER MANGELS BUTLER & MITCHELL LLP

20

21                                By: /s/ Jeffrey D. Goldman

22                                      JEFFREY D. GOLDMAN
                              Attorneys for Defendant

23

24

25

26

27

28

JMBM | Jeffer Mangels Butler & Mitchell LLP