ABC RECORDS, INC.
8255 Beverly Boulevard
Los Angeles, California 90048

September 21, 1973
as of August 27, 1973

Messrs. Bo Donaldson, Gary Coveryou,
James Michael Gibbons, Rick Joswick,
David Krock, (hereinafter individually and
collectively referred to as "You" or "Artist"),
professionally known as "BO DONALDSON AND THE HEYWOODS"
c/o Arnold Burke, Esq.
9777 Wilshire Boulevard
Suite 800
Beverly Hills, California  90212

Gentlemen:

This will confirm our understanding and agreement with you
with reference to your rendering of services for us as a
recording artist, as follows:

1.  The term of this contract shall commence as of
the date hereof and shall continue through August 26, 1974.
During each contract year of the term hereof, you shall record
for us a sufficient number of masters (hereinafter sometimes
called "sides") to constitute one (1) normal length long
playing phonograph record album, 12" - 33-1/3 rpm (hereinafter
"LP"), plus additional sides at our election, on dates and at
studios or other locations to be designated by us.  The selec-
tions to be recorded shall be mutually designated by us after
full consultation with you, however, in the event of any dis-
agreement, you shall not be forced to record any material of
which you disapprove.  Each recording shall be subject to our
approval as technically satisfactory for  manufacture and sale
of phonograph records.  Upon our request, you shall rerecord
any selection until a recording technically satisfactory to
us shall have been obtained.  It is agreed between you and
us that any producer utilized to produce sides embodying your
performance, shall be mutually agreed upon between you and us;
however, if no mutual agreement can be reached, we shall have
the right to designate such producer; provided, however, that
in no event shall you be forced to record with a producer of
whom you disapprove.

2.  For your services hereunder, we will make a non-
returnable payment to you at the rate of appropriate union
scale within fourteen (14) days after said services are
rendered.  All such payments, as well as payments to all of the
musicians (including, without limitation, instrumentalists,
leader, arrangers, orchestrators, copyists and contractors)
and vocalists, if any, rendering services in connection with
any recordings hereunder, payments to union pension and

PL:rs 9.24.73(2)            -1-
Rev. 10-1-73

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265045

welfare funds, costs of cartage and instrument hire, studio or hall rentals, editing costs and payroll taxes (but excluding payroll taxes for you), shall be charged against the royalties earned by you under this contract or any other agreement between you and us. If you shall, for any reason whatsoever, delay the commencement or completion of, or be unavailable for, any recording session designated by us hereunder for which you have been given reasonable advance notice, then you shall pay all expenses and charges actually incurred or paid by us by reason thereof.

3. Conditioned upon your full and faithful performance of all of the terms hereof, we will pay to you in respect of recordings made hereunder, the following royalty upon the terms hereinafter set forth:

(a) On our sales in the United States of records in the form of discs, a royalty of fourteen percent (14%) of our uniformly established wholesale price from time to time (less discounts).

(b) In the event of the sale of records outside of the United States, the royalty payable hereunder shall be three and one-half percent (3-1/2%) of the suggested retail list price of the records in the country of manufacture, the United States, England, or the country of sale, as we shall be paid. Such royalties shall be computed in the national currency of the applicable country and shall be credited to your royalty account hereunder at the same rate of exchange and upon the same basis as we are paid.

(c) Royalties with respect to records in the form of prerecorded tapes, cartridges and other recorded devices sold by our licensees, shall be payable at one-half (1/2) the applicable royalty rates set forth in subparagraphs (a) or (b) above, as follows: with respect to tape devices sold in the United States, the applicable royalty shall be based upon the wholesale price of such tape devices; and for sales of such tape devices outside the United States, the applicable royalty rate shall be based upon the suggested retail price of such tape devices. However, if we shall manufacture and distribute our own prerecorded tape devices, we shall pay you the royalty rates for such devices set forth in subparagraphs (a) or (b) above.

(d) Notwithstanding any of the foregoing, the royalty on records or tapes sold in the United States through any direct mail or mail order distribution

LY:ac 8.20.73(1)                    -2-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265046

method, including, without limitation, record club distribution, shall be one-half (1/2) of the royalty rate provided for in (a) above, based upon our wholesale price for the same records, and the royalty on records or tapes sold outside of the United States through any such direct mail distribution method, shall be one-half (1/2) of the royalty rate provided for in (b) above, upon the same basis as we are paid, and shall be based upon the price to the club members or direct mail purchasers.

