1 | THE LAW OFFICES LEONARD B. SIMON P.C.
LEONARD B. SIMON
2 | 655 West Broadway, Suite 1900
San Diego, California 92101
3 | Telephone: 619/338-4549
Fax: 619/231-7423
4 | Email: lsimon@rgrdlaw.com

5 | Attorneys for Plaintiffs and the Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>Defendant. | Case No. 11-CV-1613-SI (MEJ)<br><br>**DECLARATION OF LEONARD B. SIMON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[EXHIBIT B FILED UNDER SEAL]**<br><br>DATE: April 28, 2015<br>TIME: 10:30 a.m.<br>CTRM: 10 (19th Floor)<br>JUDGE: The Honorable Susan Illston |
|---|---|

I, LEONARD B. SIMON, declare as follows:

1. I am an attorney duly licensed to practice in California and in this Court. I am one of the counsel of record for plaintiffs in the above-entitled action. I submit this declaration in support of the accompanying Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2. I am one of counsel for the Estate of Rick James. After the cases against UMGR were consolidated, the Court approved an organization of plaintiffs' counsel which included five firms as leads, with me as the chair of that committee of leads.

3. I have worked on the case against UMGR continuously since it was filed in April 2011.

4. I am the principal in The Law Offices of Leonard B. Simon P.C. I have been practicing complex civil litigation for over 40 years, both as a defense attorney and a plaintiffs' attorney. One of my specialties is class actions. I also teach classes and lecture on complex litigation and class actions.

5. This declaration is submitted in support of preliminary approval of a settlement of this case, together with the Capitol Records case *Davis v. EMI Group Limited*, No. 3:12-cv-01602-MEJ (N.D. Cal.) ("*Capitol*"). Mr. Thomas McNamara is submitting a separate declaration addressing the *Capitol* case. My work was focused principally on the *UMGR* case, and Mr. McNamara's on the *Capitol* case.

6. After researching the *UMGR* case and preparing individual complaints, and later a consolidated amended complaint, successfully combating motions to dismiss, a motion for summary judgment, and an opposition to a motion for leave to amend, reviewing hundreds of thousands of pages of documents produced in discovery, and taking and defending numerous depositions, the Plaintiffs have achieved a settlement (hereinafter the "Settlement") with Defendant UMG Recordings, Inc. ("*UMGR*"), in combination with a settlement of the previously separate case against Capitol Records, LLC ("*Capitol*"). (UMGR and Capitol are sometimes referred to collectively herein as "Defendants" or, with Plaintiffs, as the "Parties.")

7. The Settlement was the product of extensive negotiations that began in the *UMGR* case in 2012, and included multiple in-person mediation sessions with the Honorable Edward Infante (Ret.) of Judicial Arbitration and Mediation Services (JAMS), plus numerous phone conferences and in-person meetings of counsel, described in more detail below.

8. Pursuant to the Stipulation and Agreement of Settlement, (the "Settlement Agreement"), a true and correct copy of which is attached as Exhibit A to this Declaration, Defendants have agreed, among other things, (1) to create an $11.5 million Fund[1] to pay claims for past damages to the members of the Class, to (2) increase future royalty rates of Class Members for downloads in perpetuity, and (3) to pay the costs of notice, claims administration, attorneys fees and other expenses related to this settlement out of the Fund. Attached hereto as Exhibit B is a true and correct copy of the Confidential Supplemental Agreement executed by the Parties concurrent with the Settlement Agreement, and being filed provisionally under seal.

9. Plaintiffs in these consolidated class actions are certain recording artists and music producers (collectively, "Artists") who entered into contracts with UMGR and Capitol that provide for the payment of royalties upon exploitation of the Artists' music. Plaintiffs allege that Defendants have systematically breached these contracts by underpaying the royalties owed to the Artists when their music is disseminated in the form of permanent downloads and "mastertones," the latter of which are commonly known as ringtones for cellular phones ("Downloads/Mastertones").[2] Specifically, Plaintiffs allege that Defendants have improperly treated Artists' Downloads/Mastertones revenues as "sales" instead of "licenses," and thereby paid Artists royalties based upon the much lower sales royalty rate than the licensing royalty rate.

10. Plaintiffs asserted in their complaints against UMGR claims for breach of contract, breach of the implied covenant of good faith and fair dealing, open book account under California Code of Civil Procedure § 337a, and violation of California's and New York's unfair competition

---

[1] Unless otherwise defined herein, all capitalized terms shall have the definition set forth in the Settlement Agreement.

