# EXHIBIT A

1
2
3
4
5
6

JEFFREY D. GOLDMAN (Bar No. 155589)
JGoldman@jmbm.com
RYAN S. MAUCK (Bar No. 223173) RMauck@jmbm.com
BRIAN M. YATES (Bar No. 241798) BYates@jmbm.com
**JEFFER MANGELS BUTLER & MITCHELL LLP**
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California 90067-4308
Telephone: (310) 203-8080
Facsimile: (310) 203-0567
Attorneys for Defendant UMG RECORDINGS, INC.

7
8
9
10
11

LEONARD B. SIMON (Bar No. 58310) lsimon@rgrdlaw.com
**LAW OFFICES OF LEONARD B. SIMON P.C.**
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-338-4549
Facsimile: 619-231-7423
Attorneys for Plaintiffs and the Class
*Additional Counsel Listed on Signature Page*

12

## UNITED STATES DISTRICT COURT

13

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

14

15
16
17
18
19
20
21
22

RICK JAMES, by and through THE JAMES
AMBROSE JOHNSON, JR., 1999 TRUST,
his successor in interest, et al., individually
and on behalf of all others similarly situated,

              Plaintiffs,

    vs.

UMG RECORDINGS, INC., a Delaware
corporation,

              Defendant.

CASE NO. CV 11-01613 SI (MEJ)

**CLASS ACTION**

**STIPULATION AND AGREEMENT OF
SETTLEMENT**

23
24
25
26
27
28

## CLASS ACTION STIPULATION AND AGREEMENT OF SETTLEMENT

Rick James, by and through The James Ambrose Johnson, Jr., 1999 Trust, his successor in interest; Whitesnake, a doing business as designation of David Coverdale, by and for Whitesnake Productions (Overseas) Limited; Dave Mason; Carlton Douglas Ridenhour, d/b/a "Chuck D," individually and as a member of Public Enemy; Ron Tyson; Robert Walter "Bo" Donaldson, individually and d/b/a Bo Donaldson And The Heywoods; William Mclean, a/k/a "Will Mclean" and p/k/a "Mista Lawnge," and Andres Titus, p/k/a "Dres," jointly d/b/a Black Sheep; Martha Davis; and Ralph Vierra Tavares, Arthur Paul Tavares, Feliciano Vierra Tavares, Antone Lawrence Tavares, and Perry Lee Tavares, individually and jointly p/k/a "Tavares," on behalf of themselves and the Settlement Class,[1] and Defendants UMG Recordings, Inc. ("UMGR") and Capitol Records, LLC ("Capitol") (sometimes referred to collectively herein as "Defendants" or, with Plaintiffs, as a "Party" or the "Parties"), by and through their attorneys, hereby stipulate to the dismissal of the claims asserted by Plaintiffs and the Settlement Class against Defendants, upon and subject to the terms and conditions of this Class Action Stipulation and Agreement of Settlement (the "Stipulation") set forth below, as of April 1, 2015 (the "Agreement Date"), subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## RECITALS

A.      WHEREAS, beginning on April 1, 2011, various artists commenced putative nationwide class action lawsuits against UMGR (the "UMGR Actions") by filing class action complaints (the "UMGR Complaints") in the United States District Court for the Northern District of California (the "Court");

B.      WHEREAS, beginning on February 28, 2012, various artists commenced putative nationwide class action lawsuits against Capitol (the "Capitol Actions" and, together with the UMGR Actions and the Action, as defined below, the "Pending Actions") by filing class action complaints (the "Capitol Complaints") in the Court;

---

[1] Capitalized terms are defined in section I ("Certain Definitions") or elsewhere in this Stipulation, and all such definitions are solely for purposes of this Stipulation.

C.       WHEREAS, in the Fall of 2012, Vivendi, S.A., the ultimate parent of UMGR, purchased the recorded-music business of EMI Group Global Limited, including Capitol;

D.       WHEREAS, pursuant to this Stipulation, Plaintiffs will file a Second Consolidated Class Action Complaint (the "Second Consolidated Amended Complaint") alleging claims against UMGR and Capitol comparable to those previously alleged and thereby conditionally superseding and effectuating the consolidation of the Pending Actions, and shall seek to cause the Capitol Actions to be stayed or administratively closed by the Court pending final approval of the settlement contemplated hereby, subject to the right of either of the Parties in the Capitol Actions to seek to reactivate and continue to litigate those actions separately from the UMGR Actions if the Effective Date (as defined in this Stipulation) fails to occur, or this Stipulation is terminated for any reason;

E.       WHEREAS, the Parties to the Pending Actions have engaged in extensive motion and discovery practice, produced and exchanged hundreds of thousands of pages of documents, including recording agreements and other pertinent documents relating to potential Class Members, litigated multiple dispositive motions, and held multiple discovery conferences, and the parties to the UMGR Actions also have conducted numerous depositions and litigated numerous discovery disputes;

F.       WHEREAS, over the course of almost two years, the Parties to the Pending Actions have participated in multiple in-person and telephonic mediation sessions with the Honorable Edward Infante (Ret.) of JAMS as well as telephone conferences and in-person meetings of counsel;

G.       WHEREAS, the Parties have exchanged certain documents, calculations, and analyses relating to the issues raised in the Pending Actions, including settlement-related calculations;

H.       WHEREAS, Defendants deny all allegations of wrongdoing, negligence, fault, or liability and that either has acted improperly in any way; believe that the averments in the Second Consolidated Amended Complaint, the UMGR Complaints, and the Capitol Complaints lack

1   merit; would have continued to resist vigorously Plaintiffs' claims and contentions and would

2   have continued to assert their defenses thereto had this Stipulation not been reached; and have

3   entered into this Stipulation to put Plaintiffs' and Class Members' claims to rest finally and

4   forever solely for the purpose of avoiding prolonged and expensive litigation, without

5   acknowledging in any way any wrongdoing, negligence, fault, or liability whatsoever; and

6          I.        WHEREAS, Plaintiffs and Class Counsel believe that their claims in the Pending

7   Actions are meritorious, but they have considered and weighed the issues involved, as well as the

8   substantial risks and inevitable delay in proceeding to trial, compared to the benefits being

9   provided hereby, and believe that the terms and conditions set forth herein are fair, reasonable, and

10  adequate and should be submitted to the Court for approval.

11         **NOW THEREFORE**, without any admission or concession on the part of Plaintiffs of

12  any lack of merit of the Pending Actions whatsoever, and without any admission or concession on

13  the part of Defendants of any wrongdoing, negligence, fault, liability, or lack of merit in the

14  defenses whatsoever, **IT IS HEREBY STIPULATED AND AGREED**, by and among the

15  Parties to this Stipulation, through their respective attorneys, subject to approval of the Court

16  pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits

17  flowing to the Parties hereto from the Settlement, that all Released Class Claims as against the

18  Released Defendant Parties shall be compromised, settled, released, and dismissed with prejudice,

19  upon and subject to the following terms and conditions:

20                                    **TERMS OF SETTLEMENT**

21  **I.      CERTAIN DEFINITIONS**

22         As used in this Stipulation, the following capitalized terms shall have the following

23  meanings:

24         A.        "Action" means the lawsuit to be effectuated by the contemplated Second

25  Consolidated Amended Complaint.

26         B.        "Administrative Categories" means the following categories of information:

27  (1) the identities of the Claimants that the Settlement Administrator determines submitted Claim

28

Forms that satisfy all of the requirements of paragraph VI.B (including those who timely cured any deficiency pursuant to paragraph VI.C) (the "Administrator-Passed Claimants"); (2) the identities of the Administrator-Passed Claimants that Defendants believe are Authorized Claimants; (3) Defendants' rationale (based in good faith upon objective factors) for determining that any Administrator-Passed Claimant is not an Authorized Claimant; and (4) the amount due each Authorized Claimant as Past Settlement Relief based upon the Settlement Share Calculation Formula.

C.     "Artist" or "Artists" means a musical recording artist or artists and/or any entity or entities furnishing the personal services of a musical recording artist or artists, such as a so-called "loan-out" company or production company, and each of their respective successors-in-interest, assigns, and heirs.

D.     "Authorized Claimant" means a Class Member from whom or on whose behalf a timely, valid Claim Form has been completed and submitted.

E.     "Capitol Legendary Artist" means any Artist that a Capitol US Label has treated as subject to the Capitol Legendary Artists Program as of the Agreement Date, listed in Schedule A to the Confidential Supplemental Agreement.

F.     "Capitol Legendary Artists Program" is a gratis, non-binding program or practice that was first adopted by Capitol US Labels in or around 1992, as it has been and may in the future be modified from time to time, pursuant to which Capitol US Labels, among other things, unilaterally and voluntarily have forgiven pre-1970 debit balances on the royalty accounts of selected artists, and have unilaterally and voluntarily paid or credited increased royalties to such artists.

G.     "Capitol US Labels" or "Capitol US Label" means a US Label whose ultimate parent was EMI Group Global Limited immediately prior to the effective date of the purchase described in recital C.

H.      "CD Royalty Rate" means the all-in LP or album royalty rate a US Label applied under a Class Contract to sales in the United States by the US Label of single-disc records in compact disc configuration for the royalty period ending December 31, 2013.

I.      "CD Base Price" means the dollar amount by which a CD Royalty Rate is multiplied as part of the calculation used in determining the royalties an Artist or Included Other Royalty Recipient is to be paid or credited under a Class Contract for sales in the United States by a US Label of single-disc records in compact disc configuration.

J.      "Claim Form" means the form to be sent to persons and/or entities identified in the Notice List in a form to be prepared by the Parties with the assistance of the Settlement Administrator and approved by the Court.

K.      "Claimant" means a person or entity from whom or on whose behalf a Claim Form is submitted.

L.      "Class Contract" means a contract with a US Label, inclusive of amendments and modifications to such contract, that either:

     1.      meets all of the following requirements:

        (a)      is initially dated on or after January 1, 1965, and on or prior to April 30, 2004;

        (b)      is a contract pursuant to which a US Label owns or possesses United States exploitation rights in master recordings;

        (c)      contains a Records Sold Provision; and

        (d)      contains a Masters Licensed Provision; or

     2.      has been treated by a Capitol US Label as subject to the Capitol Legendary Artists Program as of the Agreement Date.

     3.      Notwithstanding the foregoing, a contract is not a Class Contract if it:

        (a)      expressly excludes "downloads" (however defined under the particular contract) from the scope of a Masters Licensed Provision (but for avoidance of doubt, the exclusion in this subparagraph (a)

shall not apply to a provision that concerns "electronic transmissions" where the definition of "electronic transmissions" does not expressly include "downloads");

(b) expressly uses the term "download" or "downloads" (however defined under the particular contract) and provides that royalties for exploitation of records and/or master recordings in the form of a "download" or "downloads" shall be calculated pursuant to a Records Sold Provision or otherwise expressly provides a methodology or formula for calculating or determining royalties for sales or exploitation of a "download" or "downloads";

(c) expressly provides in a Masters Licensed Provision that the amount of royalties paid or credited for the sale or exploitation of records and/or master recordings subject to a Masters Licensed Provision shall be equal to or shall not exceed the amount of royalties that would be paid or credited if the royalties for such sale or exploitation were calculated or determined pursuant to a Records Sold Provision;

(d) is a pressing and distribution agreement (also known as a "P&D" agreement), Profit Split Arrangement, Compilation License, Sample License, or Side Artist Agreement; or

(e) is a contract that was divested and assigned to either Warner Music Group in connection with the Fall 2012 purchase of the recorded-music business of EMI Group Global Limited by Vivendi, S.A. or Bertelsmann Music Group in connection with the Spring 2013 purchase of the recorded music business of Sanctuary Records Group Limited.

M.     "Class Counsel" means The Law Offices of Leonard B. Simon, P.C.; Pearson, Simon & Warshaw, LLP; Hausfeld LLP; Lieff Cabraser Heimann & Bernstein, LLP; Phillips, Erlewine, Given & Carlin LLP; Kiesel Law LLP; and Indik & McNamara, P.C.

N.     "Class Member" means a member of the Settlement Class.

O.     "Compilation License" means a written authorization from or on behalf of a person or entity that permits a US Label to use master recordings owned or controlled by such other person or entity ("Third Party Masters") on:  (1) one particular album, double album, or box set (regardless of the number of formats or release in both standard and deluxe versions) consisting of master recordings featuring different recording artists (*e.g.*, "Greatest Hits of the 1970's"); or (2) one particular anthology, "greatest hits" or "best of" album, double album, or box set (regardless of the number of formats or release in both standard or deluxe versions) consisting of master recordings featuring a single recording artist (*e.g.*, "Michael Smith's Greatest Hits" or "The Complete Studio Recordings of Michael Smith"); provided, however, in the case of both I.O(1) and I.O(2), that the number of Third Party Masters from any particular third party or single recording artist used in any of such cases is less than one-half (1/2) of the total number of master recordings used in the particular album, double album, or box set; further provided that such written authorization is not a Compilation License if the applicable Third Party Masters are Subject Masters.

P.     "Confidential Supplemental Agreement" means the agreement so entitled signed between the Parties that (1) contains confidential information about Defendants' ability to terminate the Settlement if opt-outs exceed a certain threshold, (2) contains confidential information about Defendants' wholesale pricing, and (3) attaches the list of Capitol Legendary Artists.

Q.     "Distributable Fund" means the Fund less administrative, notice, and claims processing expenses, including but not limited to expenses of the Settlement Administrator, and further less any attorneys' fees, costs, enhancement awards, special master fees and costs (as

specified herein), and a reserve of $50,000 for settlement administration or other expenses incurred by any Party after the Court grants final approval to this Stipulation.

