LEONARD B. SIMON (State Bar No. 58310)
THE LAW OFFICES OF LEONARD B. SIMON P.C.
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/338-4549
Facsimile:  619/231-7423
Email:  lsimon@rgrdlaw.com

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO COURTHOUSE

| | |
|---|---|
| RICK JAMES, by and through THE JAMES AMBROSE JOHNSON, JR., 1999 TRUST, his successor in interest, individually and on behalf of all others similarly situated, *et al.*,<br><br>                        Plaintiffs,<br><br>vs.<br><br>UMG RECORDINGS, INC., a Delaware corporation,<br><br>                        Defendants.<br><br>AND RELATED ACTIONS | Case No. CV-11-1613 (SI)<br><br>**CLASS ACTION**<br><br>NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:     April 13, 2016<br>TIME:     4:00 p.m.<br>JUDGE:  The Honorable Susan Illston<br>CTRM:   10 |

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF ISSUES TO BE DECIDED ................................................................3

II. INTRODUCTION ...........................................................................................................3

III. PROCEDURAL HISTORY...............................................................................................4

IV. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
JUSTIFIED AND SHOULD BE APPROVED BY THE COURT ..................................7

    A. The Court Should Award a Fee Based on a Percentage of the Fund.....................8

    B. Plaintiffs' Counsel's Fee Request of the Benchmark 25% of the Common
Fund is Fair and Reasonable ...............................................................................9

        1. Counsel Achieved Excellent Results for the Class, Including a
Common Fund for Past Royalties and a Perpetual Increase in
Future Royalties ......................................................................................10

        2. The Case Involved Complex Legal Issues and Significant Risks,
Requiring Substantial Skill and Hard Work ...........................................10

        3. The Prospective Benefits Further Support the Fee Requested.................12

        4. Counsel Took on a Heavy Contingent Risk, Advanced All
Litigation Costs, and Worked on This Case Without Any
Guarantee of Success ..............................................................................12

        5. The Requested Fee Is Well in Line with the Range of Percentage
Fee Awards Approved in the Ninth Circuit .............................................13

    C. A Lodestar Cross-Check Confirms that Plaintiffs' Requested 25% Fee Is
Reasonable ..........................................................................................................14

        1. Counsel's Lodestar Is Reasonable and Compensable..............................15

        2. The Tasks Performed Were Reasonable and Necessary...........................17

        3. Plaintiffs' Counsel's Hourly Rates Are Reasonable and Have Been
Approved by Other Courts.......................................................................17

    D. Counsel Should Be Reimbursed Their Full Litigation Costs................................18

    E. The Court Should Grant Incentive Awards to the Current and Former
Class Representatives...........................................................................................19

V. CONCLUSION................................................................................................................22

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Barcia v. Contain-A-Way, Inc.*,
No. 07-CV-938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009)..........................14, 21

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997) ...................................................................................18

*Beltran v. EMI Music, Inc.*,
No. 4:12-cv-1002-YGR (N.D. Cal.) ...........................................................................5

*Birch v. Office Depot, Inc.*,
Case No. 06-cv-1690 (S.D. Cal. Sept. 28, 2007).......................................................14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)......................................................................................................7

*Bolton v. U.S. Nursing Corp.*,
No. C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)........................22

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ................................................................................18

*Children's Hosp. & Med. Ctr. v. Bunt*,
97 Cal. App. 4th 740 (2002) ....................................................................................18

*City of Oakland v. Oakland Raiders*,
203 Cal. App. 3d 78 (1988) .....................................................................................18

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .................................................................................21

*Craft v. County of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..............................................8, 11, 13, 14

*Desai v. ADT Sec. Servs., Inc.*,
No. 11-01925 (N.D. Ill. June 21, 2013)..................................................................21

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010) ...................................................................................11

*Fischel v. Equitable Life. Assur. Soc'y*,
307 F.3d 997 (9th Cir. 2002) .....................................................................................8

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000) .................................................................................15

**Page**

*Fraley v. Facebook, Inc.*,
No. C 11-1726 RS, 2013 WL 4516806 (N.D. Cal. Aug. 26, 2013)..........................................8

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) .........................12, 13, 14

*Garner v. State Farm*,
No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ....................9

*Glass v. UBS Fin. Servs., Inc.*,
331 Fed. Appx. 452 (9th Cir. 2009) (25%)...........................................................................14

*Glass v. UBS Fin. Servs., Inc.*,
No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)
*aff'd*, 331 F. App'x 452 (9th Cir. 2009).................................................................................21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..............................................................................................9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................................................15

*In re Businessland Sec. Litig.*,
No. 09-CV-20476-RFP, 1991 WL 427887 (N.D. Cal. June 14, 1991) ..................................18

*In re Cal. Direct Purchaser X-Ray Film Antitrust Litig.*,
No. 960886, 1998 WL 1031494 (Cal. Sup. Ct. Oct. 22, 1998) .............................................18

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) .............................................................................................8, 9

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
130 F.R.D. 366 (S.D. Ohio 1990) .........................................................................................22

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................................14

*In re Linerboard Antitrust Litig.*,
MDL No. 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................21

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ....................................................................................19

*In re Netflix Privacy Litig.*,
No. 11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................20, 21

**Page**

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................................9, 13

*In re Oracle Sec. Litig.*,
   852 F. Supp. 1437 (N.D. Cal. 1994) .........................................................................8

*In re Pacific Enter. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................................14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)....................................................................................8

*In re Sutter Health Uninsured Pricing Cases*,
   171 Cal. App. 4th 495 (2009) ................................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013)...........................22

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .............................................................................8, 13

*Johansson-Dohrmann v. CBR Systems, Inc.*,
   No. 12-cv-1115-MMA (BGS), 2013 WL 3864341 (S.D. Cal. 2013).......................9

*Kanawi v. Bechtel Corp.*,
   No. C 06–05566 CRB, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ..........12, 13, 14

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ...........9

*Lopez v. Youngblood*,
   No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................8

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)...............................................................................................18

*Palmer v. Nigaglioni*,
   508 Fed. Appx. 658 (9th Cir. 2013) (28%)............................................................14

*Pincay Invs. Co. v. Covad Commc'ns Grp.*,
   90 Fed. Appx. 510 (9th Cir. 2004) (25%)..............................................................14

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................19

**Page**

*Serrano v. Priest,*
    20 Cal.3d 25 (1977) ...............................................................................................7

*Shropshire v. Sony Music Entertainment,*
    No. 06-cv-03252 (N.D. Cal. Mar. 7, 2012)...........................................................12

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ...................................................................... *passim*

*Smith v. CRST Van Expedited, Inc.,*
    No. 10-CV-1116-IEG, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013).......................14

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...........................................................................7, 9, 19

*Stokus v. Marsh,*
    217 Cal. App. 3d 647 (1990) .................................................................................15

*Tavares v. Capitol Records, LLC,*
    No. 12-cv-3059-YGR (N.D. Cal.) ........................................................................5, 7

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ..............................................................................12, 14

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................21

*Vedachalam v. Tata Consultancy Servs., Ltd.,*
    No. C 06-0963 CW, 2013 WL 3941319 (N.D. Cal. July 18, 2013) .......................13

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ...................................................................... *passim*

*Vo v. Las Virgenes Mun. Water Dist.,*
    79 Cal. App. 4th 440 (2000) .................................................................................15

