1   LEONARD B. SIMON (State Bar No. 58310)
THE LAW OFFICES OF LEONARD B. SIMON P.C.
2   655 West Broadway, Suite 1900
San Diego, CA  92101
3   Telephone:  619/338-4549
Facsimile:  619/231-7423
4   Email:  lsimon@rgrdlaw.com

5   [Additional Counsel Appear on Signature Page]

6   *Attorneys for Plaintiff and the Putative Class*

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO COURTHOUSE

11   RICK JAMES, by and through THE JAMES  )   Case No. CV-11-1613 (SI)
AMBROSE JOHNSON, JR., 1999 TRUST,    )
12   his successor in interest, individually and on  )   **CLASS ACTION**
behalf of all others similarly situated, *et al.*,  )
13                                          )   NOTICE OF MOTION AND MOTION FOR
                      Plaintiffs,          )   FINAL APPROVAL OF CLASS ACTION
14                                          )   SETTLEMENT
   vs.                                     )
15                                          )
   UMG RECORDINGS, INC., a Delaware       )
16   corporation,                           )
                                           )   DATE:   April 13, 2016
17                      Defendants.         )   TIME:   4:00 p.m.
                                           )   CTRM:  10 (19th Floor)
18   ─────────────────────────────────────  )           The Honorable Susan Illston

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................3

I.      INTRODUCTION .................................................................................................3

II.     BACKGROUND ..................................................................................................6

    A.      The Litigation.............................................................................................6

    B.      Discovery ...................................................................................................7

    C.      The Settlement ...........................................................................................8

III.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
        ACTION SETTLEMENTS ..................................................................................10

IV.     FINAL APPROVAL OF A SETTLEMENT IS APPROPRIATE ....................11

    A.      The Settlement Is Entitled to a Presumption of Fairness......................11

    B.      The Proposed Settlement Is Fair, Reasonable and Adequate ...............11

        1.      The Strength of the Plaintiffs' Case When Balanced Against the
                Risk, Expense, Complexity and Likely Duration of Further
                Litigation Supports Approval ....................................................12

        2.      The Settlement Amount and Benefits Are Substantial ..............14

        3.      The Extent of Discovery Completed and the Stage of the
                Proceedings Supports Approval.................................................15

    C.      The Recommendations of Experienced Counsel Favor Approval.......15

    D.      The Settlement Compares Favorably to Settlements of Two Other Similar
                Cases Which Have Met with Judicial Approval ....................................16

    E.      The Reaction of Class Members to the Proposed Settlement Supports
                Approval ..................................................................................................17

        1.      The Claims Are Substantial in Numbers and Size....................17

        2.      The Objections Are Small in Number and Not Weighty...........18

    F.      The Settlement Notice Satisfied Due Process and Rule 23 Requirements ...........19

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................20

VI.     THE COURT SHOULD GRANT AN INCENTIVE AWARD TO CLASS
        REPRESENTATIVE BOZZIO .........................................................................21

VII.    CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

Page

**CASES**

*Allman v. Sony BMG Music Entm't*,
    No. 06cv3252(GBD), 2008 WL 2477465
    (S.D.N.Y. June 18, 2008).................................................................13

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)............................................................21

*Bozzio v. EMI Grp. Ltd.*,
    811 F.3d 1144 (9th Cir. 2016) ........................................................8, 21

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
    376 F.3d 615 (6th Cir. 2004) ...........................................................19

*Capitol Records, LLC v. ReDigi Inc.*,
    934 F. Supp. 2d 640 (S.D.N.Y. 2013)................................................13

*Churchill Vill., L.L.C. v. Gen. Elec. Corp.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................10, 12

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..........................................................21

*Clinton v. Universal Music Grp.*,
    No. CV 07-672 PSG, 2011 WL 3501818
    (C.D. Cal. Aug. 9, 2011)..................................................................19

*F.B.T. Prods., LLC v. Aftermath Records*,
    621 F.3d 958 (9th Cir. 2010), *cert. denied*,
    562 U.S. 1286 (2011)..........................................................7, 12, 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................10, 11, 12

*In re Chicken Antitrust Litig.*,
    669 F.2d 228 (5th Cir. 1982) ............................................................21

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403
    (C.D. Cal. June 10, 2005) ................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................12, 15

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................15, 16

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .............................................................10

*In re Rambus Inc. Derivative Litig.*,
  No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845
  (N.D. Cal. Jan. 20, 2009) ..................................................................................17

*In re Toyota Motor Corp. Unintended Acceleration*
*Mktg., Sales Practices, & Prods. Liab. Litig.*,
  No. 8:10-ML-02151JVS, 2013 U.S. Dist. LEXIS 123298
  (C.D. Cal. July 24, 2013) .......................................................................12, 15, 17

*In re Toys R Us-Delaware, Inc. Fair &*
*Accurate Credit Transactions Act Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) ................................................................14, 15

*Johansson-Dohrmann v. CBR Sys.*,
  No. 12-cv-1115-MMA (BGS), 2013 WL 3864341
  (S.D. Cal. July 24, 2013) .................................................................................12

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) ...................................................................15

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ..............................................................................4

*Lemus v. H&R Block Enters., LLC.*,
  No. C 09-03179 SI, 2013 WL 3831866
  (N.D. Cal. July 23, 2013) .................................................................................10

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 WL 450064
  (N.D. Cal. July 18, 1997), *aff'd*,
  151 F.3d 1234 (9th Cir. 1998) ...........................................................................11

*London-Sire Records, Inc. v. Doe 1*,
  542 F. Supp. 2d 153 (D. Mass. 2008) ...............................................................13

*Lusby v. Gamestop Inc.*,
  297 F.R.D. 400 (N.D. Cal. 2013) ......................................................................11

*Malmsteen v. Universal Music Grp., Inc.*,
  940 F. Supp. 2d 123 (S.D.N.Y. 2013) ...............................................................13

*Monterrubio v. Best Buy Stores, L.P.*,
  291 F.R.D. 443 (E.D. Cal. 2013) ......................................................................20

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
  797 F.2d 799 (9th Cir. 1986) ............................................................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .........................................................5, 11, 16, 17

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) ..................................................................................9

*Nwabueze v. AT&T Inc.*,
    No. C 09-01529 SI, 2013 WL 6199596
    (N.D. Cal. Nov. 27, 2013)...................................................................................18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................... *passim*

*Philips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..............................................................................................19

*Reinhardt v. Wal-Mart Stores, Inc.*,
    547 F. Supp. 2d 346 (S.D.N.Y. 2008).................................................................13

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ..........................................................................11, 15

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ...............................................................................20

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................10

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ...............................................................................10

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...............................................................................10

*Woo v. Home Loan Grp., L.P.*,
    No. 07-CV-202 H (POR), 2008 WL 3925854
    (S.D. Cal. Aug. 25, 2008) ....................................................................................12

**STATUTES, RULES AND REGULATIONS**

California Code of Civil Procedure
    § 337a......................................................................................................................7