(e) No royalties shall be payable on records furnished as free or bonus records to members, applicants or other participants in any record club or as free or bonus records to purchasers through any direct mail distribution method, on records distributed for promotional purposes, on records shipped on a no-charge basis or on records sold for scrap or as "cut-outs" or at less than fifty percent (50%) of our regular wholesale price. The royalty rate on records sold for use as premiums or promotional merchandise or sold on a "budget" or low-price label, shall be one-half (1/2) of the royalty rate provided for in (a) above, and shall be based upon the price received by us for such records.

(f) Any discounts (in lieu of records distributed on a free basis), granted by us to our customers, may be applied by us, proportionately, in computing the royalties payable hereunder.

(g) Notwithstanding any of the foregoing:

(i) for purposes of computing royalties, any excise, sales or comparable or similar taxes, shall be excluded from the price;

(ii) for purposes of computing royalties, we may exclude from the applicable wholesale price as an allowance for packaging, an amount equal to ten percent (10%) of such price with respect to "single fold" album jackets or covers, twelve and one-half percent (12-1/2%) of such price with respect to "double fold" album jackets or covers, and twenty-five percent (25%) of such price with respect to tape device containers or boxes or any other form of package, container or box not described herein; and

LY:ac 8.20.73(1)                -3-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                UMGR265047

(iii)  royalties shall be computed and paid upon ninety percent (90%) of sales (less returns) for which payment has been received, except that royalties with respect to licensee sales shall be payable to you upon one-hundred percent (100%) of the sales reported or credited to us less any amounts payable to us by such licensees for payments over to any special payments fund such as AFM or AFTRA.

(h)  No royalties shall be payable to you on sales by any of our licensees until payment on such sales has been received by us or credited to our account.  In the event we shall not receive payment in United States dollars in the United States, due to a blocked currency situation, from any foreign licensee, and we shall accept payment in foreign currency, we may deposit to your credit (and at your expense), in such foreign currency, in a depository selected by you, any payments so received as royalties applicable to this contract which are then payable to you, and we shall notify you thereof promptly.  Deposit, as aforesaid, shall fulfill our obligations hereunder as to record sales to which such royalty payments are applicable.

(i)  In the event the sides made hereunder, or any of them, are coupled on a record with other recordings, the royalty hereunder shall be based upon that portion of the price which the number of sides made hereunder which are embodied on such record, bears to the aggregate number of all recordings embodied on such record.

(j)  If any side is recorded hereunder by you jointly with another artist or musician to whom we are obliged to pay a royalty in respect of such side, the royalties payable to you applicable to records produced therefrom, shall be reduced proportionately, and only the proportionate share of the applicable costs set forth in Paragraph 2 above shall be charged against your royalties.  No side may be recorded with another artist or musician to whom we are obligated to pay a royalty without your consent.  In no event will anyone other than a member of the group be used on the lead vocal.

(k)  Statements as to royalties payable hereunder shall be sent by us to you on or before the thirtieth (30th) day of September for the semi-annual period

PL:rc 9.24.73(2)                    -4-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265048

ending the preceding June thirtieth (30th) and on or before the thirty-first (31st) day of March for the semiannual period ending the preceding December thirty-first (31st), together with payment of accrued royalties, if any, earned by you during the preceding semiannual period, less all advances and charges under this contract or any other agreement between you and us. Upon the submission of each statement, we shall have the right to retain as a reserve against subsequent charges, credits or returns, such portion of payable royalties as shall be necessary and appropriate in our best judgment. However, we shall liquidate any reserve established within three (3) accounting periods after such reserve is initially established by us and we shall apply our standard policies with respect to free goods and returns, with respect to records recorded hereunder. You shall be deemed to have consented to all royalty statements and all other accounts rendered by us to you, and said statements and other accounts shall be binding upon you and not subject to any objection by you for any reason, unless specific objection in writing, stating the basis thereof, is given by you to us within two (2) years from the date rendered. We shall maintain books of account concerning the sale, distribution and exploitation of records made hereunder. You or a certified public accountant in your behalf may, at your expense, at reasonable intervals, examine our books pertaining to the records made hereunder during our usual business hours and upon reasonable notice. Our books relating to activities during any accounting period may only be examined as aforesaid during the one (1) period following service by us of the statement for said accounting period. After notice of objection is given by you to us, unless suit is instituted within one (1) year after the date upon which we notify you that we deny the validity of the objection, such objection shall be deemed to be waived by you and the statement or account to which you have objected shall be incontestable. No examination of our books or records may be conducted on your behalf unless pursuant to a letter of confidentiality, in a form acceptable to us, and the compensation payable to the person, firm or corporation conducting the examination is not based upon a contingency fee arrangement.