[2] Allegations against Capitol (but not UMGR) include underpayment of royalties for limited downloads, also known as streams. The term "Downloads/Mastertones" herein, as it applies to Capitol, but not UMGR, includes streams.

DECLARATION OF LEONARD B. SIMON - 11-CV-1613-SI (MEJ)  - 2 -

1  laws.  Plaintiffs filed these cases as putative class actions alleging that Defendants' practices as
2  described here have been uniform with respect to all members of the Class and are alleged to have
3  caused millions of dollars in damages to Plaintiffs and Class Members, and to threaten continuing
4  damage of the same nature.  Defendants vigorously denied all of these allegations.

5        11.      Multiple individual complaints were filed against UMGR that were later combined in
6  a consolidated amended complaint.  Dkt. No. 130.  A motion to dismiss was denied as to the *James*
7  complaint, as well as a subsequent motion for partial summary judgment on certain claims.  Dkt.
8  Nos. 21, 66, 49, 87.  An opposition to the motion to file an amended complaint was also rejected.
9  Dkt. No. 129.

10       12.      Discovery in the *UMGR* case was extensive and hard fought.  UMGR produced, and
11 Plaintiffs reviewed, over 11,000 recording contracts, many over 50 pages long, and thousands of
12 other documents in discovery.  *Id.*  Numerous depositions were conducted by the Parties; some
13 Plaintiffs were deposed multiple times.  The magistrate judge was required to resolve numerous
14 discovery disputes (Dkt. Nos. 123, 133, 138, 140, 142, 144, 147, 155-57, 168-74, 181), several of
15 which were appealed to the District Court (Dkt. Nos. 148, 150, 159).

16       13.      At the time of the final round of settlement negotiations with Judge Infante, the
17 Parties were about to brief class certification, and several motions for summary judgment had just
18 been filed by UMGR. .

19       14.      The settlement of these cases should be understood in the context of litigation and
20 settlement of class actions concerning permanent downloads filed against all four of the largest
21 record companies in the United States.  Sony Corp. was sued in 2006 in the Southern District of New
22 York, and the case settled in August 2011.   Shortly before Sony settled, UMGR, Warner Music and
23 Capitol/EMI were sued in separate but parallel cases in this district, with the *UMGR* case assigned to
24 this Court, the *Warner* case assigned to Judge Seeborg, and the *Capitol* case to Judge Gonzalez
25 Rogers.  Plaintiffs' Counsel in the *UMGR*, *Warner* and *Capitol* cases overlap, but are not identical.

26       15.      Although the *UMGR* cases were filed first, and made progress more quickly,
27 settlement was seriously broached first by the Defendant in *Warner*.  It was agreed to try to settle the
28 *Warner* case before the expenditure of a huge effort on discovery and class certification, and the

DECLARATION OF LEONARD B. SIMON - 11-CV-1613-SI (MEJ)      - 3 -

Honorable Daniel Weinstein was retained to assist in 2012. After substantial negotiations and additional lengthy efforts to document the settlement, which included both damages and prospective royalty relief, a settlement was entered, and Judge Seeborg granted preliminary approval on January 23, 2014. Order, *In re Warner Music Group Corp. Digital Downloads Litig.*, No. 3:12-cv-0559-RS (N.D. Cal.) ("*Warner*"), Dkt. No. 101. Judge Seeborg granted final approval of the settlement on January 12, 2015. *Warner*, Dkt. No. 117.

16. Counsel in *UMGR* and *Capitol* were intimately familiar with the Warner negotiations, but as the cases proceeded, and even after the *Warner* settlement was reached, little progress was made in forging a settlement with *UMGR* or *Capitol*. In *UMGR*, Parties met with Judge Infante on August 21, 2012 and again on or about January 8, 2013, but no serious progress was made. Lawyer-to-lawyer efforts later in 2013 without Judge Infante were also entirely unsuccessful, but on June 3, 2014, counsel met with Judge Infante one final time before massive class certification and summary judgment briefing was undertaken. After considerable discussion, and with the *Capitol* case added to the mix because Capitol was now owned by a parent company of UMGR, a breakthrough was made . The *Warner* settlement was used as a template, with many adjustments required, and the gulf between the parties was finally breached with the wise counsel of Judge Infante. Fees and costs were negotiated (with Judge Infante's assistance) only after reaching an agreement as to the relief to the Class.