R.     "Downloads" means digital transmissions of records, master recordings, or music videos, which have been or will be provided by or on behalf of a US Label or any licensees, lessees, wholesalers, or distributors thereof to consumers for copying to a local storage device (*e.g.*, the hard drive of the user's computer or a portable device) or residence in an online storage locker or so-called "cloud," and which are permanently available for listening an unlimited number of times (unless deleted by the user) and are not subject to time or use limitations designed to cause the downloaded file to be available for listening only (1) during a limited time (*e.g.*, a time certain or a time tied to ongoing subscription payments), or (2) for a limited number of times. For avoidance of doubt, Downloads shall not include Streams.

S.     "Downloads/Mastertones/Streams" means Downloads, Mastertones, and/or Streams, including any one or two or all of the foregoing.

T.     "Effective Date of Settlement" or "Effective Date" means the date upon which this Stipulation shall become final and effective, as set forth in section XII.

U.     "Fairness Hearing" means the final settlement hearing to be held to determine, among other things, the fairness, reasonableness, and adequacy of the Settlement.

V.     "Fund" means the $11.5 million that Defendants will make available for compensation to the Settlement Class and for all settlement-related costs and expenses provided for in this Stipulation, including but not limited to administrative, notice, and claims processing expenses (including the costs of the Settlement Administrator), attorneys' fees, costs, enhancement awards, and special master fees and costs.

W.     "Included Other Royalty Recipients" means persons or entities other than Artists who are entitled to receive royalties pursuant to Class Contracts (such as a record producer who is a party to a Class Contract or identified as a royalty recipient in a Class Contract, whether or not specifically named), and any entity or entities furnishing the personal services of such persons or entities, such as so-called "loan-out" companies or production companies, and each of their

1 respective successors-in-interest, assigns, or heirs, but excluding persons retained solely for

2 services as mixers, remixers, and/or engineers, and any entity or entities furnishing the personal

3 services of mixers, remixers, and/or engineers.

4      X.    "Masters Licensed Provision" means any contractual provision providing for a US

5 Label to pay or credit as royalties a percentage of the US Label's receipts or revenues (whether

6 based upon gross or net) to a counterparty or counterparties for any form of licensing or leasing of

7 records and/or master recordings in the United States by such US Label.

8      Y.    "Mastertones" means digital transmissions of portions of records or master

9 recordings, which have been or will be provided by or on behalf of a US Label or any licensees,

10 lessees, wholesalers, or distributors thereof to cellular phone users as the sounds that such users or

11 members of the public hear as played by such users' telephones when callers dial such users until

12 the call is answered or the call goes to time out.

13      Z.    "Notice" means the notice which is to be sent to the persons and entities on the

14 Notice List pursuant to paragraphs IV.B and IV.C.

15      AA.    "Notice Date" means the last date on which Notice may first be disseminated by

16 the Settlement Administrator to persons and entities on the Notice List as set forth in paragraph

17 IV.B.

18      BB.    "Notice List" means a data file in SQL, Access, or Excel format that identifies the

19 name and last known address of all potential Class Members that Defendants will prepare for the

20 Settlement Administrator using readily-available computerized transaction records.  The list will

21 reflect Defendants' good faith effort to include all persons or entities currently identified as royalty

22 recipients in Defendants' royalty systems as of the Agreement Date with respect to contracts that

23 meet the requirements of paragraphs I.L.1(a) and (b) and/or paragraph I.L.2.  Defendants will not

24 be required to extract information from non-computerized records.  For avoidance of doubt,

25 inclusion or exclusion of a person or entity on the Notice List is not a determination that such

26 person or entity is or is not a Class Member, which determination shall be governed exclusively by

27 the provisions of paragraphs II.C through II.F.

28

CC.     "Past Settlement Relief" means the payment or credit of monies to the royalty accounts of Authorized Claimants as described in paragraphs I.ZZ and V.A.

DD.     "Penny Rate Basis" means a royalty paid or credited based on a specific monetary amount per unit sold or exploited, sometimes known as a "penny rate."

EE.     "Period" means January 1, 2008 through June 30, 2011.

FF.     "Plaintiffs" means Rick James, by and through The James Ambrose Johnson, Jr., 1999 Trust, his successor in interest; Whitesnake, a doing business as designation of David Coverdale, by and for Whitesnake Productions (Overseas) Limited; Carlton Douglas Ridenhour, d/b/a "Chuck D," individually and as a member of Public Enemy; Ron Tyson; Robert Walter "Bo" Donaldson, individually and d/b/a Bo Donaldson And The Heywoods; William Mclean, a/k/a "Will Mclean" and p/k/a "Mista Lawnge," and Andres Titus, p/k/a "Dres," jointly d/b/a Black Sheep; Martha Davis; and Ralph Vierra Tavares, Arthur Paul Tavares, Feliciano Vierra Tavares, Antone Lawrence Tavares, and Perry Lee Tavares, individually and jointly p/k/a "Tavares."

GG.     "Preliminary Approval Order" shall have the meaning set forth in section II.

HH.     "Profit Split Arrangement" means any arrangement, such as a joint venture, under which the counterparty or counterparties to a contract with a US Label do not receive royalties from a US Label for any exploitation of sound recordings in the United States on a Royalty Rate Basis or Penny Rate Basis, and the entirety of the compensation to be received by such counterparty or counterparties for all forms of exploitation of sound recordings in the United States is calculated solely as a percentage of receipts, gross receipts, net receipts, profits, gross profits, net profits, available cash, or other equivalent basis.

II.     "Prospective Royalty Rate" means the royalty rate a US Label will use in calculating Prospective Settlement Relief for Authorized Claimants pursuant to paragraphs V.B and V.C.

JJ.     "Prospective Settlement Relief" means the provisions described in paragraphs V.B and V.C.

KK.    "Publication Notice" means a summary notice of the Settlement for publication as set forth in IV.C.

LL.    "Records Sold Provision" means any contractual provision providing for any US Label to pay or credit royalties to a counterparty or counterparties on a Royalty Rate Basis or Penny Rate Basis for the sale of "records" (however defined under the particular contract).

MM.    "Released Class Claims" shall collectively mean any and all actions, suits, claims, demands, rights, liabilities, and causes of action, of every nature and description whatsoever, whether individual, class, derivative, representative, legal, equitable, or any other type or in any other capacity that were asserted or that could have been asserted in the Pending Actions (including without limitation claims for negligence, gross negligence, unfair competition, unfair business practices, open book account, breach of contract, breach of the duty of good faith and fair dealing, breach of the duty of care, breach of the duty of loyalty, fraud, breach of fiduciary duty, waste, malice, oppression, or violations of any state or federal common law, statutes, rules, or regulations, including known claims, concealed or hidden claims, and Unknown Claims) that Plaintiffs, Class Members, or any of them in the past had, now have, or might in the future have against the Released Defendant Parties or any of them on the basis of, connected with, or in any way arising out of or relating to:

       1.    any allegation, claim, or contention, regardless of the theory and wherever in the world the transactions take place, that:

          (a)    any past, present, or future transactions involving Downloads/Mastertones are not "sales" and/or are not sold "through normal retail channels" within the meaning of a Class Contract and/or as such terms are understood within the music industry;

          (b)    Downloads/Mastertones are not "records" within the meaning of a Class Contract and/or as such term is understood within the music industry;

          (c)    in connection with past, present, or future transactions involving Downloads/Mastertones, Defendants underpaid royalties by failing to apply a Masters

Licensed Provision or any other provision(s) of a Class Contract applicable to sales or exploitation by or through a licensee or lessee;

(d)     royalties paid or credited or any other consideration for transactions involving Downloads/Mastertones should not be paid or credited under a Records Sold Provision or any other provision of a Class Contract applicable to sales of "records" (however defined under the particular Class Contract), including on the ground that a Class Contract lacked a provision expressly addressing Downloads/Mastertones or provided a right to negotiate or renegotiate a rate for new technologies or formats, but no such negotiation or renegotiation occurred;

(e)     the royalty payable for Downloads/Mastertones under a Class Contract should vary depending on the nature of a US Label's contractual relationship with the digital retailer, other wholesaler, sub-distributor, or intermediary selling or exploiting such Downloads/Mastertones;

(f)     in connection with transactions involving Streams prior to the Agreement Date, a Capitol US Label underpaid royalties for such transactions by failing to apply a Masters Licensed Provision or any other provision(s) of a Class Contract applicable to sales or exploitation by or through a licensee or lessee;

(g)     royalties paid or credited or any other consideration for transactions prior to the Agreement Date involving Streams should not have been paid or credited by a Capitol US Label under a Records Sold Provision or any other provision of a Class Contract applicable to sales of "records" (however defined under the particular Class Contract), including on the ground that a Class Contract lacked a provision expressly addressing Streams or provided a right to negotiate or renegotiate a rate for new technologies or formats, but no such negotiation or renegotiation occurred;

(h)     the royalty payable by a Capitol US Label under a Class Contract for Streams that were the subject of a transaction prior to the Agreement Date should vary depending on the nature of the Capitol US Label's contractual relationship with the digital

retailer, other wholesaler, sub-distributor, or intermediary selling or exploiting such Streams;

(i)      the exploitation of master recordings in the form of Downloads/Mastertones/Streams by the US Labels, their foreign affiliates, or their authorized digital distributors violated contractual consent rights contained in a Class Contract (whether such consent rights related to exploitation in new configurations, licensed uses, or release of master recordings in the form of singles or otherwise);

(j)      as to Downloads/Mastertones, the document identified in paragraphs 95 and 105 of the Consolidated Class Action Complaint (Dkt. 130 in Case No. CV-11-01613 SI (MEJ)) (*i.e.*, the so-called "Ostroff Memo") was or is violative of any right of any Artist, Included Other Royalty Recipient, or Class Member, or that Defendants have violated or will violate any right of any Artist, Included Other Royalty Recipient, or Class Member either by applying or enforcing such document, or any part or provision thereof, or by failing or declining to do so, or that the Ostroff Memo constitutes an admission or acknowledgement of any kind;

(k)      Except to the extent specifically provided in paragraph V.C.3, the Capitol Legendary Artists Program, or any benefit made available or provided at any time in the past or future thereunder, is, gave rise to, or gives rise to a binding or enforceable commitment, contractual or otherwise, on the part of a US Label;

2.      any other allegation that was contained in the Second Consolidated Amended Complaint, the UMGR Complaints, or the Capitol Complaints; or

3.      the adequacy and accuracy of anything contained within Defendants' Settlement Class Relief Report, except as otherwise set forth herein.

NN.    "Released Defendant Claims" shall collectively mean any and all actions, suits, claims, demands, rights, liabilities, and causes of action, of every nature and description whatsoever, whether individual, class, derivative, representative, legal, equitable, or any other type

or in any other capacity that are based solely on the filing, maintenance, or prosecution of the Pending Actions.

OO.    "Released Defendant Party" or "Released Defendant Parties" means and includes the US Labels, including each of their unincorporated divisions and business units, and any and all of their past, present, or future parents, associates, affiliates, subsidiaries, or licensees, and each and all of their past, present, and future officers, directors, stockholders, principals, employees, independent contractors, advisors, agents, attorneys, financial or investment advisers, consultants, lenders, insurers, investment bankers, commercial bankers, representatives, affiliates, associates, parents, subsidiaries, joint ventures, general and limited partners and partnerships, heirs, executors, trustees, personal representatives, estates, administrators, trusts, predecessors, successors, assignors, and assigns; each and all of those persons and entities are intended to be third party beneficiaries of the release of the Released Class Claims.

PP.    "Released Plaintiff Party" or "Released Plaintiff Parties" means and includes Plaintiffs, and each and all of their past, present, and future officers, directors, stockholders, principals, employees, independent contractors, advisors, agents, attorneys, financial or investment advisers, consultants, lenders, insurers, investment bankers, commercial bankers, representatives, affiliates, associates, parents, subsidiaries, joint ventures, general and limited partners and partnerships, heirs, executors, trustees, personal representatives, estates, administrators, trusts, predecessors, successors, assignors, and assigns; each and all of those persons and entities are intended to be third party beneficiaries of the release of the Released Defendant Claims.

QQ.    "Request for Exclusion" has the meaning set forth in paragraph IX.A.

RR.    "Retail Price" has the meaning set forth in paragraph ZZ.3.c.i.

SS.    "Royalty Base Price" means the amount by which a royalty rate is multiplied as part of the calculation used in determining the amount in royalties an Artist or Included Other Royalty Recipient is to be paid or credited for the sale or exploitation of Downloads and Mastertones.

TT. "Royalty Rate Basis" means a calculation of royalties to be paid or credited to an Artist or Included Other Royalty Recipient based on a particular percentage of some price, such as a wholesale price, retail price, or interdivisional price or accounting charge.

UU. "Sample License" means a written authorization to embody a portion of a pre-existing master recording in a newly-created master recording, or a portion of a pre-existing master recording in a newly-created remix of another pre-existing master recording.

VV. "Settlement" means the settlement contemplated by this Stipulation.

WW. "Settlement Administrator" has the meaning set forth in paragraph IV.A.

XX. "Settlement Class" has the meaning set forth in paragraphs II.C through II.F.

YY. "Settlement Class Relief Report" has the meaning set forth in paragraph VI.F.