*Webb v. Bd. of Educ.,*
    471 U.S. 234 (1985).............................................................................................15

*Wershba v. Apple Computer, Inc.,*
    91 Cal. App. 4th 224 (2001) ................................................................................16

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................................11
    Rule 23(h) .............................................................................................................1
    Rule 54(d)(2) .........................................................................................................1

California Code of Civil Procedure
    §1021 ................................................................................................................1, 7

**SECONDARY AUTHORITIES**

*Manual for Complex Litigation* (4th ed. 2004)
    §14.121 .................................................................................................................8

Thomas E. Willging, et al., *Empirical Study of Class Actions*
    *in Four Federal District Courts: Final Report to the Advisory*
    *Committee on Civil Rules* (Fed. Judicial Center 1996)
    (https://bulk.resource.org/courts.gov/fjc/rule23.pdf) ...........................................13

1   TO:      THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2            PLEASE TAKE NOTICE that on April 13, 2016, at 4:00 p.m., or as soon thereafter as the

3   matter may be heard in the Courtroom of the Honorable Susan Illston, United States District Court,

4   Northern District of California, San Francisco Division, Plaintiffs Rick James, *et al.* (collectively,

5   "Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure 23(h)

6   and 54(d)(2) and California Code of Civil Procedure §1021, *et seq.*, for an order approving and

7   awarding attorneys' fees, litigation costs, and incentive awards.  By way of this motion, Plaintiffs

8   seek:

9            1.       $2,875,000 in attorneys' fees;

10           2.       $409,057.04 in costs and expenses; and

11           3.       A total of $185,500 in incentive awards to the 14 class representatives in the amounts

12  specified below.

13           This motion is made on the grounds that: (1) Plaintiffs' requested attorneys' fees are fair and

14  reasonable in light of the efforts and success of Counsel in obtaining the settlement herein; (2) the

15  requested attorneys' fees comport with the applicable law; (3) the expenses for which reimbursement

16  is sought were reasonably and necessarily incurred in connection with the prosecution of this action;

17  and (4) reasonable compensation to the class representatives for their efforts on behalf of the Class is

18  warranted and appropriate.

19           This motion is based upon this Notice of Motion, the accompanying Memorandum of Points

20  and Authorities, the accompanying declarations from each law firm[1] that appeared in these cases, the

21

22

23

24

25

26  _____

27  [1]    The declarations in support of this motion are from: Leonard B. Simon; Jennifer W. Sprengel;
    Elliot P.  Cahn;  Michael P.  Lehmann;  Thomas S.  McNamara;  Neville L.  Johnson;  Jeffrey A.

28  Koncius; Michael W. Sobol; Daniel L. Warshaw; David M. Given; Edgar D. Gankendorff; Jeffrey
    Cereghino; R. Alexander Saveri; and James M. Wagstaffe.

1   pleadings and records on file herein, and upon such additional evidence or argument as may be

2   accepted by the Court at or prior to the hearing.

3   DATED: July 13, 2015         LEONARD B. SIMON
                                     THE LAW OFFICES OF LEONARD B. SIMON P.C.

4

5                                         s/ LEONARD B. SIMON

6                                         LEONARD B. SIMON

7                                *Chair of Lead Class Counsel Group for Plaintiffs*
                               *(additional counsel listed below)*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Plaintiffs' Counsel should be awarded attorneys' fees and litigation expenses, and if so, in what amounts?

2.   Whether the named Plaintiffs identified below should be granted incentive awards, and if so, in what amounts?

## II.   INTRODUCTION

Counsel for Plaintiffs and the Settlement Class ("Plaintiffs' Counsel" or "Counsel") respectfully move the Court for an award of attorneys' fees of 25% of the Settlement Fund,[2] which is $2,875,000, plus expenses and incentive awards.  Twenty-five percent of the recovery is the standard "benchmark" for a common fund fee, *see, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).  Here, counsel only seek 25% of the cash Fund created for retrospective relief, but they have also obtained additional perpetual prospective relief for Class Members for which they request no additional fee.  Thus the benchmark percentage of the cash fund is very well earned.

A lodestar analysis of the fee request likewise more than supports Counsel's fee request because, although the risks of the case would ordinarily support the application of risk multiplier, the case was so hard-fought and time-intensive that the requested fee is substantially *less* than Counsel's lodestar.

The closest precedent for this fee award is Judge Seeborg's 25% award in a similar action, entitled *In re Warner Group Music Corp. Digital Downloads Litig.*, No. CV 12-0559-RS (N.D. Cal. Jan. 12, 2015) (fee order attached to the Declaration of Leonard B. Simon in Support of Plaintiffs' Motion for Attorneys' Fees, Litigation Costs, and Incentive Awards ("Simon Decl."), as Exhibit G), a case yielding a very similar settlement but settled at an earlier stage and thus without the same degree of intensive litigation and corresponding lodestar.

---

[2]   All capitalized terms herein shall have the definitions given to them in the Stipulation and Agreement of Settlement filed herein ("Settlement Agreement") (Dkt. No. 234-3), unless otherwise stated.

1    Plaintiffs' Counsel also respectfully move the Court for an award of expenses in the amount

2    of $409,057.04, and for incentive awards to the Plaintiffs as described below.  Plaintiffs' expenses,

3    which were all advanced by Class Counsel with no promise of repayment, were reasonably incurred

4    and necessary to achieve the result in this case.  Moreover, they fall below the ceiling of $450,000 to

5    which Defendants agreed.

6    The incentive awards requested are reasonable, particularly in light of the substantial work

7    Plaintiffs performed, the business risks they took, and their service to the Class, which included

8    having their depositions taken, some on more than one occasion.

9    **III.    PROCEDURAL HISTORY**

10    This Settlement resolves two similar sets of cases against different (but now related)

11    defendants.  In *James v. UMG Recordings, Inc.*, Case No. CV 11-1613 (SI) (N.D. Cal.) ("*James*"),

12    filed on April 1, 2011, and related cases, Plaintiffs alleged that that Defendant Universal Music

13    Group ("UMG") failed to properly credit royalty payments to recording artists and music producers

14    for UMG's exploitation of digital downloads ("Downloads/Mastertones").[3]  Specifically, Plaintiffs

15    alleged that UMG improperly treated Downloads/Mastertones as "sales" instead of "licenses," and

16    paid artists and producers royalties based upon the much lower sales royalty rate than the licensing

17    royalty rate in their recording contracts.

18    Later, several similar suits were filed against Warner Music: *Wright v. Warner Music Group*

19    *Corp.*, Case No. 3:12-cv-00870-RS; *Johnston v. Warner Music Group Corp.*, Case No. 3:12-cv-

20    1531-RS; *Castillo v. Warner Music Group Corp.*, Case No. 3:12-01611-RS; and *Risko v. Warner*

21    *Music Group Corp.*, Case No. 3:12-cv-01790-RS.  These cases were assigned to Judge Seeborg, and

22    settled in 2013.