Federal Rules of Civil Procedure
    Rule 23........................................................................................................1, 4, 20
    Rule 23(a)..............................................................................................................11
    Rule 23(b)(3)........................................................................................................11
    Rule 23(c)(2)(B).....................................................................................................6
    Rule 23(e)....................................................................................................3, 10, 19
    Rule 23(e)(2)...........................................................................................................4

**SECONDARY AUTHORITIES**

Alba Conte & Herbert B. Newberg,
4 *Newberg on Class Actions* (4th ed. 2010),
    § 12:15 .....................................................................................................................9

TO:    THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 13, 2016 at 4:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Susan Illston, United States District Court, Northern District of California, Plaintiffs Rick James, by and through The James Ambrose Johnson, Jr., 1999 Trust, his successor in interest; David Coverdale, by and for Whitesnake Productions (Overseas) Limited; Dave Mason; Carlton Douglas Ridenhour, d/b/a "Chuck D," individually and as a member of Public Enemy; Ron Tyson; Robert Walter "Bo" Donaldson, individually and d/b/a Bo Donaldson and the Heywoods; William Mclean, a/k/a "Will Mclean" and p/k/a "Mista Lawnge" and Andres Titus, p/k/a "Dres," jointly d/b/a Black Sheep; Martha Davis; and Ralph Vierra Tavares, Arthur Paul Tavares, Feliciano Vierra Tavares, Antone Lawrence Tavares and Perry Lee Tavares, individually and jointly p/k/a "Tavares (collectively, "Plaintiffs") will and hereby do move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for the entry of an Order granting final approval of:

1.    Plaintiffs' proposed Class Action Settlement with Defendants UMG Recordings, Inc. and Capital Records, LLC; and

2.    The proposed plan of allocation of the proceeds of the Settlement.

**Statement of Issues to be Decided**

1.    Whether the Settlement should be approved; and

2.    Whether the Plan of Allocation should be approved.

The settlement also contemplates the award of attorneys' fees, cost and incentive awards, which were addressed by separate motion (Dkt. No. 243), which will also be heard on April 13.  We will respond to any objections thereto in our reply brief.

The grounds for this motion are that the Settlement is fair, adequate and reasonable; that the Settlement meets all criteria for approval as set forth by relevant precedent; and that sufficient notice of the proposed Settlement was disseminated to the Class.

This motion is based upon the attached Memorandum of Points and Authorities; the Declarations of Leonard B. Simon, Jeffrey D. Goldman and Jennifer M. Veitengruber; the pleadings

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT                                                    - 1 -

1    and papers on file in this action; and such oral and documentary evidence as may be presented at the

2    hearing on this motion.

3    DATED:  March 8, 2016                   LEONARD B. SIMON (*lsimon@rgrdlaw.com*)
                                             THE LAW OFFICES OF LEONARD B. SIMON P.C.

4

5                                                      s/ LEONARD B. SIMON
6                                                      LEONARD B. SIMON

7                                            655 West Broadway, Suite 1900
                                             San Diego, CA  92101
8                                            Telephone:  619/338-4549
                                             Facsimile:  619/231-7423
9
                                             *Chair of Lead Class Counsel Group for Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit this memorandum in support of their motion for final approval of the proposed settlement (hereinafter the "Settlement") with Defendants UMG Recordings, Inc. ("UMGR") and Capitol Records, LLC ("Capitol") (sometimes referred to collectively herein as "Defendants" or, with Plaintiffs, as the "Parties"), final certification of a Settlement Class, and approval of the proposed plan of allocation of the settlement proceeds ("Plan of Allocation"). The Settlement Agreement and the Confidential Supplemental Agreement are attached as Exs. A and B, respectively, to the prior Declaration of Leonard B. Simon filed in support of the motion for preliminary approval (Dkt. No. 236).

## I.    INTRODUCTION

This motion seeks approval of a settlement that resolves two similar sets of cases against different (but now corporately-related) defendants.  In the first set of cases, *James v. UMG Recordings, Inc*., No. CV 11-1613 (SI) (N.D. Cal.) ("*James*") filed on April 1, 2011 and related cases against the same defendant, Plaintiffs alleged that Defendant UMGR failed to properly credit royalty payments to recording artists and music producers for UMGR's exploitation of digital downloads ("Downloads/Mastertones").  Later, several similar suits were filed against Capitol and EMI, and assigned to Judge Gonzalez-Rogers, the first captioned as *Davis v. Capitol Records, LLC*, No. 12-cv-1602-YGR (N.D. Cal.) ("*Davis*").  Years later, an indirect parent company of UMGR acquired the recorded music interests of Capitol from the latter's indirect parent, and during settlement negotiations, it was agreed to settle the two sets of cases together, and a stipulated amended complaint was filed in this docket (with Judge Gonzalez-Rogers' consent) so that this Court has authority to resolve all claims against UMGR and Capitol.  Declaration of Leonard B. Simon in Support of Motion for Final Approval of Class Action Settlement ("Simon Decl."), ¶ 1.

The Settlement amount and benefits to the Class are substantial.  Under the terms of the Settlement, Defendants agreed, among other things, to (1) create an $11.5 million Fund to settle claims over the amount of royalties paid in the past to Class Members; (2) increase future download royalty payments and credits to Class Members by 10% in perpetuity; and (3) pay the costs of notice,

claims administration, attorneys' fees, costs, and enhancement awards out of the Fund.  This Settlement will resolve the last of the class action claims against major record labels relating to downloads and is comparable to or better than settlements reached in similar cases filed against the other major record labels, which are discussed below.[1]

On April 28, 2015, this Court granted preliminary approval of the Settlement.  The Court certified a settlement class ("Settlement Class"), appointed the undersigned as counsel for the class ("Class Counsel"), found that the Settlement fell within the range of reasonableness, approved the form and content of the notice, and ordered notice issued to the Settlement Class.  The Court complimented counsel for both sides on their hard work and diligence in finalizing a complex settlement that took into account the range of contractual language in the class contracts and effectively updated them to fairly account for the way music has been distributed in the "download" era:

> And I might as well say right now before we get any further, I think you have all done a wonderful job for your respective clients in this case.  It isn't easy.  There are all kinds of technical obstacles. . . .   [The case involved] an "extraordinarily complicated set of arrangements to make," and counsel did a "very good job."

Hearing Transcript, April 28, 2015, at 25-26.

After a broad notice campaign and the implementation and completion of a user-friendly claims process, pursuant to which class members were able to submit claims electronically via the case website or by mail, described below, Plaintiffs urge the Court to finally approve the Settlement and conclude the litigation.

The Settlement is fair, reasonable, and adequate, meeting the standard required by Rule 23 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).  The factors to be considered in making the final approval determination – including the benefits of the settlement, the risks of continued litigation, the reaction of the class, the stage of the litigation, and the views of counsel – weigh heavily in favor of granting approval.