(1)  You agree and acknowledge that we shall have the right to withhold from the royalties payable to you hereunder such amount, if any, as may be required under the applicable provisions of the California

LY:ac 8.20.73(1)                    -5-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265049

Revenue and Taxation Code, and you agree to execute such forms and other documents as may be required in connection therewith.

4. Without limiting any of the other provisions of this contract, and in addition to all of our other rights hereunder, we shall have the right to license recordings to other parties (a) for phonograph record use on a flat fee basis (as opposed to the royalty basis referred to in Paragraph 3 hereof) and (b) for all other types of use (visual and nonvisual), on a flat fee or royalty basis. We shall credit your royalty account with Fifty Percent (50%) of the amount received by us under each such license. After we have paid what we are obligated to pay to the producer of such recordings.

5. Intentionally omitted.

6. During the term of this contract, you will not perform for the purpose of making phonograph records for any person, firm or corporation, other than us. During a period of five (5) years after the recording of each such recording you shall not perform any such selection for any other person, firm or corporation for the purpose of making phonograph records.

7. You will not at any time manufacture, distribute or sell or authorize or knowingly permit the manufacture, distribution or sale by any person, firm, or corporation, other than us, of phonograph records embodying (a) any performance rendered by you during the term of this contract, or (b) any performance rendered by you within five (5) years after the recording of any recording hereunder (hereinafter "restricted period"). You will not record or authorize or knowingly permit to be recorded for any purpose any such performance without in each case taking reasonable measures to prevent the manufacture, distribution and sale at any time by any person, firm or corporation, other than us, of phonograph records embodying such performance. Specifically, without limiting the generality of the foregoing, you agree that if, during the term of this contract, you perform any selection for the purpose of making transcriptions for radio or television or sound tracks for motion picture films, or if, during the restricted period, you perform for any purpose any selection which shall have been recorded hereunder, you will do so only pursuant to a written contract containing an express

PL:rs 9.24.73(2)                    -6-
Rev. 10-1-73

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265050

provision that neither such performance nor any recording thereof will be used directly or indirectly for the purpose of making phonograph records. You will promptly deliver to us a copy of the pertinent provisions of each such contract and will cooperate fully with us in any controversy which may arise or litigation which may be brought relating to our rights under this paragraph.

8. All recordings made hereunder and all reproductions made therefrom, the performances embodied therein and the copyrights in sound recordings therein and thereto, shall be entirely our property, free of any claims whatsoever by you or any person, firm or corporation deriving any rights or interests through or from you. Without limitation of the foregoing, we and/or our designees, shall have the worldwide right in perpetuity to manufacture, sell, distribute and advertise records or other reproductions (visual and non-visual), embodying such recordings, to lease, license, convey or otherwise use or dispose of the recordings by any method now or hereafter known, in any field of use, to release records under any trademarks, trade names or labels, to perform the records or other reproductions publicly and to permit the public performance thereof by radio broadcast, television or any other method now or hereafter known, all upon such terms and conditions as we may approve, and to permit others to do any or all of the foregoing, or we may at our election refrain from any or all of the foregoing. Notwithstanding anything to the contrary contained in this paragraph, the initial release of any recording hereunder shall be on either the ABC or Dunhill label.