17. The agreement in principle included both cash payments for past downloads, and future relief as to ongoing matters. Many details needed to be worked out, particularly about future relief, which process consumed the second half of 2014 and first several months of 2015, but the Settlement Agreement dated April 1, 2015 was finally executed.

18. Counsel for Plaintiffs and the Class have substantial experience in class action litigation, and some have substantial experience in the music industry. They have been litigating the *UMGR* case, the *Capitol* case and the *Warner* case since 2011, and have devoted countless hours to learning more about the industry and in particular the issue of royalties for downloads. In their unanimous view, the proposed settlement is fundamentally fair, adequate and reasonable in the circumstances, and should meet with the Court's approval.

19. Although Class Counsel's opinion is that this case is a strong one, it must be noted that there has not been a ruling on the substantive issue underlying the litigation – whether Defendants' exploitation of Artists' Downloads/Mastertones are properly characterized as "licenses" or "sales." The *FBT* case[3] was successful for an individual plaintiff in this regard, so the challenge of the case would be to convince the Court or the jury that the logic of *FBT* applies to the many contracts at issue here, the bulk of which have language varying from the contract in *FBT*. Should the Settlement not be approved, further litigation would focus on class certification and on applying the *FBT* holding to the contracts in question, plus a variety of defenses offered by UMGR owing to contractual limitations provisions and other issues. Defendants have vigorously opposed these claims, Capitol defeated two cases on the pleadings, and both defendants have defeated claims in other cases where artists have asserted similar claims.

20. Continuation of this litigation would be risky, expensive and create substantial delay in recovery to Class members, many of whom recorded their music in the 1970s, 1980s and 1990s. The outcome is unpredictable, and a favorable outcome for Plaintiffs would no doubt be appealed. Because of the age of the class members, recovery of the past relief plus the increase in future royalties will be very beneficial to them, more so if they can begin to receive it now, rather than if they have to wait several more years.

21. Plaintiffs submit that this action could be properly maintained as a class action as the requirements under Rules 23(a) and 23(b)(3) are met. Rule 23(b)(2) may also apply. However, Plaintiffs recognize that the variations among Class Contracts (over the decades and among the sublabels owned by UMGR and Capitol) will permit Defendant to make a substantial argument that no class can be certified, and certainly not the entire class. The risk of maintaining class action status throughout trial and appeal, and affording relief to all Class Members rather than the handful of named plaintiffs, weighs strongly in favor of settlement.

22. The consideration provided in the settlement is fair and sufficient. Defendants are making $11.5 million available for payment of past relief, fees, costs, administrative costs, and

---

[3] *F.B.T. Prods., LLC v. Aftermath Records*, No. CV 07-3314-PSB(Manx) (C.D. Cal.).

1  incentive fees. Defendants are also agreeing to increase future payments on Downloads/Mastertones
2  by approximately 10% in perpetuity, and without any cap. (The details of the future relief can be
3  found in §§V.B and V.C. of the Settlement Agreement.)

4      23.    This amounts to a reasonable compromise of the parties' respective positions. The
amount offered in settlement, arrived at after intensive arm's-length negotiations, is a significant
recovery for the Class in light of the risks of further litigation and Defendants' likely defenses, and
compares favorably with the settlements reached in the *Sony* and *Warner* cases ($7.65 million and
$11.5 million, respectively).

    24.    Plaintiffs' counsel have an adequate basis in fact to agree to the settlement. Extensive discovery has occurred in the consolidated *UMGR* cases, and substantial discovery in the *Capitol* cases. Plaintiffs in *UMGR* consulted with an industry expert on practices in royalty reporting and accounting, as well as trends in digital distribution of recorded music. The expert also reviewed several iterations, and gave advice on the contours, of the parties' settlement agreement in its drafting stage. This information, and other data exchanged in mediation, provided Plaintiffs and Judge Infante with sufficient evidence to evaluate the strengths and weaknesses of Plaintiffs' claims and the benefits of the proposed settlement.

    25.    Class Counsel accepted the settlement only after conducting intensive settlement negotiations and thorough investigation into the factual and legal issues raised in this case. In negotiating and evaluating the Settlement Agreement, Class Counsel relied on their investigation and drew on their experience, skill, and expertise in class actions and in music litigation in determining that the Settlement Agreement was fair, reasonable, and adequate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this thirteenth day of April, 2015, at San Diego, California.

_____
LEONARD B. SIMON