ZZ. "Settlement Share Calculation Formula" means the formula for determining the amount of the Distributable Fund to which an Authorized Claimant shall be entitled to be paid or credited as Past Settlement Relief, and shall be calculated as follows:

1.       With respect to all Class Contracts to which a UMGR US Label is a party, the amount of the Distributable Fund which an Authorized Claimant is entitled to be paid or credited shall be equal to the product of the Distributable Fund multiplied by a fraction, the numerator of which is the revenue received by UMGR from the sale or exploitation in the United States of the Authorized Claimant's Subject Masters as Downloads and/or Mastertones during the Period which are not excluded under paragraph II.D (relating to settlement, audit, and/or other agreements with a US Label), and the denominator of which is UMGR/Capitol Total US Sales.

2.       With respect to all Class Contracts to which a Capitol US Label is a party, the amount of the Distributable Fund which an Authorized Claimant is entitled to be paid or credited shall be equal to the product of the Distributable Fund multiplied by a fraction, the numerator of which is the revenue received by Capitol from the sale or exploitation in the United States of the Authorized Claimant's

Subject Masters as Downloads/Mastertones/Streams during the Period which are not excluded under paragraph II.D (relating to settlement, audit, and/or other agreements with a US Label), and the denominator of which is UMGR/Capitol Total US Sales.

3.      Notwithstanding the provisions of paragraphs I.ZZ.1 and I.ZZ.2:

(a)      Defendants may in their discretion elect, for administrative or other reasons, to calculate the amount to be paid or credited to an Authorized Claimant by using, as the numerator in the equation described in each of paragraphs I.ZZ.1 and I.ZZ.2, all revenues (and not just those relating to Subject Masters) during the Period which are not excluded under paragraphs I.ZZ.3(b) or I.ZZ.3(c), and which are attributable to the sale or exploitation of master recordings of the Authorized Claimant as Downloads and Mastertones in the United States in the case of UMGR US Labels, or as Downloads, Mastertones, and Streams in the United States in the case of Capitol US Labels, as applicable, so long as doing so does not decrease the amount to be paid or credited to the Authorized Claimant.

(b)      If more than one person or entity is a party to a given Class Contract, then the share of the Distributable Fund owed to any person or entity who is an Authorized Claimant in connection with such Class Contract shall be a percentage that is equal to such person or entity's share of the royalties under such Class Contract, to the extent such information is known to the applicable Defendant, or in the absence of such information, on a per capita basis.  For example:  (i) if the applicable Defendant has information indicating that an Authorized Claimant is entitled to 40% of the royalties payable under a particular Class Contract, the Authorized Claimant's share of the Distributable Fund shall be 40% of the Past Settlement Relief applicable to that Class Contract; or (ii) if the applicable Defendant does not have information indicating the percentage of the royalties payable under a particular Class Contract to which the Authorized Claimant is entitled, but has information that there are three royalty recipients

under the Class Contract, the Authorized Claimant's share of the Distributable Fund shall be 33.3% of the Past Settlement Relief applicable to that Class Contract.

(c)     If more than one Class Contract entitles Artist(s) and/or Included Other Royalty Recipient(s) to royalties derived from exploitation in the United States of the same Subject Masters, the share of the Distributable Fund to which such Artist(s) and/or Included Other Royalty Recipient(s) is/are entitled shall be prorated and allocated in the same proportion as Defendants' royalty systems are prorating and allocating such royalties as of the Agreement Date (*e.g.*, if the Artist is an Authorized Claimant and entitled to 75% of the royalties for such Subject Masters and Included Other Royalty Recipients are entitled to 25%, the Artist's share of the Distributable Fund shall be 75% of the Past Settlement Relief applicable to such Subject Masters, provided, however, that if the CD Royalty Rate in one or more such Class Contracts is calculated on a Penny Rate Basis (such Class Contract to be referred to below as a "Penny Rate Class Contract"), and the CD Royalty Rate in one or more such Class Contracts is calculated on a Royalty Rate Basis (such Class Contract to be referred to below as a "Royalty Rate Class Contract"), then for purposes of determining the proration and allocation required by this paragraph I.ZZ.3(c):

i.     if the Royalty Rate Basis in the Royalty Rate Class Contract is calculated with reference to a suggested retail list price, an actual retail price, or other words reasonably interpreted as making reference to what is commonly understood as a retail price, or with reference to a fixed-percentage increase or uplift to the wholesale price meant to approximate or serve as a proxy for a retail price (in each of the above cases, a "Retail Price"), then Defendants shall convert the contractual penny rate in the Penny Rate Class Contract to a percentage royalty rate by dividing the contractual penny rate by the product of 130% and $8.50 (*i.e.*, $11.05), such that, by way of example only, if the contractual penny rate is $1.50, then the converted percentage royalty rate will be 13.6% (*i.e.*, $1.50 divided by $11.05); and

ii.      if the Royalty Rate Basis in the Royalty Rate Class Contract is calculated with reference to a wholesale price, then Defendants shall convert the contractual penny rate in the Penny Rate Class Contract to a percentage royalty rate by dividing the contractual penny rate by $8.50, such that, by way of example only, if the contractual penny rate is $1.25, then the converted percentage royalty rate will be 14.7% (*i.e.*, $1.25 divided by $8.50).

(d)      Notwithstanding anything in this Stipulation, in no event shall Defendants be obligated to pay or credit to members of the Settlement Class collectively more than 100% of the Past Settlement Relief or Prospective Settlement Relief applicable to any particular Class Contract or any particular Subject Master (for example, Defendants shall not be obligated to pay or credit Past Settlement Relief or Prospective Settlement Relief to both a party to a Class Contract and the Artist or Included Other Royalty Recipient who furnishes services to a so-called "loan-out" company or production company).

AAA.  "Settlement Website" means the website to be established and maintained by the Settlement Administrator, as described in paragraph IV.D.1.

BBB.  "Side Artist Agreement" means a business arrangement between a particular US Label and one or both of (1) a recording artist or music producer who is not signed to such US Label and/or (2) another person or entity (including a different US Label, assuming a bona fide arm's length contractual arrangement) who is entitled to the exclusive services of the recording artist or music producer ("Side Artist Provider"), pursuant to which the recording artist or music producer performs or provides services to the US Label first referenced in this definition for a single master recording or project to be released by such US Label (*e.g.*, as a guest vocalist or musician on a master recording by a recording artist signed to such US Label) and, if applicable, the Side Artist Provider agrees to waive its exclusive rights to the recording or producing services of the applicable recording artist or music producer in respect of such recording or project, and the US Label first referenced in this definition agrees to pay royalties to such recording artist, music producer, Side Artist Provider, and/or other person or entity in exchange therefor.

CCC.   "Streams" means any transmissions of records, master recordings, or other works, whether sound alone, sound coupled with an image, sound coupled with data, sound coupled with video, or any combination thereof in any form now known or later developed, which have been or will be provided by US Labels or any licensees, lessees, wholesalers, or distributors thereof to consumers, and which allow a user to listen to and/or watch such recordings or works, where the provider of such transmissions intends that:  (1) any such transmission will not result in a substantially complete reproduction of the master recording (other than as a temporary, cache, or buffer copy) being made on a local storage device (*e.g.*, the hard drive of the user's computer or a portable device) or an internet locker or "cloud" storage location so that such reproduction is available for listening other than at substantially the time of transmission; or (2) the recording or other work is a so-called "conditional download," i.e., is accessible by the consumer only so long as such consumer maintains a subscription or other agreement with the provider of such transmission that permits access to such recording or work.  Without limitation of the foregoing, "Streams" also means and includes videos streamed via YouTube and similar services and the ringback tones that are heard by a telephone caller while waiting for a telephone call to be connected to, or answered by, a cellular user.  Streams shall not include transmissions covered by the compulsory licensing provisions of 17 U.S.C. § 114, and revenues received by a US Label pursuant to such compulsory licenses shall not be used when calculating the Settlement Share Calculation Formula.  For avoidance of doubt, Streams shall not include Downloads.

DDD.   "Subject Masters" means master recordings (audio only, visual, video, or audio-visual) subject to Class Contracts.

EEE.   "Toll-Free Number" means the toll-free telephone number to be established and administered by the Settlement Administrator as described in paragraph IV.D.2.

FFF.   "UMGR/Capitol Total US Sales," for purposes of implementing this Stipulation and the Settlement Share Calculation Formula, shall be deemed to be $610,000,000.00.

GGG.  "UMGR US Labels" or "UMGR US Label" means a US Label whose ultimate parent was Vivendi, S.A. immediately prior to the effective date of the purchase described in recital I.C.

HHH.  "Unknown Claims" means any and all Released Class Claims related to the accrual, payment, and/or accounting of royalties for transactions involving Downloads/Mastertones/Streams that the Settlement Class and/or Class Counsel does not know of or suspect to exist in favor of the Settlement Class at the time of the release of the Released Defendant Parties which, if known by the Settlement Class and/or Class Counsel, might have affected their approval of and agreement to the Settlement.  With respect to Unknown Claims, the Settlement Class shall be deemed to have, and by operation of the dismissal of the Pending Actions, shall have, hereby expressly waived and relinquished, to the fullest extent permitted by law, the benefits of Section 1542 of the California Civil Code (and all similar provisions from any and all jurisdictions).  Section 1542 states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

By operation of law, the Settlement Class shall be deemed to have acknowledged that the inclusion of "Unknown Claims" in the definition of the Released Class Claims was specifically bargained for and a key element of the Settlement.

III.  "US Label" or "US Labels" means (1) either or both of the Defendants; (2) any wholly owned US recorded music (*i.e.*, not music publishing or production library music) subsidiary, division, or business unit of either of the Defendants; (3) any partially owned US recorded music subsidiary, division, or business unit of either of the Defendants; (4) any affiliated entity or joint venture on whose behalf either of the Defendants has the right to enter into litigation settlements; or (5) any of either of Defendants' predecessors-in-interest.  US Labels include without limitation Interscope Records, Geffen Records, A&M Records, Island Records, Def Jam Recordings, Republic Records, Capitol Records, Virgin Records, Blue Note Records, Motown

Records, Caroline Distribution, MCA Nashville Records, Mercury Nashville Records, Capitol Records Nashville, EMI Records Nashville, Universal Music Latino, Fonovisa Records, Disa Records, Capitol Latin, Machete Music, Verve Records, GRP Records, Impulse! Records, Verve Forecast Records, Decca Records, Decca Music Group, Mercury Classics, Universal Music Enterprises, and Show Dog-Universal Music; provided, however, that Capitol Christian Music Group, Inc. is not a US Label.

JJJ.    "Wholesale Price" means the wholesale price (as that term is commonly understood in the US music industry) at which a US Label sells or otherwise provides Downloads/Mastertones/Streams to digital retailers, wholesalers, sub-distributors, or intermediaries (such as, today, Apple iTunes and Verizon Wireless), less discounts (if any) and less all excise, sales, purchase, or similar taxes, or in respect of those transactions for which a US Label does not designate such a wholesale price for particular Downloads/Mastertones/Streams, the net receipts received by the US Label (inclusive of wholly-owned or affiliated distributors) from the distribution, transmission, and/or communication of such Downloads/Mastertones/Streams, less all taxes; provided, however, that if a US Label sells or otherwise provides Downloads/Mastertones/Streams directly to consumers (including without limitation through wholly-owned or affiliated distributors), then "Wholesale Price" with respect to such transactions shall mean 70% of the retail price associated with such transactions, less discounts (if any) and less all excise, sales, purchase, or similar taxes.

## II.    APPLICATION FOR PRELIMINARY APPROVAL AND CLASS CERTIFICATION

A.    As soon as practicable after execution of this Stipulation, Plaintiffs will move the Court for preliminary approval of this Stipulation pursuant to Federal Rule of Civil Procedure 23(e).  As part of the motion, and consistent with this Stipulation, Plaintiffs will apply for an order (the "Preliminary Approval Order"):

1.    certifying the Settlement Class for settlement purposes only as provided in this Stipulation;

2.    preliminarily approving this Stipulation;

3. approving the form of the Claim Form, including instructions (substantially in the form proposed by the Parties);

4. approving the Notice, the Publication Notice, and the proposed manner and schedule for distribution of the Notice and Publication Notice as satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and being the best notice practicable under the circumstances;

5. establishing procedures by which Class Members can exclude themselves from the Settlement Class and from the Action as provided for in section IX;

6. establishing procedures by which Class Members can assert objections to the terms of this Stipulation or the application for attorneys' fees, costs, or enhancement awards as provided for in section X; and

7. setting a date and time for the Fairness Hearing;

8. appointing Class Counsel as counsel for the Settlement Class;

9. appointing Plaintiffs as representatives of the Settlement Class; and

10. approving the Parties' selection of a Settlement Administrator.

B. Plaintiffs will provide Defendants with a draft of the motion for preliminary approval prior to filing. Defendants agree, solely for purposes of effectuating this Stipulation, not to oppose certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure so long as it is consistent with the provisions of this Stipulation.

C. The Settlement Class sought to be certified shall be as follows: All persons and entities (or their successors-in-interest, assigns, and heirs) that are parties to a Class Contract, and Artists or Included Other Royalty Recipients whose services are provided in connection with a Class Contract and receive royalties pursuant to a Class Contract (such as an Artist or Included Other Royalty Recipient who furnish services to a so-called "loan-out" company or production company), except for the following excluded persons or entities:

1. US Labels;

2. any persons or entities who file a valid and timely Request for Exclusion;

3.      any persons or entities who have, whether by settlement, audit settlement, and/or other agreement(s) with a US Label:

(a)      released any and all then-existing claims relating to sales or exploitation of all Subject Masters as Downloads, Mastertones, and, as to Capitol US Labels, Streams, and

(b)      either expressly agreed as to how royalties are to be calculated for sales or exploitation of all Subject Masters as Downloads, Mastertones, and, as to Capitol US Labels, Streams, or released all future claims related to the method of calculation of royalties for Downloads, Mastertones, and, as to Capitol US Labels, Streams, and

(c)      the provisions or agreements described in paragraphs II.C.3(a) and II.C.3(b) individually or together account for, dispose of, and/or govern all past, present, and future claims by that person or entity relating to the applicable methodology or formula for calculating or determining royalties for sales or exploitation of all Subject Masters as Downloads, Mastertones, and, as to Capitol US Labels, Streams.