23    Still later, several similar suits were filed against EMI/Capitol Records ("Capitol"), and

24    assigned to Judge Gonzalez-Rogers, captioned as *Davis v. Capitol Records, LLC*, No. 12-cv-1602-

25

26    _____

27    [3]    Four other actions were consolidated with *James* on April 16, 2012: *Zombie v. UMG Recordings,*
*Inc.*, Case No. 3:11-cv-02431-SI; *Ridenhour v. UMG Recordings, Inc.*, Case No. 3:11-cv-05321-SI;
*Harris v. UMG Recordings, Inc.*, Case No. 3:12-cv-01305-SI; and *Williams v. UMG Recordings,*

28    *Inc.*, Case No. 3:12-cv-01289-SI.

MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS
CV-11-1613 (SI)                                                                                      - 4 -

1    YGR (N.D. Cal.) ("*Davis*"), and *Tavares v. Capitol Records, LLC*, No. 12-cv-3059-YGR (N.D. Cal.)

2    ("*Tavares*" and, together with *Davis*, the "*Capitol* cases").[4]

3          The three groups of cases proceeded separately until, very late in the proceedings, and owing

4    to the acquisition of Capitol/EMI by UMGR's parent company, the *James* case and the *Capitol* cases

5    were settled together.  It is the settlement of the *James/Capitol* cases that forms the basis for this fee

6    request.

7          In the *James* and *Capitol* cases, Counsel faced the daunting task of taking on two of the

8    largest record companies in the world on behalf of thousands of artists.  Counsel actively litigated

9    these claims for a period of three-plus years before a tentative settlement was reached, and it took

10   nearly another year to hammer out the details of the very complex settlement.  Despite facing many

11   challenges and obstacles, Counsel were able to persevere and achieve an excellent Settlement that

12   provides significant cash and future benefits to the Class.

13         The litigation was hard-fought throughout.  Early in the *James* litigation, Class Counsel

14   successfully opposed UMG's motion to transfer venue, a motion to dismiss and an early motion for

15   summary judgment.  Dkt. Nos. 21, 49, 66, 87.

16         Discovery in the *James* case was extensive.  UMG produced, and Plaintiffs reviewed,

17   approximately 7,000 recording contracts and 3,000 royalty-related amendments, many over 50 pages

18   long, and thousands of other documents in discovery.  Simon Decl., ¶12.  The parties conducted

19   numerous depositions.  Most of the plaintiffs were deposed, some more than once, and nine current

20   and former UMG personnel were deposed.  *Id.*  The parties exchanged multiple sets of written

21   discovery and had several discovery disputes that required Court intervention.  Dkt. Nos. 123, 133,

22   138, 140, 142, 144, 147, 148, 150, 155-57, 159, 168-71, 174, 181.  *Id.*

23         During all of this activity in *James*, the *Capitol* cases took a similar path, with multiple

24   rounds of briefing on motions to dismiss resulting in the dismissal of certain actions and claims, and

25

26   ─────────────────────────

27   [4]   Two other cases raising similar claims against Capitol were filed but later dismissed by Judge
     Gonzalez-Rogers, including *Beltran v. EMI Music, Inc.*, No. 4:12-cv-1002-YGR (N.D. Cal.), and

28   *Bozzio v. EMI Group, Ltd.*, No. 4:12-cv-02421-YGR (N.D. Cal.).  An appeal of the dismissal of
     *Bozzio* case is presently pending before the Court of Appeals for the Ninth Circuit.  *See* f.9, below.

1   the continued litigation of the remaining claims.  Counsel in the *Capitol* cases conducted substantial

2   discovery, including the drafting and service of interrogatories and document requests, the review

3   and preparation of the responses to discovery requests propounded by Capitol, and the review of

4   thousands of recording agreements and other documents produced by Capitol (different from those

5   produced by UMG in *James*).  *See* Declaration of Thomas S. McNamara in Support of Plaintiffs'

6   Motion for Attorneys' Fees, Litigation Costs and Incentive Awards Settlement ("McNamara Decl."),

7   ¶15.  During the pendency of the *Capitol* cases, a parent company of UMG acquired the recorded

8   music interests of Capitol from Capitol's former parent.  *See* McNamara Decl., ¶16.

9       Many efforts were made to engender serious settlement discussions in *James*, with the

10  assistance of the Honorable Edward Infante (Ret.) of JAMS.  But it was only in 2014, on the parties'

11  third visit to Judge Infante (plus several interim phone calls with him and other negotiations without

12  benefit of a mediator), and with motions for summary judgment and for class certification either on

13  file or about to be filed, that the parties finally came together and agreed to a global settlement,

14  encompassing both *James* and the *Capitol* cases.  Simon Decl., ¶13.

15      Because the claims asserted in the *Capitol* cases included not only claims for underpayment

16  of royalties relating to Downloads/Mastertones, which were substantially similar to those asserted in

17  *James*, but also additional claims that Capitol underpaid royalties on digital transactions known as

18  "Streams," and because the *Capitol* cases were not formally part of the mediation before Judge

19  Infante, Counsel in the *Capitol* cases subsequently conducted a due diligence review of the fairness

20  and adequacy of the proposed settlement from the perspective of the Plaintiffs in the *Capitol* cases,

21  which involved requesting, obtaining and reviewing additional documents and information from

22  Capitol.  *See* McNamara Decl., ¶¶17-18.

23      The settlement was laboriously documented, and details were subsequently negotiated and

24  renegotiated—particularly the prospective relief—for almost a full year.  Simon Decl., ¶14.  On

25  April 14, 2015, pursuant to the proposed Settlement Agreement, a Second Consolidated Class Action

26  Complaint was filed joining the claims previously asserted by the Plaintiffs in the *Capitol* cases with

27  those asserted in the *James* case, and joining the Plaintiffs in the *Capitol* cases as additional

28  Plaintiffs.  *See* McNamara Decl., ¶20.

1    On April 28, 2015, this Court entered an Order Granting Preliminary Approval of Class
2    Action Settlement (Dkt. No. 240), in which the Court appointed the Plaintiffs named in the Second
3    Consolidated Class Action Complaint (including the *Tavares* Plaintiffs), as Class Representatives,
4    and appointed The Law Offices of Leonard B. Simon P.C.; Pearson, Simon & Warshaw LLP;
5    Hausfeld LLP; Lieff Cabraser Heinmann & Bernstein, LLP; Phillips, Erlewine, Given & Carlin LLP;
6    Kiesel Law LLP; and Indik & McNamara, P.C. as Class Counsel.

7    Preliminary approval was received on April 28, 2015.  Dkt. No. 240.  Notice to the class was
8    given on June 15, 2015.