---

[1]   Two cases against Sony Music Entertainment, *Shropshire  v. Sony Music Entm't*, No. 06-cv-3252-GBD (S.D.N.Y.) and *Youngbloods v. BMG Music*, No. 07-cv-2394-GBD (S.D.N.Y.) ("*Sony*") were settled in 2012.  A group of cases against Warner Music, *In re Warner Group Music Corp. Digital Downloads Litig.*, No. CV 12-0559-RS (N.D. Cal.), ("*Warner*"), assigned to Judge Seeborg, were settled in December 2013.  Both settlements were approved by their respective courts.

1    Plaintiffs settled with Defendants only after substantial investigation, motion practice, and

2    document discovery, and careful review and analysis of thousands of contracts by both sides.

3    Through discovery, both sides were able to see the other's perspective on the language of the various

4    contracts and the realities, costs, and risks involved in litigating the application of these contracts to

5    downloads and mastertones.  If not for the Settlement, the case would have continued to be fiercely

6    contested by Defendants.  Further delay would be especially problematic for older artist with

7    contracts from the 1960s and 1970s due to their advancing age.  And although Plaintiffs believe they

8    have a strong case against Defendants, further litigation and trial inherently carries with it a degree

9    of uncertainty which could leave the class with no benefits at all.  Weighing the claims, defenses,

10   and risks convinced Class Counsel that settlement with Defendants now was in the best interests of

11   the Class and that the amount of the settlement was reasonable.  *See Nat'l Rural Telecomms. Coop.*

12   *v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*NRTC*") ("'Great weight' is accorded to

13   the recommendation of counsel, who are most closely acquainted with the facts of the underlying

14   litigation.") (citation omitted).

15   The positive reaction of the Class also supports final approval.  Notice reached 9,625

16   potential Class Members.  Declaration of Jennifer M. Veitengruber Regarding Notice and Settlement

17   Administration ("Veitengruber Decl."), ¶ 10.  However, that group was over-inclusive for several

18   reasons, and the number of potential Class Members receiving notice was almost certainly

19   substantially less.  Declaration of Jeffrey D. Goldman ("Goldman Decl."), ¶ 2.  A total of 1,770

20   claims have been submitted, all were deemed timely (even if late), and 1,662 of them (92% ) have

21   been accepted as valid.  Veitengruber Decl., ¶ 18.  Thus the successful claimants number something

22   more than 18% of the potential Class Members, probably substantially more.  These Class Members

23   will receive approximately $2.2-2.6 million[2] in cash or credits for **past** underpayments alone

24

25   _____

[2]    For example, based upon some preliminary calculations from data provided by Defendants,
26   Counsel have estimated the recovery for two randomly selected class representatives.  Class Plaintiff
     One will receive $21,270.92 in retrospective relief, and assuming a consistent level of download
27   activity, he will receive $16,349.30 in enhanced royalties in the next four years, with more
     prospective relief flowing thereafter.  The figures for Class Plaintiffs Two are $18,811.82 for
28   retrospective and $34,814.85 for four years of prospective relief.  Although the ratio of past and

(Goldman Decl., ¶ 4), *plus* an across-the-board 10% increase in their download royalties on Class Contracts *in perpetuity*.  The future relief will be a substantial amount that is impossible to calculate, and for many artists will exceed their relief for past underpayments.

As compared with these 1,622 valid claims, only 152 Class Members opted out,[3] and there are only nine objectors, one of whom in not a Class Member, and none of whom challenge the terms of the settlement, but rather make other objections to their treatment by Defendants regarding matters of public policy or copyright law outside the scope of this litigation.  *See* § IV.E.2, *infra*.

The Notice plan approved by the Court constituted the "best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  It involved direct mail notice to all persons who currently receive royalties from Defendants, publication in major industry magazines and newspapers in major music markets, and publication online.  It is described in full in the accompanying Declaration of Jennifer Veitengruber of Garden City Group ("Veitengruber Decl.").  Mr. Goldman's Declaration also addressed the over-inclusiveness of the mailing.

For all of these reasons, as discussed in detail below, this Court should grant final approval of the Settlement.

## II.      BACKGROUND

### A.      The Litigation

This case is brought on behalf of a class of recording artists and music producers, or production or loan-out companies providing the services of artists and producers (collectively, "Artists") who entered into contracts with Defendants UMGR or Capitol providing for the payment of royalties upon exploitation of the Artists' music.  The complaint alleges that Defendants have systematically breached these contracts by underpaying the royalties owed to the Artists when their music is disseminated in the form of permanent downloads or "mastertones," commonly known as

---

future relief will vary among class members, future relief will substantially enhance the total consideration being paid to the Class.

[3]    The administrator received 328 overlapping exclusion requests (*e.g.*, because multiple artists within a group separately submitted opt-out forms) involving 151 non-redundant potential claimants. Veitengruber Decl., ¶ 24.  Some of those accounts no doubt do not have Class Contracts, but the parties and the settlement administrator did not research the precise viability of each opt out, instead devoting its resources thus far to processing claims.

ringtones for cellular phones ("Downloads/Mastertones").[4]  Specifically, Plaintiffs allege that Defendants have improperly treated Artists' Downloads/Mastertones revenues as derived from "sales" instead of "licenses," and thereby paid Artists royalties based upon the lower sales royalty rate as compared with the higher licensing royalty rate.  *See generally F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010), *cert. denied*, 562 U.S. 1286 (2011) ("*F.B.T.*").

Plaintiffs asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, open book account under California Code of Civil Procedure § 337a, and violation of California's and New York's unfair competition laws.  Plaintiffs filed these cases as class actions alleging that Defendants' practices as described herein have generally been uniform with respect to all members of the Class and caused millions of dollars in damages.  Defendants denied all allegations.

This matter was vigorously litigated for more than three years before the settlement in principle was reached, and almost another full year was required to arrive at a full written agreement.  Litigation efforts included briefing and arguing various motions, including motion to transfer venue, motion to dismiss, and (as noted) early motions for summary judgment.   Simon Decl., ¶ 11.  Defendants had two subsequent summary judgment motions pending at the time of the Settlement which Plaintiffs had yet to oppose.  Simon Decl., ¶ 12.  Had Defendants succeeded on either of these motions, the impact on the likelihood of success of the class claims could have been substantial.

## B.    Discovery

The parties engaged in extensive discovery.  In the *James* litigation, UMG produced, and Plaintiffs reviewed, over 11,000 recording and producer contracts, many over 50 pages long, and thousands of other documents.  Simon Decl., ¶ 12.  Many interrogatories and requests for admission were served by UMGR, seeking separate answers from each named Plaintiff.  Numerous depositions were conducted by the Parties, with many Plaintiffs deposed more than once, and nine current and former UMGR personnel were deposed.  *Id*.  The Parties exchanged multiple sets of written

---

[4]    The Plaintiffs in the *Capitol* Cases also allege that Capitol underpaid royalties for digital music products known as Streams.  *See* Settlement Agreement, ¶ I.CCC.  Plaintiffs in *James* did not make such a claim.  Except as otherwise indicated, the term "Downloads/Mastertones" herein, as it applies to Capitol only, includes Streams.