9. We shall have the worldwide right in perpetuity to use and to permit others to use your name (both legal and professional) and likeness and biographical material concerning you, for advertising and purposes of trade and otherwise, without restriction, only in connection with recordings hereunder. Provided you are available, we shall grant to you reasonable consultation rights on your biographical material and still photographs. We shall have the further right to refer to you, by your legal or professional name, as our exclusive artist, during the term hereof, and you shall, in your activities in the entertainment field, use your best efforts to be billed and advertised as our exclusive artist. During the term of this contract, you shall not authorize your legal or professional name or your likeness to be used in connection with the advertising or sale of phonograph records other than those manufactured and sold by us, however, we acknowledge that you have previously recorded under another label and as such the rights granted under this paragraph shall be subject to your prior recording agreement.

PL:rs 9.24.73(2)                    -7-
Rev. 10-1-73

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265051

10.   You expressly acknowledge that your services here-under are of a special, unique and intellectual character which gives them peculiar value, and that in the event of a breach by you of any term, condition or covenant hereof, we will be caused irreparable injury. You expressly agree that in the event you shall breach any provision of this contract, we shall be entitled to seek injunctive and other equitable relief and/or damages, as may be appropriate, in addition to any other rights or remedies available to us, and we shall have the right to recoup any proven damages from any sums which may thereafter become due and payable to you hereunder, including sums otherwise payable to you after the expiration or termination of this contract.

11.   You warrant and represent that you are under no disability, restriction or prohibition, whether contractual or otherwise, with respect to your right to execute this contract and perform its terms and conditions, and with respect to your right to record any and all selections hereunder. You specifically warrant and represent that no selections recorded or to be recorded by you hereunder are subject to any rerecording restrictions under any previous recording contract to which you may have been a party. You agree to and do hereby indemnify, save and hold us harmless from any and all loss and damage (including attorneys' fees), arising out of or connected with any claim by a third party which is inconsistent with any of the warranties, representations or agreements made by you in this contract, and you agree to reimburse us, on demand, for any payment made by us at any time after the date here-of with respect to any liability or claim to which the foregoing indemnity applies. Pending the determination of any such claim, we may withhold a reasonable amount of royalties or other monies hereunder. In the event of any action, suit or proceeding by us against you under this contract, the prevailing party shall be entitled to recover reasonable attorneys' fees in addition to the costs of said action, suit or proceeding.

PL:rs 9.24.73(2)                         -8-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265052

12.  We reserve the right, at our election, to suspend the operation of this contract if, for any reason whatsoever, you are unavailable to perform hereunder in accordance with the provisions hereof, or, if, due to any labor controversy or adjustment thereof or to any other cause not entirely within our control  which we cannot by reasonable diligence avoid, we are materially hampered in the recording, manufacture, distribution or sale of records, or our normal business operations become commercially impractical.  Such suspension shall be upon written notice to you and shall last for the duration of any such contingency or unavailability.  However, if any such suspension, as set forth in the preceding two sentences, affects ABC Records, Inc. only, and such suspension lasts for a period of six months or more, you shall have the right to terminate this Agreement.  If you fail to terminate within thirty (30) days of any such consecutive six month period of suspension, you shall be deemed to have waived your right to terminate this Agreement as a result of such suspension.  At our election, a period of time equal to the duration of such suspension shall be added at the end of the then current term, and such term shall be accordingly extended.

13.  Intentionally omitted.

14.  We may, at our election, and upon written notice to you, assign this contract or any part hereof to a parent, subsidiary or successor in interest who has acquired all or substantially all of our stock and/or assets.  Any other assignment of this Agreement shall be subject to your prior written approval.

15.  .If your voice should be materially and permanently impaired, or if you should fail, refuse or neglect to comply with any of your other material obligations hereunder, then in addition to any other rights or remedies which we may have, we may elect to terminate your engagement hereunder by notice in writing and shall thereby be relieved of any liability in connection with unrecorded sides.

16.   INTENTIONALLY OMITTED.

17.  You will, upon our request, appear on dates and at film studios or other locations to be designated by us upon reasonable notice to you, for the filming, taping or other permanent fixation of audio-visual reproductions of performances to be rendered by you hereunder for phonograph record purposes only.  In connection therewith, we or our designee will make a payment to you for the services performed

LY:ac 8.20.73(1)                    -9-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265053

by you pursuant to the terms of this paragraph, within a reasonable time after the completion thereof, at the rate of appropriate union scale. In the event we require you to perform services outside of the greater Los Angeles area, we shall provide you with first class round trip transportation (if available and if used by you) plus a per diem of Twenty Five Dollars ($25.00) for each person whose services are required.