4.      any persons or entities to whom a US Label accounts or pays solely as an accommodation or service to an Artist or Included Other Royalty Recipient (e.g., pursuant to a letter of direction); and

5.      any person included on a government list of known or suspected terrorists or other individuals, entities, and organizations of concern, including, but not limited to, persons appearing on the United States Department of the Treasury, Office of Foreign Assets Control List of Specially Designated Nationals and Blocked Persons (the "SDN Lists").

D.      If a person or entity is otherwise a Class Member, but has, whether by settlement, audit settlement, and/or other agreement(s) with a US Label:

1.    released claims relating to sales or exploitation of any Subject Masters as Downloads/Mastertones/Streams, and/or

2.    expressly agreed as to how royalties are to be calculated for sales or exploitation of any Subject Masters as Downloads/Mastertones/Streams, but

3.    the provisions or agreements described in paragraphs II.D.1 and II.D.2 do not individually or together account for, dispose of, and/or govern all past, present, and future claims by that person or entity relating to the applicable methodology or formula for calculating or determining royalties for sales or exploitation of all Subject Masters as Downloads, Mastertones, and, as to Capitol US Labels, Streams,

then that person or entity shall be a Class Member only with regard to those past, present, and/or future sales or exploitation of Subject Masters as Downloads, Mastertones, and/or, as to Capitol US Labels, Streams that are not accounted for, disposed of, and/or governed by the provisions or agreements described in paragraphs II.D.1 and II.D.2, and is excluded from the Settlement Class only with regard to those past, present, and/or future sales or exploitation of Subject Masters as Downloads, Mastertones, and/or, as to Capitol US Labels, Streams that are accounted for, disposed of, and/or governed by the provisions or agreements described in paragraphs II.D.1 and II.D.2.

E.    If a person or entity is a party to a contract or contracts that is/are not Class Contract(s) and another contract or contracts that is/are Class Contract(s), that person or entity is a Class Member only with regard to the Class Contract(s) and is excluded from the Settlement Class with regard to master recordings, and the exploitation thereof, that are not subject to the Class Contract(s).

F.    Where more than one Class Member is a party to and/or a beneficiary of a particular Class Contract, and each is legally entitled to act separately and independently with respect to deciding whether to submit a Claim Form or a Request for Exclusion, each may do so or

refrain from doing so, and thereby bind only himself/herself/itself. Notwithstanding the foregoing, the Settlement Administrator and Defendants shall have the right (subject to the procedures of paragraph VI.C hereof) to reject any Claim Form if they determine, reasonably and based upon evidence, that such individual Class Member lacks the legal right to act separately and independently in submitting a Claim Form and/or a Request for Exclusion, including (for example) because he, she, or it requires approval of, or affirmative action by, some or all of his, her, or its co-parties or another party or beneficiary under the Class Contract (such as a loan-out company or production company).

## III.    DISMISSAL AND RELEASE

A.    Upon final approval of this Stipulation pursuant to paragraph XI:

1.    the Pending Actions will be dismissed in their entirety with prejudice, and Plaintiffs, the Settlement Class, and each Class Member on behalf of themselves, their heirs, executors, administrators, attorneys, predecessors, assignors, successors, and assigns, and any persons they represent, shall be deemed to have, and by operation of the dismissal of the Action shall have, fully, finally, and forever released, relinquished, and discharged the Released Defendant Parties with respect to each and every Released Class Claim and shall forever be enjoined from prosecuting any of the Released Class Claims with respect to each and every Released Defendant Party; covenant not to sue any of the Released Defendant Parties with respect to any of the Released Class Claims; and agree that such Released Class Claims shall not be a part of, or asserted in, any future audits, lawsuits, or otherwise except to the extent expressly provided in paragraph VI.H; and

2.    Defendants, on behalf of themselves, their attorneys, predecessors, assignors, successors, and assigns, and any persons they represent, shall be deemed to have, and by operation of the dismissal of the Action shall have, fully, finally, and forever released, relinquished, and discharged the Released Plaintiff Parties

with respect to each and every Released Defendant Claim and shall forever be enjoined from prosecuting any of the Released Defendant Claims with respect to each and every Released Plaintiff Party; covenant not to sue any of the Released Plaintiff Parties with respect to any of the Released Defendant Claims; and agree that such Released Defendant Claims shall not be a part of, or asserted in, any future audits, lawsuits, or otherwise.

B.    Except as expressly provided in this Stipulation, nothing shall be deemed to terminate, modify, or cancel any provision of any Class Contract, each of which shall otherwise continue in full force and effect in accordance with its terms.  The releases of the Released Class Claims and the Released Defendant Claims pursuant to this Settlement are without prejudice to any other rights or audit rights not encompassed by those releases.

C.    <u>No Assignment of Rights</u>.  Plaintiffs and Class Members who submit Claim Forms warrant and represent that they have not assigned or purported to assign Released Class Claims to any person or entity; otherwise, prior to or concurrently with the submission of a Claim Form, each Plaintiff or Class Member shall advise Defendants in writing that he/she/it has made a purported assignment of any part of his/her/its Released Class Claims, and describe the nature of the purported assignment and the specific identity and proportionate share of each purported assignee.

## IV.    <u>NOTICE TO CLASS MEMBERS</u>

A.    <u>Settlement Administrator</u>.  Defendants will engage an independent third-party settlement administrator (the "Settlement Administrator") to provide certain services in connection with this Stipulation with the consent of Class Counsel, which consent will not be unreasonably withheld.  The costs of the Settlement Administrator, including without limitation the provision of notices and processing of Claim Forms pursuant to paragraphs VI.B through VI.G, will be paid for as incurred by the Settlement Administrator and Defendants, and are deductible from the Fund.

B.    <u>Identification of Class Members</u>:  Defendants will provide the Notice List to the Settlement Administrator within thirty (30) days of entry of the Preliminary Approval Order.

Within forty-five (45) days of entry of the Preliminary Approval Order, the Settlement Administrator will mail the Notice and the Claim Forms to each person or entity on the Notice List by first-class mail.  Prior to mailing the Notice, the Settlement Administrator shall access the National Change of Address Database ("NCOA") and update the mailing address for each such person or entity.  For the avoidance of doubt, the Settlement Administrator may make corrections to an address to make an address valid or complete by, for example, correcting or adding missing zip code information.  Within forty-five (45) days of the mailing of the Notice, the Settlement Administrator will mail a reminder post-card notice in a form to be approved by the Court and the Parties to persons or entities previously sent a Notice who, as of that date, have not submitted a Claim Form, objection, Request for Exclusion, or otherwise contacted the Settlement Administrator to request a Notice or Claim Form.  If a Notice is returned as undeliverable, or is otherwise designated by the Postal Service as having been sent to an invalid address, and neither Defendants nor the Settlement Administrator has an alternative address, then the Settlement Administrator is not required to take further steps to locate such person or entity to send a Notice or post-card notice, but Class Counsel are permitted to, but not required to, take further reasonable steps to locate the person or entity, at their own expense.

C.      The Settlement Administrator will cause the Publication Notice to appear once in Billboard magazine (in one-quarter page size), once in Rolling Stone magazine (in one-half page size), once in the Chicago Tribune (in one-sixth page size), twice in the Los Angeles Times (in one-sixth page size), twice in the New York Times (in one-sixth page size), and twice in the Nashville Tennessean (in 3 columns x 7 in/cm size) within fifteen (15) days before or after the Notice Date or, to the extent not reasonably practicable, the next closest date(s) to the Notice Date. The expenses related to the Publication Notice shall be paid for as incurred by the Settlement Administrator or Defendants, and are deductible from the Fund.

D.      By the earlier of the Notice Date or the first publication of the Publication Notice, and continuing no later than sixty (60) days after the Effective Date, all of the following shall occur:

1          1.      The Settlement Administrator shall establish and maintain a dedicated

2   Settlement Website, where potential Class Members can obtain additional

3   information; download copies of the Notice and Claim Form; view via hyperlinks

4   key case documents, including the Notice, the Claim Form, the Second

5   Consolidated Amended Complaint, this Stipulation, the Preliminary Approval

6   Order, and (after it is filed) Class Counsel's application for attorneys' fees, costs,

7   and enhancement awards; and submit Claim Forms electronically.

8          2.      The Settlement Administrator shall establish and administer a Toll-Free

9   Number whereby potential Class Members can obtain additional information and

10   request that a Claim Form be mailed to them.

11          3.      Counsel for the Parties will work together in good faith to reach agreement

12   on the format of and content of the information to be provided on the Settlement

13   Website and through the Toll-Free Number.  Any dispute regarding the format of

14   or content of the information to be provided on the Settlement Website or through

15   the Toll-Free Number will be submitted to the Court.  At all times, the information

16   available on the Settlement Website will include contact information for Class

17   Counsel.  The web address for the Settlement Website and the Toll-Free Number

18   shall be listed in the Notice.

19   E.      By the earlier of the Notice Date or the first publication of the Publication Notice,

20   Defendants will place a link to the Settlement Website prominently on the homepage of the

21   website http://www.universalmusic.com through the deadline for filing Claim Forms.

22   F.      On or before the Notice Date, the Settlement Administrator shall issue a press

23   release substantially in the form of the Publication Notice to be disseminated to major media

24   outlets.

25   G.      Nothing in this Stipulation shall prohibit Plaintiffs and Class Counsel from

26   performing their duties and/or taking additional steps to maximize notice to or submission of

27   Claim Forms by Class Members, consistent with their professional and ethical obligations,

28

1  provided, however, that the attorneys' fees and costs associated therewith shall be recoverable

2  from the Fund only if approved by Defendants or the Court.

3       H.     Defendants shall provide notice to the proper entities within 10 days after this

4  Stipulation is filed with the Court in connection with the motion for preliminary approval to the

5  extent such notice is required by 28 U.S.C. § 1715.

6  **V.    DISTRIBUTIONS TO AUTHORIZED CLAIMANTS**

7       A.     <u>Past Settlement Relief.</u>  Defendants shall make available the Fund, and shall cause

8  and permit the appropriate share of the Distributable Fund to be paid or credited, as appropriate, to

9  each Authorized Claimant, as determined in accordance with the Settlement Share Calculation

10  Formula, in connection with the second royalty statement generated after the Effective Date.

11       B.     <u>Prospective Settlement Relief – Other Than Capitol Legendary Artists</u>.

12  Commencing with the sale or exploitation of Subject Masters as Downloads and Mastertones in

13  the United States on the first day of the first full semiannual period following final approval of this

14  Stipulation by the Court and entry of the Judgment, Authorized Claimants who are not Capitol

15  Legendary Artists (except as set forth in paragraphs V.C.1 and V.C.2) shall be entitled to the

16  following Prospective Settlement Relief, all subject to the provisions of paragraph V.B.6:

17            1.     For Authorized Claimants whose Class Contract(s) provide that the CD

18            Base Price is determined with reference to a Retail Price, Defendants shall, in the

19            calculation of royalties for the sale or exploitation of Subject Masters as

20            Downloads and Mastertones in the United States, prospectively:  (a) use the CD

21            Royalty Rate applied under such Class Contract(s) as the Prospective Royalty Rate;

22            and (b) use an amount equal to 143% of the Wholesale Price for such Downloads

23            and Mastertones in calculating the Royalty Base Price.

24            2.     For Authorized Claimants whose Class Contract(s) provide that the CD

25            Royalty Rate is calculated on a Penny Rate Basis, but as to which the applicable

26            US Label has previously converted the contractual penny rate to an equivalent

27            royalty rate (the "Converted CD Royalty Rate") and is accounting to the

28

Authorized Claimant on the basis of such Converted CD Royalty Rate as of the Agreement Date, then:

(a)     where the Converted CD Royalty Rate was calculated with reference to a Retail Price, Defendants shall, in the calculation of royalties for the sale or exploitation of Downloads and Mastertones in the United States, prospectively: (i) use such Converted CD Royalty Rate as the Prospective Royalty Rate; and (ii) use an amount equal to 143% of the Wholesale Price for such Downloads and Mastertones in calculating the Royalty Base Price; and

(b)     where the Converted CD Royalty Rate was calculated with reference to a wholesale price, Defendants shall, in the calculation of royalties for the sale or exploitation of Downloads and Mastertones in the United States, prospectively: (i) use such Converted CD Royalty Rate as the Prospective Royalty Rate; and (ii) use an amount equal to 110% of the Wholesale Price for such Downloads and Mastertones in calculating the Royalty Base Price.

3.     For Authorized Claimants whose Class Contract(s) provide that the CD Royalty Rate is calculated on a Penny Rate Basis, and as to which the applicable US Label has not previously converted the contractual penny rate to an equivalent royalty rate, Defendants shall convert such contractual penny rate to a percentage royalty rate by dividing the contractual penny rate by $8.50, and shall, in the calculation of royalties for the sale or exploitation of Downloads and Mastertones in the United States, prospectively:  (a) use such converted royalty rate as the Prospective Royalty Rate; and (b) use an amount equal to 110% of the Wholesale Price in calculating the Royalty Base Price.