9  **IV.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND**
       **JUSTIFIED AND SHOULD BE APPROVED BY THE COURT**
10
11    Under federal and California law, Plaintiffs may recover attorneys' fees in this case pursuant
12    to either the "common fund" or the "substantial benefit" doctrines.  Both of these doctrines are non-
      statutory exceptions to the American rule regarding attorneys' fees.  *See Serrano v. Priest*, 20 Cal.3d
13    25, 34 (1977); Cal. Civ. Proc. Code §1021, *et seq.*[5]  Under the "common fund" rule, "when a number
14    of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs
15    for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs
16    may be awarded attorney's fees out of the fund."  *Serrano*, 20 Cal.3d at 34-38; *see also Boeing Co.
17    v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a
18    reasonable attorney's fee from the fund as a whole"); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th
19    Cir. 2003) (quoting *Van Gemert*).  Under the "substantial benefit" rule, "when a class action . . .
20    results in the conferral of substantial benefits, whether of a pecuniary or nonpecuniary nature . . .
21    [the] defendant may, in the exercise of the court's equitable discretion, be required to yield some of
22    those benefits in the form of an award of attorney's fees."  *Serrano*, 20 Cal. 3d at 34; 38-42.
23    Plaintiffs here are entitled to recover attorneys' fees under either doctrine because they have created

24

25

26  _____
    [5]    Plaintiffs asserted claims under California law, and California law thus governs the fee award.
27  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  However, the Court may properly
    look to the Ninth Circuit and other consistent federal precedent in determining the appropriate fee
28  here.  *See id.*

1  a fund for the benefit of the Class and have conferred substantial past and future benefits upon the

2  Class Members.

3    **A.  The Court Should Award a Fee Based on a Percentage of the Fund**

4    In common fund cases, under both California and federal law, courts have discretion to apply

5  either a percentage-of-the-fund method or a lodestar-multiplier method in calculating an attorneys'

6  fee award.  *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2013 WL 4516806, at *2 (N.D. Cal.

7  Aug. 26, 2013) (citing *Fischel v. Equitable Life. Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002));

8  *see also Vizcaino*, 290 F.3d at 1047; *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558

9  (2009); *In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"), 19 F.3d 1291, 1295 (9th Cir.

10  1994) ("*WPPSS*").  Although the Court has discretion to use either method, the Ninth Circuit has

11  recognized that in common fund cases, "the *primary* basis of the fee award remains the percentage

12  method."  *Vizcaino*, 290 F.3d at 1050 (emphasis added); *see also In re Rite Aid Corp. Sec. Litig.*, 396

13  F.3d 294, 307 (3d Cir. 2005); *Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569,

14  at *3 (E.D. Cal. Sept. 2, 2011); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1116,

15  1123-24 (C.D. Cal. 2008) (citing *Vizcaino*)).  Indeed, "the vast majority of courts of appeals now

16  permit or direct district courts to use the percentage-fee method in common-fund cases."  *Manual for*

17  *Complex Litigation*, §14.121 (4th ed. 2004) (citing, *e.g.*, *WPPSS*, 19 F.3d at 1295)).

18    The percentage-of-fund method is favored in common fund cases for two reasons.  First, it

19  "more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from

20  increasing the size of the class fund and working in the most efficient manner."  *Lopez*, 2011 WL

21  10483569, at *3; *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994).  Second, it

22  encourages early settlement of meritorious cases and "ensur[es] that competent counsel continue to

23  be willing to undertake risky, complex, and novel litigation."  *Manual for Complex Litigation*,

24  §14.121.  When the percentage-of-fund method is used, courts can—but are not required to—use the

25  lodestar method as a "cross-check" on the reasonableness of the percentage fee.  *Vizcaino*, 290 F.3d

26  at 1050 & n.5.  (*See* Part IV.C, *infra*, for discussion of the lodestar cross-check.)

27

28

**B.** **Plaintiffs' Counsel's Fee Request of the Benchmark 25% of the Common Fund is Fair and Reasonable**

Pursuant to the Settlement, UMG agreed to create a Fund of $11.5 million available to Class Members.  It also agreed to pay uncapped increased future royalty rates for Downloads/Mastertones *in perpetuity* to Class Members who make a valid claim.  While Plaintiffs believe that the future payments will increase the total value of the Settlement well beyond $11.5 million, Counsel has agreed to seek fees of no more than 25% of the $11.5 million cash fund, without further fee entitlement based on the future relief.  This makes the 25% fee more than reasonable under prevailing law.

Courts in the Ninth Circuit use a "25% benchmark rate" as the "starting point for analysis" of a percentage-of-fund award.  *Vizcaino*, 290 F.3d at 1048; *see also Staton*, 327 F.3d at 968; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Johansson-Dohrmann v. CBR Systems, Inc.*, No. 12-cv-1115-MMA (BGS), 2013 WL 3864341, at *9 (S.D. Cal. 2013) (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 n.13 (2009)) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent.").  Courts are permitted to adjust the benchmark figure up or down in order "to fit the individual circumstances" of each case.  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Vizcaino*, 290 F.3d at 1048.  Courts in this Circuit often award a percentage of the fund that is higher than the 25% benchmark.  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) ("[I]n most common fund cases, the award exceeds th[e] benchmark."); *see also Vizcaino*, 290 F.3d at 1048-1050 (awarding 28%); *Garner v. State Farm*, No. CV 08 1365 CW, 2010 U.S. Dist. LEXIS 49482, at *5-6 (N.D. Cal. Apr. 22, 2010) (awarding 30%); *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *17 (N.D. Cal. Feb. 2, 2009) (same).

The Ninth Circuit has identified certain factors to be considered in determining whether to award the benchmark or some other amount.  These include: (1) the degree of success counsel achieved for the class; (2) the risks involved in the litigation, including the skill required and the quality of the work performed to overcome those risks; (3) the achievement of "benefits beyond the

1    cash settlement fund"; (4) the contingent nature of the fee and the burdens borne by class counsel in

2    taking on the litigation; and (5) the range of awards made in similar cases. *Vizcaino*, 290 F.3d at

3    1048-50.  Each of these factors justifies the 25% fee, and indeed, would justify a higher fee if

4    sought.

5           In addition, the enormous effort counsel has undertaken demonstrates that the fee will in no

6    way overcompensate them, as it amounts to substantially less than their lodestar.  Simply put, the

7    case took an enormous amount of work; UMG would not settle it until the eleventh hour, after

8    Plaintiffs had demonstrated the willingness and ability to persevere in the face of Defendants'

9    tenacious efforts to overcome substantial legal hurdles and to expend a huge amount of legal effort.

10             **1.      Counsel Achieved Excellent Results for the Class, Including a
                        Common Fund for Past Royalties and a Perpetual Increase in**
11                      **Future Royalties**

12          The first factor in determining the fee is the degree of success counsel achieved for the class.

13   *Six (6) Mexican Workers*, 904 F.2d at 1311 (noting plaintiffs' "substantial success").  Here, Class

14   Counsel not only obtained a Fund of $11.5 million for retrospective relief, but were also able to

15   obtain uncapped and perpetual prospective relief in the form of increased future royalty payments.

16   Specifically, virtually all Class Members who make the requisite claim will receive an increase in

17   royalty payments of 10% for exploitation of Downloads and Mastertones for UMG artists, and for

18   downloads, mastertones and streams in *Capitol*.[6]  Class Members will also receive certain additional

19   benefits in the calculation of their royalties on Downloads/Mastertones income preventing reductions

20   for, *e.g.*, "packaging."

21          Accordingly, this factor supports a fee award of 25% of the Settlement Fund.

22             **2.      The Case Involved Complex Legal Issues and Significant
                        Risks, Requiring Substantial Skill and Hard Work**

23
24          The next factor justifying an award of the benchmark amount is the complexity of the issues

25   and degree of risk faced by Class Counsel, as well as the skill required and work performed in order

26   _____

27   [6]   The *Capitol* cases, but not the UMG case, alleged wrongdoing regarding streams, and thus the
      cases were settled with streams included in *Capitol* but not UMG.  We will refer to all recordings
28   involved in both cases as "Downloads/Mastertones."