1    discovery and had numerous discovery disputes that required Court intervention and numerous

2    conference calls between counsel.  Dkt. Nos. 123, 133, 138, 140, 142, 144, 147, 148, 150, 155-57,

3    159, 168-71, 174, 181.  *Id*.  The *Capitol* cases also involved substantial activity, with multiple

4    rounds of briefing on motions to dismiss, substantial discovery including interrogatories, document

5    requests, and review of thousands of recording agreements and other documents.[5]  Thus, at the time

6    of Settlement, the Parties had a clear understanding of the strengths and weakness of the claims and

7    defenses, and the difficulties Plaintiffs would have faced in obtaining a more favorable result

8    through continued litigation.  Simon Decl., ¶ 12.

9         **C.   The Settlement**

10        The Settlement was negotiated with the assistance of the Honorable Edward Infante (Ret.),

11   who met with counsel on three occasions over two years in person, and had several intervening

12   phone conversations with counsel as well.  There were many early, failed settlement efforts in which

13   the Parties were far apart in their views of the case and the nature of any appropriate settlement, but

14   in 2014, on the Parties' third visit to Judge Infante, with summary judgment motions pending and

15   class certification motions about to be filed, the Parties were able to finally reach agreement.  Dkt.

16   Nos. 203, 205; Simon Decl., ¶ 13.  Even then, negotiation of details required to finalize a written

17   settlement agreement with all the details of the settlement consumed almost a full year to address

18   variations in contracts, define the type of "class contract" entitled to qualify for relief, and to allocate

19   the settlement benefits equitably.  *Id*.  This process involved complex analysis of both legal and

20   financial issues.

21        The Settlement Class generally consists of all persons and entities (or their successors) that

22   are parties to a Class Contract, generally defined as a contract with a UMGR or Capitol U.S. Label

23   dated between January 1, 1965 and April 30, 2004, which contained "records sold" and "masters

24   licensed" royalty rate provisions or were the subject of a program offered by Capitol to certain artists

25   ——————————————————
     [5]   Two of the cases raising similar claims against Capitol were dismissed by Judge Gonzalez
26   Rogers *in toto*: *Beltran v. EMI Music, Inc*., No. 4:12-cv-1002 YGR (N.D. Cal.); *Bozzio v. EMI Grp.,
     Ltd*., No. 4:12-cv-02421 YGR (N.D. Cal.).  *Bozzio* appealed the dismissal and the Ninth Circuit
27   recently reversed and remanded.  *See Bozzio v. EMI Grp. Ltd*., 811 F.3d 1144 (9th Cir. 2016)
     ("*Bozzio*").  That case is also resolved herein, and Plaintiff Bozzio requests an incentive award, as
28   described in § VI, *infra*.

1   known as the "Legendary Artists Program." *See* Settlement Agreement, ¶ I.L.1, 2.  There are certain

2   exclusions.  *Id.*, ¶ I.L.3; Simon Decl., ¶ 14.

3        Under the terms of the Settlement, to compensate Class Members for alleged underpayments

4   on Downloads/Mastertones in the past, Defendants will make available $11,500,000 (less attorneys'

5   fees, costs, enhancement awards, and administrative costs), which will be allocated to Class

6   Members per a formula in the Settlement Agreement.  *Id.*, ¶¶ I.Q and I.ZZ.  The formula is designed

7   to permit Class Members to receive a share of the Distributable Fund that corresponds to their pro

8   rata share of the revenue of UMGR and Capitol from Downloads/Mastertones during a four-year

9   time period selected to be capable of ascertainment across all Defendants and their various sub-

10  labels, and to be as fair as possible in allocations to all qualified class members.

11        In addition to relief for alleged ***past*** underpayments, Class Members will also receive a

12  perpetual increase of 10% in ***future*** royalties paid or credited to them on account of exploitation of

13  Downloads/Mastertones.  Defendants have also agreed to lock in certain additional benefits in the

14  calculation of Class Members' royalties on Download/Mastertone income in the future, preventing

15  reductions, for example, in "packaging" and free goods from being implemented, as has been done

16  in the past.

17        The package of future relief is extremely valuable for those artists and producers whose work

18  is still being downloaded.  Again, the settlement is structured fairly so that each Class Member will

19  benefit in the future in a manner proportional to the future success of download sales of his or her

20  work.  Simon Decl., ¶ 16.

21        The Settlement contains a carefully tailored release limited to claims arising out of or related

22  to the allegations in the now-consolidated cases relating to royalties for Downloads/Mastertones.

23  *See* Settlement Agreement, ¶ 1.MM; Simon Decl., ¶ 17.  The release easily comports with applicable

24  law, which holds that a class action lawsuit may release all claims "that may arise out of the

25  transactions or events pleaded in the complaint."  *See* Alba Conte & Herbert B. Newberg, 4 *Newberg*

26  *on Class Actions*, § 12:15 at 312 (4th ed. 2010); *see also Nat'l Super Spuds, Inc. v. New York*

27  *Mercantile Exch.*, 660 F.2d 9, 16-18 (2d Cir. 1981).  None of the handful of objectors has objected to

28  the terms of the release.

**III.     THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS**

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("*Officers for Justice*").   Class action suits lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "there is an 'overriding public interest' in settling class actions." *Lemus v. H&R Block Enters., LLC,* No. C 09-03179 SI, 2013 WL 3831866, at *1 (N.D. Cal. July 23, 2013) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976)); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[6]  Courts are to approve a proposed settlement of a class action under Rule 23(e) where the proposed settlement is "fundamentally fair, adequate, and reasonable."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In exercising its discretion to approve a settlement, the Court must make a "reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit cautions that there are limits to the court's inquiry:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what **might** have been achieved by the negotiators.

*Id.* (emphasis in original).

Courts recognize that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results.  "In most situations, unless the

---

[6]     *See also Churchill Vill., L.L.C. v. Gen. Elec. Corp.*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

1    settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive

2    litigation with uncertain results." *NRTC*, 221 F.R.D. at 526.

3    **IV.    FINAL APPROVAL OF A SETTLEMENT IS APPROPRIATE**

4           In its preliminary approval order, the Court certified the Settlement Class for the purposes of

5    this Settlement. *See* Order (Dkt. No. 240), ¶ 2.  Accordingly, there is no need for the Court to revisit

6    the Rule 23(a) or (b)(3) requirements.  The sole remaining consideration for the Court is whether the

7    Settlement is fair, reasonable, and adequate. *Hanlon*, 150 F.3d at 1026.

8           **A.    The Settlement Is Entitled to a Presumption of Fairness**

9           A settlement enjoys a presumption of fairness where it is the product of arms-length

10   negotiations conducted by experienced and capable counsel with a firm understanding of the

11   strengths and weaknesses of their clients' positions following sufficient discovery. *Rodriguez v.*

12   *West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (The Ninth Circuit "put[s] a good deal of

13   stock in the product of an arm's-length, non-collusive, negotiated resolution" in approving a class

14   action settlement); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5

15   (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (settlement agreement reached

16   between experienced class action counsel in arm's length negotiations after relevant discovery

17   creates a presumption that the agreement is fair).