18. Except as otherwise provided herein, the term "records" or "phonograph records", shall include all forms of recordings (both visual and non-visual), including, without limitation, discs of any speed or size, pre-recorded tapes, cartridges and any other recorded devices now known or which may hereafter become known.

19. You hereby grant to us four (4) separate options, each to renew this contract for a one (1) year term, such renewal terms to run consecutively beginning at the expiration of the initial term, all upon the same terms and conditions applicable to the initial term execpt as otherwise specified in the Schedule hereinbelow set forth. Each option may be exercised only by giving you written notice at least thirty (30) days prior to the commencement of the renewal term for which the option is exercised.

## SCHEDULE

| Renewal Terms | Minimum Number of Sides | Royalty Rate Par. 3 (a) | Royalty Rate Par. 3 (b) |
|---|---|---|---|
| 1st | Sufficient sides | 15% | 3-3/4% |
| 2nd | to constitute one | 16% | 4% |
| 3rd | (1) normal length | 16% | 4% |
| 4th | 33-1/3 rpm long playing album in each period | 16% | 4% |

The royalty rate applicable to any term shall be the rate for sides recorded during such term.

20. Intentionally omitted.

21. (a) All of the terms, conditions and restrictions herein contained, shall be binding upon you as a performer on phonograph records, whether performing alone or as part of a group, regardless of the name or names by which you may be identified in such capacity. Notwithstanding the foregoing, you may perform for another record company without our consent so long as such performance is as a non-featured artist (vocalist or musician)

PL:rs 9.24.73(2)    -10-
Rev. 10-1-73

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265054

and neither your name nor your likeness is used by such record company upon the label or liner of any phonograph record embodying your performance, nor your name used in any advertising of any such performance. As used in this Agreement, the word "you", and every grammatical variation thereof, shall mean each of the signatories hereto, individually, collectively, and as a member of a group and our rights and the obligations, liabilities, prohibitions and restrictions imposed upon all of the signatories to this Agreement shall be deemed to be applicable to the signatories, individually and collectively and as a member of such a group. The interest of each member of such a group in and to the total royalties and advances paid under this Agreement shall be divided equally. Payments made in accordance with the aforementioned apportionment shall fulfill our obligations hereunder to each member of the group.

(b) We reserve the right to record any member of the group signing this Agreement as if such member of the group were the only person signing hereunder. However, if at the time we request any individual member of the group to record alone, and a group still exists under this Agreement, recording under the professional name appearing on Page 1 hereof, we shall not have the right to require such member to perform as a lone individual unless such member consents thereto and mutual terms and conditions in connection with such recording have been agreed upon between us and such individual. If we elect to have a member of the group record individually, royalties and advances for sides so recorded shall be payable solely to such member, and such side shall not be deemed a side with respect to the group. For the purpose of computing royalties which may become due pursuant to this subparagraph, we may recoup from such member of the group recording individually, all advances and chargeable costs under our agreement with such member for recording individually, against such member's pro rata share of royalties payable under this Agreement, and for the purpose of determining recoupment, recording costs chargeable under this Agreement where such member records as a member of the group, recoupable charges shall be allocable equally between each member of the group. Notwithstanding anything to the contrary contained herein, we shall not record any individual member of the group provided the group retains the same individuals in the group who are party to this Agreement. We shall not do any overt act to disband the group.

LY:ac 8.20.73(1)                    -11-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265055

(c)  You and each of you as members of the group, jointly and severally, represent and warrant that:

(i)  You are the sole owners of the professional name appearing on the first page of this Agreement;

(ii)  To the best of your knowledge, no other person has the right to use said professional name or to permit it to be used in connection with phonograph records.

(iii)  You have the authority to hereby grant us the right to use said professional name.  You and each of you, jointly and severally, agree to indemnify and hold us harmless from any claim, damages, expenses (including attorneys' fees) and litigation which may come about because of our use of said professional name in accordance with this Agreement.

(d)  A breach of this Agreement by any of you as a member of the group, shall, at our election, be deemed a breach by all, and we may by notice in writing terminate this Agreement or may terminate the engagement under this Agreement of the member or members of the group who have breached hereunder.