4.     For Authorized Claimants whose Class Contract(s) provide that the Royalty Rate Basis is calculated with reference to an accounting charge to a division of a US Label or to another interdivisional price ("Interdivisional Class Contract"), Defendants shall, in the calculation of royalties for the sale or exploitation of

Downloads and Mastertones in the United States subject to such Interdivisional Class Contract(s), prospectively: (a) use forty percent (40%) of the royalty rate applicable to single-disc LPs under such Interdivisional Class Contract(s) as the Prospective Royalty Rate (such that, by way of example only, if the royalty rate applicable to single-disc LPs under a particular Interdivisional Class Contract is 32%, then the Prospective Royalty Rate is 12.8% (*i.e.*, 40% multiplied by 32%)); and (b) use an amount equal to 143% of the Wholesale Price for such Downloads and Mastertones in calculating the Royalty Base Price.

5.     For Authorized Claimants whose Class Contract(s) provide that the CD Base Price is determined with reference to the wholesale price, or to any other price not specified in this paragraph V.B, Defendants shall, in the calculation of royalties for the sale or exploitation of Downloads and Mastertones in the United States, prospectively:  (a) use the CD Royalty Rate applied under such Class Contract(s) as the Prospective Royalty Rate; and (b) use an amount equal to 110% of the Wholesale Price for such Downloads and Mastertones in calculating the Royalty Base Price.

6.     For purposes of calculating Prospective Settlement Relief, when calculating the royalties for sales or exploitation of Downloads and Mastertones in the United States:

(a)     Defendants shall not, in the calculation of royalties, deduct (i) any amount designated in the applicable Class Contract as a packaging charge or packaging deduction or a container charge or container deduction, (ii) any amount designated in the applicable Class Contract as a so-called "new technology," "new media" or "new configuration" deduction, or (iii) any amount designated in the applicable Class Contract as a breakage charge or breakage deduction (collectively "the Gratis Adjustments");

1    (b)    Defendants shall, in the calculation of royalties on Downloads and

2    Mastertones which are actually sold and for which Defendants are paid,

3    calculate royalties on all of such sales without deducting either "standard"

4    free goods or so-called "automatic" free goods; provided, however, for the

5    avoidance of doubt, and consistent with UMGR's general past course of

6    performance under the Ostroff Memo, this subparagraph shall not affect or

7    modify a provision in a Class Contract that royalties shall be paid on less

8    than 100% of sales (such as on 90% or 85% of sales), unless that applicable

9    less-than 100% provision itself contains an express reference to "free

10   goods";

11   (c)    except as expressly provided otherwise in this Stipulation, including

12   without limitation the provisions of paragraphs V.B.6(a) and V.B.6(b), and

13   notwithstanding any policies of royalty calculation followed by any of the

14   US Labels prior to the Effective Date (including without limitation the

15   royalty calculation policies described in the Ostroff Memo), all components,

16   adjustments, escalations, deductions, definitions, and other computation

17   factors provided for in each particular Class Contract in respect of royalty

18   calculations (including without limitation sales volume-based royalty rate

19   escalations, territorial royalty rate adjustments, any royalty base price

20   adjustments (other than the Gratis Adjustments) and arithmetic-only

21   adjustments, and provisions for non-royalty-bearing records, including

22   without limitation non-royalty-bearing "promotional records" and "promo

23   records" distributed at no charge), may continue to be implemented in the

24   calculation of royalties, including without limitation in the calculation of

25   Prospective Settlement Relief; and

26   (d)    the Ostroff Memo and all of the provisions thereof shall be of no

27   force or effect whatsoever.

28

7.      Notwithstanding the foregoing, Prospective Settlement Relief shall not be paid or credited to the account of an Authorized Claimant until the first full semiannual period following the Effective Date.

C.      Prospective Settlement Relief – Capitol Legendary Artists.  Authorized Claimants who are Capitol Legendary Artists shall be entitled to the following Prospective Settlement Relief:

1.      To the extent a Capitol Legendary Artist is party to one or more Class Contracts that meet all of the requirements of paragraph I.L.1, then the provisions of paragraph V.B shall apply with respect to such Class Contract(s), based upon the CD Royalty Rate contained in such Class Contract, without regard to the rate and computation methodology used to calculate royalties for the sale or exploitation of Subject Masters as Downloads and Mastertones in the United States under the Capitol Legendary Artists Program.

2.      Notwithstanding paragraph V.C.1, Capitol may, in its sole discretion, elect to calculate royalties for the sale or exploitation of Subject Masters as Downloads and Mastertones in the United States in the manner that such royalties are calculated under the Capitol Legendary Artists Program, in which case the provisions of paragraphs V.B and V.C.1 shall not apply; provided, however, that if, after the Effective Date, the application of the Capitol Legendary Artists Program as it exists at the time of such calculation would decrease the monetary amount of royalties that would be paid or credited to a Capitol Legendary Artist by applying paragraph V.C.1, then paragraph V.C.1 shall be applied in lieu of the Capitol Legendary Artists Program.

3.      Capitol shall permanently and forever forbear from reversing any amounts of pre-1970 debit balances previously forgiven on the royalty accounts of such Capitol Legendary Artists, or otherwise attempting to reinstitute or recover such debit balances.

D.      Credited Through Royalty Systems To Royalty Accounts.

1.      Defendants shall first apply all Past Settlement Relief and Prospective Settlement Relief (subject to paragraph V.B.7) to any unrecouped balances in the royalty accounts associated with an Authorized Claimant's Class Contract(s), including unrecouped balances in accounts validly cross-collateralized with such royalty accounts pursuant to specific contractual provisions so providing, even if not all such cross-collateralized accounts are derived from or associated with the Class Contract(s).

2.      Class Members entitled to Prospective Settlement Relief whose royalty accounts are recouped will receive Prospective Settlement Relief as part of their periodic royalty payments for so long as Defendants are obligated to pay royalties pursuant to the applicable Class Contracts, unless a Class Contract is otherwise jointly amended, superseded, or terminated by the parties to that Class Contract.

3.      Notwithstanding anything in this Stipulation to the contrary, if the total royalties payable to an Authorized Claimant in connection with the royalty statement reflecting Past Settlement Relief is less than $50, then US Labels may, in their sole and exclusive discretion, defer distribution of such royalties until the total royalties payable to such Authorized Claimant in connection with a regularly-scheduled royalty statement (including such past, undistributed royalties) is equal to or exceeds $50.  With respect to Prospective Settlement Relief and any other royalty statements, a US Label may distribute royalty payments in a manner and on a schedule consistent with its standard policies and practices, as those policies and practices may change from time to time.

## VI.   CLAIM FORMS AND CLAIM FORM PROCESSING

A.      Within sixty (60) days after the Notice Date, completed and executed Claim Forms must be submitted in one of two ways: (1) by mail to the Settlement Administrator, signed by the Claimant or an authorized representative; or (2) by email to the Settlement Administrator with the Claim Form containing a genuine copy of the handwritten signature of the Claimant or an

authorized representative included as a pdf attachment.  A mailed Claim Form with a legible postmark shall be deemed to have been submitted when postmarked.  Emailed Claim Forms or mailed Claims Forms with illegible or missing postmarks shall be deemed to have been submitted when actually received.

B.      The Settlement Administrator shall process Claim Forms, and the Parties will cooperate with the Settlement Administrator to reasonably assist the Settlement Administrator in processing Claim Forms in a competent, professional manner.  To the extent independent contractors or temporary employees, including without limitation contract attorneys, are needed to assist in processing Claim Forms or implementing the Settlement, including under paragraph VI.E, the individuals will be hired by the Settlement Administrator, as approved by Defendants, as reasonable administrative expenses to be deducted from the Fund, and may, with Defendants' approval and consent, be permitted to review and process Claim Forms at a facility maintained by Defendants.  The Settlement Administrator shall determine the extent to which a Claimant is potentially an Authorized Claimant according to the following conditions:

1.      the Claimant is identified on the Notice List or subsequently identified by Defendants as a potential Class Member;

2.      the Claimant is not on an SDN List;

3.      the Claim Form is submitted timely under the deadline established in the Preliminary Approval Order;

4.      the Claim Form is complete (*i.e.*, all applicable fields and requested information on the Claim Form are completed);

5.      the Claim Form is signed by the Claimant or a person or entity purporting to have authority to sign on behalf of the Claimant; and

6.      the Claimant has not submitted a Request for Exclusion.

C.      For all Claimants who submit a timely Claim Form, if the Settlement Administrator determines that the Claim Form is not complete or has not been signed by the Claimant or a person or entity purporting to have authority to sign on behalf of the Claimant, then the Settlement

1   Administrator shall notify the Claimant in writing of any such deficiencies by letter or email,

2   depending on which method the Claimant used to submit the Claim Form; provided, however, that

3   if a Claimant has submitted both a timely Request for Exclusion and a timely Claim Form or

4   objection, the Settlement Administrator shall notify the Claimant in writing and request that the

5   Claimant specify whether the Claimant intends to opt-out or instead participate in the Settlement

6   and, if applicable, cure any deficiencies in the Claim Form.  Any Claimant who fails to cure each

7   and every deficiency identified by the Settlement Administrator, or respond to a request for

8   clarification by stating that the Claimant either intends to opt-out or participate in the Settlement,

9   within the later of (1) the deadline for submitting Claim Forms or (2) thirty (30) days from when

10  the Settlement Administrator sends a deficiency notice, shall not be an Authorized Claimant and,

11  if the Claimant submitted a timely Request for Exclusion, shall be deemed to have opted-out of the

12  Settlement Class.  If, on the other hand, a Claimant timely cures each and every deficiency, and/or

13  timely responds to a request for clarification by indicating an intent to participate in the

14  Settlement, then the Claimant shall be treated as potentially an Authorized Claimant.

15          D.      The Settlement Administrator shall deny all Claim Forms that do not satisfy all of

16  the requirements of paragraph VI.B, and have not been timely cured under paragraph VI.C;

17  provided, however, that the Settlement Administrator shall promptly advise Defendants of all

18  Claim Forms that do not satisfy VI.B.1 so that, before such Claim Forms are denied, the

19  Settlement Administrator and Defendants can determine whether such persons are potential Class

20  Members.  The Settlement Administrator shall provide or make readily available to Defendants

21  Claim Forms that satisfy all of the requirements of paragraph VI.B or VI.C within fifteen (15)

22  days of having processed such Claim Forms, and in all events shall complete the processing of all

23  Claim Forms no later than thirty (30) days after the later of the expiration of the deadline for

24  submitting Claim Forms or receipt of the last timely response to a deficiency notice.

25          E.      Upon completing the processing of Claim Forms, including any timely responses to

26  deficiency notices, the Settlement Administrator shall provide or make readily available to the

27  Parties a complete set of Claim Forms for Administrator-Passed Claimants, including any and all

28

supporting exhibits, correspondence, and a computerized list with information about each Administrator-Passed Claimant in a format acceptable to Defendants.[2]  With the assistance of the Settlement Administrator, Defendants shall have one hundred twenty (120) days from receipt or provision of such documents and information to determine the following:

> 1. the Claimant is a Class Member;
>
> 2. the Claim Form was signed by the Claimant or a person or entity authorized to sign on behalf of the Claimant;
>
> 3. the terms of a Class Contract do not render the Claimant ineligible to participate in this Settlement due to the submission of a Request for Exclusion by another Class Member; and
>
> 4. the Claimant is not a person subject to the exclusions set forth in paragraphs II.C, II.D, II.E, and/or II.F.

To receive Past Settlement Relief or Prospective Settlement Relief, Class Members must submit a timely and valid Claim Form to the Settlement Administrator.  Any Class Member who elects not to submit a Claim Form, who submits an untimely or invalid Claim Form, or who fails to timely cure a deficiency in a Claim Form shall be forever barred from receiving any Past Settlement Relief or Prospective Settlement Relief, but shall in all other respects be bound by all of the terms of this Stipulation, including the releases provided for herein.

> F. Within six (6) months of the Effective Date, Defendants will provide a report to Class Counsel memorializing the work in each of the Administrative Categories (the "Settlement Class Relief Report"), which shall be deemed Confidential under the terms of the protective order governing the Action (Dkt. 48 in Case No. CV-11-01613 SI (MEJ)).  Class Counsel or other counsel who have notified the Settlement Administrator or Defendant that they are appearing for an Authorized Claimant will have ninety (90) days to object to any of the

---

[2] For the avoidance of doubt, at any time, Defendants may in their sole and exclusive discretion request that the Settlement Administrator provide or make accessible any or all such documents or information as may exist about potential Class Members and Claimants, including respecting Claimants whose Claim Forms do not satisfy the requirements of paragraph VI.B or VI.C.

determinations/calculations after receipt of the Settlement Class Relief Report or, with respect to other counsel or authorized professional representatives, the portion of the Settlement Class Relief Report relating to their individual client(s).  If there are no objections within those ninety (90) days, the Settlement Class Relief Report shall be final.  If there are objections, the Settlement Class Relief Report shall be final as to any and all portions not objected to, and the Parties will have thirty (30) days after receipt by Defendants of the objections to meet and confer to resolve the objections.

G.      Any and all disputes arising out of or relating to whether the Settlement Administrator or Defendants have properly denied or rejected a Claim Form in whole or in part that cannot be resolved informally shall be presented to the Court.  In the event the Court appoints a Special Master or other judicial or quasi-judicial officer to address such dispute at the Parties' or any Party's expense in whole or in part, the fees and costs of such officer shall be deductible from the Fund; provided, however, that any dispute by or on behalf of a person or entity who is not an Administrator-Passed Claimant shall be raised within sixty (60) days of the later of the expiration of the deadline for submitting Claim Forms or the date the Settlement Administrator provides written notice to a person or entity that he, she, or it is not a Class Member and/or an Authorized Claimant, after which time the Settlement Administrator's decision shall be deemed final.