1    to successfully overcome those risks.  *See Vizcaino*, 290 F.3d at 1048; *Six (6) Mexican Workers*, 904

2    F.2d at 1311; *Craft*, 624 F. Supp. 2d at 1117.

3        This case involved numerous complex issues of fact and law, and presented significant risks

4    for Plaintiffs' Counsel.  In particular, despite the Ninth Circuit's decision in *F.B.T. Prods., LLC v.*

5    *Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), UMG argued from the outset that its thousands of

6    contracts contained differing language that would compel a different result on the merits, and would

7    present challenging Rule 23 issues.  Simon Decl., ¶17.  In particular, UMG asserted that the

8    recording contracts contained individually negotiated terms that were subject to various

9    interpretations.  While Plaintiffs disagreed that the key terms at issue varied in any significant

10   manner, there was certainly a risk that the Court would agree with UMG.  *Id*.  When the case settled,

11   UMG had already filed several motions for summary judgment, and the due date for Plaintiffs'

12   motion for class certification was fast approaching.  Simon Decl., ¶20.  Even if the Court ruled in

13   favor of Plaintiffs on summary judgment, there was a risk that the Court would soon thereafter find

14   that the case was not suited to class treatment.

15       That Counsel were able to achieve the results they did for the Class despite these risks speaks

16   to the level of skill and determination brought to bear in this case.  Litigating the case was long and

17   arduous, and negotiating the Settlement was also protracted and difficult, requiring multiple

18   mediation sessions and numerous conference calls.  Simon Decl. ¶18.  Prior to the Settlement,

19   substantial discovery was undertaken.  The nature of the 10,000 contracts and amendments produced

20   required careful and time-consuming document review, and counsel reviewed many other types of

21   documents produced by UMG, Capitol, Apple Computer and others.  The record in *F.B.T.* was

22   mined for useful information, after overcoming various issues concerning protective orders.  Several

23   depositions of UMG witnesses and Plaintiffs were taken and defended.  Multiple motions were

24   briefed and argued, including motions to dismiss, motions for partial summary judgment, motions to

25   amend the complaint, and discovery motions (plus appeals to this Court of certain discovery rulings

26   by the Magistrate Judge).  Experts on the music industry were retained and consulted.  *Id*.

27       Throughout the litigation, Counsel made efforts to engender settlement discussions that

28   included multiple meetings and mediations, but initially no serious offers were made.  *Id*. at ¶20.

MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS
CV-11-1613 (SI)

1    Only on the eve of class certification and summary judgment in *James* did UMG come to the table to

2    discuss a serious settlement offer, and even then, the negotiations were protracted and difficult.

3    Settlement of *Davis* was not seriously discussed until it became part of the final *James* mediation

4    before Judge Infante.  *Id.*.  The parties thereafter engaged in months of negotiations of the final

5    terms, and drafting to reach a settlement.  *Id.*  After four years of litigation, the Settlement

6    Agreement was finalized, but all the while, "[u]ncertainty loomed throughout the litigation."

7    *Kanawi v. Bechtel Corp.*, No. C 06–05566 CRB, 2011 WL 782244, at *2 (N.D. Cal. Mar. 1, 2011).

8         In short, "prosecuting this case required a significant commitment of time, resources, and

9    energy from Class Counsel, and the relief achieved simply would not have been possible but for the

10    commitment and skill of Class Counsel."  *Garner*, 2010 WL 1687829, at *2.  Even though this

11    "favors an increase in the benchmark rate," *Kanawi*, 2011 WL 782244, at *2, Counsel are only

12    seeking 25% of the Fund, which is well-justified.

13               **3.**       **The Prospective Benefits Further Support the Fee Requested**

14         As discussed above, the Settlement features perpetual future benefits to Class Members in the

15    form of a 10% increase in future royalties.  This substantial prospective relief is even more

16    impressive when compared to the Sony digital download settlement.  In Sony, artists with at least

17    28,500 total U.S. downloads on iTunes (or meeting certain other standards) received only a 3%

18    increase in their applicable royalty rate.  *See* Declaration of Brian Caplan in Support of Motion for

19    Preliminary Approval of Settlement at 5, *Shropshire v. Sony Music Entertainment*, No. 06-cv-03252

20    (N.D. Cal. Mar. 7, 2012). Dkt. No. 94.  The prospective relief here is far superior to Sony, and quite

21    comparable to *Warner* in this respect, in which Judge Seeborg awarded the full fee requested, 25%

22    of the cash fund.

23               **4.**       **Counsel Took on a Heavy Contingent Risk, Advanced All Litigation Costs, and Worked on This Case Without Any**

24                        **Guarantee of Success**

25         The fourth factor is the contingent nature of the case and the burdens borne by Counsel in

26    taking it.  *Vizcaino*, 290 F.3d at 1050 (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377

27    (9th Cir. 1993)); *Six (6) Mexican Workers*, 904 F.2d at 1311.  Relevant to this inquiry is the

28    contingency risk, the cost and length of the litigation, and whether counsel had to forego other

1   significant legal work.  *Id.*; *see also Craft*, 624 F. Supp. 2d at 1120.  This factor recognizes that "the

2   public interest is served by rewarding attorneys who assume representation on a contingent basis

3   with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their

4   work."  *Garner*, 2010 WL 1687829, at *2 (citing *Vizcaino*, 290 F.3d at 1050; *WPPSS*, 19 F.3d at

5   1299).  "Such a practice encourages the legal profession to assume such a risk and promotes

6   competent representation for plaintiffs who could not otherwise hire an attorney."  *Kanawi*, 2011

7   WL 782244, at *2; *see WPPSS*, 19 F.3d at 1299-1300.

8        As the accompanying declarations of all Counsel attest, Counsel have been working

9   diligently on this case for four years on a pure contingency basis with no guarantee of recovery.  *See,*

10  *e.g.*, Simon Decl., ¶22.  Counsel have advanced all out-of-pocket expenses, including expert costs

11  and mediation costs, totaling over $400,000.  Many of the lead lawyers were sufficiently tied down

12  with this intensive litigation that it curtailed their opportunities to take on other cases.  *Id.*  Indeed,

13  Counsel faced the possibility that they would spend years litigating this case and recover nothing.

14  *Id.*

15            **5.     The Requested Fee Is Well in Line with the Range of
                       Percentage Fee Awards Approved in the Ninth Circuit**

16

17        Finally, courts consider "the range of fee awards out of common funds of comparable size."

18  *Vizcaino*, 290 F.3d at 1049-50.