18          Here, the settlement more than meets this standard.  As discussed *supra*, Class Counsel

19   actively litigated claims in *James* and *Capitol* for three-plus years, including extensive discovery,

20   before a settlement was reached.  The Settlement was the result of hard-fought, arms'-length

21   negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating

22   parties." *Officers for Justice*, 688 F.2d at 625.  The conclusion that the settlement was not collusive

23   is also supported by the active involvement of Judge Infante as mediator. *Lusby v. Gamestop Inc.*,

24   297 F.R.D. 400, 413 (N.D. Cal. 2013).

25          **B.    The Proposed Settlement Is Fair, Reasonable and Adequate**

26          In determining whether a settlement is fair, reasonable, and adequate, a court may consider

27   the following factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely

28   duration of further litigation; (3) the risk of maintaining a class action status throughout the trial;

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

1   (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

2   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;

3   and (8) the reaction of the class members to the proposed settlement.  *Churchill Vill.*, 361 F.3d at

4   575; *Hanlon*, 150 F.3d at 1026.  "'The relative degree of importance to be attached to any particular

5   factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the

6   unique facts and circumstances presented by each individual case.'"  *Woo v. Home Loan Grp.*, *L.P.*,

7   No. 07-CV-202 H (POR), 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008) (quoting *Officers for*

8   *Justice*, 688 F.2d at 625).  "In evaluating fairness, the Court must consider and give approval to the

9   proposed settlement as a whole, rather than any individual provision therein."  *In re Toyota Motor*

10  *Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-

11  02151JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *247 (C.D. Cal. July 24, 2013) ("*Toyota*").

12  **1.    The Strength of the Plaintiffs' Case When Balanced Against
           the Risk, Expense, Complexity and Likely Duration of Further
13         Litigation Supports Approval**

14          In determining whether the proposed Settlement is fair, reasonable, and adequate, "the Court

15  must balance against the continuing risks of litigation (including the strengths and weaknesses of the

16  plaintiff's case), the benefits afforded to members of the Class and the immediacy and certainty of a

17  substantial recovery."  *Johansson-Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS), 2013 WL

18  3864341, at *4 (S.D. Cal. July 24, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458

19  (9th Cir. 2000) ("*Mego*")).

20          Here, the complexities of this litigation, the risks, expense, and duration of continued

21  litigation against Defendants, and the likelihood of appeal if Plaintiffs prevail at trial, all favor final

22  approval.  Although Plaintiffs believe their claims have substantial merit, they recognize the risk and

23  expense necessary to prosecute the claims against Defendants through class certification and trial,

24  and, if necessary, subsequent appeals, as well as the inherent difficulties and delays that characterize

25  complex litigation.

26          Here, a key factor favoring approval is the fact that the fundamental question in the case – the

27  proper payment for digital downloads under contracts signed between 1965 and April 2004, was

28  hotly disputed, and not necessarily resolved by *F.B.T.*, which addressed only one contract.  The class

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

1    herein had many kinds of contracts, and the defenses available to Defendants were many and varied,

2    well beyond that presented in *F.B.T.*  Simon Decl., ¶ 18.  The proposed settlement takes into account

3    and attempts to synthesize, to the extent possible, the varying terms and structures of these contracts

4    to equitably grant and distribute benefits under contracts that bear sufficient similarities to one

5    another, while excluding contracts that are especially dissimilar from "class contracts."  This

6    outcome is designed to fairly and proportionately benefit qualified class members, and is far

7    preferable than separate trials for individual contracts or subclasses of contracts with uncertain

8    outcomes.

9         Among the arguments Defendants would be expected to make if the class claims had

10   proceeded were that downloads and mastertones, constituting "records" under many contractual

11   definitions of that term, were sold through "normal retail channels," and therefore were subject to the

12   same royalty provision applicable to "records" sold in other configurations, such as compact discs,

13   cassette tapes, and vinyl albums.  Defendants asserted that such arguments have substantial support

14   in the case law.[7]  Defendants would have argued that the decision in the *F.B.T.* case on which

15   Plaintiffs predicated their claims – in which the Court found that the result turned on the distinction

16   between a "sale" and a "license" under the structure and terms of the particular contract at issue –

17   could not apply to the many other contract types.  *See, e.g.*, *Malmsteen*, 940 F. Supp. 2d at 133 n.5

18   ("the applicable royalty provisions in the Agreement do not turn on the distinction between 'sales'

19   and 'licenses' as they did in *F.B.T.*") (granting UMGR summary judgment "[e]ven assuming that

20   _____

21   [7]    Defendants have cited, *e.g.*, *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 131-
     32 (S.D.N.Y. 2013) ("As a threshold matter, digital downloads are clearly Records, as defined in . . .

22   the Agreement.  The phrase '[a]ny device now or hereafter known on or by which sound may be
     recorded and reproduced' manifests the clear intent of the contracting parties that the definition of

23   Record encompass as-yet-undeveloped technologies.") (granting summary judgment); *Reinhardt v.
     Wal-Mart Stores, Inc.*, 547 F. Supp. 2d 346, 354-55 (S.D.N.Y. 2008) ("The phrase 'now or hereafter

24   known,' when referring to forms of reproduction, reveals that future technologies are covered by the
     agreement. . . .  It is not reasonable to construe the phrase 'all forms' 'now or hereafter known' to
     exclude Defendants' alleged digital download form.") (granting summary judgment); *Allman v. Sony*

25   *BMG Music Entm't*, No. 06cv3252(GBD), 2008 WL 2477465, at *2 (S.D.N.Y. June 18, 2008)
     (same);  *Panama Music Corp. v. Universal Music Grp. Inc.*, Case No. 12-20200-CIV-

26   GOLD/GOODMAN, Dkt. 88, at *13 (S.D. Fla. July 9, 2013) ("Permanent downloads and
     mastertones are Records that are electronically transmitted to the consumer."); *see also Capitol*

27   *Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 651 (S.D.N.Y. 2013) (Downloads are within
     Copyright Act's definition of "phonorecord"); *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d

28   153, 171 (D. Mass. 2008) (same).

     NOTICE OF MOTION AND MOTION FOR FINAL
     APPROVAL OF CLASS ACTION SETTLEMENT                                                      - 13 -

1    this were a licensing relationship"); *Panama Music*, No. 12-20200-CIV-GOLD/GOODMAN, Dkt.

2    88, at *16 ("the distinction between a sale and a license is immaterial to determining which royalties

3    apply to . . . permanent downloads, and mastertones under the Contract.").  Plaintiffs believe they

4    have persuasive arguments to the contrary, but agree that a settlement taking into account both sides'

5    positions and avoiding the risks and costs of litigation is in the best interests of the class.