(e).  If this Agreement is not terminated entirely pursuant to subparagraph 21(d) above,

(i)  The members of the group whose engagements are terminated, shall not use the professional name of the group in any commercial or artistic endeavor;

(ii)  Such professional name shall be and remain the property of those members of the group whose engagements are not terminated; and

LY:ac 8.20.73(1)                   -12-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265056

(iii)  The persons engaged to replace the members of the group whose engagements are terminated, shall be mutually agreed upon by us and the remaining members.  Neither party shall unreasonably withhold agreement with regard thereto; and if agreement cannot be reached, we may terminate the engagement of the remaining members of the group by notice in writing.

(f)  INTENTIONALLY OMITTED.

(g)  INTENTIONALLY OMITTED.

(h)  No changes in the members of the group may be made without our prior written consent.  If any change is made with our consent, the members released shall be subject to the restrictions specified in subparagraph 21(e) above.

(i)  In the event any member of the group is terminated by notice from us or by mutual consent, each party shall be relieved and discharged from liability for masters unrecorded at the time of such notice or mutual consent.

(j)  If the term of the Agreement expires by the mere passage of time, as contrasted with a termination, effected by a notice or notices from us (as otherwise herein provided), the provisions of subparagraphs 21(d), 21(h) and 21(i), shall not be applicable.

22.  This contract sets forth the entire agreement between you and us with respect to the subject matter hereof.  No modification, amendment, waiver, termination or discharge of this contract or any provisions hereof, shall be binding upon you and us unless confirmed by a written instrument signed by a duly authorized officer of our company and you.  No waiver by you or us of any provision of this contract or of any default hereunder, shall affect either of our rights thereafter to enforce such provision or to exercise any right or remedy in the event of any other default, whether or not similar.

LY:ac 8.20.73(1)                      -13-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                      UMGR265057

23.    This contract shall not become effective until signed by you and countersigned by our duly authorized officer.    This contract shall be deemed to have been made in the State of California and its validity, construction and effect shall be governed by the laws of the State of California applicable to agreements wholly performed therein.

24.    All notices which we shall desire to give to you hereunder and all statements, royalties and other payments which are due you hereunder shall be addressed to you at the the address set forth on Page 1 hereof until you shall give us written notice of a new address.    All notices which you shall desire to give to us hereunder shall be addressed to us at the address set forth on Page 1 hereof until we shall give you written notice of a new address.    All notices shall be served by certified or registered mail or telegraph, charges prepaid, addressed as aforesaid.    The date of mailing or of deposit in a telegraph office, whichever shall be first, shall be deemed the date of service.

25.    During the term of this contract, you shall become and remain a member in good standing of any appropriate labor union or unions with which we may at any time have an agreement lawfully requiring such union membership.    In particular, you represent that you are a member in good standing of the American Federation of Television and Radio Artists or, if you are not now a member in good standing of said union, that you shall become a member of said union, not later than the thirtieth (30th) day after your first recording session under this contract, and that you shall remain a member in good standing during the term of this contract.

26.    Notwithstanding any provision in this contract to the contrary, it is specifically understood and agreed as follows:

(a)    You and we are bound by all the terms and provisions of the AFTRA Code of Fair Practice for Phonograph Recordings.

LY:ac 8.20.73(1)                  -14-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                                    UMGR265058

(b)    Should there be any inconsistency between this contract and said Code, said Code shall prevail, but nothing in this provision shall affect terms, compensation or conditions provided in this contract which are more favorable to members of AFTRA than the terms, compensation and conditions provided for in said Code.

(c)    If the term of this contract is of longer duration than the term of said Code, then from and after the expiration date of the Code: (1)  the provisions of this contract shall be deemed modified to conform to any agreement or modifications negotiated or agreed to in a renewal or extension of the Code; and (2) while no Code is in effect the existence of this contract shall not prevent you from engaging in any strike or work stoppage without penalty by way of damage or otherwise to you or AFTRA.  In the event you engage in such strike or stoppage, we may suspend this contract for the duration of the strike or stoppage and may have the option of extending the term of this contract for a period of time equal to the length of such strike or stoppage, which option must be exercised by written notice given to you within thirty (30) days after the end of the strike or stoppage.