H.      The determinations/calculations by Defendants regarding the processing of Claim Forms cannot be challenged in audit, litigation, arbitration, or otherwise by any Class Member with only two exceptions:

1.      If, during an audit or otherwise, within one year after being paid or credited with Past Settlement Relief, an Authorized Claimant notifies Defendants in writing of an alleged error in the calculation of his/her/its share under the Settlement Share Calculation Formula, then the Authorized Claimant will be entitled to seek a correction of the amount to be paid or credited as Past Settlement Relief.  For avoidance of doubt, nothing herein shall revive any contractual or other right of any Class Member that has expired, lapsed, or otherwise been extinguished, including

by reason of any notice, contractual, and/or statute of limitations period(s) applicable under the Class Contract(s), including without limitation those notice, contractual, and/or statute of limitations period(s) applicable to the sale or exploitation of Subject Masters as Downloads/Mastertones/Streams previously paid, credited, or reported to the Authorized Claimant, as well as all other terms of the Class Contract(s).

2.      If an Authorized Claimant notifies Defendants in writing, within one year after receiving the first royalty statement in which he/she/it has been paid or credited with Prospective Settlement Relief, that the method of calculating royalties for Downloads or Mastertones utilized by Defendants is allegedly not consistent with this Stipulation, then the Authorized Claimant will be entitled to seek a correction of such method of calculation consistent with the provisions of this Stipulation.  For avoidance of doubt, nothing herein shall revive any contractual or other right of any Class Member that has expired, lapsed, or otherwise been extinguished, including by reason of any applicable notice, contractual, and/or statute of limitations period(s), as well as all other terms of the Class Contract(s).

I.      If an Authorized Claimant seeks a correction pursuant to paragraphs VI.H.1 or VI.H.2, then in addition to any other response to such requested correction and in addition to any other rights that Defendants may have, Defendants shall have the right to recalculate pursuant to paragraph I.ZZ.1 or I.ZZ.2, as applicable, any Past Settlement Relief for such Authorized Claimant that previously was calculated under paragraph I.ZZ.3(a), and to setoff any amount claimed by such Authorized Claimant, or otherwise recoup from such Authorized Claimant, the difference between the previously-calculated Past Settlement Relief and the recalculated Past Settlement Relief to the extent the former is greater than the latter.

J.      If Defendants dispute an Authorized Claimant's demand(s) under paragraph VI.H.1 or VI.H.2, and the dispute cannot be resolved within ninety (90) days after Defendants receive written notice of the dispute, then the dispute will be decided by the Court.  In the event the Court

appoints a Special Master or other judicial or quasi-judicial officer to address such dispute at the Parties' or any Party's expense in whole or in part, the fees and costs of such officer shall be deductible from the Fund, including as applicable the reserve provided for in paragraph I.Q, unless the Court rules otherwise.  Once final, the Authorized Claimant cannot pursue the same demand(s) at any time in any forum.

K.      The originals of all Claim Forms received from Claimants (including any emails, envelopes with postmarks, and other communications between the Settlement Administrator and Claimants) shall be retained by the Settlement Administrator until thirteen months after Authorized Claimants are first paid or credited with Past Settlement Relief; provided, however, that if Class Counsel, Defendants, or a Claimant notify the Settlement Administrator of an ongoing dispute within thirteen months after Authorized Claimants are first paid or credited with Past Settlement Relief, then the Settlement Administrator shall continue to preserve the originals of such materials until the dispute is resolved or, at Defendants' election, provide the originals to Defendants.

L.      Neither paragraph VI.H.1 nor VI.H.2 is intended or should be construed to grant any audit right to, or broaden any audit right possessed by, any Authorized Claimant, Claimant, or Class Member not already possessed by them pursuant to contract or otherwise according to law, or to limit a US Label's right to seek recovery, recoupment, or set-off for overpayments, including without limitation as set forth in paragraph VI.I.  Except as specifically set forth herein, none of the provisions of this Stipulation, including the manner in which Defendants will account to Authorized Claimants for Prospective Settlement Relief, may be challenged by any Class Member or Authorized Claimant on any basis whatsoever.

## VII.    ATTORNEYS' FEES AND EXPENSES

A.      Subject to the Court granting final approval to this Stipulation, and subject to subsequent requests against the reserve provided for in Paragraph I.Q, Class Counsel can apply to the Court for an award of attorneys' fees in an amount not to exceed $2,875,000 and, in addition, verified costs in an amount not to exceed $450,000, to be deducted from the Fund.  Defendants

agree not to oppose or to submit any evidence or argument challenging or undermining an

application for attorneys' fees or costs consistent with the preceding sentence.  The payment of

attorneys' fees, costs, and expenses awarded by the Court shall be the total obligation of

Defendants to pay attorneys' fees, costs, and expenses of any kind to Plaintiffs or Class Counsel.

Notwithstanding anything contained herein to the contrary, if the Court does not approve the

award of attorneys' fees or costs requested by Class Counsel, or the Court awards attorneys' fees

or costs in an amount less than that requested by Class Counsel, but otherwise approves the terms

of this Stipulation, then such decision shall not affect the validity and enforceability of the

Settlement and shall not be a basis for anyone to seek to terminate or void the Settlement or for

rendering any other provision of this Stipulation null, void, or unenforceable.  Class Counsel retain

their right to appeal any such decision by the Court regarding attorneys' fees or costs.  The amount

awarded by the Court shall be payable by Defendants to Class Counsel in the form of a direct

deposit or other similar means within the later of ten (10) business days after the Effective Date or

five (5) business days after Class Counsel provide Defendants with instructions for payment(s)

signed or otherwise approved in writing by each Class Counsel and a W-9 tax form executed by

each payee and a completed ACH (direct deposit) form containing each payee's banking

information.  It shall be the option of Class Counsel as to whether Defendants shall pay the full

amount to one designated Class Counsel, or make separate payments to multiple Class Counsel.

All Class Counsel hereby confirm that a payment to one Class Counsel, if requested, shall suffice

and shall satisfy Defendants' obligations hereunder and that Defendants have no responsibility for

its distribution thereafter.

       B.      In the event the Court's order granting final approval to this Stipulation is not

appealed, but a Class Member appeals the amount of attorneys' fees, costs, and/or enhancement

awards approved by the Court, so long as any such appeal does not also challenge the validity or

enforceability of the Settlement, seek to set aside the Settlement, or seek to modify any other

provision of this Stipulation, notwithstanding paragraphs XII.C.4, the Parties shall perform all of

their obligations pursuant to this Stipulation as if there was no appeal, except those relating to the

payment of attorneys' fees, costs, and/or enhancement awards, provided that every other condition set forth in paragraphs XII.A and XII.C is satisfied.  For the avoidance of doubt, the Parties will proceed as if there is no appeal only if the only possible outcome of an appeal could be to decrease the amount of attorneys' fees, costs, and/or enhancement awards approved by the Court.

## VIII.   ENHANCEMENT AWARDS

Subject to the Court granting final approval to this Stipulation, Plaintiffs can apply to the Court for enhancement awards to compensate them for their commitment and efforts on behalf of the Settlement Class to be deducted from the Fund.  For the following Plaintiffs or representatives of Plaintiffs who were deposed on two occasions, Plaintiffs can apply to the Court for an award of $22,500 each:  (1) David Coverdale, (2) Dave Mason, (3) Carlton Ridenhour, (4) Ron Tyson, and (5) Dennis King (for benefit of the James Ambrose Johnson Jr. Trust).  For the following Plaintiffs who were deposed on one occasion, Plaintiffs can apply to the Court for an award of $13,500 each: (1) Robert Walter "Bo" Donaldson, (2) William Mclean (pka Black Sheep), and (3) Andres Titus (pka Black Sheep).  For the following Plaintiff and group who were not deposed, but assisted with the Pending Actions, including discovery therein, Plaintiffs can apply for: (1) $7,500 for Martha Davis and (2) $5,000 for each of the "Tavares" – (a) Ralph Vierra Tavares, (b) Arthur Paul Tavares, (c) Feliciano Vierra Tavares, (d) Antone Lawrence Tavares, and (e) Perry Lee Tavares.  Any enhancement awards will be payable by Defendants to Plaintiffs in the form of a direct deposit or other similar means within the later of fifteen (15) business days after the Effective Date or fifteen (15) business days after Class Counsel provide Defendants with instructions for payment(s) and a W-9 tax form executed by each payee and a completed ACH (direct deposit) form containing each payee's banking information.  All Plaintiffs and Class Counsel hereby confirm that payment(s) made pursuant to such instructions shall suffice and shall satisfy Defendants' obligations hereunder and that Defendants have no responsibility for its distribution thereafter.

## IX.    **OPT-OUT RIGHTS**

A.      All persons who otherwise would be Class Members may elect to exclude themselves from (opt out of) the Settlement Class and the Action by submitting a written request for exclusion pursuant to procedures to be established by the Court ("Request for Exclusion").  All persons or entities who submit valid and timely Requests for Exclusion will be excluded from the Settlement Class and the Action unless certification of the Settlement Class is vacated.  No person or entity who submits a valid and timely Request for Exclusion will have standing to submit any objection to the terms of this Stipulation.  All Class Members who do not submit valid and timely Requests for Exclusion will be bound by the resolution of any and all issues arising in connection with the claims in the Action, including all provisions of this Stipulation, including without limitation the release set forth in paragraph III.A.1.

B.      The Parties will jointly propose that the Court establish the following procedures for Requests for Exclusion:

1.      All Requests for Exclusion must be mailed to the Settlement Administrator at the address set forth in the Notice or Publication Notice, and the Settlement Administrator shall make copies available to the Parties upon request.

2.      All Requests for Exclusion must be postmarked or received no later than the date that is sixty (60) days after the Notice Date.

3.      All Requests for Exclusion must be signed by Class Members or on behalf of Class Members by authorized representatives.

4.      Natural persons submitting Requests for Exclusion on behalf of themselves must state their full names and current addresses, the name(s) under which they performed or produced, either individually or as a member of a group, and, if known, the approximate date(s) of the Class Contract(s).

5.      Requests for Exclusion by authorized representatives must state the full names and current addresses of the persons or entities sought to be excluded, the names and titles of the representatives purporting to act on their behalf, where

applicable, the names of the artists or groups who created Subject Masters, and, if known, the approximate date(s) of the Class Contract(s).

6.     Requests For Exclusion also must contain a statement substantially to the effect of: "I/we hereby request that I/we be excluded from the proposed class in the *James* litigation," where "the *James* litigation" is defined with reference to the parties and claims in the Second Consolidated Amended Complaint.

## X.     OBJECTION RIGHTS

A.     Any Class Member who does not submit a valid Request for Exclusion may object to the Settlement, including attorneys' fees, costs, or enhancement awards, by submitting a written objection ("Objection") pursuant to procedures to be established by the Court.

B.     In connection with seeking preliminary approval, Plaintiffs and Class Counsel shall propose that the Court establish the following procedures for Objections:

1.     All Objections must be filed with the Clerk of the Court at the address set forth in the Notice or Publication Notice, with copies sent to Class Counsel and Defendants' counsel at the addresses set forth in the Notice or Publication Notice.

2.     All Objections must be filed or postmarked no later than the date that is sixty (60) days after the Notice Date.

3.     All Objections must be signed by Class Members or on behalf of Class Members by authorized representatives.

4.     Natural persons submitting Objections on behalf of themselves must state their full names and current addresses, the name(s) under which they performed or produced, either individually or as a member of a group, and, if known, the approximate date(s) of the Class Contract(s).

5.     Objections by authorized representatives must state the full names and current addresses of the persons or entities on whose behalf they are objecting, the names and titles of the representatives purporting to act on their behalf, where

applicable, the names of the artists or groups who created Subject Masters, and, if known, the approximate date(s) of the Class Contract(s).

6.       Objections must set forth in writing all objections and the reasons therefor, and include any and all supporting papers (including, without limitation, all briefs, written evidence, and declarations).

7.       Class Members submitting Objections who wish to appear at the Fairness Hearing and present their objections to the Court orally must include a written statement of intent to appear at the Fairness Hearing with their Objections.  Only Class Members who submit timely written Objections stating that they intend to appear at the Fairness Hearing in person or through authorized representatives will have a potential right to present Objections orally at the Fairness Hearing.

## XI.   FAIRNESS HEARING AND FINAL APPROVAL

A.       Fairness Hearing.  Within sixty (60) days of when Defendants provide the results of their review of Claim Forms under paragraph VI.E to the Settlement Administrator, Plaintiffs shall move for final approval of this Stipulation, including approval of any attorneys' fees, costs, and enhancement awards under sections VII and VIII, and request that the Court hold a hearing to consider (1) any timely Objections submitted by Class Members and (2) whether the terms of this Stipulation should be finally approved by the Court as a fair, reasonable, and adequate settlement (the "Fairness Hearing").  If the Court grants final approval to the terms of this Stipulation, the Court also will consider (3) whether the application by Class Counsel for an award of reasonable attorneys' fees and reimbursement of their reasonable costs and expenses should be granted and (4) whether the application of Plaintiffs for enhancement awards should be granted.