19        As noted above, Judge Seeborg recently awarded a 25% fee in the substantially similar

20  *Warner* case, on a much smaller lodestar.  Simon Decl., Ex. G.  In cases of comparable size, fee

21  awards of 30% or higher are common.  *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most

22  common fund cases, the award exceeds th[e] benchmark."); *see also Vedachalam v. Tata*

23  *Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 WL 3941319, at *2 (N.D. Cal. July 18, 2013)

24  ("In light of the many cases in this circuit that have granted fee awards of 30% or more, the

25  requested fee [of 30%] is well within the usual range of percentages awarded in similar cases.");

26  Thomas E. Willging, et al., *Empirical Study of Class Actions in Four Federal District Courts: Final*

27  *Report to the Advisory Committee on Civil Rules*, Fig. 68 (Fed. Judicial Center 1996) (available at

28  https://bulk.resource.org/courts.gov/fjc/rule23.pdf) (examining 23 cases from the Northern District

of California and finding a mean fee award of 27% and a median fee award of 29%).  The following cases from federal district courts in California are illustrative:

| CASE | SIZE OF FUND | % AWARDED |
|---|---|---|
| *Birch v. Office Depot, Inc.* Case No. 06-cv-1690 (S.D. Cal. Sept. 28, 2007)[7] | $16 million | 40% |
| *Kanawi v. Bechtel Corp.* No. C 06-05566 CRB, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) | $18.5 million | 30% |
| *Garner v. State Farm Mut. Auto. Ins. Co.* No. CV 08 1365 CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) | $15 million | 30% |
| *In re Immune Response Sec. Litig.* 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) | $10 million | 25% |
| *Barcia v. Contain-A-Way, Inc.* No. 07-CV-938-IEG-JMA, 2009 WL 587844 (S.D. Cal. Mar. 6, 2009) | $2.5 million | 25% |
| **Average:** | **$12.4 million** | **30%** |

The Ninth Circuit has also frequently affirmed awards of 25% or more in common fund cases.  *See, e.g.*, *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33.3%); *Palmer v. Nigaglioni*, 508 Fed. Appx. 658, 658 (9th Cir. 2013) (28%); *Vizcaino*, 290 F.3d at 1048-50 (28%); *Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (25%); *Pincay Invs. Co. v. Covad Commc'ns Grp.*, 90 Fed. Appx. 510, 511-12 (9th Cir. 2004) (25%); *Torrisi*, 8 F.3d 1370 (9th Cir. 1993) (25%).

        With these precedents on the books, a fee of 25% is more than reasonable.

        **C.    A Lodestar Cross-Check Confirms that Plaintiffs' Requested 25% Fee Is Reasonable**

        The lodestar method "measures the lawyers' investment of time in the litigation" and "provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.  Although this cross-check is not required, *Craft*, 624 F. Supp. 2d at 1122 ("[a] lodestar cross-check

---

[7]    *Birch* was described in *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013).

1    is not required in this circuit"), here it more than confirms the reasonableness of the requested 25%

2    fee.

3         Plaintiffs' Counsel's lodestar is substantially higher than the fee they are seeking.  Even after

4    carefully reviewing their time records and exercising billing judgment, Counsel in UMG and Capitol

5    have expended upwards of $12 million in attorney time, but are seeking of fee of only $2.875

6    million.  Thus, unlike the more typical case in which the benchmark percentage would yield a fee

7    above the lodestar, requiring a multiplier, here the requested fee will pay counsel substantially less

8    than their hourly rates.  Awarding a fee less than the requested amount will simply cut counsel's

9    already heavily discounted compensation, and there is no reason to do so.

10        To put it another way, although the Court must of course assure itself that the fee has been

11   earned, a painstaking review of lodestar is not necessary here because trimming the lodestar or

12   adjusting the hourly rates will simply not change the bottom line—a 25% fee is reasonable and far

13   below the market value of the effort expended here.

14              **1.    Counsel's Lodestar Is Reasonable and Compensable**

15        Counsel's $12 million lodestar is supported by the declarations of each law firm filed

16   herewith, which are summarized and totaled in Exhibits C and D to the Simon Declaration.

17   Compensable activities under the lodestar method include both pre-litigation activities (*e.g.*,

18   interviewing the client, investigating the facts, researching the law, and preparing the initial

19   pleading), and litigation activities (*e.g.*, conducting discovery, conferring with clients, drafting

20   pleadings, making court appearances, travel time, and settlement negotiations).  *Webb v. Bd. of

21   Educ.*, 471 U.S. 234, 243 (1985); *Stokus v. Marsh*, 217 Cal. App. 3d 647, 655-56 (1990).

22        The first step employed in awarding fees under the lodestar method is to calculate the

23   lodestar amount, which is the number of hours reasonably performed at standard hourly rates. *Vo v.

24   Las Virgenes Mun. Water Dist.*, 79 Cal. App. 4th 440 (2000).  It is well established that in moving

25   for fees, counsel is "not required to record in great detail how each minute of his time was

26   expended."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).  Instead, counsel need only

27   "identify the general subject matter of his time expenditures."  *Id.*; *Fischer v. SJB-P.D. Inc.*, 214

28   F.3d 1115, 1121 (9th Cir. 2000).  The court can accept declarations of counsel setting forth the hours

1    worked and tasks performed.  *See In re Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th

2    495, 511-12 (2009) ("We see no reason why [the court] could not accept the declarations of counsel

3    attesting to the hours worked, particularly as he was in the best position to verify those claims by

4    reference to the various proceedings in the case."); *Wershba v. Apple Computer, Inc.*, 91 Cal. App.

5    4th 224, 254-55 (2001) (permitting fee awards in the absence of detailed time sheets).  Such

6    declarations have been submitted by each of the 14 firms seeking fees in UMG and/or Capitol.

7            Exhibits C and D to the Simon Declaration show that, as of June 1, 2015, counsel have a

8    combined lodestar of over $12 million based on their historical hourly rates.  Had Counsel billed at

9    current rates, rather than historical rates, the lodestar would be greater still.

10           The lodestars of *James* co-lead counsel, those the Court has seen in person in this case, are

11   summarized below, and more than support the requested fee by themselves.

| JAMES CLASS COUNSEL | LODESTAR |
|---|---|
| Pearson Simon & Warshaw LLP | $1.2 million |
| Hausfeld LLP | $2.1 million |
| Lieff, Cabraser, Heimann & Bernstein, LLP | $2.2 million |
| Phillips, Erlewine, Given & Carlin LLP | $2.4 million |
| The Law Offices of Leonard B. Simon P.C. | $1.8 million |
| **TOTAL** | **$9.7 million** |

19   This work alone dwarfs the requested fee of $2.875 million.

20           But of course, lead counsel did not litigate the *James* case by themselves.  Several other firms

21   contributed to the effort:  Cafferty Clobes Meriwether & Sprengel LLP; Johnson & Johnson LLP;

22   Kiesel Law LLP; Provosty & Gankendorff, L.L.C.; Saveri & Saveri, Inc.; and Kerr & Wagstaffe

23   LLP.  They have lodestars totaling another $1.4 million.

24           The requested fee also covers *Capitol*.  In those cases, the firms with the largest lodestars

25   were:

| CAPITOL CLASS COUNSEL | LODESTAR |
|---|---|
| Kiesel Law LLP | $420,000.00 |
| Indik & McNamara, P.C. | $190,000.00 |
| Hausfeld LLP | $180,000.00 |
| **TOTAL** | **$790,000.00** |

Other firms contributing to *Capitol* were Johnson & Johnson LLP; Pearson Simon & Warshaw LLP; Phillips, Erlewine, Given & Carlin LLP; Ram, Olson, Cereghino & Kopczynski LLP; Saveri & Saveri, Inc.; Lieff Cabraser Heimann & Bernstein, LLP; and The Law Offices of Leonard B. Simon P.C.  The total lodestar in *Capitol* is $1.4 million.

Thus, the total lodestar in both cases is over $12 million, and the $2.875 million requested fee is more than well-earned.