6            Another key factor is that continuation of this litigation would be risky, expensive, and

7    engender substantial delay in recovery to Class Members, many of whom recorded their music in the

8    1960s and 1970s, and are especially anxious for a speedy recovery of the benefits of the litigation.

9    The trial outcome is unpredictable, and a favorable outcome for Plaintiffs would no doubt be

10   appealed, further delaying relief to the Class Members.  Because of the age of the Class Members,

11   recovery now is far better for them than further delay.  Simon Decl., ¶ 19.

12           In short, while Class Counsel believe that the claims asserted against Defendants have

13   substantial merit, the Settlement recognizes the risks of complex litigation and trial involving

14   difficult legal and factual issues, and the risks inherent in class action litigation generally.  *See, e.g.*,

15   *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438,

16   458-59 (C.D. Cal. 2014) ("*Toys R Us*") (quoting *Officers for Justice*, 688 F.2d at 625) ("[I]t must not

17   be overlooked that voluntary conciliation and settlement is the preferred means of dispute resolution.

18   This is especially true in complex class action litigation.").

19                      **2.      The Settlement Amount and Benefits Are Substantial**

20           The present and future monetary recovery available through this Settlement makes this a

21   favorable result for Class Members.  Defendants have made $11.5 million (less fees, costs, and

22   administrative expenses) available for payment of retrospective relief alone, and future relief is

23   perpetual and uncapped, and the amount will be dependent upon the future success of download

24   sales of class members' recordings.  Defendants are agreeing to increase future payments on

25   downloads by 10% in perpetuity.  That is, a Class Member who would have earned $30,000 in

26   download royalties in his next semi-annual royalty statement accounting period will instead earn

27   $33,000, and this increase will continue so long as his work sells.  This permanent increase in future

28   royalties is an important and substantial part of the Settlement, and is quite valuable given the risks

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT

of further litigation.  *Toys R Us*, 295 F.R.D. at 453 (determination of fair settlement figure is tempered by the risk of losing at trial, the expense of litigating the case, and the expected delay of recovery).

### 3.  The Extent of Discovery Completed and the Stage of the Proceedings Supports Approval

A court may consider the stage of the litigation to ensure that the amount of discovery and investigation was sufficient to allow counsel to intelligently weigh the strength and potential value of Class Members' claims prior to negotiating their settlement.  *See, e.g.*, *Rodriguez*, 563 F.3d at 967; *Mego*, 213 F.3d at 458; *Officers for Justice*, 688 F.2d at 625.  Here, the knowledge that Class Counsel has acquired since the litigation began in 2011 enabled them to make a strongly informed judgment about the strengths and weaknesses of Plaintiffs' claims.  As discussed, *infra*, extensive discovery occurred in the UMGR case, and substantial document discovery was undertaken in the cases against Capitol.  The document review necessary for this case was complicated and intensive, requiring a two-tiered review by Plaintiffs for a great majority of the complex contracts, to identify the inclusion or absence of certain terms and then to analyze and categorize the interrelationships between terms.  Simon Decl., ¶¶ 20, 21.  Class Counsel confirmed that similar issues to those presented in the UMGR case would also arise in the Capitol cases.

### C.  The Recommendations of Experienced Counsel Favor Approval

"The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement."  *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).  As the Ninth Circuit recently observed in *Rodriguez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  563 F.3d at 965.  Courts have recognized that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *Toyota*, 2013 U.S. Dist. LEXIS 123298, at *261.  In short, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007).

Class Counsel have significant experience in complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country.  Some, such as Mr. David Given and Mr. Neville Johnson, had pre-existing music industry expertise, and many were involved in the parallel *Warner* class settlement.[8]  Simon Decl., ¶ 22.  Mr. Given and his firm have served as counsel in a number of high-profile music and entertainment law cases, including copyright and trademark infringement cases, actions to recover unpaid royalties, music partnership disputes, composition authorship disputes and others.  *See* Declaration of David M. Given in Support of Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 234-7), ¶ 9.  Also, Plaintiffs consulted with an industry expert on practices in royalty reporting and accounting as well as trends in digital distribution of recorded music. The expert also reviewed several iterations of the settlement agreement in its drafting stage.  Where, as here, the settlement is the product of serious, informed, and non-collusive negotiations between experienced counsel, "the 'trial judge . . . should be hesitant to substitute its own judgment for that of counsel."  *NRTC*, 221 F.R.D. at 528.  In the present matter, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *Omnivision*, 559 F. Supp. 2d at 1043.

### D. The Settlement Compares Favorably to Settlements of Two Other Similar Cases Which Have Met with Judicial Approval

As noted above, this settlement shares features with class settlements arising from similar cases against Sony and Warner, though it differs in several respects that benefit class members. *Sony* was approved in the Southern District of New York despite the fact that the settlement agreement defined the eligible claimants so narrowly that only 108 claimants were entitled to past relief, and only 74 claimants were entitled to future relief.  In *Warner*, approved by Judge Seeborg, the increase on future downloads was capped so that class members who began with higher royalty rates received smaller (or no) increases, whereas the instant settlement provides a 10% perpetual

---

[8]   For information on the experience of Class Counsel, Plaintiffs respectfully refer the Court to the declarations filed in support of the motion for preliminary approval.  See Declaration of Leonard B. Simon, ¶¶ 4, 21-25 (Dkt. No. 234-2); Declaration of Arthur N. Bailey, Jr., ¶¶ 4-7 (Dkt. No. 234-1); Declaration of David M. Given, ¶¶ 4, 8-11 (Dkt. No. 234-7); Declaration of Daniel Warshaw, ¶¶ 4-13 (Dkt. No. 234-5); Declaration of Michael W. Sobol, ¶¶ 2-6 (Dkt. No. 234-6); Declaration of Thomas S. McNamara, ¶¶ 9-13 (Dkt. No. 234-8); and Declaration of Jeffrey A. Koncius, ¶¶ 5-6 (Dkt. No. 234-9).

increase to all claimants, and locks in certain other favorable royalty rate adjustments not guaranteed to class members in *Warner*.  The broad participation of class members and broader availability of relief here support approval.  Moreover, multiple sets of lawyers in different districts have litigated and then settled these types of claims, two other judges have approved them, and this settlement offers certain distinct advantages.

**E.  The Reaction of Class Members to the Proposed Settlement Supports Approval**

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy.  *See In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. Jan. 20, 2009).  Here, the reaction of the Class to the proposed Settlement has been overwhelmingly favorable.

**1.  The Claims Are Substantial in Numbers and Size**

As noted above, out of nearly 10,000 notices successfully mailed, and as compared with 1,623 approved claims, only 9 purported objections have been filed, and they largely do not address the issues in this litigation or the terms of this Settlement, but complain about the general state of relations between record companies and artists.  "The absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Toyota*, 2013 U.S. Dist. LEXIS 123298, at *263-64; *see also NTRC*, 221 F.R.D. at 529.