(d)    You are or will become a member of AFTRA in good standing subject to and in accordance with the union security provisions of said Code.

(e)    You are covered by Paragraph 34 of said Code, entitled "AFTRA Pension and Welfare Funds".

27.    INTENTIONALLY OMITTED.

28.    You hereby grant to us an option to become obligated to pay to each of you the sum of SIX THOUSAND DOLLARS ($6,000.00), for the then current and any remaining years of this contract, which sum shall include union scale payments, advances and royalties otherwise payable to you under this contract, which option may be exercised by us at any time during the initial and/or any renewal term of this Agreement on written notice to you.

LY:ac 8.20.73(1)              -15-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265059

29.  During the term of this Agreement and any renewal periods in effect hereunder, we shall pay to you advances, recoupable against royalties payable under this Agreement and any other agreement between the parties hereto, including, but not limited to, royalties payable under Paragraph 3 hereinafter, as follows:

(a)  Upon execution of this Agreement, TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00), and upon completion of the recording of the first LP during the first contract year, TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00).

(b)  Upon the exercise by us of each renewal option, TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00), and upon the completion of recording of the first LP during each renewal period exercised, TWELVE THOUSAND FIVE HUNDRED DOLLARS ($12,500.00).

30.  During each contract year in effect hereunder, we shall commercially release one (1) LP and two (2) single double sided records, 7" - 45 rpm ("singles").  Single records may be taken from sides recorded for any LP hereunder.  In the event we fail to commercially release as set forth in this paragraph, we shall not have the right to exercise any option for any renewal period thereafter.  The loss of our right to exercise any renewal option shall be deemed your sole relief for our failure to commercially release as set forth in this paragraph and such failure shall not be deemed a breach of the provisions of this paragraph.

31.  It is agreed and understood that a 50% interest in and to any selection recorded by you hereunder (music and/or lyrics) consisting of original material, or any arrangement or adaptation of public domain material, written in whole or in part by Artist or owned or controlled, directly or indirectly, in whole or in part, by Artist which is in existence as of this date and/or created during the term of this Agreement, shall be and hereby is assigned, for the term of the copyright therein together with any extensions and/or renewals of such copyright with any and all worldwide rights, to a music publishing firm selected by us.  The remaining 50% interest in and to such selections shall be owned by Heywood Music Co., or such other music publishing firm as may be selected by you.

LY:ac 8.20.73(1)                    -16-
Rev. 10-1-73

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265060

Said publishing firm selected by us shall have the exclusive
right to administer and exploit such selections and to deduct
an administrative fee of Ten Percent (10%) of the gross receipts.
With respect to such selections, Artist hereby grants to us
the customary indemnities made by writers and composers in the
music publishing business.  Artist further agrees not to colla-
borate in the writing or arranging of a selection with any
person unless such person is free, jointly with Artist, to
assign his rights in such selection in accordance with the pro-
visions set forth above.  However, nothing herein shall be
construed to create or constitute a partnership, or joint ven-
ture, or any other form of association between the parties hereto,our



Rev. 10-1-73                        -17-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                        UMGR265061

sole obligation or the sole obligation of our designee being to make the payments, if any, provided for herein.  Artist will immediately supply us with all requisite documents concerning such rights.

If the foregoing correctly reflects your understanding and agreement with us, please so indicate by signing below.

Yours very truly,

ABC RECORDS, INC.

By _____

ACCEPTED AND AGREED:

_____
BO DONALDSON
Social Security No. ▮▮▮▮▮▮▮▮
Date of Birth _____

_____
GARY COVEYOU
Social Security No. ▮▮▮▮▮▮▮▮
Date of Birth _____

_____
JAMES MICHAEL GIBBONS
Social Security No. ▮▮▮▮▮▮▮▮
Date of Birth _____

_____
RICK JOSWICK
Social Security No. ▮▮▮▮▮▮▮▮
Date of Birth _____

_____
DAVID KROCK
Social Security No. ▮▮▮▮▮▮▮▮
Date of Birth _____

(Known professionally as
"BO DONALDSON AND THE HEYWOODS")

LY:ac 8.20.73(1)                    -18-

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY                    UMGR265062