B.       Best Efforts.  At the Fairness Hearing, Plaintiffs, Class Counsel, and Defendants will use their best efforts to urge the Court to grant approval to the terms of this Stipulation (including any modification made thereto with the consent of the Parties), and to enter an order and final judgment (the "Judgment") as follows:

STIPULATION AND AGREEMENT OF SETTLEMENT

1.      finalizing certification of the Settlement Class for settlement purposes and finding that the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been met for purposes of the Settlement Class;

2.      finding that the dissemination of the Notice and the Publication Notice, in the form and manner ordered by the Court in the Preliminary Approval Order, has been accomplished as directed, satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, was the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled thereto;

3.      finding that Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class;

4.      approving this Stipulation as fair, reasonable, and adequate and directing consummation of the terms of this Stipulation;

5.      dismissing the Pending Actions in their entirety with prejudice;

6.      releasing and discharging the Released Defendant Parties from any and all liability with respect to the Released Class Claims;

7.      providing that in order to protect the continuing jurisdiction of the Court and to protect and effectuate the Court's Judgment in this Action, including during the pendency of an appeal, Plaintiffs and all Class Members, and anyone acting on their behalf (including, but not limited to, attorneys, representatives, and agents of Plaintiffs or another Class Member), are permanently and forever barred and enjoined from instituting, commencing, or continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or in any other capacity of any kind whatsoever, any action in this Court, any other federal court, any state court, or any other tribunal or forum of any kind, against any of the Released Defendant Parties that asserts any claims that are Released Class Claims (except as necessary to enforce the terms of this Stipulation); and providing that, in

the event such an action is filed during the pendency of an appeal in this Action, it shall be stayed pending the outcome of the appeal; and further providing that any person or entity who knowingly violates such injunction may be subject to any appropriate sanctions, including but not limited to payment of attorneys' fees and costs incurred by any Released Defendant Party as a result of the violation;

8.      awarding reasonable attorneys' fees and reimbursement of reasonable costs and expenses to Class Counsel in accordance with section VII;

9.      ruling on Plaintiffs' applications for enhancement awards in accordance with section VIII; and

10.     reserving continuing and exclusive jurisdiction over all matters related to the administration and consummation of the terms of this Stipulation, over the enforcement, construction, and interpretation of this Stipulation, over the enforcement, construction, and interpretation of the Judgment, including, but not limited to, the provisions therein enjoining any further litigation of Released Class Claims, and over Plaintiffs and Class Members (and their attorneys and law firms) in connection therewith.

## XII.   CONDITIONS OF SETTLEMENT, EFFECTIVE DATE, AND TERMINATION

A.      This Stipulation is subject to and conditioned upon (1) the occurrence of each of the events set forth in paragraph XII.C; and (2) entry of the Judgment contemplated by this Stipulation.

B.      Defendants may terminate this Stipulation within thirty (30) days of the following:

1.      failure of a condition of settlement required by paragraph XII.A;

2.      if, after the deadline for receiving Requests For Exclusion, Defendants timely exercise their right to terminate under the Confidential Supplemental Agreement in light of valid Requests for Exclusion by Class Members (the "Opt-Out Threshold").  The Parties shall seek to keep the Opt-Out Threshold confidential.  If the Court directs that the Confidential Supplemental Agreement be

filed prior to the deadline for submitting Requests for Exclusion, no Party shall have any right to any relief by reason of such disclosure.

C.    The Effective Date of Settlement shall be the date when all of the following shall have occurred:

1.    entry of a Preliminary Approval Order that is consistent with the terms of this Stipulation (including the Confidential Supplemental Agreement) in all material respects, or with which the Parties agree to proceed as modified;

2.    final approval by the Court of this Stipulation, following notice to the Settlement Class and a Fairness Hearing, that is consistent with the terms of this Stipulation in all material respects, or with which the Parties agree to proceed as modified;

3.    dismissal of the Pending Actions in their entirety with prejudice, and of any related actions that have been stayed or administratively closed pursuant to the Settlement, as contemplated by this Stipulation;

4.    the expiration of any time for appeal of the Judgment, or, if any appeal is filed, after such appeal is dismissed or the Judgment is either (a) upheld on appeal in all material respects and the decision is no longer subject to review upon appeal or by writ of certiorari, or (b) modified on appeal, and the Parties agree to proceed with the Stipulation, Settlement Class, or Judgment as modified on appeal; and

5.    expiration of any deadline to terminate this Stipulation.

D.    Except as otherwise expressly provided herein, if the Effective Date fails to occur for any reason or the Stipulation is terminated, then:

1.    the Stipulation shall be deemed null and void and to have been made without prejudice to any Party, such that each Party shall retain all of their respective rights as they existed prior to execution of this Stipulation and the filing of the Second Consolidated Class Action Complaint and shall be deemed to have reverted to their respective status in the Pending Actions as of the Agreement Date;

2.      the certification of the Settlement Class shall be deemed null and void; any findings or stipulations regarding certification of the Settlement Class will be automatically vacated upon notice to the Court; Defendants shall be deemed to have retained all rights to object to the maintenance of the Pending Actions as class actions; and Defendants shall be deemed not to have waived, modified, or be estopped from asserting any additional defenses to certification or the merits available to them.

3.      Plaintiffs shall not raise or rely upon any such findings, stipulations, or certification in connection with any subsequent request for class certification in this or any pending or subsequent proceeding;

4.      neither this Stipulation, nor its accompanying Confidential Supplemental Agreement, the Notice List, any orders entered by the Court in connection with this Stipulation, nor any findings or determinations by the Settlement Administrator shall be admissible or used for any purpose in this or any of the Pending Actions or subsequent proceeding; and

5.      the Parties shall stipulate to voluntary dismissal without prejudice of the Second Consolidated Class Action Complaint and for reinstatement or reopening of the UMGR Complaints and Capitol Complaints that were pending as of the date of filing of the Second Consolidated Amended Complaint, in the respective form and courtroom in which each such UMGR Complaint and Capitol Complaint was pending immediately prior to the filing of the Second Consolidated Amended Complaint.  In such event, the Parties shall cooperate in arranging for the lifting of any stay and/or the re-opening of any actions, such as the Capitol Complaints, that were stayed or administratively closed as contemplated by this Stipulation.  After any such lifting of a stay and/or re-opening, Plaintiffs reserve the right (but shall not be obligated) to seek consolidation of the UMGR Actions and the Capitol

1         Actions in the same courtroom, and Defendants reserve the right to oppose such

2   consolidation.

3       E.    Defendants agree that, if the Effective Date does not occur, they cannot recover any

4   funds already spent by the Settlement Administrator or Defendants on notice or settlement

5   administration pursuant to this Stipulation, and that they will pay for any such expenses already

6   incurred but not yet paid.

7   **XIII.  NO ADMISSION OF WRONGDOING**

8       A.    Defendants deny any wrongdoing, negligence, fault, or liability of any kind

9   associated with the claims alleged and contend that the Pending Actions are not appropriate for

10  class or collective action treatment pursuant to Rule 23 of the Federal Rules of Civil Procedure or

11  any other federal or state rule, statute, law, or provision.  Defendants continue to assert that the

12  Pending Actions fail to meet the prerequisites necessary for class or collective action treatment

13  under applicable law, especially, but not solely, with respect to predominance and manageability

14  because the need to determine individualized issues makes the Pending Actions unmanageable

15  consistent with due process.  Defendants further deny that the Pending Actions state a cause of

16  action; that the practices as to which Plaintiffs seek relief violate any law or are wrongful in any

17  way whatsoever; that Defendants have breached any contract with any Plaintiff, Class Member, or

18  alleged Class Member; and that any Plaintiff, Class Member, or alleged Class Member is entitled

19  to any relief whatsoever.  Defendants further agree that notwithstanding their good faith belief that

20  they are not liable for any of the claims asserted, and despite their good faith belief that

21  certification of a litigation class is not appropriate, Defendants will not oppose the Court's

22  certification of the Settlement Class contemplated by this Stipulation solely for purposes of

23  effectuating this Settlement.  Defendants do not waive their right to object to certification of the

24  Settlement Class or any other class in the Pending Actions or any other lawsuit as a litigation

25  class.

26      B.    This Stipulation (including the Confidential Supplemental Agreement), orders and

27  any other documents referred to in or entered as a result of this Stipulation, any terms or

28

provisions of the Stipulation, and any negotiations or proceedings related to this Stipulation, whether or not consummated, shall not be:

1.      offered or received against any Released Defendant Party as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission of the truth of any fact alleged by Plaintiffs or the validity of any claim that has been or could have been asserted in the Pending Actions or in any other litigation, or the deficiency of any defense that has been or could have been asserted in the Pending Actions or in any other litigation, or any wrongdoing, negligence, fault, or liability of any Released Defendant Party;

2.      offered or received against any Released Defendant Party as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Released Defendant Party, or against Plaintiffs and the Settlement Class as evidence of any infirmity in their claims;

3.      offered or received against any Released Defendant Party as evidence of a presumption, concession, or admission of any wrongdoing, negligence, fault, or liability, or in any way referred to for any other reason as against any of the Parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding, other than as may be necessary to effectuate the provisions of this Stipulation; for the avoidance of doubt, if this Stipulation (including the releases provided herein) is approved by the Court, any Released Defendant Party may refer to it and attach it as an exhibit in a public filing for the purpose of effectuating the liability protection and releases granted hereunder;

4.      construed against any Released Defendant Party, Plaintiffs, or the Settlement Class as a concession or admission that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial; or

5.      construed as or received in evidence as an admission, concession or

presumption against Plaintiffs or Class Members that any of their claims are

without merit, or that any defenses asserted by Defendants have any merit, or that

damages recoverable in the Pending Actions would not have exceeded the Past

Settlement Relief and Prospective Settlement Relief.

## XIV.   MISCELLANEOUS PROVISIONS

A.      Confirmatory Discovery.  Prior to the first date set for the hearing on the

application for the Preliminary Approval Order, Class Counsel may, at their own expense, retain a

royalty auditor who is reasonably experienced in the U.S. recording industry, is a qualified

Certified Public Accountant in California, has not at any time since the Agreement Date been

involved in audits of or claims against any US Label raising issues identical or similar to those

raised in the Pending Actions and is approved by Defendants, which approval will not be

unreasonably withheld, to confirm the assumptions and revenue figures used by the Parties in

analyzing potential damages in the settlement negotiations.

B.      Except as expressly provided herein in paragraphs I.Q, IV.G, VII.A, and XII.E,

expenses incurred by the Parties in connection with negotiating, implementing, or attempting to

implement this Stipulation are not recoverable from the Fund or each other, including if the

Effective Date fails to occur or the Stipulation is terminated.

C.      To the extent this Stipulation requires a percentage or royalty rate to be calculated,

such numbers shall be calculated to the first decimal place.

D.      The Confidential Supplemental Agreement is hereby incorporated by reference as

though fully set forth herein.

E.      The Parties intend the Stipulation to be a final and complete resolution of all

disputes asserted or that could be or could have been asserted by Plaintiffs and/or Class Members

against the Released Defendant Parties with respect to the Released Class Claims.  Defendants

agree not to assert that the litigation was brought in bad faith or without a reasonable basis.  The

Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure

1  relating to the prosecution, defense, or settlement of the Pending Actions.  The Parties agree that

2  the amounts to be paid or credited and the other terms of the Settlement were negotiated at arm's

3  length in good faith by the Parties, and reflect a settlement that was reached voluntarily by the

4  Parties after consultation with their respective experienced legal counsel and the assistance of an

5  experienced neutral mediator.

6        F.     This Stipulation may not be modified or amended, including by the Court or on

7  appeal, nor may any of its provisions be waived, except by a writing signed by counsel for all

8  Parties or their successors-in-interest consenting to proceed with the Stipulation or Settlement

9  Class as modified or amended.

10        G.     The headings herein are used for the purpose of convenience only and are not

11  meant to have legal effect.

12        H.     All counsel and any other person executing this Stipulation and the Confidential

13  Supplemental Agreement hereto, or any related settlement documents, warrant and represent that

14  they have the full authority to do so and that they have the authority to take appropriate action

15  required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

16        I.     This Stipulation shall be binding upon, and inure to the benefit of, the successors

17  and assigns of the Parties.

18        J.     The construction, interpretation, operation, effect, and validity of this Stipulation

19  and all documents necessary to effectuate it shall be governed by the internal laws of the state of

20  California without regard to conflicts of laws, except to the extent that preemption by federal law

21  requires that federal law govern.

22        K.     This Stipulation shall not be construed more strictly against one Party than another

23  merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of

24  the Parties, it being recognized by the Parties that this Stipulation is the result of arm's length

25  negotiations and that all Parties have contributed substantially and materially to the preparation of

26  every element of this Stipulation.

27

28

1    L.    The waiver by one Party of any breach of this Stipulation by any other Party shall
2  not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

3    M.    Except as expressly modified herein, deadlines in this Stipulation shall be
4  calculated in the same manner as under the Federal Rules of Civil Procedure.

5    N.    This Stipulation and the Confidential Supplemental Agreement constitute the entire
6  agreement among the Parties hereto concerning the Settlement of the Action, and no
7  representations, warranties, or inducements have been made by any Party hereto other than those
8  contained and memorialized in such documents.

9    O.    This Stipulation and the Confidential Supplemental Agreement may be executed in
10  one or more counterparts.  All executed counterparts of the Stipulation, Confidential Supplemental
11  Agreement, or an execution page, and each of them, shall be deemed to be part of one and the
12  same instrument.  A fax, electronic, scanned PDF, and/or other copy of a signed counterpart
13  capable of reproduction shall be deemed an original and shall have the same force and effect as a
14  signed original.