### 2. The Tasks Performed Were Reasonable and Necessary

The accompanying declarations of counsel detail the type of work that was done, including: (1) pre-litigation research and investigation; (2) litigation activities such as drafting Plaintiffs' complaints, motions and oppositions to Defendant's motions; (3) discovery, which was virtually complete in *James* at the time of settlement; (4) settlement negotiations and mediations, preparation for same, and finalizing the terms of the Settlement Agreement; and (5) efforts to obtain Court approval of the Settlement and to oversee the administration of notice and claims procedures.  The declarations of each law firm identify which of these tasks that firm was heavily engaged in and which tasks each law firm took the lead on.  Although the five lead firms in *James* were engaged in all of the tasks to some degree, lead counsel took care to prevent duplicative effort and accordingly divided up certain tasks and leadership roles among themselves.  For example, certain firms were in charge of "offensive" discovery, while others were in charge of "defensive" discovery.  All of the tasks performed were reasonable and necessary to litigating the claims.

### 3. Plaintiffs' Counsel's Hourly Rates Are Reasonable and Have Been Approved by Other Courts

The test for the reasonableness of an attorney's hourly rate is based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and

1    reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Children's*

2    *Hosp. & Med. Ctr. v. Bunt*, 97 Cal. App. 4th 740, 783 (2002).  In performing this analysis, courts

3    look to the experience and reputation of class counsel, the complexity of the issues involved, the

4    geographic market in which the case is litigated, and other factors affecting the litigation.  *Barjon v.*

5    *Dalton*, 132 F.3d 496, 500-02 (9th Cir. 1997) (determining counsel's hourly rate based on prevailing

6    rates charged in Sacramento); *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 82 (1988)

7    (affirming a trial court's approval of an hourly rate that falls in line with the rates charged in the Bay

8    Area).

9           In this case, each attorney declaration and the supporting exhibits establish the basis and

10   calculation for the hourly rates of the attorneys and paralegals at each firm who worked on the case.

11   The declarations also describe the substantial experience each firm has in handling class actions and

12   complex litigation and for some firms, music litigation.  Counsel billed this case at their usual and

13   customary hourly billing rates, which have been approved by other courts presiding over similar

14   complex class action lawsuits, including cases pending in the Northern District of California.  Thus,

15   Counsel have established that their lodestar is reasonable and justified.

16          Counsel have labored long and hard, achieving significant benefits for the Class, and yet seek

17   a fee that is well below the time and labor they invested in this litigation.  Accordingly, a lodestar

18   cross-check justifies the fee requested.

19        **D.**      **Counsel Should Be Reimbursed Their Full Litigation Costs**

20          In addition to attorneys' fees incurred, attorneys in a class action may be reimbursed for costs

21   incurred "in the ordinary course of prosecuting [a] case." *See In re Cal. Direct Purchaser X-Ray*

22   *Film Antitrust Litig.*, No. 960886, 1998 WL 1031494, at *11 (Cal. Sup. Ct. Oct. 22, 1998) (awarding

23   class counsel $29,051.40 in costs and expenses); *In re Businessland Sec. Litig.*, No. 09-CV-20476-

24   RFP, 1991 WL 427887, at *3 (N.D. Cal. June 14, 1991) (awarding class counsel $90,574.78 in costs

25   and expenses in addition to attorneys' fees).  Reasonable reimbursable litigation costs include, but

26   are not limited to, the costs of document production, experts and consultants, depositions, notice, and

27   travel expenses.  *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).

28

MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS
CV-11-1613 (SI)

Here, Counsel have incurred $409,057.04 in litigation costs and expenses to date. Expenses of the individual firms are set out in counsel's declarations, and compiled in Exhibits E (*James*) and F (*Davis*) to the Simon Declaration. These expenses include travel expenses, mediation-related expenses, and expert and consultant fees that were incurred in the normal course of business and were essential to the successful prosecution of this class action lawsuit.[8] Under the Settlement Agreement, Counsel's recoverable expenses are capped at $450,000, and thus the actual expenses are below the cap.

These reasonable out-of-pocket costs were necessary to secure the resolution of this litigation. *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367-72 (N.D. Cal. 1996) (costs related to retention of experts, photocopy costs, travel expenses, postage, telephone costs, computerized legal research fees, and filing fees may be reimbursed). They are therefore reasonable, fair and adequate, and should be awarded.[9]

### E.   The Court Should Grant Incentive Awards to the Current and Former Class Representatives

District courts have the discretion to award incentive payments to named plaintiffs in class action litigation. *Staton*, 327 F.3d at 977 (9th Cir. 2003). "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis omitted).

Here, and as set forth in the Settlement, Plaintiffs request incentive awards totaling $185,500, divided as follows: For the following Plaintiffs or representatives of Plaintiffs who were deposed on

---

[8]   Several firms' expense statements include contributions to a central litigation fund, which was maintained by Lieff Cabraser. The total contributions to the fund were $142,521.07, and the total expenses were the same. Exhibit C to the Declaration of Michael Sobol itemizes the expenditure of those funds and confirms the contributions reported by the firms. We have included the contributions of each firm as part of the expenses, but we have not included the expenditures from the fund to avoid double-counting.

[9]   Plaintiffs' Counsel reserve the right to seek expenses incurred after June 1, 2015 by supplemental filing.

1   two occasions, Plaintiffs apply to the Court for an award of $22,500 each: (1) David Coverdale;

2   (2) Dave Mason; (3) Carlton Ridenhour; (4) Ron Tyson; and (5) Dennis King (on behalf of the

3   James Ambrose Johnson Jr. Trust).  For the following Plaintiffs who were deposed on one occasion,

4   Plaintiffs apply to the Court for an award of $13,500 each: (1) Robert Walter "Bo" Donaldson;

5   (2) William Mclean (p/k/a Black Sheep); and (3) Andres Titus (p/k/a Black Sheep).  For the

6   following Plaintiffs and group who were not deposed, but assisted with the Pending Actions,

7   including discovery therein, Plaintiffs apply for: (1) $7,500 for Martha Davis; and (2) $5,000 for

8   each of the "Tavares" Plaintiffs—(a) Ralph Vierra Tavares; (b) Arthur Paul Tavares; (c) Feliciano

9   Vierra Tavares; (d) Antone Lawrence Tavares; and (e) Perry Lee Tavares.

10          All of these Plaintiffs put forth substantial time and effort in this case, including participating

11   in document discovery and having their depositions taken, some twice.  They were actively engaged

12   in the litigation, commented on and participated in the case as it progressed, including through

13   settlement, and were advocates for the Class Members throughout the process.  Plaintiffs also faced

14   reputational risks in associating their names with a well-publicized class action lawsuit against a

15   major record company.  More than a typical class representative, the artists here put their names and

16   careers at risk by pursuing large-scale litigation against a music label they depend on for a

17   significant portion of their income.  They should be rewarded for their willingness to act as private

18   attorneys general on behalf of the Class Members.  *See In re Netflix Privacy Litig.*, No. 11-cv-00379

19   EJD, 2013 WL 1120801, at *11 (N.D. Cal. Mar. 18, 2013) (incentive awards recognized that class

20   representatives "assumed the responsibilities and burdens of acting as representatives" and faced

21   "public scrutiny through media coverage of this high profile suit").