Indeed, the number of claims itself supports approval, as the response rate was quite good, although not precisely ascertainable.  Valid claims constitute over 18% of the number of claim forms that reached potential Class Members.  *See* p. 5, *supra*.  No doubt many of those notices reached non-class members, and still others reached multiple members of the same band (Goldman Decl., ¶ 2), who filed one claim in response to multiple notices, or potential claimants who recognized that their negligible download sales were not worth a submission.  Thus it would appear that 25-50% of potential realistic claimants have claimed.

The case also generated significant recoveries for Class Members.  Based on current calculations, claimants will receive an average of approximately $1,450 in retrospective relief, and a

1    perpetual stream of future relief which will exceed that amount for many Class Members.  Thus, this

2    Settlement will produce significant recoveries for a significant number of people.

### 2.    The Objections Are Small in Number and Not Weighty

4          The nine objections have little weight here, and several are infirm.  Of the nine, four of them

5    (Cheryl Wheeler, by personal manager Anthony Gottlieb, Dkt. No. 249; Dan Seals, also by Mr.

6    Gottlieb, Dkt. No. 250; Lou Bush, also by Mr. Gottlieb, Dkt. No. 248;[9] and Margaret Whiting, by

7    Deborah Gervasi, Dkt. No. 253) are identical, cryptic, one paragraph form letters.  The letters are

8    difficult to understand, but appear to complain that these persons have not received "current

9    statements of account" and thus the objectors cannot determine the reasonableness of the settlement.

10   Objectors do not show any effort by them to seek this information from UMGR or Capitol, but in

11   any event, this case is not about that issue, nor is it common to the class.

12         Four more objections (Jack DeJohnette, Dkt. No. 251; Estate of Thelonius Monk, Dkt. No.

13   252;[10] Estate of William Taylor, Dkt. No. 255; and Ronald Carter, Dkt. No. 254) are identical to one

14   another, and complain in conclusory fashion that "the amounts paid under the settlement would still

15   not be a fair remuneration for the licensing income derived by record labels from online exploitation

16   (downloads and streaming) of my recordings."  The only support for this bare conclusion is a lengthy

17   quote from an online article that is a frontal attack on how artists are paid for online music,

18   seemingly focused on streaming services like Spotify (beyond the scope of this litigation and

19   Settlement).  Neither the objections nor the article engages on the contractual questions contested

20   here – whether payment for downloads on specific contracts should be on the basis of "sales" or

21   "licenses" – but on broader policy issues relating to the overall fairness in the industry and the

22   alleged weakness of the accounting systems that track online usage of music on devices like Spotify.

23   Such objections concern policy issues beyond the scope of this litigation.  Moreover, none of these

---

25   [9]   Mr. Bush is not a putative class member because his last agreement was dated 1955, well before
26   the January 1, 1965 start-date used for the class definition.  Class Counsel nonetheless addresses the
     objection for purposes of completeness.

27   [10]   The Monk objection is incomplete, has not been cured and should be dismissed.  *Nwabueze v.*
     *AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013); Veitengruber Decl.,
28   ¶ 26.

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT                                                      - 18 -

eight objectors filed claims, further suggesting that they may not have claims related to this litigation and this Settlement.

The ninth and final objector, George Clinton, Dkt. No. 244, has submitted a somewhat longer objection through counsel, but likewise complains about a matter outside the scope of this litigation – his right to receive royalties from Defendants for recordings by other artists that "sample" his work.  Such issues, partaking of copyright law, the fair use defense, and possibly contract law, were never a part of this case, and are not released.  And Mr. Clinton further acknowledges that the very issue about which he objects has been litigated in federal district court in Tennessee, but that he "had not authorized the suit and did not reap any benefit from this wave of litigation over his works."  Dkt. No. 244, ¶ 7.  Thus, his objection is both off point and likely subject to res judicata.  *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *see also Clinton v. Universal Music Grp.*, No. CV 07-672 PSG (JWJx), 2011 WL 3501818 (C.D. Cal. Aug. 9, 2011) (granting summary judgment for defendant on Mr. Clinton's claims relating to "internet royalties").

In sum, a carefully constructed settlement designed to settle differences between these record companies and their artists over a contract interpretation question has yielded the submission of over 1,650 approved claims which will be honored with both backward-looking and forward-looking relief, and only nine objections, all of which concern other matters.

**F.      The Settlement Notice Satisfied Due Process and Rule 23 Requirements**

The notice plan program was thorough and effective, and satisfied the requirements of Rule 23(e), as well as due process requirements.  *See* Fed. R. Civ. P. 23(e); *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The Claims Administrator mailed the Notice via first-class mail to all potential Class Members identified from Defendants' royalty records.  Veitengruber Decl., ¶¶ 3-9.  The list provided by UMGR was comprehensive, and over-inclusive.  Goldman Decl., ¶¶ 2-3.  The Notice informed Class Members of the terms of the Settlement, their right to object and associated deadlines, the Plan of Allocation, and Co-Lead Counsel's request for an award of attorneys' fees and expenses.  *Id.* ¶ 6,

1  Ex. A.  "Notice by mail is sufficient to provide due process to known affected parties, so long as the

2  notice is 'reasonably calculated . . . to apprise interested parties of the pendency of the action and

3  afford them an opportunity to present their objections.'"  *Monterrubio v. Best Buy Stores, L.P.*, 291

4  F.R.D. 443, 452 (E.D. Cal. 2013).  Courts have regularly approved comparable notice arrangements.

5  *See, e.g.*, *Silber v. Mabon*, 18 F.3d 1449, 1452-54 (9th Cir. 1994) (approving similar notice sent by

6  first-class mail as the "best notice practicable").

7          The Claims Administrator also placed advertising in six prominent publications calculated to

8  reach music industry professionals, posted the notice on the internet, mailed reminder postcard

9  notice, and provided a toll-free phone number for callers.  Veitengruber Decl., ¶¶ 11-15 (*Billboard*

10  magazine, *Rolling Stone* magazine, *Chicago Tribune*, *Los Angeles Times* (twice), *New York Times*

11  (twice), and *Nashville Tennessean* (twice)).  The last known addresses for all Class Members who

12  are still receiving semi-annual royalty statements from UMGR and Capitol were used, and the

13  Claims Administrator updated addresses through the National Change of Address (NCOA) database,

14  so the notice should have gotten to the vast majority of Class Members who had a viable claim.  *Id.*,

15  ¶¶ 3-5.  Defendants also posted notice of the Settlement on their home page.  *Id.*, ¶ 15.

16          As a result, the mailing was comprehensive and effective as compared to those made in many

17  other class actions without such good mailing lists available and, especially as supplemented with

18  multiple publication and website notices, readily exceeds the standards of Rule 23 and due process.