15    P.    No opinion or advice concerning the tax consequences of the proposed Settlement
16  to individual Class Members or Class Counsel is being given or will be given by Class Counsel,
17  Defendants' counsel, or the Released Defendant Parties; nor is any representation or warranty in
18  this regard made by virtue of this Stipulation.  Each Class Member and Class Counsel's tax
19  obligations, and the determination thereof, are the sole responsibility of the Class Member and
20  Class Counsel, and it is understood that the tax consequences may vary depending on the
21  particular circumstances of each individual Class Member and Class Counsel.  Notwithstanding
22  the foregoing, Defendants may report its payments pursuant to this Settlement in accordance with
23  their ordinary business practices, including without limitation at the direction of their accountants.

24    Q.    The Parties hereto: (1) acknowledge that it is their intent to consummate this
25  Stipulation; and (2) agree to cooperate to the extent necessary to effectuate and implement all
26  terms and conditions of this Stipulation and to exercise their best efforts and to act in good faith to
27  accomplish the foregoing terms and conditions of the Stipulation.

28

Dated: _April 8___, 2015

By: _Ralph Vierra Tavares_
Print Name: Ralph Vierra Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Arthur Paul Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Feliciano Vierra Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Antone Lawrence Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Perry Lee Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Ralph Vierra Tavares

Title:  Individually and p/k/a Tavares

Dated: April 07, 2015

By: _Arthur P. Tavares_____
Print Name:  Arthur Paul Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Feliciano Vierra Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Antone Lawrence Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Perry Lee Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Ralph Vierra Tavares

Title: _Individually and p/k/a Tavares_____

Dated: _____, 2015

By:_____
Print Name:  Arthur Paul Tavares

Title: _Individually and p/k/a Tavares_____

Dated: _April  8____, 2015

By:_Feliciano vierra Tavares_____
Print Name:  Feliciano Vierra Tavares

Title: _Individually and p/k/a Tavares_____

Dated: _____, 2015

By:_____
Print Name:  Antone Lawrence Tavares

Title: _Individually and p/k/a Tavares_____

Dated: _____, 2015

By:_____
Print Name:  Perry Lee Tavares

Title: _Individually and p/k/a Tavares_____

Dated: _____, 2015

By: _____
Print Name:  Ralph Vierra Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Arthur Paul Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Feliciano Vierra Tavares

Title: _Individually and p/k/a Tavares_

Dated: 04/07/15 , 2015

By: _Antone Lawrence Tavares_
Print Name:  Antone Lawrence Tavares

Title: _Individually and p/k/a Tavares_

Dated: _____, 2015

By: _____
Print Name:  Perry Lee Tavares

Title: _Individually and p/k/a Tavares_

55
CV 11-01613 SI (MEJ)

STIPULATION AND AGREEMENT OF SETTLEMENT

Dated: _____, 2015

By: _____
Print Name:  Ralph Vierra Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Arthur Paul Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Feliciano Vierra Tavares

Title:  Individually and p/k/a Tavares

Dated: _____, 2015

By: _____
Print Name:  Antone Lawrence Tavares

Title:  Individually and p/k/a Tavares

Dated: 4/8/15, 2015

By: _____
Print Name:  Perry Lee Tavares

Title:  Individually and p/k/a Tavares

Dated: _APRIL 8_, 2015

_Robert Walter Donald_

_B Dorold_

By: _ROBERT WALTER "BO" DONALDSON_
Print Name:

Title: _PLAINTIFF_

Dated: _____, 2015

By:_____
Print Name:

Title:_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

55

CV 11-01613 SI (MEJ)

STIPULATION AND AGREEMENT OF SETTLEMENT

Dated: 4-8 _____, 2015

By: _____
Print Name: David Coverdale, by AND FOR
Title: Whitesnake Productions (Overseas) Ltd.

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

1  Dated: _April 8_, 2015

2

3                                        By: _Dennis King_
                                         Print Name:
4
                                         Title: _Trustee_

5  Dated: _____, 2015

6

7                                        By:_____
                                         Print Name:_____
8
                                         Title:_____
9

10 Dated: _____, 2015

11

12                                       By:_____
                                         Print Name:_____
13
                                         Title:_____
14 Dated: _____, 2015

15

16                                       By:_____
                                         Print Name:_____
17
                                         Title:_____
18

19 Dated: _____, 2015

20

21                                       By:_____
                                         Print Name:_____
22
                                         Title:_____
23

24

25

26

27

28

Dated: _____, 2015

By: _____
Print Name: DAVID MASON
Title: plaintiff

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

Dated: _____, 2015

By: _____
Print Name: _____
Title: _____

55
STIPULATION AND AGREEMENT OF SETTLEMENT

CV 11-01613 SI (MEJ)

Dated: _____4/9/2015_____, 2015

By: _____Andres Titus_____
Print Name:

Title:_____black sheep_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

Dated: _____, 2015

By:_____
Print Name:

Title:_____

STIPULATION AND AGREEMENT OF SETTLEMENT

26  terms and conditions of this Stipulation and to exercise t|

27  accomplish the foregoing terms and conditions of the Sti

54

STIPULATION AND AGREEMENT

CV 11-01613 SI (MEJ)

LEMENT

---

1   Dated: _____April 10_____, 2015

2

3       By: _____  AKA CHUCK D
        Print Name: Carlton Ridenhour aka Chuck D

4       Title: _____Artist Songwriter Publisher_____

5   Dated: _____, 2015

6

7       By: _____

8       Print Name: _____

9       Title: _____

10  Dated: _____, 2015

Dated: _APRIL 12,_ , 2015

By: _MARTHA DAVIS_
Print Name:

Title: _PRESIDENT OF MARTHA DAVIS AND THE MOTELS IN_

Dated: _____ , 2015

By:_____
Print Name:

Title:_____

Dated: _____ , 2015

By:_____
Print Name:

Title:_____

Dated: _____ , 2015

By:_____
Print Name:

Title:_____

Dated: _____ , 2015

By:_____
Print Name:

Title:_____

Dated: _April 13___, 2015

By: _____
Print Name:   William R McLean

Title: _p/k/a "Mista Lawnge," d/b/a Black Sheep

Dated: _____, 2015

By:_____
Print Name:_____

Title:_____

Dated: _____, 2015

By:_____
Print Name:_____

Title:_____

Dated: _____, 2015

By:_____
Print Name:_____

Title:_____

Dated: _____, 2015

By:_____
Print Name:_____

Title:_____

Dated: _____, 2015

By: _____
Print Name: _____

Title:_____

Dated: 4-13-15 , 2015

By: Ronald Tyson Presson
Print Name: _____

Title:_____

Dated: _____, 2015

By:_____
Print Name: _____

Title:_____

Dated: _____, 2015

By:_____
Print Name: _____

Title:_____

Dated: _____, 2015

By:_____
Print Name: _____

Title:_____

**APPROVED AS TO FORM AND CONTENT BY:**

Dated: _April 9_, 2015

JEFFER, MANGELS, BUTLER & MITCHELL LLP

By _____
        Jeffrey D. Goldman
Attorneys for Defendant UMG Recordings, Inc.
Jeffrey D. Goldman (State Bar No. 155589)
Ryan S. Mauck (State Bar No. 223173)
Brian M. Yates (State Bar No. 241798)

Dated: _____, 2015

SIDLEY AUSTIN LLP

By _____
        Sean A. Commons
Attorneys for Defendant Capitol Records, LLC
Peter I. Ostroff (State Bar No. 45718)
Rollin A. Ransom (State Bar No. 196126)
Sean A. Commons (State Bar No. 217603)

Dated: _____, 2015

THE LAW OFFICES OF LEONARD B. SIMON, P.C.

By: _____
        Leonard B. Simon

David M. Given (State Bar No. 142375)
Nicholas A. Carlin (State Bar No. 112532)
Alexander H. Tuzin (State Bar No. 267760)
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201
San Francisco, CA 9412
Tel: 415-398-0900
Fax: 415-398-0911
dmg@phillaw.com
nac@phillaw.com
aht@phillaw.com

Michael W. Sobol
msobol@lchb.com
Roger N. Heller (State Bar No. 215348)

56
STIPULATION AND AGREEMENT OF SETTLEMENT

CV 11-01613 SI (MEJ)

**APPROVED AS TO FORM AND CONTENT BY:**

| Dated: _____, 2015 | JEFFER, MANGELS, BUTLER & MITCHELL LLP |
|---|---|
| | By _____ |
| |       Jeffrey D. Goldman |
| | Attorneys for Defendant UMG Recordings, Inc. |
| | Jeffrey D. Goldman (State Bar No. 155589) |
| | Ryan S. Mauck (State Bar No. 223173) |
| | Brian M. Yates (State Bar No. 241798) |
| Dated: April 13, 2015 | SIDLEY AUSTIN LLP |
| | By _____ |
| |       Sean A. Commons |
| | Attorneys for Defendant Capitol Records, LLC |
| | Peter I. Ostroff (State Bar No. 45718) |
| | Rollin A. Ransom (State Bar No. 196126) |
| | Sean A. Commons (State Bar No. 217603) |
| Dated: _____, 2015 | THE LAW OFFICES OF LEONARD B. SIMON, P.C. |
| | By: _____ |
| |       Leonard B. Simon |
| | David M. Given (State Bar No. 142375) |
| | Nicholas A. Carlin (State Bar No. 112532) |
| | Alexander H. Tuzin (State Bar No. 267760) |
| | PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP |
| | 39 Mesa Street, Suite 201 |
| | San Francisco, CA 9412 |
| | Tel: 415-398-0900 |
| | Fax: 415-398-0911 |
| | dmg@phillaw.com |
| | nac@phillaw.com |
| | aht@phillaw.com |
| | Michael W. Sobol |
| | msobol@lchb.com |
| | Roger N. Heller (State Bar No. 215348) |

STIPULATION AND AGREEMENT OF SETTLEMENT

**APPROVED AS TO FORM AND CONTENT BY:**

| Dated: _____, 2015 | JEFFER, MANGELS, BUTLER & MITCHELL LLP |
|---|---|
| | By _____<br>Jeffrey D. Goldman<br>Attorneys for Defendant UMG Recordings, Inc.<br>Jeffrey D. Goldman (State Bar No. 155589)<br>Ryan S. Mauck (State Bar No. 223173)<br>Brian M. Yates (State Bar No. 241798) |
| Dated: _____, 2015 | SIDLEY AUSTIN LLP |
| | By _____<br>Sean A. Commons<br>Attorneys for Defendant Capitol Records, LLC<br>Peter I. Ostroff (State Bar No. 45718)<br>Rollin A. Ransom (State Bar No. 196126)<br>Sean A. Commons (State Bar No. 217603) |
| Dated: _____, 2015 | THE LAW OFFICES OF LEONARD B. SIMON, P.C.<br><br>By: _____<br>Leonard B. Simon<br><br>David M. Given (State Bar No. 142375)<br>Nicholas A. Carlin (State Bar No. 112532)<br>Alexander H. Tuzin (State Bar No. 267760)<br>PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP<br>39 Mesa Street, Suite 201<br>San Francisco, CA 9412<br>Tel: 415-398-0900<br>Fax: 415-398-0911<br>dmg@phillaw.com<br>nac@phillaw.com<br>aht@phillaw.com<br><br>Michael W. Sobol<br>msobol@lchb.com<br>Roger N. Heller (State Bar No. 215348) |

1

rheller@lchb.com
LIEFF CABRASER ET AL.

2

275 Battery Street, 29th Floor
San Francisco, CA 94111-3336

3

Telephone: 415-956-1000
Facsimile: 415-956-1008

4

5

Michael P. Lehmann (State Bar No. 77152)
Arthur N. Bailey, Jr. (State Bar No. 248460)

6

HAUSFELD LLP
44 Montgomery Street, Suite 3400

7

San Francisco, CA 94104
Telephone: (415) 633-1908

8

Facsimile: (415) 358-4980
mlehmann@hausfeldllp.com

9

bwecker@hausfeldllp.com

10

abailey@hausfeldllp.com

11

Bruce L. Simon (State Bar No. 96241)
Aaron M. Sheanin (State Bar No. 214472)

12

William J. Newsom (State Bar No. 267643)

13

PEARSON, SIMON &  WARSHAW, LLP
44 Montgomery Street, Suite 2450

14

San Francisco, California 94104
Telephone: (415) 433-9000

15

Facsimile: (415) 433-9008
bsimon@pswlaw.com

16

asheanin@pswlaw.com

17

wnewsom@pswlaw.com

18

Clifford H. Pearson (State Bar No. 108523)
Daniel L. Warshaw (State Bar No. 185365)

19

PEARSON, SIMON &  WARSHAW, LLP
15165 Ventura Boulevard, Suite 400

20

Sherman Oaks, CA 91403

21

Telephone: (818) 788-8300
Facsimile: (818) 788-8104

22

dwarshaw@pswlaw.com
cpearson@pswlaw.com

23

24

Michael D. Hausfeld
James J. Pizzirusso

25

HAUSFELD LLP
1700 K Street, NW

26

Suite 650
Washington, D.C. 20006

27

Telephone: (202) 540-7200
Facsimile: (202) 540-7201

28

mhausfeld@hausfledllp.com
jpizzirusso@hausfeldllp.com

Jeffrey A. Koncius
Kiesel Law LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Telephone: (310) 854-4444
Facsimile: (310) 854-0812
koncius@kbla.com

Thomas S. McNamara (Pro Hac Vice)
INDIK & McNAMARA, P.C.
100 South Broad Street, Suite 2230
Philadelphia, Pennsylvania 19110
Telephone:  (215) 567-7125
Facsimile:  (215) 563-8330
mcnamara@snip.net

*Interim Lead Counsel Representative for Plaintiffs*

STIPULATION AND AGREEMENT OF SETTLEMENT