22          In *Warner*, Judge Seeborg approved the requested incentive awards in full—$10,000 for each

23   of the six class representatives.  *See* Order as Modified by the Court Granting Plaintiffs' Motion for

24   Attorneys' Fees, Litigation Costs, and Incentive Awards, No. CV 12-0559-RS (N.D. Cal. Jan. 12,

25   2015) (Dkt. No. 116), attached to the Simon Declaration as Exhibit G.  After review of the relevant

26   law of the Ninth Circuit, Judge Seeborg stated that, "Plaintiffs' application for incentive awards was

27   carefully considered in light of these principles [of Ninth Circuit law], and deemed reasonable and

28   justified  given:  (1)  the  risks—reputational,  financial,  and  otherwise—faced  by  the  class

1    representatives in bringing this lawsuit; and (2) the work performed and the active participation in

2    the litigation and settlement processes by the class representatives on behalf of members of the

3    class." *Id.*, ¶5.  Judge Seeborg approved the awards despite the fact that the class representatives'

4    work in *Warner* involved no depositions or discovery.

5          The same circumstances upon which the incentive awards were deemed justified in *Warner*

6    apply to the class representatives here, but in addition most of the plaintiffs also put in substantial

7    time and effort on behalf of the class in document discovery and by having their depositions taken.

8    Accordingly, some of the incentive awards here should be greater than those granted in *Warner* as

9    higher amounts should be awarded for those class representatives with greatest expenditure of time

10   and effort.

11         The requested incentive awards for the class representatives comport with previous case law.

12   *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *15, *appeal dismissed*, No. 13-15734 (9th Cir.

13   Dec. 19, 2013), *appeal dismissed*, No. 13-15734 (9th Cir. Mar. 26, 2014), *appeal dismissed*, No. 13-

14   15759 (9th Cir. May 2, 2014), *appeal dismissed*, No. 13-15733 (9th Cir. June 23, 2014) ("The Court

15   awards to the [two] Class Representatives and [two] named-Plaintiffs in the Related Actions

16   $30,000.00 as an Incentive Award for their roles in this case and the Related Actions."); *Van*

17   *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ("After evaluating the time

18   Van Vranken committed to this case, the Court finds that an incentive award of $50,000 is just and

19   reasonable under the circumstances."); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007

20   WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) *aff'd*, 331 F. App'x 452 (9th Cir. 2009) ("Accordingly,

21   the Court finds the requested payment of $25,000 to each of the [four] named plaintiffs is

22   appropriate."); *Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA, 2009 WL 587844, at *7

23   (S.D. Cal. Mar. 6, 2009) (awarding the two named plaintiffs their requested $12,000 each and noting

24   that "[t]he payment of service awards to successful class representatives is appropriate and the

25   amounts of $25,000 are well within the currently accepted ranged") (citing cases); *see also Cook v.*

26   *Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming an incentive award of $ 25,000 to the named

27   plaintiff); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt.

28   No. 243) (approving $30,000 to each of the named plaintiffs as incentive awards); *In re Linerboard*

1  *Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *18-19 (E.D. Pa. June 2, 2004) (awarding

2  $25,000 to the five class representatives as incentive awards); *In re Dun & Bradstreet Credit Servs.*

3  *Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (awarding two named plaintiffs incentive awards

4  of $55,000 and three named plaintiffs incentive awards of $35,000); *Bolton v. U.S. Nursing Corp.*,

5  No. C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) (approving a $10,000 incentive

6  award); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900 (N.D.

7  Cal. Apr. 3, 2013) (approving $15,000 incentive awards for the court-appointed class

8  representatives).

9       The proposed awards were not employed as an inducement to obtain the class

10  representatives' support for the Settlement. As a result of their efforts and their decision to bring the

11  case, the Class will benefit substantially. Thus, the $185,500 in total incentive awards sought by the

12  14 class representatives is justified and should be approved.[10]

13  **V.**    **CONCLUSION**

14       Based on the foregoing, Plaintiffs respectfully request an award of attorneys' fees, litigation

15  costs, and incentive awards in the amounts set forth above.

16  DATED: July 13, 2015        Respectfully submitted,

17                        LEONARD B. SIMON
                      THE LAW OFFICES OF LEONARD B. SIMON P.C.

18

19                        s/ LEONARD B. SIMON

20                        LEONARD B. SIMON

21                        655 West Broadway, Suite 1900
                      San Diego, CA 92101

22                        Telephone: 619/338-4549
                      Facsimile: 619/231-7423

23                        Email: lens@rgrdlaw.com

24                        *Chair of Lead Class Counsel Group for Plaintiffs*

25

26  _____

27  [10]  Plaintiff Dale Bozzio also sued Capitol, her claim was dismissed, and she took an appeal that is
pending in the Ninth Circuit. Her counsel and counsel for Capitol have discussed possible resolution
of that appeal. If that occurs, counsel for Ms. Bozzio has indicated a desire to apply for an incentive

28  fee for Ms. Bozzio, which, if sought would be done by motion or otherwise.

1        David M. Given (*dmg@phillaw.com*)
             Nicholas A. Carlin (*nac@phillaw.com*)

2        Alexander Tuzin (*aht@phillaw.com*)
             PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP

3        39 Mesa Street, Suite 201
             San Francisco, CA  94129

4        Telephone:  415/398-0900
             Facsimile:  415/398-0911

5

6        Michael W. Sobol (*msobol@lchb.com*)
             Roger N. Heller (*rheller@lchb.com*)

7        Cecelia Han (*chan@lchb.com*)
             LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

8        275 Battery Street, 29th Floor
             San Francisco, CA 94111-3336

9        Telephone:  415/956-1000
             Facsimile:  415/956-1008

10       Michael P. Lehmann (*mlehmann @hausfeldllp.com*)
             Arthur N. Bailey, Jr. (*abailey@hausfeldllp.com*)

11       HAUSFELD LLP
             600 Montgomery Street, Suite 3200

12       San Francisco, CA  94111
             Telephone:  415/633-1908

13       Facsimile:  415/358-4980

14       Michael D. Hausfeld (*mhausfeld@hausfeldllp.com*)
             James J. Pizzirusso (*jpizzirusso@hausfeldllp.com*)

15       HAUSFELD LLP
             1700 K Street NW, Suite 650

16       Washington, D.C.  20006
             Telephone:  202/540-7200

17       Facsimile:  202/540-7201

18       Bruce L. Simon (*bsimon@pswlaw.com*)
             Aaron M. Sheanin (*asheanin@pswlaw.com*)

19       William J. Newsom (*wnewsom@pswplaw.com*)
             PEARSON SIMON & WARSHAW LLP

20       44 Montgomery Street, Suite 2450
             San Francisco, CA  94104

21       Telephone:  415/433-9000
             Facsimile:  415/433-9008

22

23       Clifford H. Pearson (*cpearson@pswlaw.com*)
             Daniel L. Warshaw (*dwarshaw@pswlaw.com*)

24       PEARSON SIMON & WARSHAW LLP
             15165 Ventura Boulevard, Suite 400

25       Sherman Oaks, CA  91403
             Telephone:  818/788-8300

26       Facsimile:  818/788-8104

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thomas S. McNamara (*mcnamara@snip.net*)
*Admitted Pro Hac Vice*
INDIK & McNAMARA, P.C.
100 South Broad Street, Suite 2230
Philadelphia, PA  19110
Telephone:  215/567-7125
Facsimile:  215/563-8330

*Co-Lead Class Counsel for Plaintiffs*