19  **V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

20          Plaintiffs also seek approval of the Plan of Allocation of the Proceeds of the Settlement,

21  which was also preliminarily approved by the Court and is set forth in full in the Notice.  As noted

22  above, for payment for alleged prior underpayment of royalties, the Plan provides for a proportionate

23  distribution of the Fund based on the Class Member's Download/Mastertone commerce as compared

24  to the total Download/Mastertone commerce.  Judge Seeborg approved an exceptionally similar plan

25  of allocation in *Warner*.  *See* Order as Modified by the Court Granting Plaintiffs' Motion for

26  Attorneys' Fees, Litigation Costs, and Incentive Awards, No. CV 12-0559-RS (N.D. Cal. Jan. 12,

27  2015), Dkt. No. 116 in *Warner*.  For future sales or exploitations, royalties for digital exploitation of

28  Subject Masters is increased by 10%, so it is directly proportional to commerce.

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT                                              - 20 -

Assessment of a plan of allocation of settlement proceeds is governed by the same standards of review applicable to the settlement as a whole – a fair and reasonable allocation should be approved. *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). District courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 238 (5th Cir. 1982). An "'allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) (citation omitted).

For all of the reasons discussed herein, the proposed Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund among all Class Members who submit an acceptable Proof of Claim and Release, and should be approved.

## VI.   THE COURT SHOULD GRANT AN INCENTIVE AWARD TO CLASS REPRESENTATIVE BOZZIO

Plaintiffs noted in their application for attorneys' fees, costs and incentive awards (Dkt. No. 243) that, in addition to the incentive awards sought there, the *Bozzio* case was dismissed but on appeal, but that if Ms. Bozzio succeeded in her case, we might seek an incentive fee for her. The Ninth Circuit recently reversed and remanded *Bozzio*, and Ms. Bozzio requests through this motion that the Court award her $10,000 for her service to the class, which includes prosecuting an appeal which resulted in a published Ninth Circuit decision that benefits all recording artists with similar contracts. *Bozzio v. EMI*, No. 13-15685 (9th Cir. Jan 26, 2016).

Bozzio fully litigated her claims through to a favorable appellate decision, and spent a significant amount of time keeping abreast of the case, reviewing draft pleadings and briefs, identifying and collecting responsive documents and data from her files, investigating factual questions raised by Capitol's motion to dismiss and arguments on appeal, providing information to counsel for use in drafting an amended complaint, and assisting her counsel prepare for argument in the trial and appellate courts. She also incurred the risk of retaliation from record labels that sell and promote her music. The requested incentive fee is reasonable, and defendants do not object to it.

1   **VII.    CONCLUSION**

2          The proposed Class Action Settlement and the proposed Plan of Allocation are fair, adequate

3   and reasonable, and meet the criteria established by this Court for approval.  Therefore, Plaintiffs

4   respectfully request that this Court approve the Settlement and the Plan of Allocation.

5   DATED:  March 8, 2016                LEONARD B. SIMON (*lsimon@rgrdlaw.com*)
                                         THE LAW OFFICES OF LEONARD B. SIMON P.C.
6

7                                                   s/ LEONARD B. SIMON
8                                                   LEONARD B. SIMON

9                                        655 West Broadway, Suite 1900
                                         San Diego, CA  92101
10                                       Telephone:  619/338-4549
                                         Facsimile:  619/231-7423
11

12                                       *Chair of Lead Class Counsel Group for Plaintiffs*

13                                       David M. Given (*dmg@phillaw.com*)
                                         Nicholas A. Carlin (*nac@phillaw.com*)
                                         Alexander Tuzin (*aht@phillaw.com*)
14                                       PHILLIPS, ERLEWINE & GIVEN LLP
                                         50 California Street, 35th Floor
15                                       San Francisco, CA  94111
                                         Telephone:  415/398-0900
16                                       Facsimile:  415/398-0911

17                                       Michael W. Sobol (*msobol@lchb.com*)
                                         Roger N. Heller (*rheller@lchb.com*)
18                                       Cecelia Han (*chan@lchb.com*)
                                         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
19                                       275 Battery Street, 29th Floor
                                         San Francisco, CA 94111-3336
20                                       Telephone:  415/956-1000
                                         Facsimile:  415/956-1008
21

22                                       Michael Lehmann (*mlehmann @hausfeldllp.com*)
                                         Arthur N. Bailey, Jr. (*abailey@hausfeldllp.com*)
23                                       HAUSFELD LLP
                                         44 Montgomery Street, Suite 3400
                                         San Francisco, CA  94104
24                                       Telephone:  415/633-1908
                                         Facsimile:  415/358-4980
25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT                                      - 22 -

1   Michael D. Hausfeld (*mhausfeld@hausfeldllp.com*)
    James J. Pizzirusso (*jpizzirusso@hausfeldllp.com*)
2   HSUSFELD LLP
    1700 K Street NW, Suite 650
3   Washington, D.C.  20006
    Telephone:  292/540-7200
4   Facsimile:  202/540-7201

5   Bruce L. Simon (*bsimon@pswplaw.com*)
    Aaron M. Sheanin (*asheanin@pswplaw.com*)
6   William J. Newsom (*wnewsom@pswplaw.com*)
    PEARSON, SIMON, WARSHAW & PENNY LLP
7   44 Montgomery Street, Suite 2450
    San Francisco, CA  94104
8   Telephone:  415/433-9000
    Facsimile:  415/433-9008
9
    Clifford H. Pearson (*cpearson@pswplaw.com*)
10  Daniel L. Warshaw (*dwarshaw@pswplaw.com*)
    PEARSON, SIMON, WARSHAW & PENNY LLP
11  15165 Ventura Boulevard, Suite 400
    Sherman Oaks, CA  91403
12  Telephone:  818/788-8300
    Facsimile:  818/788-8104
13
    Edgar D. Gankendorff (*egankendorff@provostylaw.com*)
14  Christophe Bela Szapary (*cszapary@provostylaw.com*)
    PROVOSTY & GANKENDORF, L.L.C.
15  650 Poydras Street, Suite 2700
    New Orleans, LA  70130
16  Telephone:  504/410-2795
    Facsimile:  504/410-2796
17
    Neville L. Johnson (*njohnson@jjllplaw.com*)
18  JOHNSON & JOHNSON LLP
    439 North Canon Drive, Suite 200
19  Beverly Hills, CA  90210
    Telephone:  310/975-1080
20  Facsimile:  310/975-1095

21  Jeffrey A. Koncius (*koncius@kbla.com*)
    KIESEL LAW LLP
22  8648 Wilshire Boulevard
    Beverly Hills, CA  90211-2910
23  Telephone:  310/854-4444
    Facsimile:  310/854-0812
24
    Thomas S. McNamara (*mcnamara@snip.net*)
25  INDIK & McNAMARA, P.C.
    100 South Broad Street, Suite 2230
26  Philadelphia, PA  19110
    Telephone:  215/567-7125
27  Facsimile:  215/563-8330

28  *Co-Lead Class Counsel for Plaintiffs*